# Exhibit 1

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY,<br><br>    Plaintiff,<br>    on behalf of itself and all others similarly situated,<br><br>    vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 1:16-cv-00259-MMS<br>(Judge Sweeney) |

## DECLARATION OF STEPHEN A. SWEDLOW

I, Stephen Swedlow, declare:

1. I am the Managing Partner in the Chicago office of Quinn Emanuel Urquhart & Sullivan LLP, appointed class counsel in this matter. Except as set forth below, I make this declaration of my own personal knowledge and, if called to testify, I could and would competently testify hereto under oath.

2. As the largest firm in the nation devoted solely to business litigation—with over 800 litigators worldwide—Quinn Emanuel has been described as a "global force in business litigation" by the *Wall Street Journal* and a "litigation powerhouse" by *The American Lawyer*. Quinn Emanuel has also been recognized by *Legal Business* three times as "US Law Firm of the Year." And *The American Lawyer* named the firm in 2015 and 2019 as a "Litigation Department of the Year: Finalist." Quinn Emanuel also was named "firm of the year" for Commercial Litigation in 2015 by the *Legal 500 USA Awards*. In 2020, Quinn Emanuel was voted the "most feared" firm in the world after independent BTI Consulting Group surveyed over 350 major companies who identified Quinn Emanuel as the firm they least wanted to face as opposing counsel.

3. When representing plaintiffs, Quinn Emanuel has won over $70 billion in judgments and settlements. Quinn Emanuel also tries more cases than almost any other major law firm. The firm's partners have first-chaired over 2,300 trials and arbitrations, including five 9-figure jury verdicts. The firm has also obtained forty-three 9-figure settlements and nineteen 10-figure settlements.

4. Quinn Emanuel's class action and healthcare practices are recognized as among the nation's best. For example, in 2013 and 2016, Quinn Emanuel was named the "Class Action Practice Group of the Year" by *Law360* for its work for plaintiffs and defendants in class action litigation.

5. The two other Quinn Emanuel partners who led this litigation along with me were J.D. Horton and Adam Wolfson. I have been lead counsel in over 20 trials, multi-party jury trials and arbitrations, and have argued (and won) appeals, including several before state Supreme Courts and federal appellate courts. In the context of class action litigation, I have been lead trial counsel for two class action trials to verdict. In the specific context of health insurance class actions, prior to these cases at issue and subject to this fee petition, I have successfully led class action settlements of $63 million and $100 million for health plan class actions. I was a Trial Lawyer of the Year finalist in 2003 for obtaining the largest civil verdict in Illinois history, and have been named an Illinois "Super Lawyer" each year from 2006 through 2020.

6. J.D. Horton is a partner in Quinn Emanuel's Los Angeles office and has represented health plans in civil and regulatory actions for over 20 years. He has obtained settlements of $40 million and $28 million on behalf of two health plan classes related to prescription drug purchases and represented the Kaiser Foundation Health Plan in multiple enforcement proceedings brought by the Department of Managed Health Care, including in a 40-

day trial that ended with the Court rejecting virtually the entirety of the Department's case. Among many other health plan providers, he has represented Blue Shield of California in a declaratory relief action against the Department of Managed Health Care, as well as a major health care service plan in an arbitration against a large IPO.

7.  Adam Wolfson is a partner in Quinn Emanuel's Los Angeles office, focusing on class actions and plaintiff-side litigation. He was one of the principal co-lead counsel for plaintiffs in *In re Polyurethane Foam Antitrust Litigation*, where he helped obtain more than $430 million in settlements on behalf of a certified class in a case alleging a price-fixing conspiracy in the flexible polyurethane foam industry. He also obtained a $283 million patent infringement and breach of contract trial verdict in 2014 on behalf of ViaSat, Inc. relating to its competitor's theft of innovative intellectual property and satellite designs. He is currently on the plaintiffs' Executive Committee in In re Combat Arms Earplug Product Liability Litigation, in which the plaintiffs, service members from all branches of the U.S. Armed Forces, are suing to recover for damages they suffered from the use of defective earplugs 3M sold to the USAF for over a decade. He is also currently representing a putative class of consumers harmed by supracompetitive ATM fees set by collusion amongst Visa, MasterCard, and their constituent bank investors, and is further representing a putative class of models in relation to breach of contract and labor law claims arising out of their misclassification as independent contractors by the nation's top modeling agencies.

