# Exhibit 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| COMMON GROUND HEALTHCARE COOPERATIVE,<br><br>      Plaintiff,<br>      on behalf of itself and all others similarly situated,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>      Defendant. | No. 17-877 C |

### DECLARATION OF CATHY MAHAFFEY

I, Cathy Mahaffey, declare:

1. I am Chief Executive Officer of Common Ground Healthcare Cooperative ("Common Ground").

2. Common Ground is a nonprofit cooperative organized under Wisconsin law and located at 120 Bishop's Way, Suite 150, Brookfield Wisconsin 53005.

3. Common Ground began providing health insurance to insureds on and off the federally operated health exchange in 19 counties in Wisconsin in January of 2014. Common Ground also offered plans on the federally operated health exchange in Wisconsin for the 2015 and 2016 plan years. On November 13, 2017, HHS announced that Common Ground was owed $26,987,917.60 in 2016 risk corridors amounts for the individual market and $669,339.38 in 2016 risk corridors amounts for the small group market. However, HHS stated it would be paying Common Ground only $393,547.93—an amount that would be applied to risk corridors receivables still owed to Common Ground from the 2014 benefit year.

4. Common Ground currently offers qualified health plans ("QHPs") on the federally operated health exchange in the individual market in certain counties in Wisconsin, and has done so every year since 2014.

5. Common Ground took a significant risk in pursuing this litigation on behalf of QHP issuers nationwide. The Department of Health and Human Services exerts significant regulatory authority over CO-OPs operating pursuant to Section 1322 of the Affordable Care Act, and has the authority to grant loans to CO-OPs to ensure that they meet state solvency requirements. The Department of Health and Human Services is also Common Ground's biggest client and source of revenue. By filing a lawsuit against the government potentially worth billions of dollars, Common Ground risked its goodwill with a key regulator and source of income. Common Ground nonetheless decided to file this lawsuit because it believes it is important for the government to follow through on its obligations, and further believes that it was fundamentally unfair for the government to induce QHP issuers to enter the marketplace and then pull the rug out from under them after the QHP issuers had already fulfilled their end of the bargain.

6. Prior to participating as the class representative for this case, I had reached out to Stephen Swedlow at Quinn Emanuel to obtain assistance in securing financing for Common Ground to avoid insolvency. Mr. Swedlow was instrumental and ultimately successful in connecting Common Ground with potential sources of funds to avoid insolvency. Quinn Emanuel did not charge for any of its assistance in this regard. Later as these Risk Corridors cases progressed, Mr. Swedlow of Quinn Emanuel contacted me to discuss the possibility of Common Ground serving as the class representative for the 2016 calendar year for unpaid Risk Corridors amounts owed by the government. Mr. Swedlow made a presentation to Common

Ground's board proposing a strategy and structure for Common Ground to file suit in its own name and as a class representative against the government. Ultimately, Common Ground filed this lawsuit and provided a vehicle for the entry of a stipulated judgment and recovery to QHP issuers in excess of $1.7 billion for unpaid Risk Corridors amounts for calendar year 2016.

7. Common Ground devoted significant resources to considering and ultimately prosecuting this litigation. Common Ground analyzed the potential impact of filing suit and its Board of Directors gave extensive consideration to the issue. Prior to filing suit, it was not clear what the nature of the government's defenses would be and how much day-to-day involvement would be required of Common Ground. Common Ground chose to file suit notwithstanding that uncertainty. During the course of the litigation, Common Ground regularly communicated with class counsel, providing information and assisting with the litigation as needed. All told, Common Ground's leadership and employees have spent over one hundred hours providing substantive guidance, analyzing, and prosecuting this litigation.

8. Prior to filing suit, Common Ground agreed to pay an attorney's fee of up to 25% of the recovery or award in the context of a class action settlement or judgment. Class counsel has confirmed, however, that Common Ground will pay the attorney's fee approved by the Court in these matters, and that class counsel is requesting a 5% fee, not a 25% fee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 30, 2020.

*Cathy Mahaffey*
Cathy Mahaffey