IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **HEALTH REPUBLIC INSURANCE COMPANY,** | ) ) ) | |
| Plaintiff, | ) ) | No. 16-259C |
| v. | ) ) ) | Judge Sweeney |
| **THE UNITED STATES OF AMERICA,** | ) ) | |
| Defendant. | ) ) | |

## UNITED STATES' MOTION FOR LEAVE TO AMEND ITS ANSWER

Pursuant to RCFC 15(a)(2) and the Court's July 23, 2020 Order, Dkt. 82 at 4, the United States requests the Court's leave to file an amended Answer to bring counterclaims against members of the Dispute Subclass ("Dispute Subclass Plaintiffs") for countervailing Patient Protection and Affordable Care Act ("ACA") debts they owe the United States.

As a result of their participation in the ACA Health Benefit Exchanges ("Exchanges") in 2014-16, the Dispute Subclass Plaintiffs are now entitled to risk corridors damages based upon the Supreme Court's ruling in *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020).  However, the Dispute Subclass Plaintiffs, also as a result of their participation in the ACA Exchanges in 2014-16, owe the United States debts incurred in other ACA programs. Had the risk corridors payments been made during the life of the risk corridors program, the United States Department of Health and Human Services ("HHS") would have collected the money owed by the Dispute Subclass Plaintiffs through offset, consistent with 45 C.F.R. § 156.1215(b).  Because the Tucker Act requires the Court itself to now offset the Dispute Subclass Plaintiffs' debt, 28 U.S.C. § 2508; *see also id.* § 1503, the United States requests leave of Court to amend its Answer to assert counterclaims seeking judgment on the countervailing

ACA debts owed by the Dispute Subclass Plaintiffs.  The United States asks that the Court "freely give leave [as] justice so requires."  *See* RCFC 15(a)(2).

## I.     Procedural History

Health Republic, as sole plaintiff, filed its Complaint on February 24, 2016.  Dkt. 1.  The United States filed a motion to dismiss.  Dkt. 8.  While the United States' motion was pending, Health Republic moved for class certification, Dkt. 16, and the Court granted certification on January 3, 2017, Dkt. 30.  One week later, the Court denied the United States' motion to dismiss.  Dkt. 31.

On February 24, 2017, the Court granted Health Republic's motion for approval of its class action notice plan.  Dkt. 42.  Three days later, on February 27, 2017, the United States answered the Complaint.  Dkt. 43.  On March 1, 2017, the Court granted amendment of the class notice.  Dkt. 46.

On March 3, 2017, exactly one week after the United States' Answer, Health Republic, still the sole plaintiff, filed a motion for summary judgment.  Dkt. 47.  That motion became fully briefed on June 2, 2017, with Health Republic still the sole plaintiff.  Dkt. 56.  On June 10, 2017, Health Republic filed class membership.  Dkt. 57.  Just one month later, on July 11, 2017, the Court stayed the case "pending a decision by the Federal Circuit in *Land of Lincoln* and/or *Moda Health Plan*."  Dkt. 62.  The Court continued the stay on June 29, 2018.  Dkt. 69.  The stay continued through the Supreme Court's April 2020 ruling in *Maine Community Health Options*.  During and after the stay, Health Republic continued to add class members, with the United States consenting to the additions.  Dkt. 70, 74.

## II.  The Court Should Grant Leave to the United States To Amend Its Answer

As noted above, the Court "should freely give leave [to amend] when justice so requires." RCFC 15(a)(2).  Rule 15(a)(2) tracks the language of Federal Rule of Civil Procedure 15(a)(2). In *Foman v. Davis*, the Supreme Court explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962).  A court "ought to exercise liberally its discretion to grant leave to amend." *Cebe Farms, Ind. v. United States*, No. 05-965C, 2012 WL 294666, at *1 (Fed. Cl. 2012) (quotation omitted).

