# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 16-259C |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | Judge Sweeney |
| Defendant. | ) ) ) | |

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER

In opposing the United States' motion for leave to amend its Answer, the Dispute Subclass does not dispute that:

- when the United States filed its original answer the Dispute Subclass did not exist;

- "in the interest of judicial economy," Dkt. 62, the Court in July 2017 stayed the central issue—the question of liability under the risk corridors program in the Patient Protection and Affordable Care Act (ACA)—posed in this case, and that after the stay went into effect the only activity in the case was procedural, related to the composition of the class;

- no discovery took place in this case and the only issues that were briefed were unrelated to the subject matter of the United States' claims;

- the United States' claims were known to the Dispute Subclass before they joined the class;

- the United States has freely consented to the addition of class members throughout the pendency of the case;

- the Dispute Subclass members have been in liquidation and insolvent throughout the pendency of this case; and

- the United States promptly notified the Court and class counsel (the Dispute Subclass still did not exist) of an intention to seek recovery on its ACA claims against class members by setoff shortly after the Supreme Court decided the central issue of risk corridors liability.

Based upon these considerations, as established in the Motion, under RCFC 15(a)(2) the Court should "freely" permit amendment of the Answer to assert counterclaims for setoff or offset against the Dispute Subclass plaintiffs' recovery of a risk corridors judgment.  Under the undisputed circumstances here, the Dispute Subclass has not identified the requisite undue delay, prejudice, or futility that could warrant denial of the Motion and thus the Court should grant the motion to amend.

## ARGUMENT

As the United States demonstrated in its Motion, leave to amend an answer should be freely given in the absence of undue delay, undue prejudice, or futility of amendment.  *See* RCFC 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The United States satisfies this liberal standard here.

### 1.    The Motion Is Timely

The Dispute Subclass does not dispute that after the Supreme Court decision in *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020), finally resolved the central issue of risk corridors liability, the United States promptly notified the class counsel and the Court of an intention to pursue known ACA claims against appropriate class members.  At that point, no Dispute Subclass had been identified.  In opposition to our motion, the Dispute

2

Subclass argues that the United States should have previously sought to lift the stay to file a motion to amend its answer to assert counterclaims against three or four putative members of the Dispute Subclass, out of a certified class of upward of 250 members, so that litigation could have proceeded on those counterclaims against those three or four insolvent insurance companies, while the primary issue of risk corridors liability remained stayed pending its disposition through other litigation.

The contention is unpersuasive on its face.  At the most practical level, it ignores the status of the Dispute Subclass plaintiffs.  These plaintiffs are all in state liquidation proceedings with no ability to pay while the central issue of risk corridors liability remained pending.  Until April 2020, controlling authority held they were not entitled to an affirmative judgment under risk corridors.  Moreover, the issues involved in the United States' claims are unrelated to the substantive questions at issue in the risk corridors litigation.  Seeking to amend the complaint to bring a setoff claim for other ACA debts against plaintiffs with no ability to pay would have been futile and wasteful of the resources of the parties and the Court.  Such unnecessary legal maneuvering would have promoted the height of form over substance and would have undermined the very purpose of the stay adopted by this Court.

The cases relied upon by the Dispute Subclass in its opposition do not advance its position.  All of those cases involved lengthy delay before the movant sought amendment late in the proceedings and would have caused prejudice or harm to the non-movant, such as onerous new discovery after a trial was already complete.  For example, in the tax refund cases relied upon by the Disputed Subclass, *Principal Life Insurance Company v. United States*, 76 Fed. Cl. 326 (2007), *Bank of America v. United States*, 217 Ct. Cl. 731 (1978), and *Panhandle Eastern Pipe Line Company v. United States*, 187 Ct. Cl. 129 (1969), requests to amend an answer to add

3

offset claims were denied because the requests came late in the litigation, after trial, and amendment would have caused lengthy new litigation, including time-consuming and costly discovery.

And as the Court in *Principal* noted, the tax refund case also presents special circumstances, not present here, because the taxpayer "must in the first instance anticipate all possible claims of tax liability . . . and by allegation and proof negative them all, or fail to make his case." 76 Fed. Cl. at 327 n.1 (quoting *Routzahn v. Brown*, 95 F.2d 766, 770-71 (6th Cir. 1938)). Thus, the existence of a government claim would have affected the substance of the plaintiff's case in chief. *See id.* Here, of course, the Dispute Subclass plaintiffs knew of the existence of the United States' claims before they sought to join the class, as they concede. *See* Opposition at 7 n.4.[1] And the United States' claims do not relate substantively to the risk corridors issues. Therefore, unlike in the tax refund cases upon which they rely, the Dispute Subclass cannot claim surprise or prejudice at some late stage of litigation.[2] Finally, allowing this amendment now will not trigger lengthy new discovery or duplicate any prior proceedings.

Under the undisputed circumstances here, the United States promptly notified the Court and class counsel of the United States' claims following the Supreme Court's holding on risk corridors in April 2020. Thereafter, the parties discussed procedures for addressing those issues

---

[1] And the amount of interest accruing daily on these unpaid debts by operation of statute is readily ascertainable.

