# Exhibit 2

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY,<br><br>    Plaintiff,<br>    on behalf of itself and all others similarly situated,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 1:16-cv-00259-MMS<br>(Judge Sweeney) |

### SUPPLEMENTAL DECLARATION OF STEPHEN A. SWEDLOW

I, Stephen Swedlow, declare:

1. I am the Managing Partner in the Chicago office of Quinn Emanuel Urquhart & Sullivan LLP, appointed class counsel in this matter. Except as set forth below, I make this declaration of my own personal knowledge and, if called to testify, I could and would competently testify hereto under oath.

2. As this Court is aware, the one substantive objection submitted in this case was incorrectly filed with the Court rather than submitted to Class Counsel as instructed by the Court in its Order. For avoidance of doubt, I personally sent the Order itself to every class member representative, including representatives for each objector. I then followed up with another written communication to all class member explicitly explaining that objections were to be sent directly to me by email. A copy of that email communication is submitted herewith as Exhibit 4. In addition, during the period for submitting objections, Class Counsel communicated with every single class member to obtain tax identification information requested by DOJ for submission of the Judgment to Treasury for payment. Suffice it to say, each and every class member was both aware of the objection period, aware of Class Counsel and informed of the method required for

submitting an objection. In addition to the one substantive objection, five other organizations (and two Kaiser entities omitted from the substantive objection) filed one sentence joinders and those joinders are submitted herewith as Exhibit 1.

3.  At the time the supplemental notice issued in *Health Republic*, Class Counsel was in active settlement negotiations with the government to resolve the entire Risk Corridors liability. Both United and Kaiser were aware of this fact at the time. Those settlement discussions contemplated substantially full payment of the Risk Corridors claims and would have required substantially complete class participation to be acceptable to the government. The government contemplated the class action as the mechanism to resolve and pay the entire Risk Corridors liability. In that context, the supplemental notice identified both the extent of class participation and lodestar cross check as factors that could have led to a percentage fee substantially lower than 5%, because, if substantially all class members received substantially full recovery, that would have meant $10 billion in settlement proceeds at a time Class Counsel had spent $2 million in lodestar. At that time based upon those circumstances, a 250 times lodestar multiplier in a cross-check may have resulted in a fee request substantially lower than 5% ($500,000,000). However, another 3 years passed, two-thirds of eligible class members chose to pursue individual claims or wait to file, and Class Counsel continued to pursue and maintain this claim in the face of decreasing odds of ultimate success.

4.  I personally informed both Kaiser and United about the settlement discussions with the government early in the case and personally informed both objectors how an early settlement (substantially all class participation collecting substantially all claimed amounts) could reduce the fee request down from 5%.

5. As the risk corridor litigation progressed, United affirmatively recognized in written communication with Class Counsel that we were guiding the individual cases. For example, a United in-house legal representative sent me an email indicating that "Quinn has worked closely with [counsel for Moda] throughout the life of these respective cases." Similarly, counsel for the other individual Risk Corridors plaintiffs also recognized the significant contribution Class Counsel made to this cause of action and theory. In fact, after the judgment in *Health Republic* issued, counsel for one of the largest contingents of QHPs contacted class counsel to say that Quinn Emanuel's "class action was a bold and unprecedented move." There may have never been any recovery for any QHP issuers if Class Counsel had not filed the first Tucker Act claim seeking to recover unpaid Risk Corridors amounts from the government.

6. I personally communicated with representatives from United and Kaiser informing each of them about Class Counsel's influence and impact on the other copycat individual cases both at the trial level and on appeal. None of that communication was referenced in the Objection filed with this Court. Both objectors are sophisticated large entities with over $80 billion and $240 billion in annual revenues who chose to opt in after I personally informed each of them of the fee expectations and after they each specifically informed me of their efforts at exploring alternative counsel options.

7. When United and Kaiser opted in, both entities informed me that they did so because, *inter alia*, that allowed them to pursue their risk corridor claims without bringing a lawsuit against the federal government, one of their biggest sources of revenue as an administrator of Medicare and Medicaid plans. Their objection, while denigrating and mischaracterizing Class Counsel's role and responsibility in developing and pursuing the theory *it* originally pioneered, cannot credibly criticize the Quinn Emanuel's quality as class counsel.

3

Kaiser, for its part, has hired Quinn Emanuel several times over many years for other complex litigation. And United specifically solicited me and my colleagues here at Quinn Emanuel to pitch United for other unrelated contingency cases after choosing to opt into this case based upon our quality of representation in this case.

8. Throughout the past four plus years both objectors (and many other class members) sought and received regular advice from Class Counsel on sensitive issues specific to their unique entity circumstances and goals throughout this entire litigation. Both objectors were given the opportunity through Class Counsel to participate in the parallel litigations and appeals. Both were directly aware of the significant substantive role Class Counsel played in advising, mooting, substantively editing briefs in other cases, and influencing strategy in all the individual cases and appeals.

