# In the United States Court of Federal Claims

No. 16-259C
(Filed: September 30, 2020)

```
*****************************************
HEALTH REPUBLIC INSURANCE        *
COMPANY,                         *
                                 *    Affordable Care Act; RCFC 15(a)(2);
              Plaintiff,         *    Motion for Leave to Amend Answer to
                                 *    Assert Counterclaims for Setoff; Undue
v.                               *    Delay; Prejudice; Futility; 28 U.S.C.
                                 *    §§ 1503, 2508; McCarran-Ferguson Act, 15
THE UNITED STATES,               *    U.S.C. § 1012(b)
                                 *
              Defendant.         *
*****************************************
```

Stephen Swedlow, Chicago, IL, for plaintiff.

Marc S. Sacks, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Chief Judge

This class action suit concerns the risk corridors payments that the government owes to insurers pursuant to the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010).  Presently before the court is defendant's motion for leave to amend its answer to assert counterclaims against members of one of the three certified subclasses.  For the reasons set forth below, the court grants defendant's motion.

**I.  BACKGROUND**

Plaintiff Health Republic Insurance Company ("Health Republic") filed suit in this court in February 2016, alleging, for itself and on behalf of those similarly situated, that the United States did not fully pay the risk corridors payments to which it and other insurers are entitled under the ACA and its implementing regulations.  The court certified a class of insurers who did not receive full payment for the 2014 and 2015 benefit years and then, shortly thereafter, denied defendant's motion to dismiss plaintiff's complaint on jurisdictional grounds.

Less than two months later, the court approved plaintiff's class action notice plan and set deadlines for insurers to opt into the class and for plaintiff to certify the final class membership.  Defendant then filed an answer in which it asserted two affirmative defenses:  failure to state a claim upon which relief could be granted and failure to credit payments made by the government.  Four days after defendant filed its answer, plaintiff filed a motion for summary

judgment in which it contended that defendant was liable for the unpaid risk corridors payments. Defendant responded with a cross-motion for summary judgment in which it denied liability. In June 2017, after the parties fully briefed both motions, plaintiff certified the membership of the class; defendant had been provided a list of insurers opting into the class in the thirty days prior to the certification.

In the meantime, after plaintiff filed suit, other insurers began to file similar complaints challenging the government's failure to make risk corridors payments. Unlike in this case, defendant sought to dismiss those complaints on their merits at the outset. The rulings in some of those cases led to the entry of judgment and the filing of appeals. Thus, one month after plaintiff certified the membership of the class in this case, in the interest of judicial economy, the court stayed proceedings on the cross-motions for summary judgment pending the outcome of the appeals.[1] Ultimately, four risk corridors cases reached the United States Supreme Court ("Supreme Court"). The Supreme Court issued a decision on April 27, 2020, in which it concluded that defendant was liable for the unpaid risk corridors payments. See Me. Cmty. Health Options v. United States, 140 S. Ct. 1308 (2020).

In the first joint status report filed by the parties in this case after the Supreme Court's decision, defendant advised that it would be assessing whether any of the class members owed debts to the United States under other ACA programs ("ACA debts"), whether the parties might be able to resolve any debt-related issues, and whether it would be appropriate to raise defenses or assert counterclaims concerning such debts.

Ultimately, the parties filed a motion in which they requested that the previously certified class be divided into three subclasses: a subclass consisting of the class members who had no further dispute with the government and for which judgment could be entered, a subclass consisting of a single class member who required the approval of a state court before judgment could be entered, and a "Dispute Subclass" consisting of four class members who had a dispute with the government regarding the amount they were owed. With respect to the Dispute Subclass, the parties indicated that the subclass members "dispute the amount due to the entity under Section 1342 of the Affordable Care Act, and/or dispute the government's right to offset debts against a judgment pursuant to Section 1342, and/or dispute the extent of any such offset." They further indicated that defendant intended to seek leave to amend its answer to assert counterclaims to recover the delinquent ACA debts from the Dispute Subclass. The court granted the parties' motion, certified the three subclasses,[2] directed the entry of judgment for the

---

[1] While those proceedings were stayed, the court granted two unopposed motions to add members to the class.

