# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY, | |
| Plaintiff, on behalf of itself and all others similarly situated, | Case No. 16-259C |
| | Judge Davis |
| vs. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**CLASS COUNSEL'S MOTION FOR APPROVAL OF ATTORNEY'S FEE REQUEST**
**<u>FOR THE ARCHES SUBCLASS</u>**

Pursuant to RCFC 23(e) and 54(d)(2), Quinn Emanuel respectfully submits this fee request for its successful representation of the Arches Subclass in this class action. For the reasons set forth below, Quinn Emanuel seeks 5% of the Arches Subclass judgment as its attorneys' fees, an amount to which the Arches Subclass member does not object and which Quinn Emanuel believes is justified by the law and circumstances of this case. However, if the Court awards a different percentage of the common funds in the Non-Dispute Subclass portion of the *Health Republic* class action as attorneys' fees and costs (*see Health Republic* Dkt. 84, 93), then Quinn Emanuel requests in the alternative that the Court award a similar percentage from the Arches Subclass judgment, so there is parity in fee awards between the Non-Dispute and Arches Subclasses.

In order to avoid burdening the Court with overly repetitive briefing, Quinn Emanuel refers throughout this application to its pending fee application for the broader Non-Dispute Subclasses, as well as the Freelancers Subclass in the *Health Republic* and *Common Ground* matters (*see Health Republic* Dkt. 84, 93, 130; *Common Ground* Dkt. 107, 145).

## I.   BACKGROUND

In February 2016, Quinn Emanuel became the first firm in the nation to file a lawsuit on behalf of a Qualified Health Plan issuer against the federal government alleging that the government improperly failed to make risk corridor payments in violation of Section 1342 of the Affordable Care Act. *Health Republic* Dkt. 84 at 2-4. Four years later, following round after round of contested litigation and a loss at the Federal Circuit, eight justices of the Supreme Court adopted the exact legal theory Quinn Emanuel set forth in the initial *Health Republic* complaint and which it advocated at every step, including in the parallel follow-on cases that eventually made their way to the Supreme Court. *Id.* at 4-8. The result of these efforts, initiated by Quinn Emanuel as counsel for Health Republic and Common Ground and all of the opt-in class members in those cases, was

that all QHP issuers were able to collect three years' worth of unpaid risk corridors amounts they had previously been forced to write off as a total loss—approximately $12 billion. Nearly $4 billion of that recovery has already been paid pursuant to this Court's orders to the Non-Dispute Subclass members in these class actions. *Health Republic* Dkt. 82; *Common Ground* Dkt. 105.

Since obtaining those extraordinary results, Quinn Emanuel has continuously and zealously worked for the remaining Dispute Subclass members, including the Arches Subclass member, Arches Mutual Insurance Company ("Arches"). In July 2020, Quinn Emanuel obtained the government's agreement to segregate the few class members for which the government asserted individualized defenses into the "Disputes Subclass." Arches was one of those entities. The government asserted that Arches owed it substantial amounts that acted as an offset to Arches' risk corridors damages. Accordingly, from July last year through the recent June 17, 2021 filing resolving Freelancers-related issues entirely (*Health Republic* Dkt. 128), Quinn Emanuel negotiated with the government and coordinated with Arches' liquidation counsel while updating the Court with multiple status reports (*see Health Republic* Dkt. 91, 94, 99, 107, 114, 118, and 121) and eventually obtained a settlement on Arches' behalf that netted the company nearly $45 million on its risk corridors claim.

Before filing this fee application, Quinn Emanuel provided a copy to Arches for review. Arches indicated it does not object to the attorneys' fees Quinn Emanuel seeks, provided Arches is kept in the same position vis-á-vis attorneys' fees as the Non-Dispute Subclass and Freelancers Subclass members in the *Health Republic* and *Common Ground* cases.

