IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____  )
                                              )
HEALTH REPUBLIC INSURANCE                     )
COMPANY,                                       )
                                              )
            Plaintiff,                        )
                                              )
      v.                                       )     No. 16-cv-259C
                                              )
THE UNITED STATES,                            )
                                              )
            Defendant.                        )
_____  )
                                              )
COMMON GROUND HEALTHCARE                      )
COOPERATIVE,                                  )
                                              )
            Plaintiff,                        )
                                              )
      v.                                       )     No. 17-cv-877C
                                              )
THE UNITED STATES,                            )
                                              )     Filed:  September 16, 2021
            Defendant.                        )
_____  )

## OPINION AND ORDER

Before the Court are Class Counsel Quinn Emanuel Urquhart & Sullivan LLP's Motions for Approval of Attorney's Fee Request and Class Representative Incentive Award related to their representation of certain classes certified in the above-captioned cases. *See Health Republic* ECF No. 84; *Common Ground* ECF No. 107.[1]  Class Counsel seek approval of an attorney's fee award of five percent, approximately $185 million of the combined $3.7 billion judgment recovered on the Non-Dispute Subclasses' risk corridors claims.  They also seek approval of $100,000 incentive awards to both  Health  Republic  Insurance  Co. ("Health Republic")  and  Common  Ground

---

[1] Because the briefing pertaining to the opposed fee request motions in both cases is substantively the same, for ease of reference this opinion and order will cite only to the briefing in *Health Republic*.

Healthcare Cooperative ("Common Ground") (collectively, "named Plaintiffs") as representatives of their respective classes, to be paid from Class Counsel's fee. The Court is tasked with determining the reasonableness of these awards. For the reasons that follow, the Court approves in part and denies in part Class Counsel's requests.

## I.  BACKGROUND

On February 24, 2016, Class Counsel filed a complaint on behalf of Health Republic as the first challenge to the Government's failure to make risk corridors payments to Qualified Health Plan ("QHP") issuers pursuant to Section 1342 of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148 (2010), 124 Stat. 119, and the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152 (2010), 124 Stat. 1029 (collectively, the "ACA"). *See* Pl.'s Class Action Compl., *Health Republic* ECF No. 1. The risk corridors program was designed to mitigate risk for QHP issuers participating in the new insurance market created by the ACA. It did so by providing QHP issuers compensation from the Government for any "losses exceed[ing] a certain defined amount due to high utilization and high medical costs," while on the other hand requiring QHP issuers to pay the Government "a percentage of any profits [QHP issuers] made over similarly-defined amounts." *Id.* ¶ 5. In the Complaint, Class Counsel argued on behalf of Health Republic and a putative class of QHP issuers that Section 1342 was a money-mandating statutory provision that required the Government to "pay any QHP certain amounts exceeding the target costs they incurred in [benefit years] 2014 and 2015," *id.* ¶ 60, notwithstanding Congress's decision not to appropriate sufficient funds to pay such amounts, *id.* ¶ 10. *Health Republic* was the first lawsuit filed challenging the Government's withholding of risk corridors payments and the first of its kind to raise a money-mandating theory of recovery under the Tucker Act. *Health Republic* ECF No. 84 at 9 (citing Decl. of Stephen A. Swedlow ¶ 8, ECF No. 84-1).

By August 2016, numerous other firms had brought similar suits in this court on behalf of individual QHP issuers, each arguing, among other things, that Section 1342 mandated the Government to make risk corridors payments. *See, e.g.*, *First Priority Life Ins. Co. v. United States*, No. 16-cv-587 (Fed. Cl.) (filed May 17, 2016); *Moda Health Plan, Inc. v. United States*, No. 16-cv-649 (Fed. Cl.) (filed June 1, 2016); *Blue Cross and Blue Shield of N.C. v. United States*, No. 16-cv-651 (Fed. Cl.) (filed June 2, 2016); *Me. Cmty. Health Options v. United States*, No. 16-cv-967 (Fed. Cl.) (filed Aug. 9, 2016); *see also Health Republic* ECF No. 84-1 ¶ 11.

The Government moved to dismiss Health Republic's Complaint, arguing that the Court of Federal Claims lacked subject matter jurisdiction under the Tucker Act because Section 1342 did not constitute a money-mandating statute providing a substantive right to payment. *See* Def.'s Mot. to Dismiss at 21–26, *Health Republic* ECF No. 8. The court rejected that argument and denied the Motion to Dismiss as to the Section 1342 claim. *See Health Republic Ins. Co. v. United States*, 129 Fed. Cl. 757 (2017).

At the same time the court was considering the Government's Motion to Dismiss, Health Republic was moving forward in the class certification phase. The Government did not oppose certification; consequently, on January 3, 2017, the court certified the proposed class in *Health Republic* and appointed Quinn Emanuel lead class counsel. Order at 1–2, *Health Republic* ECF No. 30. On February 24, 2017, exactly one year after it initiated suit, the court granted Class Counsel's proposed class notice plan. *See* Order, *Health Republic* ECF No. 42. Consistent with the opt-in nature of class actions in the Court of Federal Claims, Class Counsel's notice explicitly informed potential class members that they must affirmatively submit a Class Action Opt-In Notice Form to join the class, otherwise they would receive no benefit from the lawsuit. Updated Proposed Class Notice at 2, 5, *Health Republic* ECF No. 41-1. The notice advised potential class

members that, if successful, Class Counsel would seek permission to be compensated for their representation, which would be deducted from the amount of any recovery by the class. *Id.* at 7. It did not identify a particular amount or percentage of any proposed fee award. *See id.*; *see also Health Republic* ECF No. 84-1 ¶ 13.

According to Class Counsel, it later became known that potential class members were under the erroneous assumption that Class Counsel would be seeking a fee percentage in the ballpark of 30 percent of any judgment. Mot. to Suppl. Class Notice at 1, *Health Republic* ECF No. 50; *Health Republic* ECF No. 84-1 ¶ 13. To assuage those concerns, and with the court's approval, Class Counsel distributed a supplement to the class notice representing to potential class members that they would seek a fee of no more than five percent of the class's recovery. Proposed Suppl. Class Notice at 6, *Health Republic* ECF No. 50-1; Order, *Health Republic* ECF No. 51; *Health Republic* ECF No. 84-1 ¶ 15. The supplemental notice advised that the maximum award may be substantially reduced depending on the level of class participation and, in any event, would "be determined by the Court subject to, among other things, the amount at issue in the case and . . . a 'lodestar cross-check[.]'" *Health Republic* ECF No. 50-1 at 6. In sum, 153 QHP issuers opted into the *Health Republic* class. *Health Republic* ECF No. 84-1 ¶ 17.

