**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| Health Republic Insurance Company, | |
| Plaintiff, on behalf of itself and all others similarly situated, | Case No. 16-259C |
| | Judge Kathryn C. Davis |
| vs. | |
| United States of America. | |
| Defendant. | |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF HEALTH REPUBLIC INSURANCE COMPANY'S MOTION TO DISMISS THE GOVERNMENT'S COUNTERCLAIM**

The question before this Court is a straightforward one: may the United States "pursue offsets in the Court of Federal Claims"[1] based on statutory claims that "arise under the ACA"[2] against Colorado Health Insurance Cooperative ("Colorado HealthOp"), an insolvent Colorado insurer? The Federal Circuit, in *Conway v. United States*, 997 F.3d 1198 (Fed. Cir. 2021) issued an opinion involving the same parties, the same alleged debt owed to the government by Colorado HealthOp, and confronted the exact same question. It answered "no." The *Conway* Court ruled that claims for offset "arising under…the ACA" are still subject to Colorado's rules "fixing creditors' rights during insolvency," and that those rules make clear that the *only* claims available for offset are those relating to certain contractual claims inapplicable here.  *Conway*, 997 F.3d at 1206-1207.  In other words, the *Conway* court ruled the Government's *statutory* claim for offset arising under the ACA is foreclosed.

The Government has indicated that it will try to distinguish the Federal Circuit's binding

---

[1] Dkt 112, The United States' Opposition To The Motion To Dismiss The United States' Counterclaim at 10 (Opp'n).
[2] *Id*. at 3.

precedent in *Conway* based on the manner the Government seeks to achieve the offset. In *Conway*, the Government sought an *administrative* offset arising under the ACA, and the Government's offset here – also arising under the ACA – is sought through a counterclaim filed pursuant to 28 U.S.C. §§ 1503[3] and 2508,[4] the statutes that ordinarily empower the Government to pursue counterclaims for offset in the Federal Court of Claims.  But the Government's argument fails for at least two reasons.

First, the Government describes a distinction without a difference. The *Conway* Court was clear that the Government's statutory claims for offset arising under the ACA were subject to Colorado's insolvency priority rules, and those rules do not allow a party to offset damages owed to the insolvent company except in the narrow case of certain contract claims inapplicable here. *Nothing* in *Conway* creates an exception that permits an offset so long as that offset is sought through a judicial mechanism as opposed to an administrative one. Indeed, in considering the import of the very statutes the Government cites – 28 U.S.C. §§ 1503 and 2508 – the *Conway* Court ruled those statutes do not provide a "right to offset that [the Government] could not find in either Colorado law or federal law," as nothing in those statutes "create any substantive right." *Conway*, 997 F.3d at 1215.

---

[3] Section 1503 states in full, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

[4] Section 2508 states in full, "Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff. If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable. The transcript of such judgment, filed in the clerk's office of any district court, shall be entered upon the records and shall be enforceable as other judgments."

Second, the Court of Federal Claims further confronted and further foreclosed this argument in a persuasive and comprehensive opinion *Richardson v. United States*, 157 Fed. Cl. 342 (2021). There, a judge of this court, applying *Conway* and considering a wide range of authority, ruled that the McCarran Ferguson Act would divest this Court from hearing a collateral attack on the state's insolvency proceedings – insolvency proceedings in which the United States admits it has already submitted a proof of claim for the very sums sought in its counterclaim.

Taken together, both *Conway* and *Richardson* counsel dismissal of the Government's counterclaim, including the United States' concomitant demand for accrued interest. At its core, the Government is seeking to prioritize its own claims against the insolvent Colorado HealthOp. But the Government may not "leapfrog," *Conway*, 997 F.3d at 1206, other insolvency creditors by means of an offset, and there is "no reason that the government should be able to collaterally attack the results of [Colorado's] state liquidation process, given the Federal Circuit's reasoning in *Conway*." *Richardson*, 157 Fed. Cl. at 368.

