## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HEALTH REPUBLIC INSURANCE          :
COMPANY,                           :          No. 16-259C
                                   :
              Plaintiff,           :          Judge Davis
                                   :
       v.                          :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
              Defendant.           :

---

## THE UNITED STATES' SUPPLEMENTAL BRIEF

---

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General
Civil Division

RUTH A. HARVEY
Director
Commercial Litigation Branch

KIRK T. MANHARDT
Deputy Director

TERRANCE A. MEBANE
MARC S. SACKS
FRANCES M. MCLAUGHLIN
PHILLIP SELIGMAN
United States Department of Justice
Civil Division, Commercial Litigation Branch

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    This Court Has Jurisdiction Over The United States' Counterclaims And Offsets
      Regardless of Colorado Health's Insolvency ................................................................. 2

   A.   Supreme Court And Court of Claims Precedent Unequivocally Establish This Court's
        Jurisdiction Over the United States' Counterclaims And Offsets As A Condition Of Suit
        Against The United States In This Court ..................................................................... 2

   B.   Colorado Health's Insolvency Does Not Deprive The Court Of Jurisdiction Or
        Authority To Enter A Judgment Or Offset ................................................................... 5

   C.   State Law Can Reverse Preempts Federal Law Enacted Under The Commerce Clause
        and This Court's Jurisdictional Statues Were Not ...................................................... 8

II.   *Conway* Did Not Overrule 170 Years of Binding Precedent Holding That This Court Can
      Enter Judgment On the United States' Counterclaims and Offsets ................................. 11

III.  The Court Should Not Give *Richardson* Any Weight ..................................................... 15

CONCLUSION .......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Altair Global Credit Opportunities Fund (A), LLC v. United States*,
    138 Fed. Cl. 742 (2018) ............................................................................................. 10

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003)) ................................................................................................. 10

*Amsouth Bank v. Dale*,
    386 F. 3d 763 (6th Cir. 2004) ................................................................................... 10

*Atl. Contracting Co. v. United States*,
    35 Ct. Cl. 30 (1899) ..................................................................................................... 4

*Barnett Bank of Jacksonville, N.A. v. State ex rel. Dept. of Ins.*,
    507 So. 2d 142, 144 (Fla. 1st Dist. App. 1987) ..................................................... 7, 8

*Cal. Ins. Guarantee. Ass'n v. Burwell*,
    No. 2:15-cv-0113-ODW, 2016 WL 1050190, *4 (C.D. Cal. Mar. 16, 2016) .......... 17

*Cherry Cotton Mills v. United States*,
    327 U.S. 536 (1946) .............................................................................................. 3, 13

*Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*,
    357 F.3d 1294 (Fed. Cir. 2004) ............................................................................... 12

*Cochran v. Paco, Inc.*,
    606 F.2d 460, 463 (5th Cir. 1979) ............................................................................. 9

*Conway v. United States*,
    997 F. 3d 1198 (Fed. Cir. 2021) ....................................................................... passim

*Durfee v. Duke*,
    375 U.S. 106 (1963) .................................................................................................. 18

*Ex parte Bakelite Corp.*,
    279 U.S. 438 (1929) .................................................................................................... 3

*FDIC v. Liberty Nat'l Bank & Tr. Co.*,
    806 F. 2d 961 (10th Cir. 1986) ................................................................................... 7

*Frantz Equipment Company v. United States*,
    122 Ct. Cl. 622 (1952) ................................................................................................ 4

*Gevyn Const. Corp. v. United States*,
    827 F. 2d 752 (Fed. Cir. 1987) ................................................................................. 12

*Greene v. United States*,
    440 F. 3d 1304 (Fed. Cir. 2006) ...................................................................... passim

*Group Life & Health Ins. Co. v. Royal Drug Co.*,
    440 U.S. 205 (1979) ......................................................................................... 9

*In re Liquidation of Realex Grp.*,
    620 N.Y.S.2d 37, 39 (N.Y. App. Div. 1994) ............................................... 7, 8

*Kalb v. Feuerstein*,
    308 U.S. 433 (1940) ......................................................................................... 18

*Kastigar v. United States*,
    406 U.S. 441 (1972) ......................................................................................... 12

*Kaufman v. United States*,
    118 Ct. Cl. 91 (1950) ....................................................................................... 3

*Lane v. Pena*,
    518 U.S. 187 (1996) ......................................................................................... 2

*Leiter* Mins., Inc. v. United States,
    352 U.S. 220 (1957) ......................................................................................... 16

*McElrath v. United States*,
    102 U.S. 426 (1880) ......................................................................................... 3, 4

*Metropolitan Life Ins. Co. v. Ward*,
    470 U.S. 869 (1985) ......................................................................................... 10

*Murray's Lessee v. Hoboken Land Improvement Co.*,
    59 U.S. 272 (1855) ........................................................................................... 3

*Preuss v. United States*,
    188 Ct. Cl. 469 (1969) ..................................................................................... 5

*Prudential Ins. Co. v. Benjamin*,
    328 U.S. 408 (1946) ......................................................................................... 9

*Richardson v. United States*,
    157 Fed. Cl. 342 (2021) ................................................................................... passim

*Ruthardt v. United States*,
    303 F. 3d 375 (1st Cir. 2002) .......................................................................... 17

*Scott v. Armstrong*,
    146 U.S. 499 (1892) ......................................................................................... 7

*Smith v. Orr*,
    855 F.2d 1544 (Fed. Cir. 1988) ...................................................................... 12, 13

