# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Health Republic Insurance Company,

        Plaintiff, on behalf of itself and all others similarly situated,

vs.

United States of America.

        Defendant.

Case No. 16-259C

Judge Kathryn C. Davis

## HEALTH REPUBLIC INSURANCE COMPANY'S RESPONSE TO THE UNITED STATES' SUPPLEMENTAL BRIEF

There are two fundamental problems with the United States' Supplemental Brief.

*First*, ignoring this Court's Order, the United States' Supplemental Brief ranges far beyond the two cases the Court instructed the parties to discuss, and includes argument regarding Colorado HealthOp's Motion to Dismiss largely untethered from either *Conway v. United States*, 997 F.3d 1198 (Fed. Cir. 2021) or *Richardson v. United States*, 157 Fed. Cl. 342 (2021). Colorado HealthOp accordingly respectfully moves the Court to strike pages 2-4 and 8-10 of the United States' Supplemental Brief.[1]

*Second*, the arguments the Government does make about *Conway* and *Richardson* are unpersuasive.

## I.   The Government Fails Meaningfully To Distinguish *Conway*

The Government's brief contains four arguments regarding *Conway*. None is persuasive.

### i.   Colorado Law Prohibits The Offsets The Government Seeks

First, the Government argues that *Conway* "did not address" whether non-contractual offsets were actually "prohibited" in Colorado. As a result, according to the Government, there is "no conflict" between Colorado's insolvency law and a federal law the Government says would allow a Government offset. *See generally* United States Supplemental Brief ("Gov't Br.") at 6-8. The Government's argument has no support and is *directly* contradicted by *Conway*.

---

[1] The parties were ordered to file "[s]upplemental briefing on decisions in *Conway v. United States*, 997 F.3d 1198 (Fed. Cir. 2021) and *Richardson v. United States*, 157 Fed. Cl. 342 (2021)." Dkt. No. 157. Pages 2-4 and 8-10 of the United States' Supplemental Briefing do not even cite those cases. While Colorado HealthOp has endeavored to respond to each of the Government's arguments herein, including the arguments unrelated to *Richardson* and *Conway*, should the Court require supplemental briefing on, *e.g.*, issues relating to the commerce clause's relationship to the McCarran-Ferguson Act (*see* Gov't Br. at 8-10), something not discussed in *Conway* or *Richardson* (but already covered in the parties' Motion to Dismiss papers) Colorado HealthOp respectfully requests the Court to so-order. As explained below, however, the Court need not reach that question, because *Conway* and *Richardson* alone mandate dismissal.

1

> In its briefing, the Government summarizes its own argument as follows:
>
> [w]hile Colorado insolvency law explicitly *requires* offset of contractual debt, state law says *nothing* about offset of statutory debts…The [sic] is a difference between arguing that the statute does not *permit* non-contractual offsets and that the state insolvency law expressly *prohibits* non-contractual offsets. The former is true, and was addressed in *Conway*, while the latter is not, and was not addressed in *Conway*. Moreover, as addressed below, *Conway* only had occasion to consider the former argument, not the latter. [sic].

Gov't Br. at 6-7 (emphasis in original). The argument is nonsensical. If something is "not permitted," it is also "prohibited." *See* Collins English Dictionary, "Prohibit" ("1. To refuse to permit; forbid by law or by an order").[2] If Colorado does not permit non-contractual offsets, it has prohibited them.

