**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY,<br><br>    Plaintiff,<br>    on behalf of itself and all others<br>    similarly situated,<br><br>  vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 1:16-cv-259C-KCD<br>(Judge Davis) |
| COMMON GROUND HEALTHCARE COOPERATIVE,<br><br>    Plaintiff,<br>    on behalf of itself and all others<br>    similarly situated,<br><br>  vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 1:17-cv-00877-KCD<br>(Judge Davis) |

**CLASS COUNSEL'S OPPOSITION TO OBJECTORS' MOTION FOR AN ACCOUNTING AND DISCOVERY**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

ARGUMENT ........................................................................................................................6

I.     ANY ISSUE REGARDING PAYMENT OF A REFUND IS PREMATURE ................6

II.    OBJECTORS ARE NOT ENTITLED TO THE RELIEF THEY SEEK ...........................6

    A.    There Is No Equitable Or Fiduciary Basis To Order An Accounting Or
Sequestration ..........................................................................................................7

        1.    Withdrawing Fees From A Court-Supervised Common Fund
Pursuant To A Final And Unstayed Judgment Raises No Equitable
Or Fiduciary Issues ....................................................................................7

        2.    Courts Routinely Reject Demands Like Those Objectors Make
Here ............................................................................................................9

        3.    Rule 1.15 Does Not Apply Here, And Class Counsel Did Not
Violate Any Ethical Rules ........................................................................12

        4.    There Is No Basis For An Accounting ......................................................17

        5.    There Is No Basis For Sequestration .........................................................17

    B.    The Court Has No Authority Or Reason To Grant Discovery ..............................18

CONCLUSION ......................................................................................................................22

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abbywho, Inc. v. Interscope Recs.*,
  2008 WL 11406049 (C.D. Cal. Aug. 25, 2008)........................................................................8

*Andrade v. Jamestown Hous. Auth.*,
  82 F.3d 1179 (1st Cir. 1996) .................................................................................................18

*Bally Total Fitness of Mid-Atl., Inc. v. Iaciofano*,
  2013 WL 105206 (D.R.I. Jan. 8, 2013) ...................................................................................8

*Bingham v. Zolt*,
  66 F.3d 553 (2d Cir. 1995).....................................................................................................19

*In re Chicago Flood Litig.*,
  682 N.E.2d 421 (Ill. App. 1997) ............................................................................................15

*In re Chipcom Corp.*,
  1997 WL 1102329 (D. Mass. June 26, 1997) .........................................................................10

*In re Cmty. Bank of N. Virginia*,
  418 F.3d 277 (3d Cir. 2005)..............................................................................................14, 15

*Edmo v. Idaho Dep't of Correction*,
  2022 WL 17975984 (D. Idaho Dec. 28, 2022) ........................................................................8

*Fresh Kist Produce, L.L.C. v. Choi Corp.*,
  362 F. Supp. 2d 118 (D.D.C. 2005) .......................................................................................11

*Fulco v. Cont'l Cablevision, Inc.*,
  789 F. Supp. 45 (D. Mass. 1992) ...........................................................................................15

*In re Genetically Modified Rice Litig.*,
  764 F.3d 864 (8th Cir. 2014) .................................................................................................19

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).....................................................................................................11

*Gortat v. Capala Bros.*,
  2010 WL 1879922 (E.D.N.Y. May 10, 2010) ........................................................................16

*Gusman v. Unisys Corp.*,
  986 F.2d 1146 (7th Cir. 1993) ...............................................................................................19

*Haggart v. Woodley,*
  809 F.3d 1336 (Fed. Cir. 2016)...............................................................................11

*Health Republic Ins. Co. v. United States,*
  58 F.4th 1365 (Fed. Cir. 2023) ...........................................................................8, 11

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983).....................................................................................2, 18, 22

*Hurstell v. Clement,*
  2000 WL 1100387, at *3-4 (E.D. La. Aug. 4, 2000) ............................................13

*Illoominate Media, Inc. v. CAIR Fla., Inc.,*
  2022 WL 4589357 (11th Cir. Sept. 30, 2022) ......................................................18

*In re LivingSocial Mktg. & Sales Prac. Litig.,*
  298 F.R.D. 1 (D.D.C. 2013).................................................................................10

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales
  Pracs. & Prod. Liab. Litig.,*
  2020 WL 5757504 (E.D. Va. Sept. 4, 2020), *aff'd*, 27 F.4th 291 (4th Cir.
  2022) ..................................................................................................................9, 10

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
  Pracs. & Prod. Liab. Litig.,*
  952 F.3d 471 (4th Cir. 2020) ...............................................................................10

*Martinez v. Schock Transfer & Warehouse Co.,*
  789 F.2d 848 (10th Cir. 1986) .............................................................................19

*In re McKesson HBOC, Inc. Sec. Litig.,*
  126 F.Supp.2d 1239 (N.D. Cal. 2000) ..................................................................15

*Menchise v. Akerman Senterfitt,*
  532 F.3d 1146 (11th Cir. 2008) ...........................................................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998)..........................................................................10

*New York Times Co. v. United States,*
  403 U.S. 713 (1971)...............................................................................................18

*In re Optical Disk Drive Prod. Antitrust Litig.,*
  2022 WL 1955672 (9th Cir. June 6, 2022) .............................................................9

*Pelzer v. Vassalle,*
  655 F. App'x 352 (6th Cir. 2016) .........................................................................10

*In re Potomac Supply Corp.*,
　2016 WL 675545 (Bankr. E.D. Va. Feb. 18, 2016) ................................................................. 18

*In re Progressive Ins. Corp. Underwriting & Rating Pracs. Litig.*,
　2007 WL 9752859 (N.D. Fla. Feb. 13, 2007) ........................................................................ 8

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
　148 F.3d 283 (3d Cir. 1998) ................................................................................................. 19

*Quantico Tactical Inc. v. United States*,
　148 Fed. Cl. 440 (2020) ....................................................................................................... 11

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
　2020 WL 8877819 (N.D. Cal. Oct. 30, 2020) ........................................................................ 7

*Retro Television Network, Inc. v. Luken Commc'ns, LLC*,
　696 F.3d 766 (8th Cir. 2012) ............................................................................................... 19