8.  In February 2016, Quinn Emanuel became the first law firm to file suit on behalf of a Qualified Health Plan (QHP) issuer to recover unlawfully withheld risk corridor payments under Section 1342 of the Affordable Care Act when we filed the *Health Republic* class action. The Health Republic lawsuit covered benefit years 2014 and 2015. The firm agreed to take the

case on contingency, and Health Republic agreed to an attorney's fee of 25% of the gross recovery in the event of a class action settlement or judgment. In 2017, Quinn Emanuel filed the *Common Ground* class action on behalf of QHP issuers seeking to recover unlawfully withheld risk corridor payments for the 2016 benefit year. Quinn Emanuel again agreed to take the case on contingency, and Common Ground agreed to an attorney's fee of up to 25% of the gross recovery in the event of a class action settlement or judgment. Quinn Emanuel, however, is not seeking a 25% attorney's fee from Health Republic or Common Ground. Instead, Health Republic and Common Ground will be subject to same attorney's fee award approved by the Court for all class members.

9. After Quinn Emanuel investigated, researched and created a viable legal theory and strategy for recovery for QHP issuers via the Health Republic complaint, other in-house and outside counsel law firms began to contact me to discuss the legal theories and inquire about strategy for pursuing a claim against the government on behalf of other QHP issuers who at that time were potential opt in members of the Health Republic class. I shared with the in-house and outside counsel our collective thoughts on legal and settlement strategy to further the goal of increasing collective recovery for all QHP issuers. My partners and colleagues at Quinn Emanuel also participated in this information share with other counsel for the purpose of increasing the overall likelihood of recovery for QHP issuers.

10. In 2016, the government initially began settlement discussions with Quinn Emanuel, and I sought to include many of the large QHP issuer claimants' counsel in these discussions regardless of whether these entities had indicated one way or the other their intentions regarding opting into the pending class action. The government indicated to me at that time its desire for all QHP issuer claims under the Risk Corridors provisions of the ACA to be

addressed uniformly and through the class action mechanism we created, as it would provide efficiencies and conserve the resources of both QHP issuers and the Court of Federal Claims, which otherwise would have had to adjudicate hundreds of additional individual lawsuits. Unfortunately settlement discussions with the government stalled early in 2017 and the cases had to continue to be litigated for the next 3 plus years before final resolution.

11. Several months after Quinn Emanuel filed the first Risk Corridors ACA claim under the Tucker Act in this Court, several other law firms began aggressively recruiting and soliciting QHP issuers to file separate individual Risk Corridors cost recovery lawsuits. In some circumstances these law firms sought to represent individual QHP issuers on contingency and some sought to represent entities and charge customary hourly rates. Some firms had existing client relationships with QHP issuers and sought to capitalize on those relationships to secure the representation. In many cases, outside law firms would vet their clients' decision regarding whether or not to ultimately opt into these class actions, file individually or wait and see whether the lawsuit was successful. I personally spoke to dozens of representatives of QHP issuers contemplating whether to opt into the Health Republic class action. I met with QHP issuer representatives (both in house counsel, government representatives at the state and local level and outside counsel) in person all over the country to address their concerns and answer questions.

12. At some point in the litigation process, the Health Republic (then later the Common Ground) classes were certified and the decision for QHP issuers had to be made whether to opt in to the classes. By that time, many individual cases had also been filed pursuing the same legal strategy in the same venue, and QHP issuers had options for counsel. Law firms at that time were variously offering hourly and contingency fee arrangements.