As described above, the United States filed its Answer on February 24, 2017.  Dkt. 43. At that time, Health Republic was the plaintiff – the *only* plaintiff – and there was no class established.  In fact, as noted above, the class notice had not been finalized at the time of the Answer.  *See* Dkt. 40.  When the United States filed its Answer, it was not aware of any countervailing debts owed by Health Republic, and the United States does not assert today that Health Republic owes any countervailing debt.  Health Republic was included in the Non-Dispute Subclass and the United States stipulated to judgment for Health Republic for the full amount of risk corridors damages owed to Health Republic.  Thus, the United States' Answer did not assert counterclaims.

On June 10, 2017, Health Republic filed class membership, identifying a class of more than 150 issuers.  Dkt. 57.  Just one month later, on July 11, 2017, the Court stayed this case – a stay that lasted into May 2020.  Thus, this case was "active" for only 31 days after Health

Republic first informed the Court of class membership, which included the Dispute Subclass Plaintiffs.

In the first Joint Status Report ("JSR") filed by the Parties two weeks after the Supreme Court's ruling in *Maine Community Health Options*, the United States immediately identified the potential need to amend its Answer to assert counterclaims:

> [S]ome of the plaintiffs may have outstanding debts owed to HHS under other ACA programs. In order to determine which issuers have such debts pending, HHS must review its records across ACA programs and distill that information for consideration by government officials with authority to evaluate the issues. Those parties owing debts and the United States should then have an opportunity to confer to seek to resolve those issues, and, as necessary, to prepare and propose a procedure to dispose of outstanding matters. Finally, the United States needs to consider whether it would be appropriate to raise defenses not previously considered and whether to counterclaim.

Dkt. 72 at 5. The United States has done exactly as it indicated, and attempted to resolve the issue of outstanding countervailing debts with members of the class. However, the Dispute Subclass Plaintiffs were unwilling to resolve their outstanding debts without litigation, and thus, after working with class counsel on a procedure to resolve of these outstanding issues, the United States intends to counterclaim, as it indicated in the JSR. Counterclaims will ensure that the Dispute Subclass Plaintiffs' countervailing debts to the United States will be paid, and "afford [the United States] an opportunity to test [its] claim on the merits."

Here, none of the disqualifying factors identified by the Supreme Court in *Foman* apply to the United States' proposed amended Answer. There is no "undue delay" here when the United States previously only had the opportunity to amend during a brief 31-day period after the Dispute Subclass Plaintiffs were identified as members of the class and before the case was stayed. There has been no discovery in this case (or even a RCFC 16 pretrial conference or scheduling order). Apart from filings related to the composition of the class, there has been

4

essentially no "litigation" in this case after the United States answered except for briefing on summary judgment, which the Court did not decide. There is also no dilatory motive here, as demonstrated by the United States immediately raising the need to counterclaim in the first JSR following the Supreme Court's ruling.

To the extent that the Dispute Subclass Plaintiffs will argue that the United States' motion should be denied because it is too late to amend the Answer, the Court must recognize that it was not until June 10, 2017 that Health Republic identified more than 150 "new" plaintiffs, any of which (or none of which) may have had countervailing debts that HHS needed to review, calculate and confirm before the United States could begin to prepare an amended Answer. Considering that this case was stayed on July 11, 2017, the Court should not now penalize the United States for not having sought leave to amend its Answer in that short 31-day window.

Moreover, as noted above, years after the May 2017 deadline for potential class members to opt in, *see* Dkt. 42, Health Republic continued to add new class members, with the United States' consent. It would be inequitable to deny the United States the right to amend its Answer to assert counterclaims when Health Republic has continued to "amend" the class, most recently on June 23, 2020. Dkt. 74.

### III. Leave To Amend Is Particularly Warranted Here Because Congress Has Mandated The Court Offset Countervailing Debts

The Tucker Act's waiver of sovereign immunity allows this Court to enter monetary relief against the United States only to the extent that a plaintiff proves "actual, presently due money damages" and complies with other statutory conditions upon the court's jurisdiction. *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313, 1319 (Fed. Cir. 2017). To the extent the Court will order the United States to pay risk corridors damages to the

Dispute Subclass Plaintiffs, applicable jurisdictional statutes require this Court to account for the federal government's offsetting claim.