[2] The Dispute Subclass suggests that the motion here is "akin" to seeking leave to amend after trial because "the dispositive issues in this case have been hard fought by the parties for years." Opposition at 8. The Dispute Subclass ignores that the risk corridors issues are unrelated to the issues of the United States' claims, ignores that the Dispute Subclass was not entitled to the risk corridors judgment it seeks prior to April 2020, and ignores that the members of the Dispute Subclass were largely not involved in that lengthy fight as their case was stayed by order of this Court. In any event, the risk corridors litigation is not a source of prejudice for otherwise insolvent insurers having now to confront outstanding debt owed to the United States.

while class counsel continued to seek the addition of class members, a procedure for which the United States granted its consent.  In such circumstances, with plaintiffs still being added to the class, it would be unfair to the United States to deny the motion to amend for untimeliness since it has not caused any undue delay.[3]

### 2.      The Dispute Subclass Suffers No Prejudice

"The party invoking prejudice as a defense carries the burden of its demonstration." *Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51, 62 (2017).  The Dispute Subclass cannot meet its burden here.  As discussed above, amendment here would not "cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery."  *Cooke v. United States*, 79 Fed. Cl. 741, 741-42 (2007).

Indeed the only "prejudice" identified by the Dispute Subclass is that additional interest has accrued on the unpaid claim.  But interest has accrued, as required by statute, because the Dispute Subclass did not pay its known debts.  No aspect of this litigation caused that circumstance.  Such interest would continue to accrue under the statute on any unpaid debt, regardless of when the United States moved to amend its answer.  And operation of the statute authorizing the United States to assess interest on unpaid debt cannot constitute harm or prejudice, but is simply a function of law.

The objection of the Dispute Subclass, then, is not with the United States, but rather with Congress, for authorizing a claim under the ACA, for authorizing the assessment of interest, and

---

[3]  In arguing that the United States has "waived" its offset claims, Opposition at 5-8, the Dispute Subclass implies that a different standard applies to an allegation of waiver, but waiver analysis is precisely the same as for any other motion to amend under RCFC 15(a):  the non-movant must demonstrate undue delay, prejudice, or futility.  As discussed here, the Dispute Subclass has failed to meet its burden and the United States has thus not waived its claims.

for empowering the Court to entertain offset claims by the United States.  Operation of law does not qualify as prejudice.

Moreover, even if these objections could qualify as prejudice, the Dispute Subclass plaintiffs would still not be able to identify any actual harm to the plaintiff entities.  These plaintiffs are all in state liquidation proceedings.  Any benefit from denying the United States the right to offset here would only go to the creditors in those liquidation proceedings.

The Dispute Subclass plaintiffs are effectively seeking to vindicate the rights of non-United States creditors to potentially receive a greater share of the risk corridors payment than they might get if setoff occurs here.  Any diminution of this payment because of offset by the United States here thus cannot qualify as harm or prejudice suffered by the plaintiffs themselves.

### 3.      Amendment Is Not Futile

The Disputed Subclass also implausibly argues that amendment should be denied because it would be futile.  "An amendment is futile if it would not survive an RCFC 12(b)(6) motion to dismiss." *Hanover*, 134 Fed. Cl. at 63.  And to survive an RCFC 12(b)(6) motion, a "counterclaim must include 'enough facts to state a claim to relief that is plausible on its face' sufficient for the counterdefendant to have 'fair notice' of the claim and the 'grounds upon which it rests.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Dispute Subclass's arguments regarding futility center upon the availability of interest.  But the United States' claims are not limited to interest, so the Dispute Subclass's opposition fails to invoke this ground meaningfully.  The amendment sought by the United States will assert as claims debts that are well-known, and, for the most part, not previously contested, even by these plaintiffs.  Moreover, Congress has authorized the United States to recover through counterclaim debts owed to the United States in actions before this court. 28

U.S.C. §§ 1503 and 2508. The Dispute Subclass members are essentially outliers in that

numerous other now defunct insurers have assented to the offsets the United States seeks to

assert here, including interest as calculated by operation of law.  In these circumstances, the

Dispute Subclass has failed to make any effective claim of futility.

## CONCLUSION

For these reasons, and for those stated in the Motion, the Court should grant leave to

amend the Answer.

Dated: August 20, 2020                          Respectfully submitted,

                                                MICHAEL D. GRANSTON
                                                Deputy Assistant Attorney General[4]

                                                RUTH A. HARVEY
                                                Director
                                                Commercial Litigation Branch

                                                KIRK T. MANHARDT
                                                Deputy Director

                                                /s/ Marc S. Sacks
                                                MARC S. SACKS
                                                TERRANCE A. MEBANE
                                                FRANCES M. MCLAUGHLIN
                                                PHILLIP M. SELIGMAN
                                                Commercial Litigation Branch
                                                Civil Division
                                                United States Department of Justice
                                                P.O. Box 875
                                                Ben Franklin Station
                                                Washington D.C. 20044
                                                Tel. (202) 307-1104
                                                Fax (202) 514-9163
                                                marcus.s.sacks@usdoj.gov

                                                ATTORNEYS FOR THE UNITED
                                                STATES

---

[4]  Acting Assistant Attorney General Ethan P. Davis is recused from this matter.