9. United specifically stated to me that it considered hiring separate counsel to file an individual claim both on an hourly basis and on contingency, but chose instead to opt into this class. United sought the ability to actively participate in settlement discussions with the government without being a named plaintiff in a filed case against the government because the government is and was United's biggest client. Kaiser also indicated to me that there was an advantage to opting into the class rather than hiring counsel and filing an individual claim copying our complaint because Kaiser could participate in settlement discussions through Class Counsel without having to pay for and be named in a separate lawsuit against the government.

10. In the days before Class Counsel filed the supplemental notice motion with this Court, I personally learned from various other outside counsel and potential class members that other firms were signing up individual clients to pursue this exact claim in individual actions at contingencies of 15% and more, based in part upon the supposition that Class Counsel would

4

seek and receive 33% of any recovery. In fact, the day before it filed the supplemental notice motion, I personally met in person with several lawyers, including Frank O'Loughlin and Cindy Oliver of Lewis Roca, who represented QHP issuers that were deciding whether to opt into the Risk Corridors class. One of those entities, Colorado Health Insurance Cooperative, Inc. ("Colorado") was considering hiring Crowell & Moring, a respected law firm that ultimately did represent many QHP issuers in individual Risk Corridors claims against the government all filed months and years after Class Counsel's complaint. Mr. O'Loughlin requested the meeting with me and my colleagues at Quinn Emanuel to assess our level of skill and to advise his clients whether to opt into the class or pursue these claims individually. Later that same day, I personally confirmed with other potential class members, including Common Ground, that contingency firms including Crowell were in fact proposing terms for individual representations far in excess of 5%. As a consequence and based upon the settlement posture of the case at that time, Class Counsel chose to supplement the notice to self-limit the attorney's fees to 5%, which was objectively below the "market" contingency rate at that time. Even after the supplemental notice, I personally learned Crowell was unwilling to reduce its contingency down to 5% to match Class Counsel.

11.     Joe Holloway, Receivership Supervisor for Colorado, sent Crowell's "best and final" contingency offer to Class Counsel revealing that even after the supplemental notice, the "market" rate for Risk Corridors contingency cases was still above 5% of the recovery. As a consequence and based upon the recommendation of separate counsel, Colorado chose to opt into this class. This was not a unique or isolated circumstance.

12.     For avoidance of doubt, I have no dispute and am in no way disparaging Crowell or any other law firm that represents any of the individual Risk Corridors claimants. Each and

every one of the firms we have had the pleasure of working with was sophisticated, collaborative, responsive and zealously represented the interests of their clients. For example, shortly after the Moda and Land of Lincoln individual cases were filed, we regularly conducted strategy conference calls and meetings with Moda's counsel and Land of Lincoln's counsel to discuss argument and briefing tactics both at the trial and appellate level.

13. On August 14, 2020, I was contacted by Meryl Burgin, General Counsel of CareFirst BlueCross BlueShield, regarding the Fee Petition and potential objections. She informed me that she was meeting with her new CFO to decide whether to object to our fee petition and wanted to know whether we were amenable to negotiating a reduced fee for CareFirst individually. She also indicated that other entities were attempting to organize a "more formal" filing objecting to our Fee Petition. I indicated to her that objections should not be filed but are to be submitted to me as Class Counsel. She inquired whether Class Counsel would be interested in negotiating a reduced fee request to avoid objections. We considered both of these requests to negotiate a lower fee (both individually and in the aggregate) to avoid objections, then informed CareFirst in writing that "the Court must determine whether we have requested 'reasonable' fees for the class." A copy of this written communication and CareFirst's response is submitted herewith as Exhibit 5.

14. On July 30, 2020, I submitted a Declaration to this Court in support of Quinn Emanuel's Fee Petition in the above-captioned case. This Declaration serves as a supplement to that Declaration. I previously declared under penalty of perjury that Quinn Emanuel's lodestar on the *Health Republic* and *Common Ground* cases was over $10 million. Quinn Emanuel has continued to devote substantial resources responding to class member inquiries regarding case status, timing of payment, revenue recognition guidance and countless other concerns and

questions raised by class members awaiting payment. During the month of August 2020 alone, we participated in dozens of class member conference calls and responded to dozens of email inquiries. The lodestar continues to increase and will continue to increase until this case is closed and all class members have received payment. In fact, even the objectors to continue inquire to Class Counsel with concerns and individual issues. The objectors expect and continue to receive timely and informative answers from Class Counsel. Moreover, Class Counsel remains available to respond to inquiries and be available for meetings for every class member including the objectors. We take our commitment to representing every class members' interests seriously. Kaiser, for its part, emailed me yesterday for updated information on when the Judgment will be submitted to Treasury,[1] and United emailed me today with a separate inquiry on another matter. Further, Class Counsel continues to litigate on behalf of the Dispute Subclasses and are committed to pursuing claims for each individual class and subclass member until each and every entity is satisfied with the outcome or all appellate options are exhausted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 3, 2020.

_____
Stephen A. Swedlow

---

[1] Ironically, objector United delayed weeks longer than every other class member in providing its tax identification numbers to Class Counsel which in turn delayed DOJ's electronic submission of the judgment for payment to the Treasury.