[2] The Dispute Subclass includes Colorado Health Insurance Cooperative, Inc.; Freelancers CO-OP of New Jersey, Inc. ("Freelancers"); Meritus Health Partners; and Meritus Mutual Health Partners. In its response to defendant's motion for leave to amend its answer, the Dispute Subclass indicates that Freelancers reached an agreement in principle with the government to resolve their dispute and that the parties intended to jointly move to place Freelancers in a separate subclass. The parties have not yet done so (although they moved to

subclass without any dispute with the government, and set a briefing schedule for defendant's motion for leave to amend its answer. Defendant filed its motion, which is now fully briefed.

## II. DISCUSSION

### A. Motions for Leave to Amend a Pleading

Under Rule 15(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), "a party may amend its pleading" with the court's leave, and "[t]he court should freely give leave when justice so requires." See also RCFC 7(a) (defining a "pleading" as including "an answer to a complaint"); 3 James Wm. Moore, Moore's Federal Practice § 15.02[1] (3d ed. 2012) ("Amendments may relate to . . . claims and may serve such purposes as to add claims or defenses . . . ."). As the Supreme Court stated in the context of a plaintiff seeking to amend her complaint:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).

### B. Setoffs and Counterclaims

The United States "has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" United States v. Munsey Tr. Co. of Wash., D.C., 332 U.S. 234, 240 (1947) (quoting Gratiot v. United States, 40 U.S. 336, 370 (1841)). Thus, in any suit before the United States Court of Federal Claims ("Court of Federal Claims"), the United States is permitted by statute to assert a setoff "against any plaintiff making claim against the United States," and the court must "hear and determine" any asserted setoff. 28 U.S.C. § 2508; accord id. § 1503 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."); see also id. § 2508 (permitting the United States to assert counterclaims); RCFC 13 (describing the rules for pleading counterclaims); J.G.B. Enters., Inc. v. United States, 497 F.3d 1259, 1261 (Fed. Cir. 2007) ("[S]etoff is a device that facilitates the efficient reconciliation of competing claims between the

---

stay proceedings with respect to Freelancers's claim in Common Ground Healthcare Cooperative v. United States, No. 17-877C).

same parties."). The purpose of the statute is "to permit the government, when sued in the [Court of Federal Claims], to have determined in a single suit all questions which involved mutual obligations between the government and a claimant against it." Cherry Cotton Mills v. United States, 327 U.S. 536, 539 (1946); see also Atl. Contracting Co. v. United States, 35 Ct. Cl. 30, 33-34 (1899) ("When . . . a claimant seeks the jurisdiction of this court for a judicial determination of his rights against the United States, he is subjected to the jurisdiction of the court in the decision and determination of whatever claims the United States may have against him which can be properly pleaded by way of set-off, counterclaim, or claim for damages."). Nevertheless, the government may not unduly delay raising a setoff defense or asserting a counterclaim for setoff. See Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 113 F.3d 357, 365 (2d Cir. 1997) ("A belated motion to file [an amended answer to assert a counterclaim for setoff] may properly be denied where the delay is lengthy or where there is no reasonable explanation for the failure to assert it, or to make the motion, earlier."); St. Louis-S.F. Ry. Co. v. United States, 417 F.2d 1359, 1360 (Ct. Cl. 1969) ("[A]ny undue delay on the part of the government will result in the denial of the right to raise setoff defenses. In other words, we hold that the defense must be raised at the earliest possible stage in the proceedings.").

### C. The Parties' Contentions

Defendant asserts that under RCFC 15(a)(2)'s liberal standard for allowing the amendment of pleadings, the court should grant it leave to amend its answer to assert counterclaims for setoff against the Dispute Subclass. It observes that it has not been dilatory in making its request: members of the class had not been identified at the time it filed its answer, the court stayed proceedings one month after plaintiff certified class membership, it raised the possibility of ACA debt counterclaims immediately after the Supreme Court issued its decision in Maine Community Health Options, and it promptly sought leave to amend its answer once it determined that an informal resolution of its claims was not possible. Moreover, it contends that the court is required to effectuate the government's setoffs pursuant to 28 U.S.C. § 2508.