**II.    THE FACTORS THIS COURT APPLIES TO ASSESS FEE APPLICATIONS ALL STRONGLY SUPPORT A 5% AWARD**

When assessing a fee request from a class action settlement, this Court is charged with ensuring that any attorneys' fee award is "fair, reasonable and adequate." RCFC 23(e)(2). To

"determin[e] the appropriate percentage for recovery of fees from a common fund," judges of this court evaluate a proposed percentage fee award based on seven factors: "(1) the quality of counsel; (2) the complexity and duration of litigation; (3) the risk of non-recovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class member's objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award." *Lambert v. United States*, 124 Fed. Cl. 675, 683 (2015); *see also Kane Cty. v. United States*, 145 Fed. Cl 15, 18 (2019); *Raulerson v. United States*, 108 Fed. Cl. 675, 679–80 (2013); *Quimby v. United States*, 107 Fed. Cl. 126, 133 (2012); *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005) (citing Manual for Complex Litig. (4th ed.) § 14.121 (2004)).

These factors, taken individually and in the aggregate, strongly support Quinn Emanuel's request for an award of 5% of the Arches Subclass judgment (*Health Republic* Dkt. 131), just as they support a 5% fee award from the common fund in the Non-Dispute Subclass and Freelancers Subclass portion of these cases. This amount is already being held by the claims administrator while 95% of the judgment amounts have already been paid to Non-Dispute Subclass members, and 95% of the Freelancers Subclass's portion will be paid shortly.

A. **Quality of Class Counsel is Exceptional**

Quinn Emanuel can proudly claim it is one of the world's most preeminent business litigation law firms, and that the team representing the subclasses in these actions is highly experienced in both class actions and healthcare litigation. *Health Republic* Dkt. 84 at 10-12. But, particularly in cases like this, class counsel's quality is "best measured by results." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018).

After obtaining a 100% judgment on risk corridors claims for every class member in these

actions—a result that is extraordinarily rare in high stakes disputes such as these, *see Health Republic* Dkt. 93 at 15 nn.14 & 15—Quinn Emanuel then continued to zealously represent the Arches Subclass just as it promised it would for every class member that opted in. Through those efforts, Quinn Emanuel obtained a stipulated judgment for Arches that reduced its damages in this class action only by the amount the government claimed as an offset to Arches' risk corridor amounts due to its unique circumstances. Arches has now paid back all amounts the government claims in this action, and will obtain a net judgment in the amount of nearly $45 million. Courts assessing results far lower than these amounts routinely find (as Quinn Emanuel respectfully believes the Court should here) that class counsel provided exceptional representation. *Id.*; *see also Health Republic* Dkt. 84 at 9-10.

### B. The Risk Corridors Cases Were Complex, Lengthy, and Vigorously Litigated

As explained at greater length in the pending Non-Dispute Subclass fee applications, Quinn Emanuel was the first firm in the nation to identify and file an action based on the key legal theories that the Supreme Court later endorsed to force the government to pay QHP issuers, like Arches, 100% of their owed risk corridor amounts. *Health Republic* Dkt. 84 at 2-4, 14-15. The road to that result was long and arduous, requiring Quinn Emanuel to not only actively litigate these class actions, but also substantially assist other firms bringing parallel individual actions that proceeded faster because they were not class actions requiring class certification, notice to potential class members, and then an opt-in period. *Id.* at 14-17. Throughout, Quinn Emanuel did so willingly and with great success, as demonstrated by the Supreme Court's endorsement of the legal theories that Quinn Emanuel originated and other firms copied on behalf of their individual clients.

The Arches Subclass's individual issues added to that complexity because the government's offset arguments required a nuanced examination of Arches' particular circumstances, as well as continued negotiation with the government over the scope of a proper

5

resolution. Arches' individual issues also extended the length of the case as to it for the better part of another year.