In March 2017, Health Republic moved for summary judgment. *See* Pl.'s Mot. for Summ. J., *Health Republic* ECF No. 47. On June 27, 2017, before the court decided that Motion, Class Counsel filed a separate class action complaint in *Common Ground* for benefit year 2016. *See* Pl.'s Class Action Compl., *Common Ground* ECF No. 1. As in *Health Republic*, the court certified the proposed risk corridors class in *Common Ground* and appointed Quinn Emanuel as class counsel. Order at 2, 3, *Common Ground* ECF No. 17. It likewise approved Class Counsel's proposed class notice plan. Order, *Common Ground* ECF No. 25. The *Common Ground* class

notice also advised potential class members that they must affirmatively opt into the class to benefit from the lawsuit and that, if successful, Class Counsel would seek approval of at most a five percent attorney's fee award to be deducted from any class recovery. Am. Proposed Class Notice at 1, 4–5, 6, *Common Ground* ECF No. 24-1. The notice similarly stated that Class Counsel's fee request might be reduced depending on class participation and that the fee ultimately would be determined by the court subject to a lodestar cross-check. *Id.* at 6. In response, 130 QHP issuers opted into the *Common Ground* class. *Health Republic* ECF No. 84-1 ¶ 17.

Meanwhile, other risk corridors cases moved through the litigation process, with *Moda Health* being the first to reach and be granted summary judgment. *See Moda Health Plan, Inc. v. United States*, 130 Fed. Cl. 436 (2017). The favorable decision in *Moda* was in part a credit to Class Counsel's work in *Health Republic*, as it relied extensively on the court's decision denying the Government's request to dismiss Health Republic's Section 1342 claim. *See generally id.* (citing with approval *Health Republic Ins. Co.*, 129 Fed. Cl. at 770–72). The Government appealed the decision in *Moda Health*, and pending resolution of that and other related appeals, the court stayed further proceedings in the instant cases. Order, *Health Republic* ECF No. 62; Order, *Common Ground* ECF No. 9. The stays lasted approximately three years.

With *Health Republic* and *Common Ground* stayed, Class Counsel turned to filing amicus briefs on behalf of Health Republic, Common Ground, and additional parties in the United States Court of Appeals for the Federal Circuit. *Health Republic* ECF No. 84 at 12–13 (citing *Health Republic* ECF No. 84-1 ¶ 22). The Federal Circuit subsequently ruled in favor of the Government in each risk corridors appeal. *See Me. Cmty. Health Options v. United States*, 729 F. App'x 939 (Fed. Cir. 2018); *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311 (Fed. Cir. 2018); *Land of Lincoln Mut. Health Ins. Co. v. United States*, 892 F.3d 1184 (Fed. Cir. 2018). A divided Federal

Circuit later denied the motion for rehearing *en banc* in *Moda Health*, with Judge Wallach and Judge Newman dissenting. *Moda Health Plan, Inc. v. United States*, 908 F.3d 738 (Fed. Cir. 2018). In his dissent, Judge Wallach cited several times Class Counsel's amicus submissions on behalf of Professor Kate Bundorf and other healthcare economists, as well as Health Republic and Common Ground. *See id.* at 747–48 (Wallach, J., dissenting).

In the subsequent Supreme Court proceedings, Class Counsel continued to work to assist the QHP issuers in the risk corridors appeals for the obvious reason that success on virtually identical claims (even in separate suits) would benefit the classes here. They again submitted amicus briefs (albeit on behalf of a group of healthcare economists, not Health Republic or Common Ground) at both the writ of certiorari and merits stages. *See Health Republic* ECF No. 84-1 ¶ 22; Opp'n and Obj. to Mot. for Approval of Atty's Fee Req. at 12–13, *Health Republic* ECF No. 89. Class Counsel also "provided comments, strategic suggestions, and assistance with argument to the firms and attorneys handling the Supreme Court arguments." *Health Republic* ECF No. 84 at 13 (citing *Health Republic* ECF No. 84-1 ¶ 22). In an 8-1 decision, the Supreme Court held that Section 1342 was a money-mandating statute that obligated the Government to make risk corridors payments to QHP issuers, and such obligation was not impliedly repealed by subsequent appropriation riders. *See Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323, 1327 (2020). The decision essentially vindicated the argument Class Counsel incepted in *Health Republic*. *See Health Republic* ECF No. 1 ¶¶ 60–63; *see also Health Republic*, 129 Fed. Cl. at 770. As a result of the Supreme Court's decision, the industry-wide recovery for QHP issuers amounts to roughly $12 billion. *Health Republic* ECF No. 84 at 7. The class members represented by Class Counsel here received a large chunk of that amount: $1.9 billion in *Health Republic* and $1.8 billion in *Common Ground*. *See* Rule 54(b) J. at 1, *Health Republic* ECF No.

83; *see* Order at 1, *Common Ground* ECF No. 111.  This represents a 100 percent recovery of the classes' unpaid risk corridors payments.  *Health Republic* ECF No. 84-1 ¶ 19.

Seeking compensation, Class Counsel filed their Motion for Approval of Attorney's Fee Request and Class Representative Incentive Award on July 30, 2020.  Consistent with the ceiling set in the class notices, Class Counsel seek five percent of the common fund, or approximately $185 million of the combined $3.7 billion awarded in the instant cases.  *Health Republic* ECF No. 84 at 7–8.  They argue that such percentage is reasonable primarily based on the seven-factor test explicated in *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005), and utilized by several judges of the Court of Federal Claims applying the percentage-of-the-fund fee methodology.  *Health Republic* ECF No. 84 at 15 (citing *Kane Cty. Utah v. United States*, 145 Fed. Cl. 15, 18 (2019), *Lambert v. United States*, 124 Fed. Cl. 675, 683 (2015), *Quimby v. United States*, 107 Fed. Cl. 126, 133 (2012)).  Class Counsel argue that each of the *Moore* factors supports the conclusion that they are entitled to the full five percent fee award requested.  *Id.*  Additionally, Class Counsel ask that the Court award, from their fees, $100,000 incentive awards to each of the named Plaintiffs in these cases.  *Id.* at 38–39.