## I. *Conway v. United States*, 997 F.3d 1198 (Fed. Cir. 2021) Is Directly Controlling Precedent That Counsels Dismissal

There is very little to distinguish *Conway* from the instant case.

*First*, both cases involve the same parties.

*Second*, both cases involve the Government's desire for an "offset" of the money it owes Colorado HealthOp. In *Conway,* the United States owed Colorado HealthOp millions of dollars under the ACA "reinsurance program," and Colorado HealthOp owed millions to the Government pursuant to the ACA "risk adjustment" program. The United States sought to "offset Colorado Health's risk adjustment debt against HHS' reinsurance debt." *Conway*, 997 F.3d at 1203.  Here, the Government admits that Colorado HealthOp is "entitle[d]…to damages

from the United States under section 1342 of the Patient Protection and Affordable Care Act,"
Dkt 101 at 1, and states those damages should be "offset as set forth in the United States'
counterclaim," *id.*, including the very same debts that arose through the risk adjustment program
as the debt considered in *Conway*, *id.* at 7.[5]

*Third*, and most importantly, the ultimate issue posed by both cases is the same: whether
the Government's "ACA debts take priority over all other creditors' claims during Colorado
insolvency proceedings." *Conway*, 997 F.3d at 1204. *See also* Opp'n at 29 - 30 (presenting the
United States' argument that the "right of offset is independent of any creditor priority
considerations"). *Conway* is clear they do not.

The *Conway* Court's analysis was straightforward: it analyzed Colorado law governing
the priority of claims against an insolvent insurance company, and then determined whether any
law exists which preempts the manner in which state law fixes creditors' rights. With respect to
rights of offset, the Court looked to Colo. Rev. Stat. § 10-3-529, the portion of Colorado's
Insurers' Rehabilitation and Liquidation Act defining when a claimant may offset moneys it

---

[5] The Government averred during oral argument that "in our counterclaim, we don't seek an
offset." April 27, 2022 Oral Arg. Tr. at 31:10-11. Respectfully, that is not accurate. As the
Government states on the first page of its Amended Answer and Counterclaim, "[t]he United
States avers that the damages due the Dispute Subclass are subject to offset as set forth in the
United States' counterclaim." Dkt 101 at 1.  A statute the Government invokes for this Court's
jurisdiction to hear the counterclaim, 28 U.S.C. § 1503, describes jurisdiction to hear "any set-
off…by the United States against any plaintiff." In its brief in opposition to the motion to
dismiss, the United States throughout describes what it seeks in its counterclaim as an "offset."
*See*, *e.g.*, Opp'n at 2 ("Colorado Health and Meritus assert claims under the ACA against the
United States, and the United States seeks to offset its ACA counterclaims against Colorado
Health and Meritus."); *id.* at 3 ("the United States' offsets are permissible in this Court"); *id.* at
21 ("[t]he fact that Colorado Health or Meritus' estates may recover less money because of the
United States' offsets does not 'invalidate, impair, or supersede' the operation of any provision
of state liquidation law."); *id.* at 29 ("Colorado Health is wrong to suggest that the United States'
offset rights violate the state insurance liquidation priority scheme. The right of offset is
independent of any creditor priority considerations…"). Indeed, the term "offset" appears over
70 times in the United States' opposition brief.

otherwise owes to a debtor. The *Conway* Court explained that "[t]he Colorado offset provision is limited to offsetting debts and credits in contractual obligations", 997 F.3d at 1204, and not, as is the case here and as was the case in *Conway*, offsets arising out of the ACA. *See id*. at 1205; Arg. Tr. at 45:10-12. The Court then proceeded to analyze common law, federal law (including the ACA itself, and federal common law) and other statutes including 28 U.S.C. §§ 1503 and 2508 – to determine whether any possibly applicable law would "override Colorado's liquidation priority scheme." *Id*. at 1215. It concluded none did. In so-concluding, the Court ruled that (1) under common law, there is "no equitable right to offset," *id*. at 1206; (2) the federal statutory scheme does not overcome the "presumption against preemption" of state insurer insolvency proceedings, *id*. at 1214; (3) federal common law does not afford the federal government any rights apart from that of a normal creditor, and so provides "no reason…to override Colorado's liquidation priority scheme," *id*. at 1215; and, finally, (4) neither 28 U.S.C. § 1503 nor 28 U.S.C. § 2508 "impose a mandatory duty to give effect to the government's offsets," as neither statute "create[s] any substantive right." *Id*.