*South Corp. v. United States*,
690 F.2d 1368 (Fed. Cir. 1982) ............................................................. 12

*United States v. Munsey Trust Company,*
332 U.S. 234 (1947) .............................................................................. 4

*Transit Cas. Co. v. Selective Ins. Co. of Se.*,
137 F. 3d 540 (8th Cir. 1998) ................................................................. 7

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) ............................................................................. 18

*United States v. Bank of New York & Trust Co.*,
296 U.S. 463 (1936) ............................................................................. 16

*United States v. Testan*,
424 U.S. 392 (1976) ............................................................................. 13

*United States v. King*,
395 U.S. 1 (1969) ............................................................................. 2, 18

*United States v. Rural Elec. Convenience Co-op. Co.*,
922 F.2d 429 (7th Cir. 1991) ................................................................ 17

*United States v. Sherwood*,
312 U.S. 584 (1941) ........................................................................... 2, 3

*United States v. U.S. Fidelity & Guaranty Co.*,
309 U.S. 506 (1940) ............................................................................. 18

*Williams v. United States*,
289 U.S. 533 (1933) ............................................................................... 5

## Federal Statutes and Regulations

15 U.S.C. § 1012 ................................................................................... 9

28 U.S.C. § 1491 ................................................................................. 13

28 U.S.C. § 1503 ........................................................................... passim

28 U.S.C. § 2508 ........................................................................... passim

31 U.S.C. § 3728 ........................................................................... passim

45 C.F.R. § 30.18 ................................................................................. 4

45 C.F.R. § 156.1215 ........................................................................... 13

**Other Authorities**

Colo. Rev. Stat. § 10-3-529 ................................................................................................. 9

Colo. Rev. Stat. § 10-3-504 ................................................................................................. 9

Colo. Rev. Stat. § 10-3-529 ............................................................................................... 11

*Agricultural Adjustment Act – Set-Off of Debts Due the United States by Farmers*, 37 U.S. Op. Atty. Gen. 215 (1933) ................................................................................................. 19

## INTRODUCTION

The issues presented by Colorado Health Insurance's ("Colorado Health") motion to dismiss are whether the Court has jurisdiction over the United States' Counterclaim under Rule 12(b)(1) and whether the Counterclaim adequately pleads a claim for relief under Rule 12(b)(6). As to jurisdiction, the Court previously recognized its own jurisdiction when granting the United States leave to plead the Counterclaim. *See* Docket No. 96. And the Court's jurisdictional statutes, 28 U.S.C. §§ 1503, 2508, as interpreted through 170 years of Supreme Court and Court of Claims precedent, firmly establish this Court's jurisdiction. On the merits, Colorado Health does not dispute that it owes the debts sought by the Counterclaim or offer any cogent reason why the United States is not entitled to judgment on those uncontested debts.[1] In these circumstances, this Court undoubtably has jurisdiction to enter a judgment in the United States' favor.

Beyond the discrete issues presently before the Court, Colorado Health also essentially argues that if the Court were to enter a judgment in the United States' favor, that judgment could not be satisfied through offset because of Colorado Health's state court insolvency proceedings. But as a condition of filing suit in this Court, Congress requires that a plaintiff, such as Colorado Health, be subject to offset in this Court, and Colorado Health's insolvency does not exempt it from Congress' express requirements. State law is silent on the precise offset issue before the Court, so no conflict exists with federal law. The Federal Circuit also did not address these issues in Colorado Health's prior suit, *Conway v. United States*, 997 F. 3d 1198 (Fed. Cir. 2021); the overlap between the parties here and in that case is not legally significant; and in any event, the

---

[1] To be sure, Colorado Health disputes the availability of interest on the debts it owes to the United States. *See* Supplemental Briefing ("Pl. Suppl. Br."), Docket No. 161, at 5, n.6. But federal law requires the imposition of interest on delinquent debts, 45 C.F.R. § 30.18, and Colorado Health cites no authority exempting it from that federal law. The alleged "interest on the balance rule" has no application in this case, much less this circuit, and state laws relating to interest do not regulate the business of insurance. *See* Oral Arg. Tr. at 50:2-51:15; U.S. Opp., Docket No. 112.

court of appeals did not (and could not) overrule the binding precedent of the Supreme Court or the Court of Claims confirming this Court's authority. Likewise, the decision in *Richardson v. United States*, 157 Fed. Cl. 342 (2021), has no relevance to the issues this Court must decide, and the decision has no foundation in the law.[2]

For these reasons, and the reasons provided in the United States' opposition brief and at oral argument, Colorado Health's motion to dismiss should be denied.[3]

## ARGUMENT

I. **THIS COURT HAS JURISDICTION OVER THE UNITED STATES' COUNTERCLAIMS AND OFFSETS REGARDLESS OF COLORADO HEALTH'S INSOLVENCY**

A. **Supreme Court And Court of Claims Precedent Unequivocally Establish This Court's Jurisdiction Over the United States' Counterclaims And Offsets As A Condition Of Suit Against The United States In This Court**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). The Court's "jurisdiction to grant relief depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and . . . such a waiver cannot be implied but must be unequivocally expressed." *See United States v. King*, 395 U.S. 1, 4 (1969). The waiver also "must be . . . strictly construed, in terms of its scope," in favor of the United States, *Lane v. Pena*, 518 U.S. 187, 192 (1996), and "with that conservatism which is appropriate in the case of a waiver of sovereign immunity and in the light of the history of the Court of Claims' jurisdiction[.]" *Sherwood*, 312 U.S. at 590-91.