The Government's argument is also prohibited by *Conway*'s actual text. As the Federal Circuit explained regarding Colorado law, "[a]fter considering all relevant sources of authority, we hold that Colo. Rev. Stat. § 10-3-529(1) provides an offset right *that is limited to contractual obligations*." *Conway*, 997 F.3d at 1205 (emphasis added). However described – as a "prohibition," as "not permitted," or as "limited to contractual obligations" – the binding authority from the Federal Circuit is clear: no offsets are available in Colorado for the Government or anyone else apart from the contractual ones described in the insolvency priority statute. The Government's statement that Colorado state law "says *nothing* about offset of statutory debts" is not true: as the *Conway* court makes clear, Colorado law does not allow offsets from statutory debts, full stop. *Id*.

    ii.    *Offsets Are Not An "Exception" For Purposes Of Priority*

---

[2] Available at
https://www.collinsdictionary.com/us/dictionary/english/prohibit#:~:text=verb%20transitive,to%20prevent%3B%20hinder

2

The Government next argues, as a general matter, that "offsets" are an exception to the state priority rules, Gov't Br. at 7, and cites *Scott v. Armstrong*, 146 U.S. 499 (1892); *Transit Cas. Co v. Selective Ins. Co. of Se.,* 137 F.3d 540, 543 (8thCir. 1998), *FDIC v. Liberty Nat'l Bank & Tr. Co.*, 806 F.2d 961, 967 (10th Cir. 1986), and *In re Liquidation of Realex Grp.*, 620 N.Y.S. 2d 37, 39 (N.Y. App. Div. 1994). The Government made the exact same argument in their briefing before the Federal Circuit in their opening *Conway* brief, citing all four of *Armstrong*, *Transit Cas. Co.*, *Liberty Nat'l Bank*, and *In re Liquidation of Realex Grp* (in the same order) for the proposition that creditors "enjoy an equitable right of offset."[3] *Conway* plainly rejected this argument and held that "[a]llowing offset beyond the plain terms of §10-3-529 would disrupt that priority order" and "render §10-3-529 superfluous." *Conway*, 997 F.3d at 1206.  So-too here.

>   iii.   Conway *Expressly Forecloses The Government's Argument That 28 U.S.C. §§ 1503 and 2508 Grant It An Offset Right*

Next, the Government insists that 28 U.S.C. §§ 1503 and 2508 grant it a right to statutory offset and that this Court should ignore as "dicta" the Federal Circuit's conclusion in *Conway* to the contrary. *See* Gov't Br. at 10-15.[4] The Government's argument is unsupportable.

As it argued in the opposition to the motion to dismiss here,[5] in their Opening Brief before the Federal Circuit in *Conway*, the Government stated that it was not appropriate for the Federal Circuit to have entered a money judgment, because, by operation of 28 U.S.C. §§ 1503 and 2508, that money judgment should have included the Government's claim of setoff.[6] Using

---

[3] *See Conway v. United States*, No. 2020-1292, Opening Brief For the United States, at 28-29.
[4] *See also*, *generally*, Gov't Br. at 2-5, describing broadly the Government's views with respect to §§ 1503 and 2508 with no discussion of that discussion's application to the rulings in *Conway* or *Richardson*.
[5] *See*, *e.g.*, Dkt. No. 112 at 11.
[6] Conway v. United States, No. 2020-1292, Opening Brief For the United States, at 31-33.

3

the same language it used in its Motion to Dismiss Opposition here,[7] the Government in *Conway* urged that §§ 1503 and 2508 "impose a mandatory duty to give effect to the Government's offsets."[8] The Government further urged before the *Conway* court that this duty was not "contingent on the financial condition of the plaintiff," and that these statutes accordingly mean that the trial court "should have accounted for that offset and reduced any judgment to zero."[9]

The *Conway* court considered the Government's argument and rejected it as a core element of its opinion – not in "dicta" as the Government now claims. The *Conway* Court's analysis went as follows: it analyzed the Colorado insurance priority statute, Colo. Rev. Stat. § 10-3-529, determined that the Colorado statute mandated that only certain inapplicable contract claims were subject to offset, and then considered whether *any* other law – including state common law, federal law, or "other federal statutes" – somehow altered that conclusion. *See Conway*, 997 F3d at 1215. Among those "other federal statutes" considered – unsurprisingly given the Government's extensive briefing on the matter before the *Conway* court – were 28 U.S.C. §§ 1503 and 2508. The Federal Circuit recognized that the Government was looking to §§ 1503 and 2508 "for a right to offset that it could not find in either Colorado law or federal law." *Conway*, 997 F.3d at 1215. It accurately quoted the Government's briefing on the matter. *Id*. It then determined that neither 28 U.S.C. § 2508 or §1503 create a separate right to offset. *Id*. The *Conway* Court further explained that the Court of Claims meets any jurisdictional requirements of, e.g., § 2508, even where it determines no offset right actually exists by operation of Colorado's priority statute. Quoting from § 2508, the *Conway* Court stated:

---

[7] Dkt No. 112 at 12.
[8] Conway v. United States, No. 2020-1292, Opening Brief For the United States at 31. *See also generally* Gov't Br. at 2-4.
[9] *Id*. at 33.

> Here, the Claims Court "hear[d]" the government's offset demand and "determine[d]" it was not meritorious because neither state nor federal law affords the government a right to offset. In doing so, the Claims Court fulfilled its § 2508 obligations.

*Id.* In other words, the *Conway* Court ruled that, when the Court of Claims dismissed the Government's offset demand as violative of a state priority statute, the Court of Claims nevertheless had fulfilled any jurisdictional obligation created by §§ 1503 and 2508. The Government takes issue with the Federal Circuit's conclusions, and complains, *e.g.*, that the Federal Circuit mislabeled §§ 2508 and 1503 as portions of the Tucker Act. Gov't Br. at 13. But however named, the Federal Circuit made clear in its core opinion that no portion of §2508 or §1503 grants the Government an offset right not recognized under Colorado state law.

The Federal Circuit's authority is binding, controlling precedent. It also makes sense: if this Court, like the court in *Conway*, dismisses the Government's claim for offset, it will, like the court in *Conway*, have "fulfilled its §2508 obligations" by hearing, even if ultimately rejecting, the Government's argument for the offset.

    iv.        Conway *was silent on 31 U.S.C. § 3728*

Finally, the Government declares that "*Conway* explicitly recognized that Colorado Health may not enforce a judgment if the United States ultimately presents its debt to the Secretary of the Treasury, and the Secretary withholds the amounts owed to the United States pursuant to 31 U.S.C. § 3728." Gov't Br. at 14. That statement is not correct. The *Conway* Court stated in fact that "the government argues any judgment would be futile under 31 U.S.C. § 3728," but that the Government's argument is "self-defeating," because "[b]y its terms, §3728 only applies if 'a judgment' has been entered." As a result, the *Conway* Court expressly "d[id] not reach that issue here," apart from finding that § 3728 does "not prevent the Claims Court from entering judgment" in favor of Colorado HealthOp. *Id*. at 1216.

5

## II. Richardson Is Persuasive Authority Counseling Dismissal

The Government takes issue with three purported *Richardson* holdings. The Court should not credit any of its arguments.

### i. *The* Richardson *Court Read* Conway *Correctly*

First, the Government states broadly that the *Richardson* Court read *Conway* as holding "that any determination flowing from the liquidation process is binding on the United States," and that such a reading is wrong. Gov't Br. at 16. What *Richardson* in fact held was that the "government is bound by the…state liquidation proceedings, like any other creditor, and cannot collaterally attack the results of those proceedings by asserting an administrative offset." *Richardson*, 157 Fed. Cl. at 372. This is a natural reading of *Conway*. *See Conway*, 997 F.3d at 1204 ("Put simply, the government argues its ACA debts take priority over all other creditors' claims during Colorado insolvency proceedings…We do not agree."). *Richardson* applied the *Conway* Court's straightforward conclusion that if a state priority law does not recognize the federal government's offset, then the federal government's offset is not available.