*Singer v. Shannon & Luchs Co.*,
　670 F. Supp. 1024 (D.D.C. 1987) .......................................................................................... 8

*Skelton v. Gen. Motors Corp.*,
　860 F.2d 250 (7th Cir. 1988) ............................................................................................... 11

*Strama v. Peterson*,
　537 F. Supp. 668 (N.D. Ill. 1982) .......................................................................................... 8

*Turabo Med. Ctr. v. Beach*,
　1997 WL 33810581 (D.P.R. Aug. 13, 1997) ........................................................................ 10

*Van Hoven v. Buckles & Buckles, P.L.C.*,
　2019 WL 12498039 (W.D. Mich. Jan. 17, 2019) ................................................................... 8

*Verhoff v. Time Warner Cable, Inc.*,
　2007 WL 4303743 (N.D. Ohio Dec. 10, 2007) ...................................................................... 8

*In re Washington Public Power Supply Sys. Sec. Litig.*,
　19 F.3d 1291 (9th Cir. 1994) ..................................................................................... 4, 11, 12, 20, 21

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
　2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) .................................................................... 11

## Rules and Regulations

Fed. R. Civ. P. 23 .................................................................................................................... 20

Fed. R. Civ. P. 54 .................................................................................................................... 19

Fed. R. Civ. P. 61 ...................................................................................................................... 9

Fed. R. Civ. P. 62 ................................................................................................ 8

## Treatises

10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.)................................................... 20

5 Newberg and Rubenstein on Class Actions § 15:20 (6th ed. 2022) .............. 7

6 Newberg and Rubenstein on Class Actions, § 19:10 (6th ed. 2022) ........... 11

Restatement (First) of Restitution § 74 (1937) ................................................ 8

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011)......... 8

Restatement (Third) of the Law Governing Lawyers § 44 (2000) ................. 12

Restitution and Unjust Enrichment, § 18 (2011) ............................................. 9

## Additional Authorities

California State Bar Professional Responsibility and Conduct Committee, Formal Opinion No. 2006-171, at 4, *available at* https://perma.cc/8D4Z-JWAD .................................................. 3

DC Bar Ass'n, Ethics Opinion 293, *available at* https://perma.cc/MNT7-3CTA ......................... 3

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009)............. 11

Illinois State Bar Ass'n Professional Conduct Advisory Opinion No. 20-06, at 4 (Sept. 2020), *available at* https://perma.cc/573H-JEPY ................................................................ 3

## <u>INTRODUCTION</u>

Class Counsel properly collected the previous fee award pursuant to a final, unstayed, unmodified judgment.  And Class Counsel  has represented repeatedly to both Objectors and this Court that it is able and willing to repay the difference (if the Court ultimately determines there is any) between the prior and upcoming fee award.  As a leading international law firm with revenue exceeding $1 billion a year, Class Counsel is unquestionably capable of satisfying that repeated commitment, and Objectors fail to offer any reason to believe otherwise.  The Court should accordingly deny Objectors' baseless and premature request to  (1) direct Class Counsel to provide an accounting of the $185 million fee award after it was collected pursuant to the Court's judgment; (2) order Class Counsel to immediately deposit the entire $185 million fee award back into an escrow account, even though the Federal Circuit was clear that at least some portion—and potentially all—of that amount should go to Class Counsel; and (3) open the door to discovery into any insurance Class Counsel may have purchased.

This is so for multiple reasons.  To begin with, Objectors' request is procedurally improper.  Objectors previously chose *not* to request a stay, accounting, or any other relief pending appeal of the fee award.  The Court should not allow them now to circumvent well-accepted procedural rules surrounding bonding, staying, or otherwise modifying judgments pending appeal.  By Objectors' account, none of those rules would ever matter in cases where a court awards class counsel fees over an objection, as routinely happens in class actions.  Objectors' motion, if credited, would imply a categorical automatic stay of fee award judgments under the auspices of amorphous (and, as explained below, inapposite) principles, even though Objectors never moved to stay the judgment nor apply any bond pending appeal.

Moreover, it is premature to inquire into or control *how* Class Counsel will repay funds before this Court has even had the opportunity to decide *whether* any funds (and, if so, how much)

should be repaid.  Objectors' baseless motion is an attempt to distract the Court from promptly reaching the merits of whether the fee award should be modified at all, and thus is improper on that basis as well.  In the end, the only real dispute at this point is Class Counsel's request for a 5% fee, which is far lower than any other contingency fee Objectors could have obtained—as United and Kaiser explicitly recognized when they opted into the classes (and, in United's case, was the basis for asking Class Counsel to represent it directly in other matters, which Class Counsel declined).  *See* Dkt. 93-2 ¶¶ 3-7.

In any event, even if Objectors' requests for relief were not waived or premature, they are baseless as a legal matter and pointless as a practical matter.  Objectors cite no case ever granting such requests, which is unsurprising given that "[a] request for attorney's fees should not result in a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Due to this and other guidance, courts facing these types of arguments and requests have routinely rejected them, and, in fact, have routinely endorsed "quick-pay" class counsel fee awards to prevent the exact sort of hold-up leverage Objectors seek to impose over Class Counsel.  Although Class Counsel does not and never has tried to rely on a quick-pay provision, the logic of the practice holds in this situation, as does extensive precedent that a final judgment is executable pending appeal absent a stay.

Objectors' implicit accusation throughout their Motion—and, indeed, the basis for much of their rhetoric—is the inflammatory and baseless suggestion that Class Counsel behaved improperly in some way, and that this therefore justifies their demands under some combination of the Court's equitable or discovery powers, or its general fiduciary responsibility to the class regarding fees.  But Objectors' ethical arguments are completely wrong.  Class Counsel acted properly under the plain terms of and comments to Rule 1.15 of the ABA Model Rules of Professional Conduct, as well as its various state analogues.  In fact, each of the jurisdictions

Objectors invoke have issued ethics opinions directly refuting the interpretation they urge.[1]  This explains why Objectors fail to cite a single case (state or federal) or bar association ethics opinion endorsing or agreeing with their positions; instead, they simply cite cases and opinions stating uncontested general propositions that are inapplicable to the facts of this case.