5

13. The initial class notice in the Health Republic case did not include a specific provision regarding attorneys' fees, as a determination at that time prior to settlement or judgment would be premature. In addition, that determination would be subject to Court approval and award. However, during the opt in period, it became clear that some QHP issuers who had not spoken or met with me (along with outside counsel at other firms) had concluded that Quinn Emanuel would seek 33% of any settlement or award. As a result of this incorrect assumption, several QHP issuers filed individual lawsuits in the Court of Federal Claims prior to QE's supplemental notice to potential class members (discussed below).

14. Specifically, I am aware of other law firms entering into agreements with QHP issuers on contingency to pursue these Risk Corridors claims at percentages in multiples of the 5% Quinn Emanuel is seeking in this fee petition. In addition, certain other QHP issuers informed me and my partners that they chose to file an individual suit with different counsel because they preferred a different (hourly) fee structure as opposed to the uncertainty of a contingency fee award.

15. During the opt-in process, on the day Quinn Emanuel learned of the misunderstanding related to the contingency rate Quinn Emanuel may ultimately request from the Court in the context of representing QHP issuers, Quinn Emanuel submitted (and the Court subsequently approved) a supplemental class notice informing potential class members that Quinn Emanuel would seek an attorney's fees of no greater than 5% of the recovery. This supplemental notice was sent to every QHP issuer prior to the deadline for deciding whether to opt into the class, so no class member was obligated to opt in prior to receipt of this notice. Further, I personally communicated with dozens of QHP issuer representatives and told each of them when deciding whether or not to opt into the class actions to assume the attorneys' fees for

these actions would be 5% of any recovery whether by settlement or judgment, but that the determination of the fee award is for the Court to decide.  As a consequence, every class member was on notice of the potential for a 5% attorney fee.  Quinn Emanuel included this exact same language regarding the attorneys' fees in the *Common Ground* class notices as well.

       16.     After the supplemental notice was issued, I engaged in further conversations with QHP issuer representatives who informed me that even after the 5% fee disclosure was publicly made, other law firms willing to engage QHP issuers on contingency fee engagements were still not willing to match this 5% contingency fee rate.  As a consequence, after the supplemental notice, some QHP issuers chose to opt into the class after unsuccessfully seeking to obtain a contingency rate lower than 5% from other counsel.

       17.     Ultimately, 153 QHP issuers joined the *Health Republic* class and 130 QHP issuers joined the *Common Ground* class, representing approximately one-third of the total value of all risk corridor claims.  This represents by orders of magnitude the largest contingent of QHP issuers represented by any law firm in risk corridors litigation.  Unlike typical class actions— which bind thousands or potentially millions of individuals unless they opt out—each of the class members here affirmatively chose to *opt in* to the *Health Republic* and *Common Ground* classes after receiving notice that included information about the potential attorneys' fees.  In effect, all QHP issuers who chose to opt in affirmatively selected Quinn Emanuel as their counsel amid a competitive marketplace offering numerous other options of highly-qualified counsel.  Some of the opt in decisions were made by financially sophisticated decision-makers motivated primarily by maximizing value related to an investment or for purposes of maximizing returns for payment of creditors.  All of these decision makers were consistently informed that for their financial models they should assume 5% for attorneys' fees.

18. Reaching this level of participation was a time consuming and arduous endeavor. I and other Quinn Emanuel attorneys flew across the country to meet with QHP issuers—some of whom became class members, and some of whom did not—and extensively addressed and provided insights regarding the merits of their risk corridors' claims and their litigation options. As part of this process, Quinn Emanuel answered detailed questions from QHP issuers about their rights against the government. Quinn Emanuel provided input even to individual litigants that chose not to join the class, because Quinn Emanuel recognized that, even if it did not have a tangible stake in the parallel individual lawsuits, assisting those plaintiffs on virtually identical claims benefited the classes it represented.

19. In addition to achieving a 100% recovery for the class members, Quinn Emanuel provided value to the government, which at one point indicated that it would prefer to administer risk corridor claims through counsel's class action mechanism rather than through a series of individual actions. Quinn Emanuel's successful efforts to organize the Health Republic and Common Ground classes reduced the government burden of litigating hundreds of additional individual actions that might otherwise have been filed.