Congress specifically mandated that "[u]pon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff."  28 U.S.C. § 2508; *see also id.* § 1503 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court.").

The Supreme Court and the Federal Circuit's predecessor have recognized that these federal statutes impose a mandatory duty to give effect to the government's offsets.  *See, e.g.*, *United States v. Munsey Tr. Co.*, 332 U.S. 234, 239-40 (1947) (concluding that the Court of Claims was "under statutory duty to recognize the undisputed claim for damages of the United States" when adjudicating a claim against the government); *Blake Constr. Co. v. United States*, 585 F.2d 998, 1005 (Ct. Cl. 1978) ("By special statute, set-off is allowed in this court where the Government is always the defendant."); *Atlantic Contracting Co. v. United States*, 35 Ct. Cl. 30, 33-34 (1899) (recognizing that when a claimant "seeks the jurisdiction" of the Claims Court, "he is subjected to . . . determination of whatever claims the United States may have against him which can be properly pleaded by way of set-off").  That duty follows from the fundamental principle of sovereign immunity that a court may award monetary relief against the government only on the terms and conditions allowed by Congress.  *United States v. Testan*, 424 U.S. 392, 399 (1976); *see Kaufman v. United States*, 118 Ct. Cl. 91, 105 (1950) (government's right of

setoff under sections 1503 and 2508 is "one of the conditions" on its "consent to be sued," "as plain as the English language can make it").

This Court's statutory obligation to recognize the government's offsets under 28 U.S.C. §§ 1503 and 2508 is unaffected by the Dispute Subclass Plaintiffs state insolvency proceedings. In *Preuss v. United States*, 412 F.2d 1293 (Ct. Cl. 1969), the Federal Circuit's predecessor considered an insolvent party's claim that the government should not be permitted to effectuate its offset in the same litigation but instead should be forced to pursue its claim in bankruptcy court. The Court disagreed and sustained the government's claim for a "one hundred percent" offset, even though the value of the government's claim in bankruptcy court "would in all probability be worth only a few cents on the dollar."[1] *Id.* at 1304. The Court explained that the government's right of offset was "encompassed within the jurisdiction conferred on this [C]ourt by Congress" and that the Court was "'not at liberty'" to "'limit or restrict'" it. *Id.* (quoting *Frantz Equip. Co. v. United States*, 122 Ct. Cl. 622, 630 (1952)); *see Frantz*, 122 Ct. Cl. at 629-30 (explaining that a plaintiff, by filing suit in the Court of Claims, "undeniably subject[s] itself" to the government's "right to assert counterclaims and claims for offsets" in the same suit, even if the government's claims otherwise must be brought elsewhere).

**IV.   Conclusion**

For the foregoing reasons, the Court should grant leave for the United States to amend its Answer to assert counterclaims.

---

[1] That the Dispute Subclass Plaintiffs' insolvency proceedings at issue here are state proceedings is of no consequence to the Court's statutory obligation to effectuate the United States' ACA offsets. *See UnitedHealthcare of New York, Inc. v. Lacewell*, No. 18-2583-cv, 2020 WL 4045365, at *6 (2d Cir. July 20, 2020) ("[b]ecause the ACA 'specifically relates to the business of insurance,' the McCarran–Ferguson Act's special anti-pre-emption rule . . . [for] state insurance laws[] does not apply").

Dated: August 3, 2020                    Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

RUTH A. HARVEY
Director
Commercial Litigation Branch

KIRK T. MANHARDT
Deputy Director

/s/ Marc S. Sacks
MARC S. SACKS
TERRANCE A. MEBANE
FRANCES M. MCLAUGHLIN
PHILLIP M. SELIGMAN
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 307-1104
Fax (202) 514-9163
marcus.s.sacks@usdoj.gov

ATTORNEYS FOR THE UNITED STATES