The Dispute Subclass responds that defendant should not be permitted to amend its answer to assert counterclaims for setoff. It focuses its response on the claims of three of its four members, see supra note 2, and asserts, by way of background, that the government's failure to make risk corridors payments rendered the members of the subclass insolvent and forced them into liquidation proceedings in 2016; that the government filed proof of claims for the delinquent ACA debts in the liquidation proceedings; that defendant did not, formally or informally, raise the issue of setoffs until after the Supreme Court issued its decision in Maine Community Health Options; and that the government is seeking to recover interest on the ACA debts that continues to accrue.[3]

---

[3] In general, the United States Department of Health and Human Services ("HHS") is required to "charge interest, penalties, and administrative costs on delinquent debts owed to the United States," which "continue to accrue until the debt is paid in full or otherwise resolved through compromise, termination, or waiver of the charges." 45 C.F.R. § 30.18(a) (2015). Normally, interest "accrue[s] from the date of delinquency," id. § 30.18(b)(1), the interest is calculated using the rate set by the Secretary of the Treasury under 31 U.S.C. § 3717, id.

In light of these facts, the Dispute Subclass first contends that defendant waived its ability to assert counterclaims through unreasonable delay, asserting that the government knew that identified class members had ACA debts when plaintiff certified class membership in June 2017, but failed to seek the amendment of its answer for approximately three years, even though the only proceedings in the case that were stayed were those related to the cross-motions for summary judgment.  Second, the Dispute Subclass contends, invoking the standard articulated in Foman, that defendant's delay was both excessive (for the reasons previously stated) and highly prejudicial to its members (due to the need to litigate new, potentially complex issues; the continued accrual of interest during the delay; and the fact that defendant's unlawful act led to the members being unable to fulfill their financial obligations under the ACA in the first instance).

Third, the Dispute Subclass, relying on 15 U.S.C. § 1012(b), contends that defendant's proposed amendment is futile because the proper fora for the adjudication of its members' ACA debts are the state courts presiding over the members' liquidations, not the Court of Federal Claims under 28 U.S.C. § 1503 and 28 U.S.C. § 2508.  Finally, the Dispute Subclass asserts that any claim to recover interest on the delinquent ACA debts is futile under (1) the general rule that interest stops accruing when an entity enters insolvency proceedings and (2) the rule that a defendant is entitled to prejudgment interest only on the amount that its claim exceeds the plaintiff's related claim.[4]

In its reply, defendant contends that its motion is timely because the members of the Dispute Subclass were, until the Supreme Court issued its decision in Maine Community Health Options, unable to pay their ACA debts both because they were insolvent and because binding precedent prevented their recovery of risk corridors payments.[5]  Indeed, defendant observes, the existence of a legal bar to the subclass's recovery of risk corridors payments would have rendered any attempt by defendant to seek to amend its answer to assert a setoff futile and a waste of the court's and the parties' resources.  Defendant further contends that the caselaw relied upon by the subclass in support of its assertion of undue delay generally concerns situations in which the government sought to assert a counterclaim late in the proceedings, such as after trial, or at a time when it would have adversely affected plaintiff's case-in-chief.  In contrast, it contends, its ACA debt claims had no bearing on its liability for risk corridors payments, and any attempt to raise those claims in this case would have been, at best, impractical until the Supreme Court decided the risk corridors cases before it.

---

§ 30.18(b)(2), and a six percent annual penalty is charged on debts delinquent for more than ninety days, id. § 30.18(d).

[4] The Dispute Subclass avers that the amounts of its members' claims exceed the amounts of the government's claims.

[5] There was no binding precedent until June 14, 2018, when the United States Court of Appeals for the Federal Circuit ruled that insurers were not entitled to risk corridors payments. Moda Health Plan, Inc. v. United States, 892 F.3d 1311 (Fed. Cir. 2018), rev'd sub nom. Me. Cmty. Health Options, 140 S. Ct. at 1308.

Defendant also argues that the amendment of its answer would not prejudice the Dispute Subclass because the assertion of setoffs for ACA debts of which the subclass members were aware would not cause unfair surprise. In addition, defendant asserts, the continuing accrual of interest is not prejudicial to the subclass because interest is accruing as a result of the delinquency of the ACA debts and not due to this litigation. Defendant also contends that the subclass cannot establish prejudice because a successful (or unsuccessful) setoff claim would affect only the amounts recovered by its members' creditors in the liquidation proceedings.