### C. There Was a Substantial Risk of Nonrecovery

The Court of Federal Claims has found that the risk of nonrecovery supports a higher attorneys' fee award where there was an absence of controlling precedent when the case was filed; where other, similar suits have been unsuccessful; and where the government disputed the plaintiff's key positions. *Health Republic* Dkt. 84 at 17-18 (collecting cases). All of these circumstances exist here and apply with particular force. At the time Quinn Emanuel filed this first-of-its-kind case in the nation, there was no binding case law interpreting the risk corridors provisions of the Affordable Care Act and industry participants were highly skeptical that QHP issuers had any chance of success. *Id.* at 18-20. The majority of the Court of Federal Claims judges who assessed risk corridor cases (other than this Court's predecessor) then ruled for the government, as did the Federal Circuit before the Supreme Court granted *certiorari* and reversed. *Id.* In short, the risk of nonrecovery in this case was enormous, which justifies a substantial attorneys' fee award. *Id.*

### D. Contingency Fees Far in Excess of 5% Are Regularly Negotiated in Similar Cases

The contingency fee that parties have negotiated or would negotiate in a free market is a key factor in assessing a fee request from class counsel because using rates determined at the outset of a case avoids the risk that "hindsight alters the perception of the suit's riskiness." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718–19 (7th Cir. 2001). "Only *ex ante* can bargaining occur in the shadow of the litigation's uncertainty," *id.* at 719, which, as noted above, was immense.

In the pending Non-Dispute Subclass fee petition papers, Quinn Emanuel explained how it learned during the class opt-in period that other contingency lawyers were telling potential class

members that Quinn Emanuel would seek up to 33% of any judgment or settlement. *Health Republic* Dkt. 84 at 20-22; *Health Republic* Dkt. 93 at 8-9, 19-20. Knowing that was incorrect, Quinn Emanuel issued a supplemental class notice in *Health Republic* indicating that it would seek attorneys' fees of no more than 5% of the recovery, and repeated that same commitment in each subsequent class notice in both the *Health Republic* and *Common Ground* class actions. This percentage was a fraction of the amounts that other contingency lawyers demanded (and secured) from individual plaintiff QHP issuers, including contingency fees of 15% or more. *Health Republic* Dkt. 93 at 19-20. That unavoidable fact remains unrebutted even in the face of objections from some members of the Non-Dispute Subclass.

Ultimately, 153 QHP issuers joined the *Health Republic* class and 130 QHP issuers joined the *Common Ground* class. Arches joined the *Health Republic* class only (because it did not have post-2014 benefit year claims that would have allowed it to join the *Common Ground* class), and it along with all other class members did so knowing about Quinn Emanuel's potential 5% fee request. In evaluating their litigation options and deciding to opt-in, QHP issuers "presumably concluded that a better deal could not be reached with their own counsel." *Quimby*, 107 Fed. Cl. at 134 (approving a 30% contingency fee in part because class members' decisions to opt-in suggested that they could not find more favorable terms on the market). This factor thus weighs heavily in favor of approving class counsel's fee request.

### E.  Arches Was on Notice of and Does Not Object to Counsel's Fee Request

Arches does not object to Quinn Emanuel's fee request, although, as part of the evenhanded approach Quinn Emanuel has taken toward all class members in these actions, it seeks from Arches only what the Court awards for the Non-Dispute and Freelancers Subclasses as well. Accordingly, if the Court awards Quinn Emanuel an amount different than the requested 5% of the Non-Dispute and Freelancers Subclass judgments, then Quinn Emanuel requests that the same percentage be

applied to the Arches Subclass judgment.

### F.     The Percentage Sought is Far Less Than in Comparable Cases

When evaluating the reasonableness of a proposed contingency fee award, this Court considers the percentage awarded in other class actions. *Raulerson*, 108 Fed. Cl. at 680. If approved, Quinn Emanuel's proposed 5% contingency fee would be among the lowest rates awarded in any case of any size. Courts routinely approve contingency fees of 30-40% because such fee structures are the norm for common fund cases such as this. *Health Republic* Dkt. 84 at 25-27. This is true even of cases (such as this one) that involve substantial class recoveries; courts routinely award counsel one-third of the relief obtained as fees, even in high-recovery cases. *Id.*