Thirty-four class members lodged a consolidated objection to Class Counsel's request.  Although Objectors state that Class Counsel "should be compensated handsomely" for their work on the two class actions, they have a dramatically different understanding of what that means.  *Health Republic* ECF No. 89 at 8.  Objectors argue that Class Counsel are entitled to approximately $8.8 million, or about .22 percent of the common fund.  *Id.* at 9; *see* Reply to Opp'n and Obj. to Mot. for Approval of Atty's Fee Req. at 19, *Health Republic* ECF No. 93.  Contrary to the percentage-of-the-fund approach advocated by Class Counsel, Objectors ask the Court to apply either the lodestar method to determine Class Counsel's fees or to use the lodestar as a cross-check

against the requested fee percentage. *Health Republic* ECF No. 89 at 14. Under that methodology, they ask the Court to reduce the number of hours used to calculate Class Counsel's lodestar by 35 percent for failure to provide detailed billing records and to lower Class Counsel's blended hourly billable rate by 35–40 percent to align with the *Laffey* Matrix. *Id.* at 15–18. Additionally, Objectors argue that a risk multiplier of no more than two—instead of the 18–19 multiplier produced by Class Counsel's requested fee—is appropriate. *Id.* at 20, 24. Objectors state no objection to Class Counsel's request for incentive awards.

## II. DISCUSSION

### A. The Court Will Apply the Percentage-of-the-Fund Method to Determine Reasonable Attorney's Fees in These Common Fund Cases.

Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC") permits this Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in a certified class action. RCFC 23(h); *see Moore*, 63 Fed. Cl. at 786 (attorney's fee awards are "committed to the sound discretion of the court"). In common fund cases, such as this, where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980), "a litigant or a lawyer . . . is entitled to reasonable attorney fees from the fund as a whole," *Haggart v. Woodley*, 809 F.3d 1336, 1352 (Fed. Cir. 2016) (internal quotations and modifications omitted) (citing *Boeing*, 444 U.S. at 478). Awarding attorney's fees out of the common fund guarantees that each member of the class pays its fair share for class counsel's representation. *See Boeing*, 444 U.S. at 478 (common fund fee awards avoid unjustly enriching parties substantially benefitting from, while only minorly contributing to, the suit); *see also Kane Cty.*, 145 Fed. Cl. at 18. Here, the common fund between the two cases is approximately

$3.7 billion, from which five percent has been reserved pending resolution of Class Counsel's fee request.[2]  *See* Order, *Health Republic* ECF No. 98; Order, *Common Ground* ECF No. 125.

Federal courts have taken differing approaches to determine the reasonableness of an attorney's fee request in common fund cases, and thus, one of the primary disputes between Class Counsel and Objectors is the methodology this Court should apply.  Class Counsel request that the Court use the percentage-of-the-fund approach.  *Health Republic* ECF No. 84 at 15.  Under this approach, several judges of the Court of Federal Claims have utilized the seven *Moore* factors as guideposts for determining reasonableness.  *Id.* (collecting cases).  These factors consider:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore*, 63 Fed. Cl. at 787 (citing Manual for Complex Litigation § 14.121 (4th ed. 2004) ("MCL")).  No single factor is necessarily dispositive; they can be weighed in the Court's discretion.  *See, e.g.*, *Quimby*, 107 Fed. Cl. at 134 (considering each factor and determining that the fee likely to have been negotiated between the parties most justified the award).

Objectors, on the other hand, advocate for either the lodestar method or the lodestar as a cross-check against any percentage award.  *Health Republic* ECF No. 89 at 14.  No matter how it is used, the lodestar is calculated by multiplying the number of hours reasonably billed by class counsel in undertaking the litigation by the appropriate billable rates for their services.  *See Geneva Rock Prods., Inc. v. United States*, 119 Fed. Cl. 581, 594–96 (2015).  In a common fund case, the court may then increase or decrease the amount of the lodestar by a so-called risk multiplier (a

---

[2] The parties do not dispute that a common fund exists in these cases or that the common fund doctrine, as opposed to fee-shifting, applies.

number symbolizing the amount of risk or difficulty involved with the case). *Haggart*, 809 F.3d at 1355 n.19.

The Federal Circuit has not mandated the use of one approach over the other.   Rather, binding precedent holds that this Court has discretion to choose between the percentage-of-the-fund or lodestar methods in a common fund case.[3]  *See id.* at 1354–55.  While the lodestar method is the preferred means of calculating attorney's fees in fee-shifting cases, it has fallen out of favor in cases where fees are paid from a common fund.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (stating that the percentage-of-the-fund is "favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure"); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[A] percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); MCL § 14.121 (stating that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases" (internal notations omitted)).  The reason for this is clear: "the lodestar method was designed to govern imposition of fees on the losing party," not the distribution of fees from victorious plaintiffs to their attorney. *Gisbrecht v. Barnhart*, 535 U.S. 789, 806 (2002) (determining the lodestar method to be inappropriate for judging reasonableness of contingency fee arrangement between attorney and claimant in social security case subject to statutory maximum fee percentage).

---

[3] Consistent with that discretion, other judges of the Court of Federal Claims have chosen to use the lodestar as a cross-check for the percentage-of-the-fund method, *see, e.g.*, *Kane Cty.*, 145 Fed. Cl. at 19; *Geneva Rock Prods.*, 119 Fed. Cl. at 594–95, while others have declined, *see, e.g.*, *Lambert*, 124 Fed. Cl. at 683 n.10; *Quimby*, 107 Fed. Cl. at 133–34.