No part of the *Conway* Court's analysis relied on the mechanism the Government was attempting to employ to attain its statutory offset. In other words, whether sought through a counterclaim or administrative offset, it remains true that the statutory offset the Government seeks is not contemplated by the Colorado statute affixing creditors' order of priority, and nothing under common law, the federal statutory scheme, or federal common law overcomes the "presumption against preemption" of the state insurer insolvency proceedings.[6]

---

[6] By the same token, the Government's argument that it is owed continually-accruing interest on its claim fails as well. Colo. Rev. Stat. §10-3-517(2) states that, upon issuance of an order of liquidation, "the rights and liabilities of any such insurer and of its creditors…shall become fixed as of the date of entry of the order of liquidation[.]" In other words, interest ceases to accrue under Colorado law upon such liquidation. The government's argument that it is owed interest

The *Conway* court even directly foreclosed the argument the Government appears intent on making as the centerpiece of their opposition: that, by dint of 28 U.S.C. §§ 1503 and 2508, the government has a right to offset that "it could not find in either Colorado law or federal law." *Conway*, 997 F.3d at 1215. Indeed, on page 31 of its brief before the *Conway* Court, the Government argued that "[t]he Supreme Court and this Court's predecessor have recognized that these statutes impose a mandatory duty to give effect to the government's offsets." *Conway*, 997 F.3d at 1215 (citing the Government's briefing). The Government makes the exact same argument – word for word – in its briefing here. *See* Dkt 112 at 12 ("The Supreme Court and this Court's predecessor have recognized that these federal statutes impose a mandatory duty to give effect to the United States' offsets"). The *Conway* Court soundly rejected that argument, ruling that nothing in the Tucker Act "[c]reates any substantive right." It also ruled that, even if 28 U.S.C. §§ 1503 and 2508 confer subject matter jurisdiction over the Government's counterclaim – and as explained below, they do not – the counterclaim would still be dismissed "because neither state nor federal law affords the government a right to offset." *Conway*, 997 F.3d at 1215. In other words, and as the Court makes explicit, nothing in 28 U.S.C. §§ 1503 and 2508 – non-substantive jurisdictional statutes – creates "a right to offset that [the Government] could not find in either Colorado law or federal law." *Id.*

There is no meaningful way to distinguish *Conway*. The counterclaim should accordingly be dismissed.

---

accruing to this day is a further attempt to ignore Colorado's liquidation priority scheme and benefit itself at the expense of other creditors. As *Conway* explains, no such priority for the government's claims exists, and there is "no reason…to override Colorado's liquidation priority scheme." *Conway*, 997 F.3d at 1215.

## II.  *Richardson v. United States*, 157 Fed. Cl. 342 (2021) Also Counsels Dismissal

While *Conway* would, on its own, be enough to foreclose any determination in the Government's favor, the Court of Claims' decision in *Richardson v. United States*, 157 Fed. Cl. 342 (2021), should solidify that conclusion, and lead this Court to deny subject matter jurisdiction over Defendants' counterclaim. In *Richardson*, as here, "the government participated in the state liquidation process [and] submitted a proof of claim." *Id*. at 369. As here, the government in *Richardson* was "simultaneously a creditor and debtor to an insolvent" insurance company.