---

[2] The United States is currently briefing *Richardson* before the Federal Circuit. *Richardson v. United States,* No. 22-1520 (Fed. Cir.). The opening brief is currently due July 8, 2022.

[3] In the event the Court denies Colorado Health's motion to dismiss, there would appear to be no impediment to the entry of judgment as sought by each party and a stipulated disposition may be appropriate. Alternatively, the United States recommends that the parties propose a briefing schedule so that the parties can move for summary judgment on their respective claims.

When the United States "gives consent to be sued it may levy any such conditions as it sees fit," *Kaufman v. United States*, 118 Ct. Cl. 91, 105 (1950), and "under such restrictions as it may think just," *Murray's Lessee v. Hoboken Land Improvement Co.*, 59 U.S. 272, 283 (1855). For example, the United States may (and does) require suits not sounding in tort that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States be brought in this Court. 28 U.S.C. § 1491; *see also Ex parte Bakelite Corp.*, 279 U.S. 438, 452 (1929) ("Nor do claimants have any right to sue on them unless Congress consents; and Congress may attach to its consent such conditions as it deems proper, even to requiring that the suits be brought in a legislative court specially created to consider them. The Court of Claims is such a court."). The United States also can "prescribe the forms of pleading and the rules of practice to be observed in such a suit." *McElrath v. United States*, 102 U.S. 426, 440 (1880).

A condition of suit in this Court is that the United States "have determined in a single suit all questions which involve mutual obligations between the government and a claimant against it." *Cherry Cotton Mills v. United States*, 327 U.S. 536, 539 (1946) (rejecting a "narrow interpretation" of the Court's jurisdictional statutes). The Court's jurisdictional statutes thus provide that this Court "shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff" filing suit in this Court, 28 U.S.C. § 1503, and that when "any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States," this Court "shall hear and determine such claim or demand both for and against the United States and plaintiff," 28 U.S.C. § 2508.

When the Court "finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable." 28 U.S.C. § 2508. The Court is "not at liberty, by interpretation, to limit or restrict the plain and broad terms of" its

jurisdictional statutes. *See Frantz Equip. Co. v. United States*, 122 Ct. Cl. 622, 630 (1952). Rather, the Court is "under statutory duty to recognize the undisputed claim for damages of the United States." *United States v. Munsey Trust Co.*, 332 U.S. 234, 240 (1947).

In this case, by seeking "the jurisdiction of this court for a judicial determination of [its] rights against the United States," Colorado Health is "subjected to . . . determination of whatever claims the United States may have against [it] which can be properly pleaded by way of *set-off, counterclaim, or claim for damages*." *Atl. Contracting Co. v. United States*, 35 Ct. Cl. 30 (1899) (emphasis added). The Supreme Court has long recognized that when a plaintiff, such as Colorado Health, "avails [itself] of the privilege of suing the government in the specialized court organized for that purpose, [it] may be met with a *set-off, counter-claim, or other demand* of the government, upon which judgment may go against him, . . . if the court, upon the whole case, is of opinion that the government is entitled to such judgment." *McElrath*, 102 U.S. at 440. That Colorado Health is subject to offset is one of "the conditions annexed by the government to the exercise of the privilege" to sue the United States in this Court. *McElrath*, 102 U.S. at 440.

The Court's jurisdictional statutes, and the Supreme Court and Court of Claims decisions interpreting those statutes, unequivocally establish this Court's jurisdiction and authority to offset Colorado Health's unpaid federal debts. No court in this circuit has *ever* held that this Court lacks authority to do so, and Colorado Health identifies no authority supporting a limitation on the Court's authority. Simply put, Colorado Health is required to accept the Court's authority to enter judgments and offsets in favor of the United States "as a condition upon which [it] may avail [itself] of the privilege of suing the government" in this Court. *Williams v. United States*, 289 U.S. 533, 581 (1933).

**B.     Colorado Health's Insolvency Does Not Deprive The Court Of Jurisdiction Or Authority To Enter A Judgment Or Offset**

The Court's jurisdiction and authority are not limited as a result of Colorado Health's insolvency. *Preuss v. United States*, 188 Ct. Cl. 469 (1969). In *Preuss*, the trustee of an insolvent company's estate argued "that it is not before this court for all purposes, and that it recognizes this court has jurisdiction to try its case against the government but does not recognize that it has jurisdiction to try the government's counterclaim against it." *Preuss*, 188 Ct. Cl. at 488. The Court of Claims soundly rejected such a "one-sided judicial procedure," holding: "When suit is filed here and the issues are joined, the parties are here for all purposes encompassed within the jurisdiction conferred on this court by Congress. This includes claims of a plaintiff against the United States and *counterclaims and set-offs* of the government against the plaintiff." *Id.* at 488-89 (emphasis added). As in *Preuss*, this Court should refuse Colorado Health's request that the Court "ignore the plain provisions of [28 U.S.C. §§ 1503, 2508] and deny the government *the right of set-off* in this court where the set-off can be asserted[.]" *Id.* at 487 (emphasis added). The Court should instead recognize that Colorado Health "chose this court and must abide by the laws under which it operates." *Id.* The federal laws on which this Court operates are not dependent on the solvency of those who come before the Court.