### ii. Richardson's *Statement Regarding Sovereign Immunity Was Grounded In Extensive Case Law*

Next, the Government states, without quoting from *Richardson*, that "*Richardson's* holding that no waiver of sovereign immunity is required is based on a narrow line of cases involving a state court's in rem jurisdiction over property in the state court's possession, which was not the situation in that case (or this case)." Gov't Br. at 16-17.[10]

---

[10] The Government also makes a similar argument, untethered entirely from either *Richardson* or *Conway*, in Part I.A of its Response. *See* Gov't Br. at 2-4. As explained infra, the Supreme Court caselaw makes clear that sovereign immunity concerns will not "require," Gov't Br. at 4, this Court to accept an offset.

6

The Government again ignores what the *Richardson* Court actually ruled and the case law undergirding that ruling. As discussed in Colorado HealthOp's opening brief, the *Richardson* court considered a range of circuit level case law applying McCarran-Ferguson reverse preemption, including with respect to its application of jurisdictional statutes. In particular, *Richardson* cited *Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998), in which the Fifth Circuit concluded that an action that otherwise would have been before an arbitrator would be reverse-preempted by McCarran-Ferguson because the arbitral action would have taken the matter outside of the state's insolvency scheme. *See Richardson*, 157 Fed. Cl. at 371. Citing *United States v. Bank of New York & Trust Co.*, 296 U.S. 463 (1936) and *Leiter Mins., Inc. v. United States*, 352 U.S. 220 (1957)), the *Richardson* court ruled that its holding that "the government here should not be able to obtain – via the assertion of an administrative offset – that which could not be obtained in a direct suit against the Receiver" does not "implicate[] sovereign immunity concerns." *Id*. The Government insists that the Supreme Court case law is "inapposite" because those cases were part of a "narrow line" that concerned "in rem jurisdiction over property in the state court's possession." Gov't Br. at 16.

The Government misreads the case law. The cases the *Richardson* court cites explain that, in cases like liquidations where there are multiple creditors with competing claims, there is no sovereign immunity concern where the Government is treated as one such creditor. They even involved insurance laws. The *Leiter* court summarized the *Bank of New York* facts and holding:

> The United States was claiming by assignment certain funds of three Russian insurance companies that were being held in the custody of a state court, in connection with the liquidation of the companies, subject to court orders concerning distribution to claimants under the state insurance laws. On the basis of this claim, the United States sought to enjoin distribution of the funds and to require payment of them to it. This Court, affirming dismissal of the complaints and denial of the injunction, held that the state court had obtained jurisdiction over the funds first and that the litigation should be resolved in that court. The Court also noted that there were numerous other claimants,

7

> indispensable parties, who had not been made parties to the federal court suit. In remitting the United States to the state court, the Court saw no 'impairment of any rights' of the United States or 'any sacrifice of its proper dignity as a sovereign.'

*Leiter Mins., Inc. v. United States*, 352 U.S. 220, 227 (1957). The *Bank of New York* Court also explained that the important issue is not that the state court had actually seized property, but that as a practical matter there occur situations where "suits are brought to marshal assets, administer trusts, or liquidate estates," *Bank of New York*, 296 U.S. at 477, such that the property is brought into one court's singular control for equitable distribution. *Id*. at 476.

So-too here, and so-too in *Richardson*. As the *Leiter* Court explained, the United States may, without impairment to its sovereign dignity, be treated "like any private claimant, [to make] a claim against funds that it never possessed and that were in the hands of depositaries appointed by the state court." 352 U.S. at 227. That is the situation here: Colorado HealthOp is in liquidation and there are multiple claimants to its assets, the United States among them (it has so-filed a claim). The *Conway* Court explained that the United States cannot "leapfrog other insolvency creditors through offset…rather than paying its debt in full and making a claim…as an insolvency creditor." *Conway*, 997 F.3d at 1201.  In other words, *Conway* mandates the United States be treated "like any private claimant." *Leiter*, 352 U.S. at 227.  The *Richardson* court's application of the *New York* and *Leiter* line of cases was sound. The Government's statements that it may make a collateral attack on Colorado HealthOp's orderly liquidation in order to protect its sovereign immunity, Gov't Br. at 18, has no support.