If this were not alone enough to deny the motion, it bears noting that courts considering arguments like those Objectors raise have characterized them as "frivolous."  Where class counsel collects a fee award upon entry of judgment, courts have consistently held that act raises no equitable, ethical, or fiduciary problems, and the only necessity on remand—*if* the fee award is later modified—is for class counsel to return to the class the difference between the original and modified award.  There is no need to disgorge the entire award pending the court's decision on the renewed fee petition.  This is standard practice because a fee award is just like any money judgment:  when it becomes final, absent a stay (which Objectors did not seek), it is collectable.  If the fee award is vacated and then modified on remand, as with any other money judgment, restitution is appropriate only at that point (*i.e.*, after the court's decision on the fee award).  And, whatever might be counsel's ethical duties *before* judgment regarding property the attorney holds for clients, courts no more require an after-the-fact accounting of fees collected pursuant to such a judgment than they do for any other type of money collected pursuant to a later vacated or reduced judgment.

---

[1]    *See, e.g.*, California State Bar Professional Responsibility and Conduct Committee, Formal Opinion No. 2006-171, at 4, *available at* https://perma.cc/8D4Z-JWAD (noting fees properly withdrawn from a client trust account do not retain their trust account status and do not need to be re-deposited even pending a later dispute from the party asserting rights in the fees); Illinois State Bar Ass'n Professional Conduct Advisory Opinion No. 20-06, at 4 (Sept. 2020), *available at* https://perma.cc/573H-JEPY (any Rule 1.15 obligation disappears when funds from which any fees will be deducted are deposited into an account controlled by the court); DC Bar Ass'n, Ethics Opinion 293, *available at* https://perma.cc/MNT7-3CTA (Rule 1.15 does not apply to "general unsecured obligation[s]" like those Objectors assert here).

Class Counsel has taken its responsibilities to the Class and Court extremely seriously throughout this litigation—and continues to do so.  Under Objectors' own authority, Class Counsel was "a claimant against the [common] fund" that was entitled, under Court order, to withdraw specified amounts from that fund as its fees.  *See* Mot. 12 (citing and quoting *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)).  The thrust of Objectors' motion, however, is to ignore Class Counsel's status as a fund claimant that acted in accordance with a final judgment.  Objectors may not invoke such authority when it suits them, but then ignore it when it does not.

For these reasons, and as discussed in greater detail below, the Court should deny Objectors' Motion.  Doing so will allow the parties and Court to focus on the actual remaining question in this case:  is there any basis to modify the fee the Court previously awarded?

## BACKGROUND

Class Counsel's original fee petition recounts the relevant procedural history for the fee award.  *See* Dkt. 84 at 2-8.  Class Counsel therefore does not repeat those facts and instead summarizes the discussions leading up to Objectors' motion.

On March 14, 2023, Class Counsel and Objectors held a call at Objectors' request to discuss Class Counsel's renewed fee petition.  During that call, Objectors' counsel stated he was not sure whether the Court would permit him to speak at the upcoming status conference and Class Counsel informed him (and then later reaffirmed) that it had "no objection (subject to Court permission) to [Objectors] appearing."  Decl. of Adam Wolfson, Ex. A at 1.  In response to a question from Objector's counsel, Class Counsel informed him that it would renew its request for a 5% fee award.  Objectors refused to disclose what position they would take on Class Counsel's fee request.  *Id.*

During this call, Objectors' counsel asked about the fee award's status.  Class Counsel told him that it had been distributed from the claims administrator following the fee award judgment. *Id.* ¶ 4.  In response to further questions about the fee award, Class Counsel confirmed that, if the Court ordered a lower fee award in response to Class Counsel's renewed fee petition, it of course would pay back any difference to the class.  *Id.*

Following the initial meet and confer, on March 17, 2023, Objectors' counsel sent a letter to Class Counsel stating, for the first time, that Objectors considered "these funds disputed funds under Rule 1.15 of the Rules of Professional Conduct" and requested an accounting.  Dkt. 194-1 at 183.  Class Counsel responded via letter on March 20, 2023.  Wolfson Decl., Ex. A.  In that letter, Class Counsel explained it did not believe Rule 1.15 applies in this situation because absent class members like United and Kaiser were not its "clients" for purposes of that Rule, as comment 25 to Rule 1.7 makes clear.  *Id.*[2]  In any case, Class Counsel explained, the fee award became final and executable upon entry of final judgment, which put the fees beyond dispute for purposes of Rule 1.15.  *Id.*  Class Counsel nonetheless assured Objectors that "when the Court once again issues a judgment on Quinn Emanuel's fee application, [Class Counsel] will pay back any ordered amounts to the class administrator, who will then distribute those funds to the entire class pro rata. That is the proper procedure."  *Id.*

At multiple points in their recitation of the facts, Objectors imply that Class Counsel flippantly told them to "go file a motion."  What Class Counsel actually said in each instance was that it believed it acted in accordance with all applicable rules and procedures, and that the

---

[2]   Objectors notably do not mention comment 25 to Rule 1.7 anywhere in their motion. That comment explains: "When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule."

discovery Objectors seek is unnecessary—but that, if they believed differently, they should file a motion. *Id.* ¶ 8.  In each instance, however, Class Counsel requested that Objectors provide it with any authority underlying their requests. *Id.*  The most Objectors ever invoked was Rule 1.15 and did not otherwise identify any case law or ethics opinions supporting their requests. *Id.*

## ARGUMENT

## I.    ANY ISSUE REGARDING PAYMENT OF A REFUND IS PREMATURE

For the reasons set forth in Class Counsel's renewed fee petition, *see* Dkt. 192, it strongly believes that a lodestar cross-check confirms a 5% fee remains both reasonable and warranted in this case.  The class received uniquely beneficial results from Class Counsel's work; a 5% fee is at the extreme low end of both class actions in general *and* class actions of similar size and importance; no other contingency lawyer was willing to work on risk corridor claims for nearly as low as 5%; and, as megafund fee opinions from this Court and others demonstrate, the implied multiplier from Class Counsel's work is well within the realm of reason.