20. During the four-plus year pendency of this litigation, Quinn Emanuel fielded often-daily inquiries from class members (and other QHP issuers) about a variety of litigation and ACA-related topics, including (but by no means limited to) the susceptibility of risk corridor claims to government offset, the interaction between this litigation and state insolvency laws, possible settlement of claims, and the timing of any recovery. Quinn Emanuel researched and answered class members' often-individualized questions.

21. The magnitude of the government's failure to meet its obligations contributed significantly to the complexity of this matter. Predictably, the government's failure to pay tens

or hundreds of millions of dollars that it promised to QHP issuers forced numerous class members into liquidation and brought others to the brink of insolvency.  Quinn Emanuel took steps to enable class members to leverage their risk corridor claims to obtain financing necessary to stay in business, and regularly consulted with and advised liquidators and state insurance officials.  QE did not charge for any of its time or efforts to help class members secure financing and did not seek any portion of any payments made that were secured by the claims at issue in this case.  Further, in every discussion I had with any class member, QHP issuer, or financing entity, I disclosed that for any transaction, both parties should assume an attorney's fee of 5% to be deducted from any settlement or recovery in these matters.

22.     When other risk corridor cases made their way to the Federal Circuit and eventually the Supreme Court, Quinn Emanuel was an active participant.  At the panel stage at the Federal Circuit, Quinn Emanuel submitted amicus briefs on behalf of Health Republic and an industry group called Alliance of Community Health Plans.  At the *en banc* rehearing stage, Quinn Emanuel submitted two more amicus briefs, one on behalf of Health Republic and Common Ground, and one on behalf of a consortium of healthcare economists.  At the Supreme Court, Quinn Emanuel submitted amicus briefs on behalf of the healthcare economists at both the certiorari and merits stage, and extensively consulted with counsel for the appellants with respect to both briefing and oral argument.  Quinn Emanuel engaged in these efforts—devoting substantial time and effort to the initial appeal, petition for *en banc* rehearing, Supreme Court certiorari stage, and Supreme Court merits stage—all on the sometimes low percentage chance the U.S. Supreme Court would agree to hear the case and reverse the Federal Circuit.

23.     To date, including both the *Health Republic* and *Common Ground* matters, Quinn Emanuel attorneys have worked almost 10,000 hours on these cases, at a blended rate of

approximately $1,033 per hour. The Quinn Emanuel partners who have billed more than 100 hours on this matter have billed at rates ranging from $870 to $1,250 per hour. The Quinn Emanuel associates who have billed more than 100 hours on this matter have billed at rates ranging from $600 to $905 per hour. Moreover, to date, Quinn Emanuel paralegals, litigation support staff, and summer associates have worked over 400 hours on these matters at a blended rate of approximately $325 per hour. In total, Quinn Emanuel's lodestar on the *Health Republic* and *Common Ground* cases is over $10 million. Quinn Emanuel expects to continue devoting substantial resources to litigating on behalf of the Dispute Subclasses and is committed to pursuing claims for each individual class and subclass member until each and every entity is satisfied with the outcome or all appellate options are exhausted.

24.  Quinn Emanuel has borne and will continue to bear costs associated with this litigation that Quinn Emanuel expects to pay out of the attorney's fee award in these matters. For example, Health Republic and Common Ground each request a $100,000 class representative incentive award. Quinn Emanuel has requested that the incentive awards come out of its attorney's fee award instead of the amount to be paid to the classes. In addition, Quinn Emanuel retained M. Kate Bundorf, an renown healthcare economist, as an expert in this matter, and paid her directly as an expert for her assistance and expertise. Quinn Emanuel further has taken on the cost of administering these class actions, having paid all costs and expenses associated with class notices and claims administration to JND Legal Administration. Quinn Emanuel intends to bear the additional costs associated with JND's administration of the receipt of over $3.7 billion in total judgment amount from the Department of Treasury and subsequent disbursement of appropriate amounts to hundreds of entities each with specific payout instructions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 30, 2020.

                                                Stephen A. Swedlow