Finally, defendant argues that amending its answer would not be futile because the ACA debts at issue are known to the Dispute Subclass, have not been previously contested by the subclass members, and can be recovered in this court pursuant to 28 U.S.C. § 1503 and 28 U.S.C. § 2508.

### D. Discussion

The Dispute Subclass's objections to defendant's motion implicate three grounds that might warrant the denial of the motion if properly established: undue delay, prejudice to the subclass, and futility of amendment. The court addresses each ground in turn.

### 1. Undue Delay

First, the Dispute Subclass contends that it is too late for defendant to add counterclaims to its answer, and that defendant's motion can be denied on this ground alone. Motions for leave to amend a pleading should be made as soon as practicable after the reason for the amendment becomes apparent. Hanover Ins. Co. v. United States, 134 Fed. Cl. 51, 60 (2017); Alta Wind I Owner-Lessor C v. United States, 125 Fed. Cl. 8, 11 (2016). "[T]he timeliness of the amendment is not decided in an absolute sense, but in light of the particular facts and history of the case. Specifically, courts consider the stage of the litigation together with the length of time that the moving party was aware of the underlying facts[.]" King v. United States, 119 Fed. Cl. 51, 55 (2014). "[D]elay alone may suffice as a reason for denying a motion for leave to amend." Alfa Laval Separation, Inc. v. United States, 47 Fed. Cl. 305, 314 (2000). However, absent a showing of prejudice, such delay must be "measured in years." Cooke v. United States, 79 Fed. Cl. 741, 742 (2007).

When defendant filed its answer, the only plaintiff in this case was Health Republic, an insurer that did not owe an ACA debt to the government. Consequently, there was no need for defendant to assert a setoff in its answer. Defendant was first apprised that the members of Dispute Subclass had opted into the class in the thirty-day period leading up to the certification of class membership filed in June 2017. There is no dispute that at that time, defendant was aware the that subclass members owed ACA debts to the government but were unable to pay due to their insolvency. Then, in July 2017, the court stayed proceedings on the parties' cross-motions for summary judgment pending the resolution of several appeals in which the central issue was the government's liability to make the risk corridors payments that would be the target of any setoff claim. Thus, until the Supreme Court held in April 2020 that the government was liable to insurers for its failure to make risk corridors payments, it would have been a waste of

the parties' and the court's resources for defendant to seek leave to amend its answer to assert setoffs against class members with ACA debts.[6]  Because defendant promptly apprised the class and the court after the Supreme Court's decision that it intended to seek to recover the ACA debts from the damages to which the class members were entitled, the Dispute Subclass's claim of undue delay must fail.

## 2. Prejudice

The Dispute Subclass next contends that its members would be prejudiced by defendant being permitted to amend its answer.  To establish undue prejudice, the nonmovant must demonstrate that allowing the amendment would result in a "severe disadvantage or inability to present facts or evidence; [the] necessity of conducting extensive research shortly before trial due to the introduction of new evidence or legal theories; or [an] excessive delay that is unduly burdensome."  St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 153 (1994) (emphasis omitted); accord Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 649-50 (2014) ("A court may find undue prejudice where amending a pleading would result in unfair surprise, unreasonably expand the issues or necessitate . . . additional discovery.  Undue prejudice exists when amendment would prevent the non-movant from adequately responding to the new claims." (citation omitted)).  Although "an amendment filed late in the litigation is not automatically prejudicial," an amended pleading is more likely to cause undue prejudice "the further a case has progressed."  King, 119 Fed. Cl. at 55.  However, to the extent that an amendment would create additional work for the nonmoving party, such work must be significant to be deemed prejudicial.  Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1364 (Fed. Cir. 2013); accord St. Paul Fire & Marine, 31 Fed. Cl. at 153 ("Mere annoyance and inconvenience . . . are insufficient bases to warrant a denial of a motion to amend.").