As set forth in the Non-Dispute Subclass fee petition papers (*see Health Republic* Dkt. 93 at 8), when Quinn Emanuel obtained the Court's approval to inform potential class members that it would seek up to 5% of any award in these cases, it was in active settlement negotiations with the government to resolve the entire risk corridors liability. Those settlement discussions contemplated substantially full payment of the risk corridors claims and would have required substantially complete class participation to be acceptable to the government. The government contemplated the class action as the mechanism to resolve and pay the entire risk corridors liability. In that context, the supplemental notice identified both the extent of class participation and a lodestar cross check as factors that could have led to a percentage fee substantially lower than 5%, because, if substantially all class members received substantially full recovery, that would have meant $10 billion in settlement proceeds at a time Quinn Emanuel had spent just $2 million in lodestar. In that circumstance, a 250 times lodestar multiplier may have resulted in a fee request lower than 5% ($500,000,000). However, another several years passed, two-thirds of eligible class members chose to largely copy Quinn Emanuel's complaint and liability theory to pursue individual claims (or wait to file), and Quinn Emanuel continued to pursue and maintain this claim

in the face of decreasing odds of ultimate success. In the end, Quinn Emanuel prevailed for the class overall, thus justifying a higher award under the factors this and other Courts regularly employ to award much higher fees than 5%. *Health Republic* Dkt. 84 at 25-27.

### G. Size of Total Recovery for The Class

When evaluating the reasonableness of proposed fees, this Court considers the size of the award relative to the total recovery for the class. *Raulerson v. United States*, 108 Fed. Cl. 675, 680 (Fed. Cl. 2013). As noted above, this is not a class action where Arches (or the Non-Dispute or Freelancers Subclass members) will receive little while counsel is enriched. Here, Arches will receive 100% of its damages, net of the offset amounts the government claimed and fees the Court awards Quinn Emanuel off the remainder of the judgment. Where the class recovery is so high (particularly on a per-class member basis), courts regularly approve fee awards that are small in comparison. *Health Republic* Dkt. 84 at 27-28 (collecting cases).

### H. A "Lodestar Cross-Check" Confirms Quinn Emanuel's Requested Fees Are Reasonable

The notice class members received before opting in stated that Quinn Emanuel would seek up to 5% of any judgment in fees "subject to, among other things, the amount at issue in the case and what is called a 'lodestar cross-check.'" *Health Republic* Dkt. 50-1; *Common Ground* Dkt. 24-1. Such a cross-check, although not mandatory, confirms that Quinn Emanuel's fee request here is reasonable.

In the pending Non-Dispute Subclass fee petition papers, Quinn Emanuel discusses at length why such a cross-check supports a 5% fee award here. *Health Republic* Dkt. 84 at 28-32; *Health Republic* Dkt. 93 at 7-20. Since those submissions, Quinn Emanuel has incurred substantial additional expense on the Arches Subclass's behalf, which the firm can substantiate if the Court desires. Based on previously-submitted materials, however, the analysis remains largely the same.

If the Court views Arches in the singular, then Quinn Emanuel is requesting only a fraction of its lodestar as attorneys' fees. If viewed along with the Non-Dispute Subclass and Freelancers Subclass, then the value the Arches Subclass fee award would add is incremental and the same arguments that apply across the broader Subclasses apply with equal force to Arches. Either way, Quinn Emanuel continues to believe that the non-mandatory cross-check fully supports the incredible results it obtained for all of the Arches, Non-Dispute, and Freelancers Subclasses. *Id.*

### III.  CONCLUSION

For the foregoing reasons, Quinn Emanuel respectfully requests that the Court award it 5% in attorneys' fees from the Arches Subclass judgment.

Dated: July 20, 2021                                  Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Stephen Swedlow*
Stephen Swedlow
stephenswedlow@quinnemanuel.com
191 North Wacker Drive
Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

J.D. Horton
jdhorton@quinnemanuel.com
Adam B. Wolfson
adamwolfson@quinnemanuel.com
865 S. Figueroa Street
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for the Arches Subclass*