But this is not the only reason why the lodestar method has been identified as a poor fit for common fund cases. More consequential criticisms emphasize that it "is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation," and it creates incentives for inefficiency. MCL § 14.121; *see Ramah Navajo Chapter v. Jewell*, 167 F. Supp. 3d 1217, 1242 (D.N.M. 2016) (The lodestar, "even when used as a cross check . . . has the effect of rewarding attorneys for the same undesirable activities that the percentage method was designed to discourage, namely 'incentiviz[ing] [class counsel] to multiply filings and drag along proceedings to increase their lodestar.'" (citation omitted)); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W.Va. 2009) (The lodestar cross-check tends to "re-introduce[] the problems of the lodestar method." (internal quote omitted)).

Considering the circumstances of these cases, the Court believes the percentage-of-the-fund is the appropriate method for calculating Class Counsel's fee award. The lodestar method's primary emphasis on billable hours worked, with potential upward adjustment for the risks assumed by counsel, fails to appreciate certain factors important to analyzing the reasonableness of Class Counsel's fee request—for example, the class members' affirmative choice to join these suits (knowing the potential of a five percent fee) rather than to pursue individual claims subject to a higher market rate for attorney's fees and the tremendous 100 percent recovery they obtained. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (attorney's fees should reflect the "market rate for legal services . . . rather than the compensation a judge thinks appropriate as a matter of first principles"). Thus, a nuanced, factor-based analysis will more appropriately gauge the reasonableness of Class Counsel's requested fee than Objectors' suggested use of the lodestar (either directly or as a cross-check), which relies on arbitrary premises and results in a grossly disproportionate fee award to Class Counsel in comparison to the complete recovery obtained by

11

the classes. *See Will v. Gen. Dynamics Corp.* No. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." (citations omitted)).

Objectors rely on *In re Volkswagen "Clean Diesel" Marketing Sales Practices & Products Litigation*, MDL No. 2672 CRB (JSC), 2017 WL 1352859 (N.D. Cal. Apr. 12, 2017) ("*Clean Diesel*"), to support application of the lodestar method. *Health Republic* ECF No. 89 at 26. The comparison is unconvincing despite the .25 percent attorney's fee awarded in that case. First, in *Clean Diesel*, Volkswagen—the defendant—agreed to pay attorney's fees as part of a class settlement; the class members received their recovery without making *any* payment for class counsel's representation. *Clean Diesel*, 2017 WL 1352859, at *1. The court declined to address whether the common fund doctrine applied and, if so, which approach for calculating attorney's fees was appropriate. *Id.* at *2. It instead chose to apply the lodestar method because of its applicability in both common fund and fee-shifting cases. *Id.* As a result, *Clean Diesel* is not especially instructive.

Second, the facts of *Clean Diesel* differ substantially from those in the cases at bar. The *Clean Diesel* court cited three reasons for using the lodestar method to calculate fees in the "unique circumstances" of that case: (1) "much of the groundwork" for the class settlement was laid in negotiations preceding a separate class settlement (for which counsel had received compensation); (2) the separate settlement incentivized Volkswagen to quickly reach settlement in *Clean Diesel*; and (3) the high amount of the settlement at issue resulted primarily from the nature and value of the assets at issue. *Id.* The court held that the percentage method would overcompensate class counsel where counsel "did not expend significant additional time" reaching the settlement in *Clean Diesel* or "undertake significant additional risk." *Id.* As discussed further below, the same

cannot be said for Class Counsel's prosecution of the instant cases.[4]  Additionally, these cases do not involve circumstances where a reduction in fees is necessary to protect class members from a suboptimal settlement or the pecuniary self-interest of class counsel.  *See In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) ("A class settlement that results in fees for class counsel but yields no meaningful relief for the class 'is no better than a racket.'" (citation omitted)); *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

Accordingly, the Court will use the percentage-of-the-fund method to evaluate the reasonableness of Class Counsel's requested fee using the multi-factor analysis applied in *Moore*.

**B.      Class Counsel's Requested Attorney's Fee Is Reasonable.**

An analysis of the relevant factors persuades the Court that a five percent fee is reasonable.

1.      <u>The Quality of Counsel</u>

The quality of Class Counsel is essentially undisputed here, and the Court finds nothing in this category that justifies a reduction in the requested fee.  Both Quinn Emanuel and the members of Class Counsel's team have a history of providing quality results for their clients, including in large class actions.  *See Health Republic* ECF No. 84 at 16–18; *Health Republic* ECF No. 84-1 at ¶¶ 2–7.  Despite the at times hyperbolic nature of their Motions, the facts show that Class Counsel demonstrated a degree of foresight in bringing these suits and focusing their attention on the

---

[4] The other cases relied on by Objectors also demonstrate the fact-specific nature of a court's decision to use either the percentage-of-the-fund or lodestar method in common fund cases. *Health Republic* ECF No. 89 at 25–26 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994), and *Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-cv-00038, 2016 WL 3351017 (N.D. Cal. June 15, 2016)).  What is reasonable in one case, however, does not constrain the exercise of the Court's discretion in these cases.  *Wash. Pub. Power*, 19 F.3d at 1296 (courts "should be guided by the fundamental principle that fee awards out of common funds be *reasonable under the circumstances*" (emphasis in original) (internal quotation marks omitted)).

Section 1342 claim several months before other parties began filing individual complaints based in part on the same legal theory. *See Health Republic* ECF No. 84 at 18–19. Even though Objectors call into question the novelty of the argument, they do not contest that Class Counsel pioneered the Section 1342 lawsuit by a matter of months or that the same argument they first pressed eventually persuaded the Supreme Court to rule in favor of QHP issuers. *See Health Republic* ECF No. 89 at 10 (referencing comments made by America's Health Insurance Plans in 2014 arguing that the Government was statutorily required to make risk corridors payments). That the favorable Supreme Court decision came down in separate, parallel cases handled by other counsel does not undermine the quality of Class Counsel's representation or the value added by class counsel to the broader risk corridors litigation. *See id.* at 12–13. Indeed, one reason other related cases beat Class Counsel to the high court was because Class Counsel, unlike in some of those cases, successfully defeated dismissal at the pleading stage. *See Health Republic* ECF No. 84 at 19. At the end of the day, what is more important is that Class Counsel's legal theory resulted in a huge award to the classes here. *In re Synthroid*, 325 F.3d at 979–80 (excellent outcome for class weighed against reducing fees); *see Health Republic* ECF No. 84-1 ¶ 24. As such, this factor weighs in favor of Class Counsel.