But in *Richardson* the Court directly confronted not only whether state insolvency law "controls," (it does), but also whether the government is empowered to "collaterally attack the results of the…state liquidation process" at all. *Richardson*, 157 Fed. Cl. at 368. The *Richardson* court made clear that a straightforward reading of *Conway* precluded any such collateral attack: "In this case, just as in *Conway*…the government is simultaneously a creditor and debtor to an insolvent CO-OP, and the government's rights were fixed during the insolvency process. This Court sees no reason that the government should be able to collaterally attack the results of the Nevada state liquidation process." *Id*.

The *Richardson* court, however, went further, and explained that multiple circuits and the Supreme Court have made clear that the McCarran-Ferguson Act precludes such a collateral attack. The McCarran-Ferguson Act is a rule of reverse preemption, mandating that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance…unless such Act specifically relates to the business of insurance." 15 U.S.C. §1012(b). Citing the Second Circuit's decision in *Levy v. Lewis*, 635 F.2d 960, 963 (2d Cir. 1980), the *Richardson* court noted that with "McCarran−

Ferguson…Congress mandated that regulation of the insurance industry be left to the individual states…*including that part enabling* the institution and *implementation of liquidation* proceedings…" *Richardson*, 157 Fed. Cl. at 370 (emphasis in original), meaning that "the government is not permitted to assert an offset that is inconsistent with the results of the [state] liquidation proceedings." *Id*. at 371.  The *Richardson* court further explained, by analogy to a case from the 5th Circuit, *Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998), application of the McCarran-Ferguson Act would require dismissal of such a collateral attack. In *Munich*, plaintiff attempted to invoke the Federal Arbitration Act to compel arbitration of insurance company delinquency proceedings. *Id*. at 596. However, Oklahoma law vested original jurisdiction of those proceedings in Oklahoma receivership court, meaning the question of jurisdiction was a law enacted for the purpose of regulating insurance. *Id*. As the *Richardson* Court explained:

> Accordingly, the Fifth Circuit concluded that "dismissal of the action was required because, by operation of the McCarran–Ferguson Act, the FAA is reverse pre-empted to the extent it permits [plaintiffs] to bring an action against assets of a delinquent insurance company in a forum other than the Oklahoma receivership court. *Similarly, the government here should not be able to obtain —via the assertion of an administrative offset — that which could not be obtained in a direct suit against the Receiver.*

*Richardson*, 157 Fed. Cl. at 371 (internal quotation omitted) (emphasis added). In other words, just as the Fifth Circuit concluded in *Munich*, the *Richardson* Court makes clear that a suit for offset that interferes with a state-level liquidation scheme must simply be dismissed.

The *Richardson* Court continued its survey of case law, with each case indicating that "McCarran–Ferguson protection," *id.* at 372, would prohibit a collateral attack on a liquidation proceeding akin to the one faced by the *Richardson* court and this one. *See id*. at 372-73:

> These cases, along with *Conway*, all counsel in favor of this Court's holding that the government is bound by the Nevada state liquidation proceedings, like any other creditor, and cannot collaterally attack the results of those proceedings by asserting an

8

administrative offset. *Ruthardt [v. United States]*, 303 F.3d [375] at 382 ("*Fabe* itself upheld a priority for administrative expenses of liquidation (and apparently for administrative expenses of guaranty funds, too) because these reimbursements facilitated payment to policyholders. In other words, priorities that indirectly assure that policyholders get what they were promised can also trigger McCarran–Ferguson protection. ..." (citing *[U.S. Dep't of Treasury v. Fabe*, 508 U.S. [491], 495 n.2 [(1993)]...; *Clark v. Fitzgibbons,* 105 F.3d 1049, 1051 (5th Cir. 1997) ("[A]llowing a creditor or claimant *to proceed against an insolvent insurer* in federal court while a state insolvency proceeding is pending would 'usurp [the state's] control over the liquidation proceeding by allowing [the claimant] to preempt others in the distribution of [the insurance company's] assets.' " (alteration in original) (emphasis added) (quoting *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 532 (5th Cir. 1992))); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) ("A coverage claim against a now-insolvent insurer that arose prior to the insolvency is of course exactly the sort of claim that must be heard in the liquidation proceedings; although dismissal under *Burford* abstention is no longer appropriate under *Quackenbush* in damages actions, presumably McCarran–Ferguson protection would extend to this kind of claim."); *Lacy v. Old Standard Life Ins., Inc.*, 2005 WL 8171866, at *4 (D. Colo. Sept. 8, 2005) (noting that "[s]ince the passage of the McCarran–Ferguson Act, federal courts have increasingly deferred to state receivership proceedings" and that "most federal courts have declined to exercise jurisdiction in disputes that involve complex and comprehensive state procedures adopted for insurance companies pursuant to the McCarran–Ferguson Act").