When federal law enables the collection of federal debts from insolvent insurers, federal law continues to operate unless a conflict exists with a state insurance law. *See Greene v. United States*, 440 F. 3d 1304 (Fed. Cir. 2006). In *Greene*, the United States collected a debt from an insurer undergoing state court insolvency proceedings, and the insurer's liquidator sought a refund, arguing that the debt "was incorrectly collected over the competing claims of policyholders[.]" *Id.* at 1307. The liquidator argued that the United States' collection of its debt ahead of policyholders violated state law that prioritized policyholder claims and that the McCarran-Ferguson Act, 15

5

U.S.C. § 1012(b), reverse preempted federal law. *Id.* at 1307-08. The Federal Circuit rejected that argument, finding that federal law prioritized the United States' claims, while the state statute at issue did "not explicitly provide for the priority" of policyholder claims over the federal government's claims. *Id.* at 1316. In other words, when "the state statute is silent" on the issue before the Court, federal law does not conflict with, but merely "supplements" state law. *Id.* at 1316-17.

Here, as in *Greene*, no conflict exists that would permit this Court's jurisdictional statutes to be reverse preempted by state law under the McCarran-Ferguson Act. Federal law provides this Court with jurisdiction to "render judgment . . . upon any set-off or demand by the United States," 28 U.S.C. § 1503, and to "hear and determine" a "setoff, counterclaim, claim for damages, or other demand" by the United States, *id.* § 2508. State law provides Colorado state courts with "jurisdiction to entertain, hear, or determine any complaint praying for the dissolution, liquidation, rehabilitation . . . , or receivership of any insurer . . ." Colo. Rev. Stat. § 10-3-504(1).[4] This case is not a liquidation proceedings, and state law says nothing about this Court entertaining the United States' counterclaims, much less rendering a judgment or offsetting against that judgment.

Moreover, while Colorado insolvency law explicitly *requires* offset of contractual debts, state law says *nothing* about offset of statutory debts. *Cf.* Colo. Rev. Stat. 10-3-529; *Conway*, 997 F. 3d at 1204 ("Section 10-3-529(1)'s plain language . . . allows offset of contractual obligations."). The is a difference between arguing that the statute does not *permit* non-contractual offsets and that the state insolvency law expressly *prohibits* non-contractual offsets. The former is true, and was addressed in *Conway*, while the latter is not, and was not addressed in *Conway*.

---

[4] There is a difference between arguing that the state insolvency statute does not *permit* non-contractual offsets and that the state insolvency law expressly *prohibits* non-contractual offsets. The former is true, while the latter is not, on the face of the statute. Moreover, as addressed below, *Conway* only had occasion to consider the former argument, not the latter.

Moreover, as addressed below, *Conway* only had occasion to consider the former argument, not the latter. The Court's jurisdictional statutes authorize the Court to offset federal debts against judgments, and state law says nothing about offset of these debts. A federal statute that permits offset, as a condition of the United States' sovereign immunity waiver, "cannot logically be said to render ineffective, displace, or impair "a [state] statute that is silent." *See Greene*, 440 F. 3d at 1316. Colorado Health's contrary arguments lack merit.[5]

The Court's exercise of its authority under section 1503 and 1208 also does not interfere with the state priority scheme. When a state insolvency scheme "prioritizes administrative expenses and policyholders over the federal government," offset "creates [an] exception[] to those priority rules," *see Conway*, 997 F. 3d at 1203, because it is "only the balance, if any, after the set-off is deducted which can *justly* be held to form part of the assets of the insolvent" and thus available for distribution in accordance with relevant priority rules, *Scott v. Armstrong*, 146 U.S. 499, 510 (1892). Thus, because offset is an exception to priority, the Court's exercise of offset, as mandated by Congress, would not interfere with state priority rules, which apply to the state court's possession and distribution of Colorado Health's assets. *See also Transit Cas. Co. v. Selective Ins. Co. of Se.*, 137 F.3d 540, 543 (8th Cir. 1998) (crediting argument that "set-offs merely establish the bounds of the pre-receivership assets and that the Insurance Code governs only the distribution of those assets, rather than their definition"); *FDIC v. Liberty Nat'l Bank & Tr. Co.*, 806 F.2d 961, 967 (10th Cir. 1986) ("Only the balance, if any, after the setoff is deducted

---

[5] Colorado Health correctly notes that during oral argument the United States' counsel stated that "we don't seek offset." Oral Arg. Tr. at 31:10-11. Although it is correct that the United States has not moved for entry of judgment or the exercise of offset at this stage of the proceedings, counsel's statements were in regard to the framing of the Counterclaim. To be clear, as demonstrated in this brief, the Court is authorized to enter offset to collect federal debts. However, as explained here and at argument, even if the Court does not enter offset, the United States is still entitled to judgment in its favor on the Counterclaim.

is considered an asset of the receivership."); *In re Liquidation of Realex Grp.*, 620 N.Y.S.2d 37, 39

(N.Y. App. Div. 1994) (applying same principle in state insurance liquidation); *Barnett Bank of*

*Jacksonville, N.A. v. State ex rel. Dept. of Ins.*, 507 So. 2d 142, 144 (Fla. 1st Dist. App. 1987)

("The offset permitted by [the state statute] is, by its very nature, a specie of preference. It requires

that qualifying mutual obligations be set off against each other and that 'the balance only shall be

allowed or paid.' Its purpose is to provide a preference to this limited extent. This is consistent

with [the priority scheme] because that section, by creating priorities of claims, also prefers some

creditors over others. We decline to limit the clear and unambiguous language of" the state offset

statute.").