    iii.    *The Court of Claims Correctly Ruled In* Richardson *That The Government Cannot Use § 3728 To Leapfrog Other Creditors*

The Government insists the *Richardson* court's discussion of 31 U.S.C. § 3728 "should not be viewed as persuasive" Gov't Br. at 19 because analysis of § 3728 was not strictly necessary for the *Richardson* court's holding. But the Government pointedly declines to discuss

8

what the *Richardson* court actually wrote: whether essential to its holding or dicta, the *Richardson* court's analysis was sound and persuasive.

31 U.S.C. § 3728 is an instruction to the Secretary of the Treasury to "withhold paying…part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government," and instructs the Secretary to "have a civil action brought if one has not already been brought." 31 U.S.C. § 3728. The Government has signaled it will use a deduction per 31 U.S.C. § 3728 irrespective of the Colorado liquidation process. The *Richardson* court explained that doing so would be inappropriate. First, it repeated its ruling that "the government is not entitled to collect any amounts…until superior creditors…are satisfied." *Richardson*, 157 Fed. Cl. at 375. It then explained that until such time as the Government is granted a recovery after superior creditors, "there is nothing for the Treasury to setoff, and any civil action by the government to recover…would be barred as res judicata." *Id*. So-too here. The Government is owed nothing until superior creditors are satisfied. Until then, there is nothing for the Treasury to set-off.

### III. The Government's Arguments Regarding The Commerce Clause Are Beyond The Scope Of this Briefing And Wrong

Finally, the Government suggests that McCarran-Ferguson preemption should not apply where the law being preempted is not enacted under the Commerce Clause. *See* Gov't Br. at 8- 10. This argument has nothing to do with any holding from either *Conway* or *Richardson*, and it is not appropriate for the Government to raise it here. Indeed, the Government already raised the

argument in its Opposition to the Motion to Dismiss,[11] and Colorado HealthOp responded to it on Reply.[12]

The Government is also wrong. In brief, and as explained in Colorado HealthOp's Reply in support of the motion to dismiss, Courts around the country have routinely ruled that McCarran-Ferguson will reverse-preempt a general jurisdictional statute that would otherwise interfere with the state's priority scheme, and do not merely apply it in circumstances involving commerce. *See* Dkt. 116 at 4-7. *See also*, *e.g.*, *W. Ins. Co. v. A & H Ins., Inc.*, 784 F.3d 725 (10th Cir. 2015) (dismissing appeal of district court ruling finding reverse preemption of federal diversity jurisdiction statute); *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277 (10th Cir. 1998) (statutory stay reverse-preempts jurisdiction conferred by Federal Arbitration Act); *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995) (arbitral jurisdiction, including foreign jurisdiction under Convention on the Recognition and Enforcement of Foreign Arbitral Awards, was reverse preempted by Kentucky Liquidation Statute).

## IV.    Conclusion

For the above-stated reasons, and for the reasons given in Colorado HealthOp's Opening Brief, both *Conway* and *Richardson* mandate dismissal of the Government's counterclaim.

Dated: June 22, 2022                                         Respectfully submitted,


                                                             QUINN    EMANUEL    URQUHART    &
                                                             SULLIVAN, LLP

                                                             */s/ Stephen A. Swedlow*
                                                             Stephen A. Swedlow

---

[11] *See* Dkt. 112 at 10 ("The McCarran-Ferguson Act is thus limited to reverse preempting legislation passed through Congress' Commerce Clause authority.").
[12] *See* Dkt 116 at 4-7.

stephenswedlow@quinnemanuel.com
191 North Wacker Drive
Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

J.D. Horton
jdhorton@quinnemanuel.com
Adam B. Wolfson
adamwolfson@quinnemanuel.com
865 S. Figueroa Street
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Colorado HealthOp and the Class*