Given the Court has not yet ruled on that renewed fee petition, Objectors' motion is premature and speculative, and therefore seeks unnecessary relief.  If the Court awards a lower fee than before, Class Counsel can and will make up the difference for the class.  It is at that point that questions of timing and source of payment potentially become ripe, but only if there is an actual controversy about repayment.  Objectors cannot invent a controversy now based on speculation and innuendo.  Nor can Objectors explain why this Court should delay deciding the merits of the fee award in anticipation of a controversy that does not (and may never) exist.  In short, Objectors' motion asks the Court for unnecessary relief untethered to the actual task on remand.  It should be denied for that reason alone.

## II.    OBJECTORS ARE NOT ENTITLED TO THE RELIEF THEY SEEK

Without ever disputing Class Counsel's commitment to repayment, if it ever becomes

necessary, Objectors contend (at 12-15) that the Court should grant their requests based on a vague combination of its equitable authority, fiduciary responsibility to the class, and power to police "ethical" violations.  But the law and applicable ethical rules show that none of their requests has any legal basis, and courts uniformly reject them.  Because Objectors repeat the ethics and equity/fiduciary arguments multiple times over, Class Counsel addresses those articulated bases separately, as well as why they do not support the Objectors' requested relief.

A.     **There Is No Equitable Or Fiduciary Basis To Order An Accounting Or Sequestration**

      1.     **Withdrawing Fees From A Court-Supervised Common Fund Pursuant To A Final And Unstayed Judgment Raises No Equitable Or Fiduciary Issues**

There was nothing inequitable or improper about Class Counsel's collection of the fee award following the Court's judgment.  Under settled law and ethical principles, this was an entirely ordinary and well-accepted series of events.  The court's prior fee award was a final judgment subject to Rule 62 of the Court of Federal Claims, just like any other.  *See, e.g.*, 5 Newberg and Rubenstein on Class Actions § 15:20 (6th ed.) ("Orders granting fee awards in class action cases are final judgments ....").  That meant any party appealing the judgment was free to post bond or otherwise move for a stay.  *See* Rule 62(b).  Objectors chose not to do so and therefore waived their chance to post a bond or seek an unbonded stay pending appeal.  Class Counsel therefore executed on its fee award judgment, just as any judgment creditor could.

These same rules applied even though the award was for attorneys' fees and Objectors "disputed" (Mot. 13) Class Counsel's right to fees on appeal.  Courts around the country—including in California, D.C., and Illinois (the three jurisdictions Objectors single out (at 14 n.7))—routinely rule that fee awards are immediately collectible pending appeal unless the appealing party posts bond or otherwise moves for a stay under FRCP 62, which is identical to the Court of

Federal Claims' Rule 62. *See, e.g.*, *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 2020 WL 8877819, at *3 (N.D. Cal. Oct. 30, 2020) ("Accordingly, the Court declines to stay its Fee Award and again orders Resolute to pay GP Fund's attorney's fees and costs."); *Abbywho, Inc. v. Interscope Recs.*, 2008 WL 11406049, at *5 (C.D. Cal. Aug. 25, 2008) ("[T]he court denies plaintiffs' motion to stay enforcement of the attorney's fees order during appeal."); *Singer v. Shannon & Luchs Co.*, 670 F. Supp. 1024, 1026 (D.D.C. 1987) (granting unbonded stay of fee award under FRCP 62); *Strama v. Peterson*, 537 F. Supp. 668, 669-70 (N.D. Ill. 1982).[3]

In an apparent effort to confuse this issue, (*see* Mot. 12-13), Objectors invoke the Court's fiduciary duty to the class in how it determines the *fee award*. *See Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1377 (Fed. Cir. 2023). The Federal Circuit's vacatur and remand, however, implicates only a narrow "equitable" responsibility for this Court *after* it issues its decision on the renewed fee petition, *if* it awards a lower amount. When a judgment creditor (like Class Counsel here) collects on a judgment that is later modified, "there is a right to restitution of the excess," and nothing more. Restatement (First) of Restitution § 74 (1937). Thus, restitution following a judgment's vacatur should be granted only "as necessary to avoid unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011); *see id.* cmt. e.

---

[3] *See also, e.g.*, *Edmo v. Idaho Dep't of Correction*, 2022 WL 17975984, at *3 (D. Idaho Dec. 28, 2022) (treating a fee award as a money judgment); *Van Hoven v. Buckles & Buckles, P.L.C.*, 2019 WL 12498039, at *1 (W.D. Mich. Jan. 17, 2019) ("Courts generally require that the amount of the bond include the full amount owed under the award, post-judgment interest, attorney's fees and costs.") (quoting *Verhoff v. Time Warner Cable, Inc.*, 2007 WL 4303743 at *3 (N.D. Ohio Dec. 10, 2007)) (collecting authorities); *Bally Total Fitness of Mid-Atl., Inc. v. Iaciofano*, 2013 WL 105206, at *1 n.1 (D.R.I. Jan. 8, 2013) ("The fee award will not be collectible until final judgment (or partial final judgment under Rule 54(b)) enters and, if Defendant files a timely appeal, it may then seek a stay of execution under Rule 62."); *In re Progressive Ins. Corp. Underwriting & Rating Pracs. Litig.*, 2007 WL 9752859, at *2 (N.D. Fla. Feb. 13, 2007) (conditioning stay of class action fee award on the appealing party's "filing and approval of a full security supersedeas bond").

### 2. <u>Courts Routinely Reject Demands Like Those Objectors Make Here</u>

Objectors are not the first class objectors to try to pressure class counsel by requesting full repayment, a full accounting, and/or discovery following vacatur of a fee award.  Courts reject this gambit as both unnecessary and unwarranted.