The Dispute Subclass asserts three prejudicial consequences to permitting defendant to amend its answer.  First, it contends that the amendment would result in the litigation of new, potentially difficult issues that would further prolong this case, which has been pending for over four years.  However, as stated above, defendant has established that its delay in seeking to assert setoffs was not unreasonable.  Moreover, given that the members of the Dispute Subclass are aware of the ACA debts they have incurred, as well as the presumption that the subclass members are deemed to be aware of the statutory and regulatory provisions regarding the accrual of interest on those debts and the government's right to seek a setoff in this court, see, e.g., Atkins v. Parker, 472 U.S. 115, 130 (1985), the proposed setoffs are "new" only in the sense that they have not yet been formally asserted by defendant, but otherwise would not unfairly surprise the subclass or unreasonably expand the issue before the court (the amount of damages to which the subclass is entitled).  Finally, litigation of a setoff is not inherently complex, especially when the underlying facts (e.g., the amounts of the ACA debts, the applicable interest rates and

---

[6] Given that the court alerted the parties that it was considering staying further proceedings on the parties' cross-motions for summary judgment on June 15, 2017, three days after plaintiff certified membership in the class, the fact that defendant did not use the time between the certification and the stay to seek leave to amend its answer to assert setoffs is understandable.

compounding frequency) are known or are readily ascertainable, leaving only pure questions of law to be decided.

Second, the Dispute Subclass contends that it has been prejudiced by the continuing accrual of interest—to the extent that interest can be charged—during the three-plus years since defendant learned that the subclass members would be part of the class. However, the subclass overlooks the fact that the accrual of interest on the ACA debts was triggered by its members' failure to pay the money they owed the government, and is not affected by the existence of this litigation.[7] Indeed, the subclass has not identified any legal authority for the proposition that the assertion of a setoff would pause or terminate the accrual of interest.

Third, the Dispute Subclass contends that allowing an amendment of the answer would be particularly prejudicial because the ACA debts that would form the basis of the setoffs exist only as a result of the government's unlawful decision to stop making risk corridors payments. While the Dispute Subclass may be correct that their insolvency is directly traceable to the government's unlawful action, the actuality of the government's responsibility for their inability to pay their ACA debts, which was known by the members of the subclass before this suit was filed, has no bearing on whether permitting defendant to amend its answer would be prejudicial.[8]

In sum, the Dispute Subclass has not met its burden of demonstrating that it would be unduly prejudiced by defendant being permitted to amend its answer to assert setoffs related to its members' ACA debts.

### 3. Futility

The Dispute Subclass's final contention is that defendant's proposed amendment of its answer to assert setoff counterclaims would be futile because the setoffs it seeks are prohibited by law. An amendment to a pleading is futile if it would not survive an RCFC 12(b)(6) motion to dismiss. Meyer Grp., 115 Fed. Cl. at 650. To survive such a motion, a counterclaim must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In other words, a counterclaimant must "plead[] factual content that allows the court to draw the reasonable inference that the [counter]defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Indeed, "[t]he issue is not whether a [counterclaimant] will ultimately prevail but whether the [counter]claimant is entitled to offer evidence to support the

---

[7] Certainly, the members of the Dispute Subclass may have been deprived of the funds they needed to satisfy their ACA debts as a result of the government's breach of its obligation to make risk corridors payments, but the subclass has not supplied any legal authority suggesting that the existence of litigation concerning that breach, in and of itself, extinguishes the debts or the accrual of interest.

[8] To underscore the Dispute Subclass's well-founded grievance, the court observes that to the extent that the insolvency of the subclass members was caused by the government's unlawful action, it is incredibly disturbing that the government may ultimately be made whole while the insolvent insurers cease to exist.

claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982); accord Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007).

The Dispute Subclass contends that allowing defendant to amend its answer would be futile in two respects: (1) defendant is prohibited from seeking a setoff in the Court of Federal Claims because the only fora available for adjudicating the subclass members' financial obligations are the state courts overseeing their liquidations and (2) interest on the delinquent debts of insolvent insurers cannot accrue after the initiation of liquidation proceedings. Because the latter contention does not address the entirety of defendant's proposed setoffs, which also include the principal debt amounts, it cannot provide the basis for finding the setoffs futile in their entirety, and the court therefore will not address it.