      2.    <u>The Complexity and Duration of the Litigation</u>

Courts have recognized that "[m]ost class actions are inherently complex." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998)). The instant cases are no exception. First, the legal question presented in these cases was not straightforward. As Class Counsel note, when they brought the *Health Republic* case in February 2016, there was little in the way of relevant binding precedent, both in terms of cases addressing money-mandating statutes

and in those interpreting Section 1342.  *See Health Republic* ECF No. 84 at 21 ("'[r]arely has the [Supreme] Court determined whether a statute can fairly be interpreted as mandating compensation by the Federal Government" (internal quotation marks omitted) (quoting *Me. Cmty. Health Options*, 140 S. Ct. at 1329)).  The number of diverging opinions in the Court of Federal Claims, the Federal Circuit, and Supreme Court suggest that while these cases "turned on purely legal issues," as Objectors emphasize (*Health Republic* ECF No. 89 at 9), the question of whether Section 1342 mandated risk corridors payments to QHP issuers was nonetheless complex enough to split multiple courts as to its proper resolution.

Additionally, although these cases did not involve contested class certification, discovery, or trial, Class Counsel engaged in litigation in either a direct or supporting role at every level before the class members in these cases were awarded judgment in their favor, including motion practice at the pleading and merits stages in *Health Republic* as well as participation in related appeals in both the Federal Circuit and Supreme Court.  *See In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 94 (D.D.C. 2013) (rejecting "[a]n exclusive focus on the lack of discovery, merits briefing, and trial" in determining class counsel's fee award).  These efforts spanned the course of over four years.

Objectors focus on the fact that *Health Republic* and *Common Ground* were stayed at a relatively early stage of the litigation pending the appeals in other risk corridors cases, and they diminish the overall influence Class Counsel had on the success of their claims, which they claim were secured in separate matters before the Supreme Court.  *See Health Republic* ECF No. 89 at 9, 12–13, 26.  In a different scenario, these arguments would likely gain traction.  But not here.  Objectors do not dispute that Class Counsel was first to file the Section 1342 claim in *Health Republic* months before other cases followed suit with, in part, identical claims.  Nor do they

dispute that *Health Republic* failed to win the race to the Supreme Court only because Class Counsel succeeded in surviving dismissal, while other risk corridors cases did not or simply moved to judgment faster as individual (not class) claims. While it is not possible for this Court to divine to what extent Class Counsel's amicus arguments swayed the *Maine Community* majority, Objectors also do not dispute that Class Counsel pressed the classes' interests—albeit in a supporting role—during the course of the stays. Nor can they deny that Class Counsel's arguments had some objective impact in other trial court and intermediate appellate proceedings. *See Moda Health Plan*, 130 Fed. Cl. at 450–51; *Moda Health Plan*, 908 F.3d at 747–48 (Wallach, J., dissenting). Simply put, these are not cases in which Class Counsel merely rode the coattails of other innovative litigators.

Second, Class Counsel have been tasked with organizing and managing two large classes (153 members in *Health Republic* and 130 members in *Common Ground*, *Health Republic* ECF No. 84-1 ¶ 17). The logistics of administering such large class participation—for example, flying to meet with QHP issuers, fielding and resolving questions of class members and other issuers, assisting class members who faced insolvency—magnifies the complexity of these cases. *See Health Republic* ECF No. 84 at 22–23; *Health Republic* ECF No. 84-1 ¶¶ 18, 20–21; *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d at 94 (acknowledging the "unenviable logistical challenges that confronted class counsel" in large class action). All told, Class Counsel brought together and have represented QHP issuers representing approximately one-third of the overall value of risk corridors claims. *Health Republic* ECF No. 84-1 ¶ 17. Thus, the second *Moore* factor also supports a finding of reasonableness.

3.    The Risk of Nonrecovery

Victory was never a certainty in these and the other risk corridors cases.  Success was dependent on a showing that Section 1342 created one of those "rare money-mandating obligation[s]" requiring the Government to make risk corridors payments to QHP issuers.  *Me. Cmty.*, 140 S. Ct. at 1331.  The Government vigorously opposed the claim, successfully securing dismissal of the same Section 1342 claim in other risk corridors lawsuits before multiple judges of the Court of Federal Claims.  *See, e.g.*, *Me. Cmty. Health Options v. United States*, 133 Fed. Cl. 1 (2017); *Blue Cross and Blue Shield of N.C. v. United States*, 131 Fed. Cl. 457 (2017); *Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 81 (2016).  Losses in the Federal Circuit, and that Court's later rejection of rehearing *en banc*, only compounded the risk of non-recovery.  It would take a favorable decision by the Supreme Court to change the course.

As Objectors argue, the existence of multiple similar suits likely served to spread the risk, and the stays in *Health Republic* and *Common Ground* reduced the number of hours Class Counsel invested into risk corridors litigation at the trial court level.  *See Health Republic* ECF No. 89 at 26, 29.  But those factors do not significantly diminish the overall risk that the classes' Section 1342 claim would not succeed.  *See Raulerson v. United States*, 108 Fed. Cl. 675, 678 (2013) (noting that "all litigation carries risk").  If anything, the consistent losses other firms faced in litigating the same claim increased the riskiness of any additional time Class Counsel spent on *Health Republic* and *Common Ground*.  All totaled, Class Counsel accumulated 10,000 billable hours and assumed all litigation costs for which they may not have received any compensation at all had the outcome gone the other way.  *Health Republic* ECF No. 84-1 ¶ 23.  This factor, therefore, supports their fee request.

4.     The Fee That Likely Would Have Been Negotiated Between Private Parties in
       Similar Cases

That Class Counsel are seeking a fee of only five percent weighs heavily in favor of reasonableness when compared to other fee awards in typical common fund cases. It is not atypical to find attorneys "regularly contract[ing] for contingent fees between 30% and 40% in non-class, commercial litigation." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 123 (D.N.J. 2012); Decl. of Brian T. Fitzpatrick ¶ 23, ECF No. 84-2 ("[T]he most common percentages awarded by federal courts nationwide using the percentage method were 25%, 20% and 33%, with a mean award of 25.4% and a median award of 25%."). Fee awards in that range and higher have been awarded in class actions filed in the Court of Federal Claims. *See Raulerson*, 108 Fed. Cl. at 680 (approving a 33 percent fee on a $22 million settlement); *Quimby*, 107 Fed. Cl. at 134 (approving a 40 percent fee on a $74 million settlement).