The *Richardson* Court's meaning is clear: even if the Government's action might otherwise be authorized by a federal statute, the government will not be empowered to pursue a collateral attack on a liquidation proceeding, but instead must be "bound…like any other creditor." *Id*. at 372. But by filing its counterclaim, the government is seeking just such a collateral attack against Colorado's liquidation proceeding – an attack reverse-preempted by the McCarran-Ferguson Act.

### III.   *Richardson* Precludes The Government From Seeking Offset Through 31 U.S.C. § 3728

In *Conway*, the Federal Circuit left open whether 31 U.S.C. § 3728 may "prevent Conway from enforcing his judgment against the government." *Conway*, 997 F.3d at 1215-16. The *Richardson* Court addressed the issue head on, and concluded that the government cannot employ 31 U.S.C. § 3728 to reassert any offset. As the *Richardson* court ruled, while 31 U.S.C. §

3728 provides that the "Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government…that is equal to a debt the plaintiff owes the Government," subsequent statutory language "makes clear that the Treasury may not employ § 3728 to avoid any part of a judgment entered in this case based on the same offsets addressed herein." 157 Fed. Cl. at 375. Rather, Section 3728 states that Treasury must "bring[] a civil action for the debt if the plaintiff…does not agree to the setoff," making clear that no such set-off is automatically granted through section 3728. But as the *Richardson* Court explains, "[i]n this case…the Court holds that the government is not entitled to collect any amounts…until superior creditors…are satisfied and the [state] liquidation process permits the government to recover. Until then, there is nothing for the Treasury to setoff, and any civil action by the government to recover – following the issuance of a judgment in this case – would be barred by *res judicata*." *Id*. at 375.

So-too here.  The amount ultimately owed by Colorado HealthOp to Treasury will be determined following Colorado's statutorily-prescribed liquidation process – the very process in which the Government has submitted a proof of claim.  As *Conway* explains – and as *Richardson* follows – the Government may not "leapfrog other insolvency creditors through offset, rather than paying its debt in full and making a claim against Colorado Health's estate as an insolvency creditor." *Conway*, 997 F.3d at 1201. To hold otherwise would, among other things, invite chaos and thoroughly disrupt the ongoing liquidation. As the *Richardson* court succinctly explains, "[f]or a state's insolvency law to function properly, it is axiomatic that the state liquidation process must be permitted to proceed such that all creditors, including the government, are subject to it." *Richardson*, 157 Fed Cl. at 369. The Government's counterclaim, at its core, seeks

to remove the Government from the insolvency process – something prohibited by *Conway*, by *Richardson*, and by operation of the McCarran-Ferguson Act.

## CONCLUSION

For the above-stated reasons, the Government's counterclaim should be dismissed.

Dated: May 18, 2022                         Respectfully submitted,


QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP

*/s/ Stephen A. Swedlow*
Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
191 North Wacker Drive
Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

J.D. Horton
jdhorton@quinnemanuel.com
Adam B. Wolfson
adamwolfson@quinnemanuel.com
865 S. Figueroa Street
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Colorado HealthOp and the Class*