In sum, this Court is authorized to entertain the United States' counterclaims and enter

judgment in its favor, and Colorado Health's insolvency, and the rules governing its liquidation, do

not conflict with or deprive the Court of authority. Nor would the Court's exercise of its authority,

including its offset authority, in this federal forum chosen by Colorado Health, interfere with

Colorado Health's insolvency proceedings.

### C.     State Law Can Only Reverse Preempts Federal Law Enacted Under The Commerce Clause and This Court's Jurisdictional Statues Were Not[6]

Because this Court's jurisdictional statutes were not enacted under the Commerce Clause,

they are not subject to reverse preemption under the McCarran Ferguson Act, 15 U.S.C. §§ 1011-

1015.[7] "The McCarran–Ferguson Act provides that statutes enacted pursuant to Congress's

Commerce Clause powers could not preempt state insurance laws unless the federal statute has

---

[6] At oral argument, counsel for Colorado Health stated that while the McCarran Ferguson Act was originally limited to statutes enacted by Congress under the Commerce Clause, that limitation no longer applies. *See* Oral Arg. Tr. at 19:24-20:18. As explained below, that is incorrect.

[7] The Commerce Clause refers to Article I, Section 8, Clause 3 of the Constitution, which gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]"

explicitly provided for such preemption." *Greene*, 440 F.3d at 1311.[8] *See also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 219 n. 18 (1979) ("The McCarran-Ferguson Act operates to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack."); *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 430-31 (1946) (noting that Congress, through the McCarran Ferguson Act, "clearly put the full weight of its power behind existing and future state legislation to sustain it from any attack under the commerce clause to whatever extent this may be done with the force of that power behind it, subject only to the exceptions expressly provided for"); *Cochran v. Paco, Inc.*, 606 F.2d 460, 463 (5th Cir. 1979) ("Congress wanted to ensure that no future federal legislation enacted under the Commerce Clause and not specifically related to insurance would be construed as an implied repeal of the McCarran Act.").[9]

"As the text itself makes clear, the point of McCarran–Ferguson's legislative choice of leaving insurance regulation generally to the states was to limit congressional preemption under the commerce power, whether dormant or exercised[,]" as derived from the Commerce Clause. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003). Therefore, the McCarran–Ferguson Act is

---

[8] Although the McCarran-Ferguson Act, in relevant part, refers broadly to an "Act of Congress," 15 U.S.C. §1012(b), the Supreme Court has addressed the legal climate surrounding the Act's passage, *Securities & Exchange Comm'n v. Nat. Securities, Inc.*, 393 U.S. 453, 458 (1969), and held that the Act merely "removed all Commerce Clause limitations on the authority of States to regulate and tax the business of insurance," *Western and Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 653 (1981). See also U.S. Dept. of Treasury v. Fabe, 508 U.S. 491, 499-500, 508 n.7 (1993) (discussing history of the Act and relying on statements from Congress).

[9] Senator Ferguson stated: "If there is on the books of the United States a legislative act which relates to interstate commerce, if the act does not specifically relate to insurance, it would not apply at the present time. Having passed the bill now before the Senate, if Congress should tomorrow pass a law relating to interstate commerce, and should not specifically apply the law to the business of insurance, it would not be an implied repeal of this bill, and this bill would not be affected, because the Congress had not . . . said that the new law specifically applied to insurance." 91 Cong. Rec. 481 (1945). *See also id.* at 1487 (remarks of Senator Ferguson).

limited to "reverse preempting" legislation passed through Congress' Commerce Clause authority. *Id.*

This Court's jurisdictional statutes were not enacted under the Commerce Clause, but through Congress' authority under Article I, Section 8, Clause 9, and Article III, Section 1, of the Constitution. U.S. Const., Art. I, cl. 9 ("The Congress shall have Power . . . To constitute Tribunals inferior to the supreme court."); *id*, Art. III, cl. 1 ("The judicial Power of the United States, shall be vested . . . in such inferior Courts as the Congress may from time to time ordain and establish"); *see also Altair Global Credit Opportunities Fund (A), LLC v. United States*, 138 Fed. Cl. 742, 764 (2018) ("the United States Constitution, Article I, Section 8, provides, in part, that "[t]he Congress shall have Power To ... constitute Tribunals inferior to the Supreme Court." U.S. CONST. art. I, § 8. Article III, Section 1 further provides that "[t]he judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1.").

And while Colorado Health seeks to expand the McCarran–Ferguson Act's "reverse preemption" framework beyond the Commerce Clause to other provisions of the Constitution, the Constitution prevents this Court from ruling so expansively. *See, e.g.*, *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 880-81 (1985) ("Although the McCarran–Ferguson Act exempts the insurance industry from Commerce Clause restrictions, it does not purport to limit in any way the applicability of the Equal Protection Clause"); *Amsouth Bank v. Dale*, 386 F.3d 763, 783 (6th Cir. 2004) ("[C]ourts tend to look unfavorably on claims of McCarran–Ferguson preemption of . . . the removal statutes so as to insulate that action from the federal courts."). Accordingly, the framework established by the McCarran–Ferguson Act does not apply when it comes to this Court's jurisdictional statutes and the authority exercised by this Court pursuant to those statutes.

II.   **CONWAY DID NOT OVERRULE 170 YEARS OF BINDING PRECEDENT HOLDING THAT THIS COURT CAN ENTER JUDGMENT ON THE UNITED STATES' COUNTERCLAIMS AND OFFSETS**

In the event that the Court enters judgment in the United States' favor on the Counterclaim, Colorado Health essentially argues that *Conway* precludes the Court from offsetting the United States' judgment against any amounts recovered by Colorado Health. Pl. Supp. Br. at 1-6. But nothing in *Conway* supports that argument or addresses (much less overrules) the contrary precedent of the Supreme Court or the Court of Claims that authorize this Court enter judgments and offsets.