For example, the Ninth Circuit recently held that class counsel have no obligation "to refund immediately the[ir] fees" if a fee award is later vacated on appeal.  *In re Optical Disk Drive Prod. Antitrust Litig.*, 2022 WL 1955672, at *2 (9th Cir. June 6, 2022).  In *Optical Disk Drive*, an objector successfully appealed and obtained vacatur of a fee award in an earlier appeal.  *Id.* at *1.  On remand, he argued that "the settlement agreements" and "California's ethical rules required HB [*i.e.*, Hagens Berman, class counsel in that case] to place immediately the fees into a client trust account following vacatur."  *Id.* at *2.  The Ninth Circuit "reject[ed] that argument and affirm[ed] the district court's denial" of the objector's motion, because there was no basis in the law or language of the settlement agreements in that case that required return of fees if the fee award was vacated.  *Id.*  Nor was there any "ethical" or "fiduciary" responsibility to "order disgorgement" of the full fee.  *Id.*  "In order for disgorgement of attorneys' fees to be warranted, the client must have suffered harm resulting from the alleged misconduct.  Here, the class suffered no prejudice from the alleged conduct" because HB gave back the difference between the first and second award, plus interest on the returned portion, following the court's decision on the renewed fee petition.  *Id.* at *2-3 (internal citations omitted) (citing FRCP 61).  Thus, contrary to Objectors' assertion (at 16), "a full accounting" is unnecessary to "establish what interest would have accrued," because "the class was entitled to interest only on the portion of the funds that ultimately belongs to the class."  *Optical Disk Drive*, 2022 WL 1955672, at *3.

Similarly, in a decision affirmed by the Fourth Circuit, a district court rejected as "baseless" an objector's "contention that Class Counsel has breached its fiduciary duty to the class" by

collecting the fees during an appeal and not keeping them in a client account.  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs. & Prod. Liab. Litig.*, 2020 WL 5757504, at *13 n.14 (E.D. Va. Sept. 4, 2020), *aff'd*, 27 F.4th 291 (4th Cir. 2022).  "No party raised any aspect of the escrow issue until after" the funds had been collected, and because the fee award had only been vacated, "no payments to the class are yet due."  *Id.*  "Class Counsel has throughout affirmed its willingness to pay back into the Escrow Account whatever interest or deposits the Court concludes are required under the Settlement."  *Id.*  There was thus no equitable, ethical, or fiduciary reason to order disgorgement of the full award.

Finally, courts routinely approve class settlements that allow attorneys to collect fee awards pending appeal without requiring immediate repayment of those fees.  *See, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."); *see also, e.g.*, *In re LivingSocial Mktg. & Sales Prac. Litig.*, 298 F.R.D. 1, 22 n.25 (D.D.C. 2013) (collecting authorities).  Such "quick-pay" provisions generally require class counsel to return only "the amount required by [any court–ordered] modification" if the fee award is vacated on appeal, not the full sum.  *Turabo Med. Ctr. v. Beach*, 1997 WL 33810581, at *2 (D.P.R. Aug. 13, 1997); *see also, e.g.*, *In re Chipcom Corp.*, 1997 WL 1102329, at *10 (D. Mass. June 26, 1997) (requiring only "appropriate refunds or repayments ... plus interest ... in the event that the Fee and Expense Award is reduced or reversed").  Courts have dismissed objections to such arrangements as "border[ing] on frivolous."  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020); *see also, e.g.*, *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions").

The reason courts approve these fee arrangements is to discourage objectors from opportunistic attempts to obtain leverage over class counsel to extract unjustified concessions. *See In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) (quoting Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625 (2009)). "In nearly every class action settlement today, professional objectors file objections (often frivolous ones) simply in order to obtain standing to appeal the district court's final approval order. The professional objector hopes that class counsel, in order to settle the appeal and gain access to the fee award, will pay the objector to go away. Quick-pay clauses substantially reduce the leverage a professional objector can wield." *Id.*

Class Counsel does not contend Objectors here are "professional" ones. However, it bears noting that Objectors' 27-page motion does not cite a single case granting anything like their requested relief in any case like this one. Their authorities (at 12-14) stand only for the general, uncontested propositions that a court should (1) "scrutinize[e] [] fee applications," *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988);[4] and (2) "enforce ethical codes of conduct," 6 Newberg and Rubenstein on Class Actions § 19:10 (6th ed. 2022).[5] None holds that a court can (or should) order attorneys who collected upon a valid fee award judgment to deposit the entirety of the award in a client account pending potential modification of the award after an appeal, let alone order an accounting or discovery into the funds. Every court to have considered the issue

---

[4] *See Health Republic*, 58 F.4th at 1377; *Haggart v. Woodley*, 809 F.3d 1336, 1352, 1359 (Fed. Cir. 2016); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994); *Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 128 (D.D.C. 2005).

[5] *See Quantico Tactical Inc. v. United States*, 148 Fed. Cl. 440, 444-45 (2020) ("Courts have the inherent power and duty to 'supervise the conduct of the members of [their] bar[s]' to ensure that attorneys' moral and ethical responsibilities are not breached."); *Kenosha Auto Transp. Corp.*, 206 Ct. Cl. 888, 891 (U.S. 1975); *General Motors Corp. v. City of New York*, 501 F.2d 639, 643 n. 11 (2d Cir. 1974).

has held that Class Counsel's offer—repayment of the difference plus interest if the Court orders a lower fee award—is more than sufficient.  And the Court should reject any effort by Objectors here to exert leverage over Class Counsel in the same way professional objectors routinely do (and courts routinely reject).

###   3.   Rule 1.15 Does Not Apply Here, And Class Counsel Did Not Violate Any Ethical Rules

Objectors' arguments for an accounting, immediate disgorgement of the full fee award, and discovery (at 14-15) all ultimately turn on Objectors' inflammatory and baseless contention (at 1) that Rule of Professional Conduct 1.15 required Class Counsel to keep the fee award in a client account pending appeal.  *See* Mot. 16-21.  But Objectors do not cite a single case or ethics opinion from anywhere in the country suggesting that Rule 1.15 imposes such a requirement on a firm that receives a fee award judgment that is later vacated on appeal.  Such a rule would conflict with all the above authority holding that, absent a stay, firms can collect fee awards during an appeal and need return only any difference between the original and subsequent award.