With respect to the contention regarding the proper forum to adjudicate defendant's claims to recover delinquent ACA debts, the Dispute Subclass argues that setoffs asserted pursuant to 28 U.S.C. § 1503 and 28 U.S.C. § 2508 against insolvent insurers are barred by section 2(b) of the McCarran-Ferguson Act, which provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b). After correctly observing that the federal setoff statutes invoked by defendant do not relate to the business of insurance, the Dispute Subclass explains that if defendant prevailed on its counterclaims, the amount of damages paid to the subclass members pursuant to this court's judgment would be reduced by the amount of the setoffs, which, in turn, would leave less money available for the payment of the members' other creditors in the liquidation proceedings. In essence, the United States would be paid first, notwithstanding the pertinent state statutes that give priority to other creditors (such as policyholders). Defendant did not respond to this argument in its reply.[9]

Although facially appealing, the Dispute Subclass's contention fails for one simple reason: the right to assert a setoff arises under common law, not statute. Indeed, as recognized by the Supreme Court since at least 1841, the United States has the same common law right to setoff as a private party. See Munsey Tr. Co., 332 U.S. at 240; Gratiot, 40 U.S. at 370; accord J.G.B. Enters., 497 F.3d at 1261 ("It is undisputed that the government has the right to offset debts owed to its contractor with a debt owed to it by the same contractor absent explicit contractual, statutory, or regulatory language stating otherwise."); Applied Cos. v. United States, 144 F.3d 1470, 1476 (Fed. Cir. 1998) (remarking that "it is well settled that the government retains its setoff right unless there is some explicit statutory or contractual provision that bars its exercise"). The statutes invoked by defendant and upon which the subclass's contention hinges merely provide that any claim for setoff raised by defendant against a plaintiff bringing suit in this court can and must be heard and decided by this court. See 28 U.S.C. §§ 1503 (providing the court with jurisdiction to entertain setoff claims), 2508 (providing that the court must "hear

---

[9] Although defendant was not required to file a reply and, thus, not required to address the Dispute Subclass's arguments in response to its motion, its failure to address the subclass's preemption argument—to which the subclass devoted five pages of its response—is perplexing.

and determine" a setoff asserted by the government). Thus, the government's right to assert a setoff is not an "Act of Congress" subject to the preemption rule set forth in 15 U.S.C. § 1012(b).[10]

The Dispute Subclass's futility argument is predicated on its contention that 15 U.S.C. § 1012(b) bars defendant's proposed setoffs. Because that contention is erroneous, there is no basis for concluding, on the present record, that a counterclaim for setoff would not survive an RCFC 12(b)(6) motion to dismiss. In short, the court cannot conclude that amending the answer to assert setoffs would be futile.

### III. CONCLUSION

As explained in more detail above, because defendant did not unduly delay its request to amend its answer, and because the proposed amendment would neither prejudice the Dispute Subclass nor be futile, the court **GRANTS** defendant's motion for leave to amend its answer to assert counterclaims for setoff to recover delinquent ACA debts from the Dispute Subclass. Defendant shall file its amended answer **no later than Friday, October 30, 2020**. The Dispute Subclass shall file its response to the counterclaims **within the time allowed by RCFC 12(a)(1)(B).**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge

---

[10] To the extent that defendant's proposed setoffs are deemed to derive from the provisions of the ACA that require certain insurers to make payments to the government, then 15 U.S.C. § 1012(b) is inapplicable because the ACA relates to the business of insurance. See, e.g., UnitedHealthcare of N.Y., Inc. v. Lacewell, 967 F.3d 82, 91 n.4 (2d Cir. 2020). The Dispute Subclass does not argue that the pertinent state priority statutes preempt defendant's proposed setoffs in this court absent the restriction set forth in 15 U.S.C. § 1012(b). The court therefore does not address this issue. It observes, however, that a similar issue is being litigated in another case. See Conway v. United States, 145 Fed. Cl. 514, 522, 526, 529 (2019) (concluding that an HHS regulation permitting the government's offset of ACA program obligations did not preempt the state statute governing the priority of claims in liquidation proceedings, that HHS's offsets violated the state priority scheme, and that the state priority scheme constituted the federal rule of decision), appeal docketed, No. 20-1292 (Fed. Cir. Dec. 19, 2019).