More importantly, Class Counsel's five percent fee is also well below the market rate for attorney's fees in the risk corridors litigation. The 25 percent attorney's fee arrangement that Health Republic and Common Ground agreed to with Class Counsel before the certification of their respective classes reinforces this point, as do the higher rates sought by other firms representing QHP issuers. *See Health Republic* ECF No. 84-1 ¶ 8; *id.* ¶ 14 (averring that other firms' fee percentages were "in multiples" of Class Counsel's five percent fee); Suppl. Decl. of Stephen A. Swedlow ¶ 10, *Health Republic* ECF No. 93-2 (describing fees of 15 percent or more sought by other firms representing individual clients). Thus, by opting into the classes, Objectors received a substantial percentage reduction in the cost of pursuing their claims. The number of QHP issuers opting into the class after receiving notice of Class Counsel's maximum five percent fee suggests that many of the class members recognized the potential savings and considered the

requested fee to be at least a better deal than could be had by bringing their own individual lawsuits. *See Health Republic* ECF No. 84-1 ¶¶ 15–16; *Quimby*, 107 Fed. Cl. at 134.

The decision in *Quimby* affirms this analysis. There, using the same seven-factor test, the *Quimby* court approved a fee of 30 percent of a $74 million common fund largely because the fee award was in line with what would have been negotiated in similar cases. *Quimby,* 107 Fed. Cl. at 134. Although the size of the award gave the court some pause due to the unique circumstances in that case, it ultimately reasoned that "[a] contingent fee that is reached by the free consent of private parties should be respected as fair as between them." *Id.* In its discussion, the court emphasized the fact that the class members assented to the 30 percent fee arrangement by opting into the class after receiving notice that counsel would seek that fee. *Id.* "[B]y opting into the class, each member effectively accepted the offer of representation for a thirty percent contingency fee, and presumably concluded that a better deal could not be reached with their own counsel." *Id.*; *cf.* Restatement (Third) of the Law Governing Lawyers § 34 cmt. C. (Am. Law Inst. 2007) ("Fees agreed to by clients sophisticated in entering into such arrangements (such as a fee contract made by inside legal counsel in behalf of a corporation) should almost invariably be found reasonable.").

Similar reasons militate for the approval of Class Counsel's full fee request. First, Objectors, like the class members in *Quimby*, acted affirmatively to join the classes in these cases. *See Haggart v. United States*, 89 Fed. Cl. 523, 530 (2009) ("[F]or an opt-in class action [under RCFC 23], each participating member of the class must act affirmatively to participate . . ."). They did so after being fully advised by the class notices that Class Counsel would seek no more than five percent of any recovery. *See, e.g.*, *Health Republic* ECF No. 50-1 at 6; *Health Republic* ECF No. 84-1 ¶ 15. And they did so notwithstanding that there was a market for private counsel

representing individual QHP issuers with risk corridors claims. Notably, the class members in these cases consist of sophisticated entities with access to in-house legal counsel. *See Health Republic* ECF No. 84-1 ¶ 21; *Health Republic* ECF No. 93 at 26. As issuers of insurance plans, the class members are no strangers to the task of determining what costs are acceptable to bear relative to the risks involved in a particular venture. Objectors' affirmative choice to join these cases and pay, at most, the five percent fee identified in the class notices points strongly in favor of approving Class Counsel's fee.[5]

Two representations in Class Counsel's class notice need addressing, however. The notice stated that "the fee *may* be substantially less than 5% depending upon the level of class participation" and asserted that the fees would be subject to a lodestar cross-check. *See, e.g.*, *Health Republic* ECF No. 50-1 at 6 (emphasis added). Objectors point out that Class Counsel concede they achieved substantial class participation, which Objectors argue justifies reducing the percentages. *Health Republic* ECF No. 89 at 29 (quoting *Health Republic* ECF No. 84-1 ¶ 17). As the language of the notices makes clear, however, a reduction was not guaranteed. Nor would Class Counsel have authority to make such a guarantee because the ultimate decision to reduce a requested fee percentage, if at all, rests within the Court's discretion—whether based on class participation or through use of the lodestar cross-check.[6]

---

[5] Objectors emphasize the lack of a formal written agreement to a five percent fee, but that fact is not determinative. Given the circumstances discussed above, and consistent with *Quimby*, "by opting into the class, each member effectively accepted the offer of representation" for, *at most*, a five percent contingency fee. *Quimby*, 107 Fed. Cl. at 134.

[6] As additional context, Class Counsel state that at the time of the notice's issuance, they were involved in settlement negotiations with the Government for the entire risk corridors liability, not just the parties represented in *Health Republic*. Had a settlement been reached, it would have resulted in $10 billion in settlement proceeds at a time when Class Counsel had spent $2 million litigating *Health Republic*. *Health Republic* ECF No. 93-2 ¶ 3; *see* ECF No. 84-1 ¶ 10. Consequently, Class Counsel issued the supplemental notice in anticipation of an early settlement

In sum, especially where the other factors favor Class Counsel's five percent fee, there is little reason for the Court to step in to protect the interests of sophisticated entities who made a considered decision to join these cases and, as a result, will enjoy—even at the max rate of five percent—considerably lower costs than if they pursued their claims individually.

5.    The Percentage Applied in Other Class Actions

A five percent fee is low compared to those awarded in numerous other class actions. *Health Republic* ECF No. 84 at 31–32 (collecting cases); *see Health Republic* ECF No. 84-2 ¶¶ 23, 26; *see also* Decl. of Charles Silver ¶¶ 49, 75–77, *Health Republic* ECF No. 84-3.  Other judges of the Court of Federal Claims have previously acknowledged that "an award equal to one third of the common fund is commensurate with attorney fees awarded in other class action common fund cases." *Kane Cty.*, 145 Fed. Cl. at 19; *see Raulerson*, 108 Fed. Cl. at 680; *Moore*, 63 Fed. Cl. at 787.   And multiple circuit courts have adopted benchmarks of between 20 and 30 percent for calculating percentage awards.  *See Moore*, 63 Fed. Cl. at 787 (collecting cases and concluding that one-third of the common fund is a typical recovery).