In *Conway*, where HHS had administratively offset a debt pursuant to an ACA regulation, the government argued that "debts arising under the federal regulatory scheme, *i.e.*, the ACA and HHS' regulations implementing the ACA, are not subject to Colorado insolvency law," and the Federal Circuit thus considered "whether the federal scheme preempts state law fixing creditors' rights during insolvency." *Conway*, 997 F. 3d at 1206-07.[10] Because Congress was legislating in the insurance field through the ACA, the court of appeals required the government to "identify a clear and manifest intent [that the ACA] preempt Colorado law that fixes creditors' rights during insolvency." *Id.* at 1208. Given that the ACA "scheme" was "silent regarding state law that fixes creditor priority during insolvency . . ., combined with the presumption against preemption," the Federal Circuit concluded that neither Congress nor HHS intended to "preempt state law fixing creditors' rights during insolvency." *Id.* at 1211-14. In short, *Conway* only decided which "scheme" applies when federal and state insurance schemes conflict. The federal scheme at issue in *Conway* included an ACA regulation that permitted HHS to "net" payments; no claim in that case

---

[10] The United States Department of Health and Human Services ("HHS") oversees major provisions of the Affordable Care Act ("ACA").

involved the jurisdictional issues that dictate the outcome of this case or Colorado Health's motion to dismiss.

Conway has little, if any, substantive relevance to this case. First, this case does not involve competing insurance "schemes," but rather federal and state jurisdictional statutes. The absence of competing (or conflicting) insurance schemes is significant because Conway's application of the "presumption against preemption" standard was premised on Congress legislating in the insurance field in the ACA. Conway, 997 F. 3d at 1207-08. In this case, unlike Conway, the United States' rights, and the Court's authority, are grounded in jurisdictional statutes and Congress' waiver of sovereign immunity, which apply regardless of the plaintiff and the statutory basis of the debt. In these circumstances, federal law supplements state law as state law does not (and cannot) provide a means for the parties to resolve their claims against each other. Conway's preemption analysis has no application.

Second, Conway does not address this Court's jurisdiction over the United States' Counterclaim or the Court's authority to offset federal debts against judgments. Nor could it. The United States did not assert a counterclaim in Conway, and as such, the Federal Circuit did not have occasion to consider those issues. Colorado Health does not argue otherwise, but attempts to construe Conway as implicitly overruling 170 years of unbroken, binding precedent that recognizes the Court's authority to offset against a judgment entered in favor of a plaintiff, such as Colorado Health, who avails itself of the "privilege" of suing the United States in this Court. Supra at 4-7.[11]

---

[11] Conway did not (and could not) overrule Supreme Court or Court of Claims precedent or decisions by other panels of the Federal Circuit. See Gevyn Const. Corp. v. United States, 827 F. 2d 752, 754 n.2 (Fed. Cir. 1987) ("The decisions of the Court of Claims are binding precedent upon this panel and cannot be overruled except by the full court sitting in banc. Similarly, the decisions of the Court of Claims are also binding precedent on the Claims Court.") (internal citation omitted); South Corp. v. United States, 690 F.2d 1368, 1370, n.2 (Fed. Cir. 1982) (en banc) (adopting, as "an established body of law as precedent . . . [t]hat body of law represented by the

To be sure, *Conway* mentions sections 1503 and 2508 in a single paragraph of dicta,[12] stating that the trial court had "heard the government's offset demand and determined it was not meritorious[.]" *Conway*, 997 F. 3d at 1215 (alterations omitted). But *Conway* does not address the existing body of authority concerning sections 1503 and 2508, *supra* at 4-11, and the expansive reading advocated by Colorado Health would upend that authority. The offset that *Conway* "heard" and "determined" was not based on sections 1503 or 2508, but on an administrative offset, conducted by the agency itself, without court supervision, based on its regulatory authority under 45 C.F.R. § 156.1215(b) to "net" ACA payments. *Conway*, 997 F. 3d at 1202-03. Although Colorado Health describes this as a "distinction without a difference," Pl. Supp. Br. at 2, there is a critical difference: "the power of [a federal agency] in relation to wholly different legislation, has no bearing on the power of [this Court] under" the Court's jurisdictional statutes. *Cherry Cotton Mills*, 327 U.S. at 538.

In any event, although *Conway* posits that sections 1503 and 2508 do not provide the government with "substantive rights," that point is based on the court of appeals' (and Colorado Health's) erroneous statement that the Court's jurisdictional statutes are part of the Tucker Act. *Conway*, 997 F. 3d at 1215 ("[T]he government argues *two provisions of the Tucker Act*, 28 U.S.C. §§ 1503 and 2508, preclude any money judgment.") (emphasis added); Pl. Supp. Br. at 6 ("The

holdings of the Court of Claims and the Court of Customs and Patent Appeals announced before the close of business on September 30, 1982").

[12] The Federal Circuit defines dicta as "statements made by a court that are unnecessary to the decision in the case, and therefore not precedential (though [they] may be considered persuasive)." *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) (quotation omitted). "Because statements made in dicta do not implicate the substantive holding of the case, they cannot be considered binding authority." *Kastigar v. United States*, 406 U.S. 441, 454-55 (1972) (citation omitted); *see also Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("It is well established that a general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding.").