Even putting aside the uniform case law rejecting Objectors' arguments, the language of Rule 1.15 and the ethics opinions interpreting it plainly show that it is inapplicable here.  Rule 1.15 applies when "[a] lawyer [] takes temporary possession of ... property in the course of representing the client" or "property received in the lawyer's capacity as a trustee, executor, escrow agent, or the like," but it does not apply if "that capacity is unrelated to a representation."  Restatement (Third) of the Law Governing Lawyers § 44 cmt. a (2000).  Class Counsel did not receive the fee award as a custodian of funds for class members, but rather (as Objectors' own case law recognizes (*see* Mot. 12)), as "a claimant against the [common] fund." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  The very title of the Model Rule— "Safekeeping Property"—makes clear that it applies to cases when attorneys receive other people's

money as custodians; not when they receive a payment exclusively allocated as fees.  *See* ABA Model Rule 1.15 cmt. 3 ("Lawyers often receive funds from which the lawyer's fee *will be paid*.") (emphasis added).  The Rule 1.15 obligation also lasts only "until the claims are resolved" in some capacity, including by arbitration or court order.  ABA Model Rule 1.15, cmts. 3-4; *see also Hurstell v. Clement*, 2000 WL 1100387, at *3-4 (E.D. La. Aug. 4, 2000) ("the attorney is duty-bound to place the disputed fee into a trust account separate from the attorney's operating account ***until the dispute is resolved by a court***") (emphasis added) (cited Mot. 15).  As discussed above, under Rule 62 of the Court of Federal Claims, the unstayed final judgment constitutes a resolution of the fee award, and Class Counsel is unaware of any rule or case to the contrary.

Objectors baselessly assert (at 18) that "[a]ll that is required to trigger the Rule 1.15 obligation to sequester disputed funds is that the attorney is aware of the dispute."  That makes no sense, and is wholly unsupported by any citation.  *See id.*  If that proposition *were* correct, a threatened *certiorari* petition to the Supreme Court would also qualify.  So would a threatened Rule 60 motion years after appeals had ended, thus creating (according to Objectors) a clawback obligation at any point, regardless of the merits.  Even setting aside these hypotheticals, Objectors cite no case or ethics opinion (and Class Counsel knows of none) suggesting that Rule 1.15 applies to fee awards distributed by a Court-approved claims administrator pursuant to a final judgment.

Each state whose rules Objectors invoke emphatically *reject* Objectors' argument.  In Illinois, for example, any Rule 1.15 obligation disappears as soon as the lawyer transfers funds from which any fees will be deducted into an account controlled by the Court, because "it will be left to the court to decide the substantive issues."  Illinois State Bar Ass'n Professional Conduct Advisory Opinion No. 20-06, at 4 (Sept. 2020), *available at* https://perma.cc/573H-JEPY.  Here, the fees were deposited into the Court-approved claims administrator's account, and the claims

administrator distributed them to Class Counsel in accordance with the Court's judgment; "[a]t

that, [Class Counsel] no longer ha[d] the problem of being in the middle of conflicting parties ...."

*Id.*   California authorities, too, addressed exactly this situation in an ethics opinion noting that

"[f]unds properly withdrawn from a client trust account ... neither retain nor regain their trust

account status" even if a client "later dispute[s]" the withdrawal.   Furthermore, such funds "do not

need to be re-deposited into the attorney's [client trust account]."   California State Bar Professional

Responsibility and Conduct Committee, Formal Opinion No. 2006-171, at 4, *available at*

https://perma.cc/8D4Z-JWAD.   Finally, in the District of Columbia, "the mere assertion of a claim

by a third party is not enough by itself to freeze property in the lawyer's possession until the dispute

is resolved."   DC Bar Ass'n, Ethics Opinion 293, *available at* https://perma.cc/MNT7-3CTA.

Rule 1.15 applies only to a third-party claim relating to "particular funds in the lawyer's

possession," like those arising from "an attachment or garnishment," "a statutory lien," "a court

order," or "a contractual agreement"—not a "general unsecured obligation." *Id.*   Here, by contrast,

Objectors have only a *potential* "general unsecured obligation," and thus not an interest of which

Class Counsel must take notice.   Objectors ignore these directly relevant ethics opinions.

Objectors argue (at 17) that they are Class Counsel's "clients," but whether or not they are

"clients" for purposes of the Model Rules is irrelevant.   As all of the above precedent shows, given

the post-final judgment posture of this litigation, Rule 1.15 would not apply even if Objectors were

"clients" for present purposes.

But Objectors are also wrong.   "[C]ourts have recognized that class counsel do not possess

a traditional attorney-client relationship with absent class members."   *In re Cmty. Bank of N.*

*Virginia*, 418 F.3d 277, 313 (3d Cir. 2005); *see, e.g.*, *Third Circuit Task Force Report Selection of*

*Class Counsel Third Circuit Task Force on Selection of Class Counsel*, 208 F.R.D. 340, 347–48

(2002) ("Absent class members are not individual clients.  Thus, the ordinary attorney-client relationship does not exist between each class member and class counsel."); *In re Chicago Flood Litig.*, 682 N.E.2d 421, 426 (Ill. App. 1997) ("Absent class members did not authorize or rely on the class representative and class counsel to commence and maintain the class action.  As such, they do not occupy any direct attorney-client relationship with class counsel and should not be required to pay fees automatically.").  Class Counsel owes only "a generalized duty to unnamed class members" as a whole, but not all the traditional duties an attorney owes his client.  *In re Cmty. Bank*, 418 F.3d at 313 (quoting *In re McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1239 (N.D. Cal. 2000)).

The sources Objectors cite are not to the contrary.  Newberg and Rubenstein (cited at 10 n.17) explains that class counsel both do and *do not* have "an attorney-client relationship with the absent class members *depending upon the context.*"  6 Newberg and Rubenstein on Class Actions § 19:2 (6th ed.) (emphases in original).  "[O]pposing counsel must treat absent class members in a certified class as 'represented parties' for communications purposes and can only communicate with them through counsel." *Id.*  "Yet ... absent class members, even after class certification, are *not* clients for some conflicts purposes ...." *Id.* (emphasis added); *see also* ABA Model Rule 1.7, cmt. 25 ("When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule.").  Objectors cite no authority suggesting, let alone holding, that fee objectors are clients for purposes of Rule 1.15.  Rather, their authorities (at 17 n.10) found "a 'complete' attorney-client relationship" only with respect to

15

communications purposes.  6 Newberg and Rubenstein on Class Actions § 19:2 & n.3.[6]

Finally, Objectors quote (at 17-18) out of context Class Counsel's representations to this Court.  Class Counsel did not say that it had a complete attorney-client relationship with Objectors.  It stated instead that Objectors were less well-placed to object to fee awards than traditional class members because they opted in, and thereby "affirmatively selected Quinn Emanuel as their counsel amid a competitive marketplace offering numerous other options of highly-qualified counsel."  Dkt. 84 at 23.  That, of course, remains true and is a powerful reason why Class Counsel's requested 5% fee is reasonable.  *See generally* Dkt. 192.  But it does not mean that Objectors have any Rule 1.15 rights to the funds at issue.  The fact that the notice to then-potential class members accurately informed them that, if they opted in, they "need not appear in Court in order to participate," but would instead have their interests "represented by the Class Representative and Class Counsel" (Dkt. 41-1 at 5) is similarly irrelevant.  Class Counsel has no more of a direct relationship with Objectors than Objectors have with the Class Representatives, Health Republic and Common Ground.