Even in megafund cases such as this, where courts often decrease the percentage awarded as the size of class recovery increases, a five percent fee is well within the reasonable range of fees sought and, in fact, is on the low end of what is traditionally awarded.  *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (10 percent fee was justified for awards between $1–2 billion, and eight percent fee was justified for awards between $2–4 billion); *Health Republic* ECF No. 84-2 ¶ 26 (table of billion-dollar class

---

and a reduction in their fee award due to the quick resolution of the entire risk corridors claims. *Health Republic* ECF No. 93-2 ¶ 3.  Although a reduction may very well have been appropriate under those circumstances, the early settlement never materialized.

action awards and accompanying fee percentages); *Health Republic* ECF No. 84-3 at 182–83 (table of cases involving megafund percentage awards).

Accordingly, this factor weighs in Class Counsel's favor.

6.      The Size of the Award

Where a successful lawsuit results in a multi-billion-dollar award, even a minute fee percentage can result in a sizeable award to counsel, the case at hand being such an example. In a vacuum, Class Counsel's proposed fee results in a seemingly massive award of approximately $185 million. But comparing that amount to the almost $3.7 billion awarded to the class members demonstrates the reasonableness of the request and weighs heavily in the Court's analysis. *See Raulerson*, 108 Fed. Cl. at 680 (comparing the size of the fee in relation to the size of the award).

Not surprisingly, the bulk of Objectors' arguments relate to this factor. Instead of the five percent Class Counsel seek, Objectors argue that an award of $8.8 million would be generous and any amount above $20 million would be "patently unreasonable." *Health Republic* ECF No. 89 at 28. As Class Counsel point out, the $8.8 million figure represents .22 percent of the common fund. *Health Republic* ECF No. 93 at 19.

Before addressing some of Objectors' arguments for reducing Class Counsel's fee, identifying exactly what Objectors are requesting is useful. With a little basic math it becomes evident that Objectors are seeking to pay an infinitesimal portion of their recovery to Class Counsel in attorney's fees. Take Rocky Mountain Health Maintenance Organization, Inc., for example, who seeks to pay fees of approximately $109,000 from its combined $49.5 million dollar judgment. *See Health Republic* ECF No. 83-1 at 6; *Common Ground* ECF No. 111-1 at 6. Or take Kaiser Foundation Health Plan Inc. of Colorado, who having received $141 million, now seeks to pay approximately $310,000 to Class Counsel. *See Health Republic* ECF No. 83-1 at 5; *Common*

*Ground* ECF No. 111-1 at 5.   Notably, Objectors do not draw attention to the fact that their requested reductions would result in a .22 percent attorney's fee in exchange for the 100 percent recovery they obtained.

As explained above, the Court has determined that the percentage-of-the-fund is the proper approach to evaluate the reasonableness of Class Counsel's fee request.   Accordingly, most of Objectors' specific arguments are irrelevant.   The Court will nevertheless pause to address a few reasons why a reduction of fees is not justified.

      *a)*     *Detailed Billing Records*

First, Objectors contend that Class Counsel's fee request should be reduced because they provided only a declaration with a one-paragraph summation of their lodestar rather than submitting detailed billing records.   *Health Republic* ECF No. 89 at 15.   Extrapolating from decisions in several fee-shifting cases, Objectors assert that a 35 percent reduction in Class Counsel's lodestar is therefore warranted.   *Id.* at 17–18 (citing *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., LTD.*, No. CV 12-6972 FMO (JEMx), 2015 WL 12732433 (C.D. Cal. Dec. 14, 2015)). The Court finds the amount of Objectors' proposed reduction to be largely arbitrary and agrees with Class Counsel that detailed billing records are not required where the percentage-of-the-fund, or even the lodestar cross-check, is employed.   *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 465 n.18 (D.P.R. 2011) (using "the Court's common sense, experience, and familiarity with this case" to find that expending over 30,000 billable hours was reasonable without reviewing detailed billing records).

To the extent Objectors rely on fee-shifting cases (where the lodestar method is required) to argue for the necessity of detailed billing records, their argument is unavailing.   *See Health*

*Republic* ECF No. 89 at 16 (collecting cases).  Unlike in fee-shifting cases where the court must determine the *additional* amount a losing defendant must pay to compensate the plaintiff's attorneys, in common fund cases there is "no direct or immediate danger of unduly burdening the defendant," making rigorous scrutiny of billing records unnecessary.[7]  *See Applegate v. United States*, 52 Fed. Cl. 751, 761 (2002) (quoting *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 254 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989)).  Instead, even if the Court were applying the lodestar method as a cross-check, it could simply determine the reasonableness of the fee based on its familiarity with the case.  *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 465 n.18.

      b)      *The Lodestar Multiplier*

Objectors argue that the fee sought by Class Counsel is unreasonable because it represents a multiple of 18–19 times their $10 million lodestar, and thus should be reduced after a cross-check of the percentage.  *Health Republic* ECF No. 89 at 20, 24; *see Health Republic* ECF No. 84-1 ¶ 23.  Objectors argue that a multiplier of two is commensurate with the work performed by Class Counsel.  *Health* Republic ECF No. 89 at 24–25.  Choosing a multiplier between the parties' opposing data points seems a relatively arbitrary exercise, at least compared to the multi-factor analysis performed above.  Although Class Counsel concede that their requested fee results in an uncommonly high payout, they point to several cases where courts have approved similar or larger multipliers.  *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ. A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (multiplier of 15.6); *In re Merry-Go-*

---

[7] For the same reasons, the Court is not bound to use the *Laffey* Matrix here, as it was created to assist in analyzing awards under a fee-shifting statute.  *Adolph Coors Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93, 98 (D.D.C. 2005) ("[T]he *Laffey* Matrix, published by the United States Attorney's Office, is a concession by that office of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorneys' fees.").