*Conway* Court . . . rul[ed] that nothing in the Tucker Act 'creates any substantive right.'"). But the Tucker Act is codified at 28 U.S.C. § 1491, and sets forth the framework for suits *against* the United States in this Court, rather than counterclaims *by* the United States. The distinction  and the error are significant: While it is true that Congress does not provide claimants with substantive rights in waiving immunity in the Tucker Act, *United States v. Testan*, 424 U.S. 392, 398 (1976), Congress did expressly condition the waiver in the separate jurisdictional statutes at issue here and thereby provided the United States with the right to seek and obtain recovery through offset or entry of judgment upon its counterclaims. The Federal Circuit's brief comments about sections 1503 and 2508 are dicta and should be treated as such.

  <u>Third</u>, *Conway* expressly declined to decide whether the United States has the right to have a judgment against Colorado Health satisfied through offset under 31 U.S.C. § 3728.[13] Section 3728 requires the "Secretary of the Treasury [to] withhold paying . . . part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government." 31 U.S.C. § 3728(a). In construing this statute, the Federal Circuit properly recognized that section 3728 "may prevent Conway from enforcing his judgment against the government," but the court of appeals did "not reach that issue." *Conway*, 997 F. 3d at 1215-16. Thus, *Conway* explicitly recognized that Colorado Health may not enforce a judgment if the United States ultimately presents its debt to the Secretary of the Treasury, and the Secretary withholds the amounts owed to the United States pursuant to 31 U.S.C. § 3728. Colorado Health's contrary reading of *Conway* has no basis in the opinion.

---

[13] Although Colorado Health raises the issue, the proper scope of 31 U.S.C. § 3728 is not properly before the Court at this time. Moreover, the Court need not reach that issue if it merely issues a judgment, or exercises its authority to offset the judgment due the United States against Colorado Health's recovery.

In these circumstances, the Court's exercise of its offset authority would not be inconsistent with *Conway*. Although *Conway* construed the Colorado statute as not permitting offset of statutory debts, that construction was in response to the government's argument that the statute permitted such offsets. This case raises the flipside of that issue, which is whether the Colorado statute expressly prohibits offset of non-contractual debts (it does not). *Conway* simply does not control the outcome at issue in this case.

## III.   THE COURT SHOULD NOT GIVE *RICHARDSON* ANY WEIGHT

Relying on *Richardson*, Colorado Health argues that the Court's exercise of the authority provided by Congress in 28 U.S.C. §§ 1503 and 2508 would constitute a "collateral attack" on the state court insolvency proceedings, and further seeks a declaration that the Secretary of the Treasury is forbidden from exercising authority provided by Congress in 31 U.S.C. § 3728, even though the Secretary is not a party and has not taken or threatened to take any action against Colorado Health. Pl. Supp. Br. at 7-11. *Richardson* has no relevance to this case, the decision has no foundation in the law, and the United States is currently briefing the decision's errors in the Federal Circuit.

In *Richardson*, HHS loaned a now-defunct ACA insurer money, and the parties disputed whether their contract preserved HHS's right to offset, which was permissible under (Nevada) state insolvency law. A deputy receiver of the insurer's estate, a law firm retained by the receiver, had previously written a letter to HHS regarding the availability of offset. Although the court was inclined to agree with the government that HHS's offset was permissible, the court ultimately read *Conway* as giving the deputy receiver exclusive authority to determine the United States' rights. *See Richardson*, 157 Fed. Cl. at 361 n.23 ("the Nevada Offset Statute seems to permit the assertion of an offset even by a low priority creditor"), & 355 ("the government likely is correct that Nevada

state law generally permits the assertion of an offset"). The court in *Richardson* also made new law by holding that the United States' sovereign immunity is no longer implicated by a receiver's determination of the United States' rights. *Id.* at 372. *Richardson* erred in reaching these holdings.

*Conway* does not hold that any determination flowing from the liquidation process is binding on the United States. And nothing in *Conway* addresses the power of a state court (or deputy receiver appointed by the receiver) to adjudicate federal rights during a "liquidation process." *Richardson*'s expansive reading of *Conway* has no foundation in the text of the opinion and upends well-settled authority from the Supreme Court and the Federal Circuit requiring a waiver of sovereign immunity before a tribunal can decide federal rights. *Supra* at 4-7.

*Richardson*'s holding that no waiver of sovereign immunity is required is based on a narrow line of cases involving a state court's in rem jurisdiction over property in the state court's possession, which was not the situation in that case (or this case). *Richardson*, 157 Fed. Cl. at 372 (citing *United States v. Bank of New York & Trust Co.*, 296 U.S. 463 (1936); *Leiter Mins., Inc. v. United States*, 352 U.S. 220 (1957)).[14] Well-established principles of in rem jurisdiction do not support *Richardson*'s (or Colorado Health's) novel assertion of its reach—*i.e.*, that an official appointed by a state court can determine the United States' federal rights, much less enjoin the United States from exercising its federal right to offset. Any determination by a state actor as to the

---

[14] Both *Bank of New York* and *Leiter* concern a state court's in rem jurisdiction over property in a state court's exclusive possession. In *Bank of New York*, a state court held possession of funds of three insurance companies, and the United States sought an order in federal court requiring the state court to turn over the funds. 296 U.S. at 475-76. The Supreme Court denied the request, holding that the state court's in rem jurisdiction over the funds in its possession required the United States to resolve its claim before the state court. *Id.* at 479-80; *see also Leiter*, 352 U.S. at 227 (explaining that because "the state court had obtained jurisdiction over the funds first . . . the litigation should be resolved in that court").