To be clear, Class Counsel recognizes it has important and ongoing duties to the class.  The dispute over the definition of "client" addresses only Objectors' arguments about Rule 1.15.  Even if that Rule could apply now, after an unstayed final judgment, Objectors misapply the rule by ignoring their absent class member status, as well as their admitted adversarial position with respect to the question of Class Counsel's fees.

---

[6] The cases Newberg & Rubenstein cite here are clear on this point.  *See, e.g.*, *Fulco v. Cont'l Cablevision, Inc.*, 789 F. Supp. 45, 46 (D. Mass. 1992) ("Defendant Shearson now moves for an order allowing it to communicate with and interview those absent class members...."); *Gortat v. Capala Bros.*, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) ("communications by parties and their counsel with putative class members").

### 4.    <u>There Is No Basis For An Accounting</u>

As all of the above precedent indicates, the question at this point is not what Class Counsel did with the funds after it withdrew them pursuant to the Court's final fee award judgment, but what it will do if the Court orders a lower fee award now.  Because Class Counsel unequivocally commits to repay any difference (if any) between the two awards, that is the end of the inquiry. *See supra*.  This is not a situation, as Objectors contend (at 16), involving "commingling" or "misappropriating" funds, because such allegations only apply if counsel did not have a final judgment-based (or similarly final) right to the funds in question.  Literally none of Objectors' case citations (*see* Mot. 12-18) assess the ethical propriety of counsel taking title to fees pursuant to a final award, and, as discussed above, the lower courts and appellate courts that have actually addressed this issue squarely reject Objectors' arguments.

Objectors' other reasons for seeking an accounting (at 16-18) similarly fail.  If the Court awards a lower fee to Class Counsel, then it is simple to calculate interest on the difference between the original and modified fee awards.  Further, as noted, it is not an ethical violation to take fees pursuant to a final fee award, and both the comments to the Model Rules *and* the jurisdictions Objectors invoke all reject Objectors' interpretation of Rule 1.15.  Even if Rule 1.15 applied in the first place, all applicable ethical precedent demonstrates that any such obligation clearly ended when the Court issued its final judgment and Objectors did not seek a stay, bond, or other judgment modification.  Thus, an accounting would be unwarranted and improper, because it would confer rights on Objectors that they do not have pursuant to their own actions pending the appeal.

### 5.    <u>There Is No Basis For Sequestration</u>

Objectors similarly do not cite a single case or ethics opinion (and Class Counsel knows of none) suggesting that fee awards that are challenged on appeal must be kept in a client account until the appeal ends, or that they must be placed into a client account on remand following vacatur

of the original fee award.  Objectors claim (at 16) that sequestering the full $185 million is necessary "to ensure that Quinn Emanuel can and will promptly return any portion of the $185 million that exceeds the Court's fee award."  This, however, is illogical:  sequestering the full $185 million is unnecessary to prove one's ability to pay a "portion" of that sum.  It also would effectively act as a bond requirement that does not exist as a matter of law and that Objectors did not seek at the proper time:  on appeal.  Finally, Objectors' sequestration argument is also incorrect.  Class Counsel has represented, time and again, that if the Court orders it to return some portion of the fee, it can and will do so.  There is no basis or need to grant Objectors' request as an intermediate step.  *See, e.g.*, *In re Potomac Supply Corp.*, 2016 WL 675545, at *8 (Bankr. E.D. Va. Feb. 18, 2016) ("It would be pointless to order the Chesapeake Trust to restore the funds to CBE" after an underlying judgment was vacated); *see also, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713, 744 (1971) ("It is a traditional axiom of equity that a court of equity will not do a useless thing ...).  Simply put, it is pointless to order sequestration of the entire fee rather than deciding whether the fee should be reduced and ordering repayment of the difference (if any).

### B. The Court Has No Authority Or Reason To Grant Discovery

Objectors' final request for discovery finds no support in the case law and violates basic precepts governing fee award disputes.  Furthermore, the discovery request has no bearing on the fundamental question before the Court: what fee is reasonable for the work Class Counsel performed and the benefits it obtained for the Class?  Dkt. 192.  Instead, discovery once again reflects Objectors' improper attempt to turn the fee dispute into a second litigation regarding a repayment controversy that does not actually exist.

Courts "decline ... to allow discovery" in support of fee awards, because "'a request for attorney's fees should not result in a second major litigation.'"  *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1194 (1st Cir. 1996) (quoting *Hensley*, 461 U.S. at 437).  For this reason, "discovery

in connection with fee motions is rarely permitted." *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *see, e.g.*, *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 2022 WL 4589357, at *5 (11th Cir. Sept. 30, 2022) ("'When deciding a motion for attorney's fees, courts rarely reopen discovery, and evidentiary hearings are often unnecessary.'") (quoting *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1153 (11th Cir. 2008)); *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 770 n.5 (8th Cir. 2012) ("Here, the district court properly relied on defense counsels' affidavits and time records to calculate the attorneys' fees, and thus discovery on this issue was unnecessary."); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) ("[D]istrict courts generally decide fee awards without full blown discovery."); *Bingham v. Zolt*, 66 F.3d 553, 565 (2d Cir. 1995); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1154 (7th Cir. 1993) (Miller, J., concurring in part) ("[T]his court should not relish the prospect of post-judgment depositions of prevailing plaintiffs' attorneys under subpoena to bring their firms' billing records for the last few years."); *Martinez v. Schock Transfer & Warehouse Co.*, 789 F.2d 848, 849 (10th Cir. 1986) (affirming district court order "denying discovery on the issue of attorney fees").