*Round Enters., Inc.*, 244 B.R. 327, 335, 345 (D. Md. 2000) (multiplier of 19.6); *Am.'s Mining Corp. v. Theriault*, 51 A.3d 1213, 1252 (Del. 2012) (multiplier of 66, though no cross-check was conducted).  Therefore, even if the Court applied the lodestar cross-check, a multiplier of 18–19 would, at least, not be outside the realm of reasonableness.

       7.    <u>Objections to the Fee Request</u>

       Of the hundreds of class members in *Health Republic* and *Common Ground*, the Court received one substantive objection on behalf of 34 entities belonging primarily to two organizations: UnitedHealthcare (23 of the 34 entities) and Kaiser Foundation Health Plan (four of the 34 entities).  *See Health Republic* ECF No. 89 at 8, 30; *Health Republic* ECF No. 93-2 ¶ 2. In total, nine individual organizations object to Class Counsel's request for a five percent fee.  *See Health Republic* ECF No. 89 at 30.  Although larger than those involved in other percentage-of-the-fund cases in this court, the number of objections is relatively low when viewed in the context of the classes here.  *See, e.g.*, *Lambert*, 124 Fed. Cl. at 683–84; *Quimby*, 107 Fed. Cl. 126 at 134. According to Class Counsel, putting Objectors aside, 90 percent of the organizations whose entities opted into these suits, representing approximately $2.1 billion in damages, do not object to the fee. *Health Republic* ECF No. 93 at 7 n.1.  Consequently, the final factor likewise supports the determination that Class Counsel's fee request is reasonable.

  **B.**    **The Requested Incentive Awards Are Denied.**

       Lastly, Class Counsel ask that the Court approve two awards of $100,000 each to the named Plaintiffs, Health Republic and Common Ground.  *Health Republic* ECF No. 84 at 38–39. Although not frequently addressed in the Federal Circuit, other courts have generally recognized that whether to approve an incentive award in a class action is a matter of the court's discretion. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Dial Corp. v. News*

*Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52–53 (D.D.C. 2010).

As Class Counsel note, other courts have with some frequency found it appropriate to approve incentive awards to named plaintiffs in class actions as a reward for the benefits they conferred to the class and the burdens they bore as class representatives.[8]  *See Health Republic* ECF No. 84 at 39 (citing *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012)).  But the circumstances in which those courts have granted incentive awards differ substantially from the circumstances at hand.  Unlike the cases Class Counsel cite, where requests for incentive awards were granted as part of a court's broader approval of a class settlement and (importantly) were paid from the settlement fund, Class Counsel are requesting the awards to Health Republic and Common Ground be paid directly from their fee. Approval of incentive awards in the latter scenario is much rarer.  *See* 5 Newberg on Class Actions § 17:5 (5th ed.) ("In some rare cases, courts have alluded to the idea that incentive awards may be [] paid by class counsel out of their fees and expenses." (collecting cases)).

This Court has concerns about the propriety of approving incentive awards paid from Class Counsel's fee.  The Model Rules of Professional Conduct prohibit the sharing of attorney's fees with nonlawyers.  *See* MODEL RULES OF PRO. CONDUCT R. 5.4(a) (AM. BAR ASS'N 2021).  Similar rules exist in jurisdictions that likely govern Class Counsel's representation in the instant cases. *See, e.g.*, D.C. RULES OF PRO. CONDUCT R. 5.4(a) (2021); ILL. SUP. CT. R. 5.4(a) (2021); CAL. RULES OF PRO. CONDUCT R. 1-320(a) (2018).  Other courts have reached different conclusions on

---

[8] On the other hand, incentive awards appear to be an infrequent issue in this court.  Class Counsel have cited to only one case where a judge of the Court of Federal Claims approved an incentive award.  *Health Republic* ECF No. 84 at 38 (citing *Russell v. United States*, 132 Fed. Cl. 361, 365 (2017) (approving incentive awards as part of class settlement)).

whether professional rules of conduct bar such awards. *Compare In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at \*32 (N.D. Cal. Aug. 17, 2018) (declining to award incentive awards from attorney's fee, which "may run afoul of ethical rules," and instead directing payment of awards from the class settlement fund), *with In re Presidential Life Sec.*, 857 F. Supp. 331, 337 (S.D.N.Y 1994) (awarding incentive awards from attorney's fees and declining to enforce rule against fee-sharing where concerns of corruption were not at play).  Regardless, this Court declines to exercise its discretion in a manner that would potentially sanction the violation of ethical rules, especially where the relevant rules do not recognize an exception for an attorney to share court-awarded fees with its client in the case for which the fees were awarded. *See In re UnumProvident Corp. Derivative Litig.*, No. 1:02-CV-386, 2010 WL 289179, at \*8 (E.D. Tenn. Jan. 20, 2010) (noting lack of ethical concern with incentive award paid from attorney's fees given exception provided in applicable ethics rules but noting the "problematic nature" of such arrangement). Because the judgments have already been disbursed from the common fund to the Non-Dispute Subclasses (less five percent for potential attorney's fees), there is no alternate source of funds available from which the Court could consider making the incentive awards.

Consequently, Class Counsel's request for incentive awards to Health Republic and Common Ground is denied.

## III. CONCLUSION

For these reasons, the Court finds Class Counsel's request for a five percent attorney's fee to be reasonable.  Accordingly, Plaintiff's Motions (*Health Republic* ECF No. 84; *Common Ground* ECF No. 107) are **GRANTED** as to the fee request.  Having determined pursuant to RCFC 54(b) that there is no just reason for delay, the Court directs the Clerk to enter judgment in *Health Republic* in the amount of $95,183,102.35 to be paid to Class Counsel from the Non-Dispute

Subclass fund.  The Clerk is likewise directed to enter judgment in *Common Ground* in the amount of $89,665,569.32 to be paid from the Non-Dispute Subclass fund.  Class Counsel's request to pay $100,000 incentive awards from their fees to Health Republic and Common Ground, respectively, is **DENIED**.

      **SO ORDERED**.


Dated: September 16, 2021                   */s/ Kathryn C. Davis*
                                          KATHRYN C. DAVIS
                                          Judge