United States' offset rights is not directed at any res and does not operate in rem.[15] Thus, *Richardson* was wrong to conclude that the United States' sovereign immunity is not implicated when a state court (or deputy receiver operating under a state court's authority) purports to determine the United States' rights and obligations.

*Richardson*'s determination that a deputy receiver could deprive the United States of its right to payment through offset is also counter to binding authority concerning post-insolvency deprivation of the United States' rights. "The Supreme Court of the United States has held that [the United States'] federal priority right attaches upon insolvency and is indefeasible." *Greene*, 440 F. 3d at 1310 (citing *Massachusetts v. United States*, 333 U.S. 611, 625 (1948)). In *Greene*, the Federal Circuit recognized that "a state cannot retroactively deprive the federal government of its priority rights—not even where it does so explicitly[.]" *Id.* at 1314 (emphasis in original). Because the United States' right to payment is "indefeasible as of the date of insolvency . . . the government's priority right cannot be altered by events that occur post-insolvency[.]" *Id.* The notion that Colorado Health's liquidator was empowered to deprive the government of its rights during the insolvency process is wrong.

---

[15] Sovereign immunity extends to any compulsive (or preclusive) state action, not only formal lawsuits naming the United States as a defendant. *See United States v. Rural Elec. Convenience Co-op. Co.*, 922 F.2d 429, 433 (7th Cir. 1991) ("The general rule is that a suit is against the sovereign if the judgment would expend itself on the public treasury or domain, or interfere with public administration, . . . or if the effect of the judgment would be to restrain the Government from acting or compel it to act.") (internal quotations omitted).  Thus, while a state court may have in rem jurisdiction over an insurer's assets and subject matter jurisdiction to administer claims and determine distributions, no waiver of sovereign immunity subjects the United States to the jurisdiction of the state court such that the state court can enjoin or compel any action by the United States. *See Ruthardt v. United States*, 303 F. 3d 375, 384 (1st Cir. 2002) (citing *United States v. Summerlin*, 310 U.S. 414, 417 (1940) ("The Supreme Court long ago held that (presumptively) claims of the United States cannot be defeated by state statutes of limitations")); *Cal. Ins. Guarantee. Ass'n v. Burwell*, No. 2:15-cv-0113-ODW, 2016 WL 1050190, *4 (C.D. Cal. Mar. 16, 2016) (holding that the McCarran-Ferguson Act, 15 U.S.C. § 1012, did not waive sovereign immunity so as to subject the United States to claims bar date in state insurance insolvency statute).

In any event, contrary to *Richardson*'s admonition, even if a state court (or liquidator) purported to have jurisdiction, collateral attacks are permitted "where the issue is the waiver of [sovereign] immunity." *United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 514 (1940); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 n.6 (2009) ("The rule [against collateral attacks] is not absolute, and we have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack."); *Kalb v. Feuerstein*, 308 U.S. 433, 439-440, 444 (1940) (where debtor's petition for relief was pending in bankruptcy court and federal statute affirmatively divested other courts of jurisdiction to continue foreclosure proceedings, state-court foreclosure judgment was subject to collateral attack); *Durfee v. Duke*, 375 U.S. 106, 114 (1963) ("[T]he general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling.").

As to 31 U.S.C. § 3728, *Richardson*'s statements also are not entitled to any weight. Section 3728 requires the "Secretary of the Treasury [to] withhold paying . . . part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government," and requires that the Secretary "have a civil action brought if one has not already been brought." 31 U.S.C. § 3728. But section 3728 is a direction from Congress to the Secretary of the Treasury, who was not a party to the *Richardson* proceedings and was not alleged to have taken or threatened to take any action against the plaintiff in that case. The parties in *Richardson* did not address, raise, or rely on section 3728; rather, the court did "so in the interest of avoiding future, - and, in [that court]'s view, unnecessary - proceedings." *Richardson*, 157 Fed. Cl. at 374. But the Court of Federal Claims does not issue advisory opinions, and there was no basis for the court, on its own volition and without any foundation, to opine on issues not before the court or raised or briefed by the parties. *See King*, 395 U.S. at 4 ("[C]ases seeking relief other than

18

money damages from the Court of Claims have never been within its jurisdiction.") (internal

quotations omitted). For these reasons, the resulting statements should not be viewed as persuasive

by this Court.[16]

## CONCLUSION

For these reasons and the reasons set forth in the United States' brief and at argument, the

United States requests that the motion to dismiss be denied.

Respectfully submitted,

Dated:  June 8, 2022

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General
Civil Division

RUTH A. HARVEY
Director
Commercial Litigation Branch

KIRK T. MANHARDT
Deputy Director

 /s/ Terrance A. Mebane
TERRANCE A. MEBANE
MARC S. SACKS
FRANCES M. MCLAUGHLIN
PHILLIP SELIGMAN
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Phone: (202) 307-0493
terrance.a.mebane@usdoj.gov

*Attorneys for the United States of America*

---

[16] Illustratively, because the issue was not before the court in *Richardson,* the court had no occasion to even consider authority interpreting issue. *Cf. Agricultural Adjustment Act – Set-Off of Debts Due the United States by Farmers*, 37 U.S. Op. Atty. Gen. 215 (1933)  (interpreting the precursor to 31 U.S.C. § 3728).