Objectors cannot overcome this body of precedent because their proffered reasons for discovery either misconstrue applicable rules, ignore the basic presumption *against* discovery at this stage, or proceed entirely from the premise that the Court orders a lower award than before— an argument that, as noted above, is completely unripe.

For example, Objectors first claim (at 21) that Rule 54(d)(2)(B)(iv) allows for discovery into insurance. Not so. The Rule allows for disclosure of "the terms of any agreement about fees for the services for which the claim is made." Class Counsel has already disclosed the terms of its fee agreements with the class representatives, Health Republic and Common Ground—no other

fee agreements exist.  Given that the Advisory Committee Notes for Rule 54's equivalent provision, FRCP 54, state discovery in aid of fee awards should be "rare," *see* FRCP 54, Advisory Committee Notes—1993 Amendment; *see, e.g.*, 10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.) (same), Objectors fail to offer any reasons under either this Rule's plain terms or its rationale for why anything further than what Class Counsel provided in July 2020 is necessary for this renewed fee petition.

The FRCP 23 Advisory Committee Notes (cited in Mot. 21-22) are even less relevant. Those notes state that courts, when assessing fee motions, may consider "agreements *among the parties* regarding the fee motion," like an "agreement by a settling party not to oppose a fee application up to a certain amount."  FRCP 23, Advisory Committee Notes—2003 Amendments (emphasis added).  Objectors offer no reason to believe that any such agreements exist and, to be crystal clear on this issue, none do.

The Court should reject Objectors' baseless assertion (at 22) that discovery about the existence of a judgment insurance policy might provide "'at least some perspective' as to why [Class Counsel] is seeking 5% on remand."  Class Counsel is entitled to seek a 5% fee on remand for all the reasons set forth in its renewed fee petition; *i.e.*, each one of the seven *Moore* reasonableness factors and a lodestar cross-check.  *See generally* Dkt. 192.  Judgment insurance has no legal or logical bearing on that analysis.

Next, Objectors throw out a number of arguments (at 22-24) about the scope of any insurance coverage, as well as the timing of any repayment to the class.  But, such questions could only conceivably matter *if* the Court orders a lower fee award, and *if* Class Counsel—contrary to everything it has previously said and reiterated here—suddenly refuses to repay any difference between the original and subsequent fee award.  All of this remains entirely speculative and unripe,

and wholly unnecessary.  There is no need to delve into Class Counsel's internal finances or business decisions on a fishing expedition when Class Counsel is clear about what it can and will do, *if* necessary, with respect to the fee award.  And, Objectors have not provided a scintilla of evidence suggesting Class Counsel is unable to stand by its promises to the Court and class.

Finally, Objectors' ethics-based arguments for discovery (at 24-25) fail for the same reasons they fail with respect to its requests for an accounting and for sequestration.  They do not explain, for example, how Class Counsel could have "disclosed client confidences" (*see* Mot. 25) when Objectors (a) are not clients under the Rules, *see supra* Section II.A.3; and (b) Objectors do not identify any supposed "client confidences" they ever disclosed to Class Counsel.  Nor do Objectors explain how any insurance policy could possibly violate Class Counsel's conflict of interest obligations under Rules 1.7 or 1.8.  As an initial matter, such an objection is not serious, because comment 25 to Rule 1.7 makes clear that absent class members (like Objectors) are *not* Class Counsel's clients for purposes of that Rule.  *Supra* at 15.  But, even if they were, the idea that Class Counsel cannot be adverse to Objectors with respect to this fee dispute is a point that Objectors themselves refute throughout their motion by conceding that, as a claimant to the settlement fund, Class Counsel is adverse to Objectors on that sole and limited basis.  Indeed, Objectors' argument in this regard is particularly egregious because they concede in this very section of their motion that the parties are adverse for the purposes of the fee petition.  *See* Mot. 25 n.23 (arguing that Class Counsel's "opposing party" for the fee petition are "the Objecting Class Members"); *see also* Mot. 12 (citing and quoting *In re Washington Public Power*, 19 F.3d at 1302).  Such adversity is inherent in the fee application process; it has nothing to do with any insurance arrangement.

In short, Objectors wish to go on a fishing expedition without any logical justification, in a situation in which their own cited authorities make clear that discovery is and should remain extraordinarily rare. *Cf. Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."). With no basis for such rarely-permitted discovery substantiated by any court or ethics opinions, their request should be denied.

*　　*　　*　　*　　*

A final point worth noting is that Objectors' motion shows how little they can actually argue against the reasonableness of Class Counsel's 5% fee. As noted, Objectors' requests focus exclusively on the time period *after* a final judgment Objectors neither sought to stay nor modify in any way. None of the requests focus on Class Counsel's work for the class, the benefits the class received from Class Counsel's work, nor even the fact that—at Class Counsel's explicit request—Objectors and every other class member received 95% of their damages years ago. Class Counsel has acted in accordance with its obligations to the class at every step, including through today. And Class Counsel will reaffirm as many times as necessary that it will comply with those continuing obligations in response to whatever the Court decides on its renewed fee petition—although Class Counsel continues to believe that paying a 5% fee under these circumstances is not only reasonable, but a bargain. Dkt. 192.

<u>**CONCLUSION**</u>

For the above reasons, Class Counsel respectfully requests that the Court deny Objectors' motion and set a date for them to respond (if they intend to do so) to Class Counsel's renewed fee petition.

Dated: May 16, 2023                       Respectfully submitted,


                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP

                                          */s/ Adam B. Wolfson*
                                          Adam B. Wolfson
                                          adamwolfson@quinnemanuel.com
                                          865 S. Figueroa Street
                                          Los Angeles, California 90017
                                          Telephone: (213) 443-3000
                                          Facsimile: (213) 443-3100

                                          Andrew Schapiro
                                          andrewschapiro@quinnemanuel.com
                                          191 North Wacker Drive
                                          Suite 2700
                                          Chicago, Illinois 60606
                                          Telephone:  (312) 705-7400
                                          Facsimile:  (312) 705-7401

                                          *Attorneys for Plaintiff Health Republic*
                                          *Insurance Company, Common Ground Health*
                                          *Cooperative, and the Class*