# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HEALTH REPUBLIC INSURANCE
COMPANY,

       Plaintiff,
on behalf of itself and all others
similarly situated,

  vs.

THE UNITED STATES OF AMERICA,

       Defendant.

No. 1:16-cv-259-KCD

(Judge Davis)

**<u>ORAL ARGUMENT REQUESTED</u>**

COMMON GROUND HEALTHCARE
COOPERATIVE,

       Plaintiff,
on behalf of itself and all others
similarly situated,

  vs.

THE UNITED STATES OF AMERICA,

       Defendant.

No. 1:17-cv-877-KCD

(Judge Davis)

**<u>ORAL ARGUMENT REQUESTED</u>**

## <u>OBJECTING CLASS MEMBERS' OPPOSITION TO CLASS COUNSEL'S SECOND MOTION FOR APPROVAL OF ATTORNEY'S FEE REQUEST FOR RISK CORRIDORS NON-DISPUTE SUBCLASS</u>

# TABLE OF OBJECTING CLASS MEMBERS

| Health Republic | |
|---|---|
| HIOS | Issuer Name |
| 16049 | All Savers Insurance Company |
| 36373 | All Savers Insurance Company |
| 36677 | All Savers Insurance Company |
| 39924 | All Savers Insurance Company |
| 85947 | All Savers Insurance Company |
| 92137 | All Savers Insurance Company |
| 98971 | All Savers Insurance Company |
| 80473 | Group Health Cooperative |
| 95865 | Health Plan of Nevada, Inc. |
| 21032 | Kaiser Foundation Health Plan of Colo. |
| 89942 | Kaiser Foundation Health Plan of Georgia |
| 90296 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 94506 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 95185 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 40513 | Kaiser Foundation Health Plan, Inc. |
| 60612 | Kaiser Foundation Health Plan, Inc. |
| 71287 | Kaiser Foundation Healthplan of the NW |
| 48834 | Oxford Health Plans (NJ), Inc. |
| 80208 | Rocky Mountain Health Care Options |
| 97879 | Rocky Mountain HMO |
| 71667 | UnitedHealthcare Community Plan, Inc. |
| 31779 | UnitedHealthcare Insurance Company |
| 49650 | UnitedHealthcare Insurance Company |
| 45002 | UnitedHealthcare Life Insurance Company |
| 59809 | UnitedHealthcare Life Insurance Company |
| 68259 | UnitedHealthcare of Alabama, Inc. |
| 68398 | UnitedHealthcare of Florida, Inc. |
| 43802 | UnitedHealthcare of Georgia, Inc. |
| 23671 | UnitedHealthcare of Kentucky, Ltd. |
| 38499 | UnitedHealthcare of Louisiana, Inc. |
| 97560 | UnitedHealthcare of Mississippi, Inc. |
| 79881 | UnitedHealthcare of New England, Inc. |
| 54235 | UnitedHealthcare of New York, Inc. |
| 54332 | UnitedHealthcare of North Carolina, Inc |
| 33931 | UnitedHealthcare of Ohio, Inc. |
| 24872 | UnitedHealthcare of Pennsylvania, Inc. |
| 21066 | UnitedHealthcare of the Mid-Atlantic Inc |
| 31112 | UnitedHealthcare of the Mid-Atlantic Inc |
| 16724 | UnitedHealthcare of the Midwest, Inc. |
| 66413 | UnitedHealthcare of Utah, Inc. |

| Common Ground | |
|---|---|
| HIOS | Issuer Name |
| 36373 | All Savers Insurance Company |
| 39924 | All Savers Insurance Company |
| 85947 | All Savers Insurance Company |
| 98971 | All Savers Insurance Company |
| 78726 | All Savers Insurance Company |
| 80473 | Group Health Cooperative |
| 78463 | Harken Health Insurance Company |
| 95852 | Harken Health Insurance Company |
| 95865 | Health Plan of Nevada, Inc. |
| 21032 | Kaiser Foundation Health Plan of Colo. |
| 89942 | Kaiser Foundation Health Plan of Georgia |
| 90296 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 94506 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 95185 | Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. |
| 40513 | Kaiser Foundation Health Plan, Inc. |
| 60612 | Kaiser Foundation Health Plan, Inc. |
| 23371 | Kaiser Foundation Healthplan of the NW |
| 71287 | Kaiser Foundation Healthplan of the NW |
| 48834 | Oxford Health Plans (NJ), Inc. |
| 80208 | Rocky Mountain Health Care Options |
| 97879 | Rocky Mountain HMO |
| 37873 | UnitedHealthcare Benefits Plan of California |
| 49650 | UnitedHealthcare Insurance Company |
| 31779 | UnitedHealthcare Insurance Company |
| 23489 | UnitedHealthcare Insurance Company |
| 57860 | UnitedHealthcare Insurance Company |
| 69443 | UnitedHealthcare Insurance Company |
| 68259 | UnitedHealthcare of Alabama, Inc. |
| 59036 | UnitedHealthcare of Colorado, Inc. |
| 68398 | UnitedHealthcare of Florida, Inc. |
| 43802 | UnitedHealthcare of Georgia, Inc. |
| 38499 | UnitedHealthcare of Louisiana, Inc. |
| 97560 | UnitedHealthcare of Mississippi, Inc. |
| 54235 | UnitedHealthcare of New York, Inc. |
| 33931 | UnitedHealthcare of Ohio, Inc. |
| 45480 | UnitedHealthcare of Oklahoma, Inc. |
| 24872 | UnitedHealthcare of Pennsylvania, Inc. |
| 21066 | UnitedHealthcare of the Mid-Atlantic Inc |
| 38599 | UnitedHealthcare of the Mid-Atlantic Inc |
| 44751 | UnitedHealthcare of the Midlands, Inc. |
| 51902 | UnitedHealthcare of the Midlands, Inc. |
| 16724 | UnitedHealthcare of the Midwest, Inc. |
| 66413 | UnitedHealthcare of Utah, Inc. |
| 43861 | UnitedHealthcare of Washington, Inc. |

SMRH:4878-0714-4863.13

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction ................................................................................................................1

II.   Statement of the Case ..............................................................................................3

      A.    Risk Corridors Cases Brought by Class Counsel and Others .................3

      B.    Class Counsel's Promises to the Class.....................................................3

      C.    The Case is Barely Litigated ....................................................................4

      D.    The Separate Cost-Sharing Reduction Classes ........................................4

      E.    Class Counsel's First Fee Petition ...........................................................6

      F.    Issues On Remand.....................................................................................7

      G.    Second Fee Petition in the Non-Dispute Risk Corridors Classes ............8

III.  Summary of Argument ............................................................................................8

IV.   Legal Argument .....................................................................................................10

      A.    Class Counsel's Purported Lodestar Hours and Rates Are Highly Inflated. ........10

            1.    Class Counsel's Purported Lodestar Hours Are Unsupported and Clearly Inflated. ........................................................10

                  a.    *Class Counsel has failed to justify its purported lodestar hours.* ..........................................................10

                  b.    *Class Counsel's lodestar improperly includes time from other classes.*.........................................................14

                  c.    *Class Counsel impermissibly includes time on fee petition briefing.* ........................................................15

                  d.    *Class Counsel has sworn to inconsistent statements about its lodestar.*.........................................................16

            2.    Class Counsel Has Failed to Justify its Requested Lodestar Rate. ............16

                  a.    *2023 rates do not apply.*.............................................16

                  b.    *Class Counsel's "billed" rates are not controlling.*......................18

                  c.    *The Court should use an objective source to determine a reasonable rate.* ..........................................................19

      B.    The Lodestar Cross-Check Confirms That the Fee Request Is Unjustified..........21

            1.    The critical role of the promised lodestar cross-check. ............................22

            2.    Class Counsel continues to rely on outlier cases that do not negate the norm. ..................................................................23

            3.    Class Counsel's cited cases applied far lower lodestar rates. ...................25

            4.    When the implicit multiplier is high, the award is reduced. .....................26

5.     An appropriate fee award under the cross-check is $11.77 to $23.14 million. ..................................................................28

     a.    *Looking to implied lodestar multipliers in similar cases.* ..............28

     b.    *Using higher rates and hours, but a lower multiplier.* .................32

     c.    *The Objectors seek a fair and reasonable fee.* ..............................32

C.     Class Counsel Ignores the Federal Circuit By Rehashing Its Percentage Arguments. ...............................................................................33

     1.     Class Counsel's negotiated fees argument fails. ........................................34

     2.     More than 30% of class members representing 43% of damages have objected. ..........................................................................35

     3.     Class Counsel ignores that percentage awards decrease as the fund increases. ...........................................................................37

     4.     Assistance to Class Counsel from other lawyers favors the Objectors. ...........................................................................38

V.     Conclusion ...............................................................................38

TABLE OF AUTHORITIES

<u>Cases</u>

*Adams v. City of Manchester*
   No. 4:11-cv-1309, 2013 WL 4776280 (E.D. Mo. Sept. 6, 2013) ...........................................14

*Alexander v. FedEx Ground Package Sys., Inc.*
   No. 05-cv-38, 2016 WL 3351017 (N.D. Cal. June 15, 2016)...............................................23

*Americans for Prosperity v. Grewal*
   No. 3:19-cv-14228, 2021 WL 1153194 (D.N.J. Mar. 26, 2021) ...........................................20

*Americas Mining Corp. v. Theriault*
   51 A.3d 1213 (Del. 2012) ........................................................................................24, 25, 26

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*
   No. 07-MD-01871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)..........................................13

*In re BankAmerica Corp. Sec. Litig.*
   228 F. Supp. 2d 1061 (E.D. Mo. 2002)...............................................................................27

*Bentley v. United of Omaha Life Ins. Co.*
   2020 WL 3978090 (C.D. Cal. Mar. 13, 2020).................................................................13, 31

*Blum v. Stenson*
   465 U.S. 886 (1984)...............................................................................................................16

*Bond v. Friendship Public Charter School Board of Trustees*
   No. 23-cv-367, 2023 WL 8710370 (D.D.C. Dec. 18, 2023) .................................................20

*Boyd v. Coventry Health Care Inc.*
   299 F.R.D. 451 (D. Md. 2014).................................................................................13, 23, 25

*Bradley v. United States*
   164 Fed. Cl. 236 (2023) .........................................................................................................20

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*
   2008 WL 2371975 (N.D.N.Y. June 9, 2008)........................................................................33

*In re Cendant Corp. Litig.*
   109 F. Supp. 2d 285 (D.N.J. 2000) .......................................................................................27

*In re Cendant Corp. PRIDES Litig.*
   51 F. Supp. 2d 537 (D.N.J. 1999) ...................................................................................26, 30

*In re Cendant Corp. PRIDES Litig.*
   243 F.3d 722 (3d Cir. 2001)..........................................................................................26, 27, 37

*In re Cendant Corp. Securities Litig.*
404 F.3d 173 (3d Cir. 2005)...................................................................................27

*In re Citigroup Inc. Sec. Litig.*
965 F. Supp. 2d 369 (S.D.N.Y. 2013)...............................................................10, 37

*Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*
80 F. Supp. 3d 1 (D.D.C. 2015).............................................................................18

*City of Detroit v. Grinnell Corp.*
495 F.2d 448 (2d Cir. 1974)............................................................................11, 12

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*
109 F.3d 602 (9th Cir. 1997) ................................................................................15

*Couch v. Verizon Commc'ns, Inc.*
No. 20-cv-2151, 2021 WL 4476698 (D.D.C. Sept. 30, 2021)..............................34

*Davis v. N.Y.C Hous. Auth.*
No. 92-cv-4873, 2002 WL 31748586 (S.D.N.Y. Dec. 6, 2002) .......................17, 18

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*
No. 09-cv-5457, 2016 WL 5938722 (C.D. Cal. May 16, 2016).......................21, 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) .......................................................23

*Erica P. John Fund, Inc. v. Halliburton Co.*
No. 3:02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .........................17

*In re Facebook, Inc., IPO Sec. & Derivative Litigation*
343 F. Supp. 3d 394 (S.D.N.Y. 2018)...................................................................22

*Farrell v. Bank of Am. Corp., N.A.*
827 F. App'x 628 (9th Cir. 2020) ..........................................................................24

*Ferrick v. Spotify USA Inc.*
No. 16-cv-8412, 2018 WL 2324076 (S.D.N.Y. May 22, 2018) .......................25, 26

*Fink v. Wilmington Trust, N.A.*
No. 19-cv-1193, 2021 WL 4860683 (D. Del. Oct. 19, 2021)................................27

*Flores v. Mamma Lombardi's of Holbrook, Inc.*
104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...................................................................12

*Ginsberg v. Valhalla Anesthesia Assoc., P.C.*
No. 96-cv-6462, 1998 WL 19997 (S.D.N.Y. Jan. 20, 1998)..........................17, 18

*In re Glumetza Antitrust Litig.*
   No. 19-cv-5822, 2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ..................................................37

*Good v. W. Virginia-Am. Water Co.*
   2017 WL 2884535 (S.D. W.Va. July 6, 2017) .......................................................................33

*Grottano v. City of New York*
   No. 15-cv-9242, 2022 WL 2763815 (S.D.N.Y. July 15, 2022)........................................25, 26

*Health Republic Ins. Co. v. United States*
   58 F.4th 1365 (Fed. Cir. 2023) .....................1, 2, 3, 4, 5, 6, 7, 8, 10, 16, 22, 23, 24, 26, 27, 38

*Hensley v. Eckerhart*
   461 U.S. 424 (1983)............................................................................................................13

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*
   2015 WL 2406966 (N.D. Cal. May 20, 2015) .................................................................13, 31

*In re IndyMac Mortg.-Backed Sec. Litig.*
   94 F. Supp. 3d 517 (S.D.N.Y. 2015)...............................................................................13, 27

*In re Infospace, Inc.*
   330 F. Supp. 2d 1203 (W.D. Wash. 2004).............................................................................14

*J.T. v. D.C.*
   652 F. Supp. 3d 11 (D.D.C. 2023) ..................................................................................19, 20

*Kastrati v. M.E.G. Rest. Enterprises Ltd.*
   No. 1:21-cv-00481, 2023 WL 180043 (S.D.N.Y. Jan. 13, 2023).............................14, 15, 19

*In Re Keyspan Corp. Sec. Litig.*
   No. 01-cv-5852, 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ......................................13, 31

*In re LivingSocial Mktg. & Sales Prac. Litig.*
   298 F.R.D. 1 (D.D.C. 2013)..................................................................................................18

*Loving v. Sec'y of Health & Hum. Servs.*
   2016 WL 4098722 (Fed. Cl. July 7, 2016) ........................................................................4, 13

*Maine Community Health Options v. United States*
   140 S. Ct. 1308 (2020).........................................................................................4, 12, 35, 38

*McDonough v. Toys R Us, Inc.*
   80 F. Supp. 3d 626 (E.D. Pa. 2015) ......................................................................................38

*In re Merry-Go-Round Enterprises, Inc.*
   244 B.R. 327 (Bankr. D. Md. 2000) ................................................................................24, 25, 26

*Moore v. United States*
  63 Fed. Cl. 781 (2005) ........................................................................9, 33, 34, 35

*Munoz v. Giumarra Vineyards Corp.*
  No. 09-cv-703, 2017 WL 2665075 (E.D. Cal. June 21, 2017) ...............................33

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*
  768 F. App'x 651 (9th Cir. 2019) .........................................................................10

*Perez v. Rash Curtis & Assocs.*
  No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .................24, 25, 26

*Phillips v. Triad Guar. Inc.*
  No. 1:09-cv-71, 2016 WL 2636289 (M.D.N.C. May 9, 2016) .............................25

*In re Platinum & Palladium Commodities Litig.*
  No. 10-cv-3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) .............................27

*In re Polyurethane Foam Antitrust Litig.*
  168 F. Supp. 3d 985 (N.D. Ohio 2016) .................................................................13

*PPG Indus., Inc. v. Jiangsu Tai Mao Glass Co.*
  No. 2:15-cv-00965, Dkt. 172, Dkt. 188 (W.D. Pa.) .............................................21

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*
  148 F.3d 283 (3d Cir. 1998) ...........................................................................34, 38

*In re Ranbaxy Generic Drug Application Antitrust Litig.*
  630 F. Supp. 3d 241 (D. Mass. 2022) .................................................................37

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*
  342 F.R.D. 461 (C.D. Cal. 2022) .......................................................................21

*In re Rite Aid Corp. Sec. Litig.*
  396 F.3d 294 (3d Cir. 2005)......................................................................10, 11, 22

*Rodriguez v. Barrita, Inc.*
  53 F. Supp. 3d 1268 (N.D. Cal. 2014) .............................................................16, 17

*Sci. Applications Int'l Corp. v. United States*
  No. 17-cv-00825, 2021 WL 3557427 (Fed. Cl. July 26, 2021) ...........................19

*In re Stock Exchanges Options Trading Antitrust Litig.*
  No. 99-cv-0962, 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ...........................19

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*
  2005 WL 1213926 (E.D. Pa. May 19, 2005) .........................................24, 25, 26, 36

*Stovall v. United States*
    86 Fed. Cl. 770 (2009) .................................................................................35

*In re Trans Union Corp. Privacy Litigation*
    629 F.3d 741 (7th Cir. 2011) .....................................................................34

*Trief v. Dun & Bradstreet Corp.*
    840 F. Supp. 277 (S.D.N.Y. 1993).............................................................17

*United King Film Distribution Ltd. v. Does 1-10*
    No. 21-cv-11024, 2022 WL 1751190 (S.D.N.Y. May 31, 2022) .........18, 19

*United States ex rel. Bisk v. Westchester Med. Ctr.*
    No. 06-cv-15296, 2016 WL 8254797 (S.D.N.Y. Aug. 5, 2016)...........17, 18

*In re Urethane Antitrust Litig.*
    No. 04-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) ...............28, 29, 30, 31

*In re Visa Check/Mastermoney Antitrust Litig.*
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...............12, 27, 28, 29, 30, 31, 32, 37, 38

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ...................................................................34

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005).........................................................................30

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ................................................................14, 23

*Winters v. Two Towns Ciderhouse, Inc.*
    No. 20-cv-00468, 2021 WL 1889734 (S.D. Cal. May 11, 2021) ...........15

## Statutes

42 U.S.C. § 18071 ..........................................................................................5

## Other Authorities

Newberg and Rubenstein on Class Actions (6th ed.) ...........................15, 22, 23, 35, 36

## I. Introduction

Quinn Emanuel ("Class Counsel") was required to present this Court with a lodestar cross-check to justify its sought-after fees. That is what the Federal Circuit held and, more importantly, that is the deal Class Counsel made with its clients. Class Counsel's Second Motion for Approval of Attorney's Fee Request for Risk Corridors Non-Dispute Subclass (the "Second Petition") patently fails to justify a $185 million fee award and does little more than pay lip service to a lodestar cross-check. Trying to reverse-engineer defenses for its indefensible fee demand, Class Counsel uses inflated and unproven hours, multiplies those alleged hours by unprecedented rates, and then proposes a multiplier that is miles outside accepted norms. That is akin to applying no cross-check at all. The Court can and should see through Class Counsel's Second Petition and revise its fee award to a number that is fair, reasonable, and consistent with accepted lodestar cross-checks.

Last year, the Federal Circuit vacated Class Counsel's $185 million fee award, which represented a lodestar multiplier of 18 to 19. The court found no justification "for an award with an implicit multiplier outside" the norm of implicit multipliers "***in the range of 1 to 4***." *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1375, 1378 (Fed. Cir. 2023) (emphasis added). On remand, the Federal Circuit directed the Court to readdress the contention of the objecting class members (herein the "Objectors") that Class Counsel has not done enough to justify its lodestar and apply the promised lodestar cross-check. Despite this clear direction, Class Counsel's Second Petition *again* fails to justify its lodestar and *again* seeks to avoid a lodestar cross-check. It instead asks the Court to rubberstamp the same $185 million award. Class Counsel's Second Petition fails on multiple independent grounds:

- ***First***, Class Counsel fails to provide the information required to support the 10,000 hours it claims it spent on the class.

- **Second**, the little information Class Counsel has provided indicates that it has impermissibly double-counted hours by including time attributable to a separate multi-billion dollar class (for which Class Counsel separately seeks fees) and also impermissibly included hours attributable to its fee petition.

- **Third**, Class Counsel's rates remain unsupported. In fact, Class Counsel's other fee petitions over the past decade have all sought rates far lower than what it seeks here, and courts that have ruled on Class Counsel's other fee requests generally award blended rates in the range of $300 to $500 per hour.

- **Fourth**, Class Counsel tries to skew its unsupported rates even higher by seeking 2023 rates based on a misapplication of case law that courts have repeatedly rejected.

- **Fifth**, just as in its prior fee petition, Class Counsel again tries to justify its requested fee award by relying on skewed interpretations of outlier cases, even though the Federal Circuit already rejected this same approach.

- **Sixth**, despite the direction of the Federal Circuit focusing remand on the lodestar cross-check, Class Counsel devotes more than half its brief to the percentage-of-the-fund factors, and takes an unreasonably aggressive approach there, too.

Just as before, Class Counsel's Second Petition reflects the same grossly inflated multiplier of a grossly inflated lodestar, without a single additional fact justifying its request. The Federal Circuit already rejected these same tactics. Granting a fee award anywhere near Class Counsel's demand would violate two important principles. First, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, *a downward adjustment is . . . in order*." *Health Republic*, 58 F.4th at 1374 (emphasis added). And second, "[a] court should disallow windfalls for lawyers." *Id.*

Consistent with the Federal Circuit's opinion, Class Counsel's promise of a lodestar cross-check requires more than lip service. The Objectors seek a fair and reasonable—but still highly lucrative—fee award for Class Counsel <u>in the range of $11.77 million to $23.14 million</u>. Even applying its inflated lodestar hours, this would compensate Class Counsel with an astronomically high average billing rate of **<u>$1,200 to $2,400 per hour</u>**. And unlike the award Class Counsel seeks, this award would align with accepted norms, would comply with the Federal Circuit's directives, and would fulfill Class Counsel's promises to the class.

## II. Statement of the Case

### A. Risk Corridors Cases Brought by Class Counsel and Others

In the Affordable Care Act, Congress created the risk corridors program, which provided for reimbursements to health plans that suffered losses in the marketplace created under the Act. *Health Republic*, 58 F.4th at 1368. When the government failed to make the payments required by the statute, many health plans sued the government. *Id.* Among the suits were two at issue here, *Health Republic Insurance Co. v. United States* and *Common Ground Healthcare Cooperative v. United States*, in which the law firm Quinn Emanuel was appointed lead counsel. *Id.* Other prominent law firms and health plans brought other separate lawsuits in early to mid-2016 challenging the government's nonpayment of risk corridors claims. HR Dkt. 89 at 4.

### B. Class Counsel's Promises to the Class

Seeking potential class members, Class Counsel made several important representations to induce health plans to join the class. HR Dkt. 50-1. First, it represented that 5% of the ultimate class recovery was the highest amount of attorney's fees it would ever seek. *Id.* Second, it represented that "[t]he fee may be substantially less than 5% depending upon the level of class participation represented by the final membership of the [class]." *Id.* Third, it reassured prospective class members that fees "will be determined by the Court subject to . . . what is

called a 'lodestar cross-check' (i.e., *a limitation on class counsel fees based on the number of hours actually worked on the case*)." *Id.* (emphasis added). The notice also cited two Court of Federal Claims cases that had applied multipliers of 5.39 and 0.25 respectively. *Id.* (citing *Geneva Rock Prod., Inc. v. United States*, 119 Fed. Cl. 581, 595 (2015) and *Loving v. Sec'y of Health & Hum. Servs.*, 2016 WL 4098722, at *6 (Fed. Cl. July 7, 2016). In *Loving*, counsel provided timesheets to enable the Claims Court to conduct the lodestar cross-check, and the Court applied a 75% reduction to the lodestar. *Id.* at *4, *6.

## C. The Case is Barely Litigated

Unlike many of the cases cited by Class Counsel in its briefing, it had very little to do after being appointed lead counsel in the action relating to the risk corridors classes (the "Risk Corridors Classes"), including the non-dispute sub-class at issue in this fee petition (the "Non-Dispute Risk Corridors Classes"). There was no discovery, no opposition to class certification, no pretrial work, no trial, and no appeal. In fact, the *Health Republic* and *Common Ground* cases were stayed on the merits in mid-2017 pending the resolution of appeals in *other* cases filed by *other* counsel involving materially identical risk corridors payment claims. HR Dkt. 62.

Those appeals by other health plans ultimately made their way to the Supreme Court in the case *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020). Ultimately, the Supreme Court ruled against the government on the central issue in the various cases, holding that health plans were entitled to collect risk corridors payments. *Id.* at 1331. After that decision, the Claims Court simply entered money judgments in favor of the Non-Dispute Risk Corridors Classes totaling roughly $3.7 billion. *Health Republic*, 58 F.4th at 1369.

## D. The Separate Cost-Sharing Reduction Classes

Separate and apart from the issues and litigation relating to the Risk Corridors Classes, the Affordable Care Act also provided for cost-sharing reductions for certain low-income

individuals, and required the government to reimburse health plans for cost-sharing reductions they make. 42 U.S.C. § 18071. The government stopped making these payments in late 2017 and Class Counsel amended the *Common Ground* complaint in November 2017 (while the risk corridors claims in *Health Republic* and *Common Ground* remained stayed) to add allegations regarding the failure to pay under this separate provision. CG Dkt. 9, 10.

Class Counsel explained that the cost-sharing reduction requirement is another feature of the Affordable Care Act and *separate from* the risk corridors program. *Id.* ¶ 14. Shortly thereafter, Class Counsel moved in *Common Ground* to certify a cost-sharing reductions class separate from the *Common Ground* Risk Corridors Classes (hereafter the "Cost Sharing Class"). CG Dkt. 13 at 2. While the Risk Corridors Classes were stayed, Class Counsel's work on the Cost Sharing Class continued and was substantial, including working on a contested motion for certification of that class, a motion to dismiss that class, and summary judgment with respect to that class. CG Dkt. 26, 29, 36, 39, 40, 41, 81, 86, 89. The Cost Sharing Class action is still pending and, on behalf of that class, Class Counsel is seeking several billion dollars. CG Dkt. 71 (entering $1.5 billion judgment in Cost Sharing Class for years 2017 and 2018 alone). Again, the work Class Counsel did for the Cost Sharing Class has no relevance here. The Risk Corridors Classes will not benefit from any judgment or settlement in the Cost Sharing Class action, and Class Counsel will seek fees for the Cost Sharing Class separate and apart from the $185 million it seeks in its Second Petition. The Non-Dispute Risk Corridors Classes will also not benefit from any judgment or settlement awarded to the risk corridors dispute sub-classes, which Class Counsel also pursues separately, and for which Class Counsel separately seeks $10 million in fees. HR Dkt. 139, 140, 162, 206; CG Dkt. 154.

### E. Class Counsel's First Fee Petition

After judgment was entered for the Non-Dispute Risk Corridors Classes, in July 2020, Class Counsel moved for attorney's fees, seeking 5% of the sub-class fund, i.e., $185 million. HR Dkt. 84 (the "First Petition"). There, Class Counsel downplayed its promise of a lodestar cross-check, claiming it "was not obligated to subject the fee award in this case to a lodestar cross-check" and that the promised cross-check was "not a mandate." HR Dkt. 93 at 7, 8.

In its First Petition, Class Counsel offered the Court little to no information on its hours and rates—it merely stated in a declaration that its attorneys worked "almost 10,000 hours" on the two cases "at a blended hourly rate of approximately $1033 across partners and associates," with support staff adding more than 400 hours "at an average rate of approximately $325 per hour." *Health Republic*, 58 F.4th at 1371.

Concerned by such an astronomical fee request that was far outside the norm of fee multipliers in cases involving lodestar cross-checks, several class members objected. HR Dkt. 89. These class members represented 43% of the total damages across the Non-Dispute Risk Corridors Classes. HR Dkt. 98; CG Dkt. 125.[1] The Objectors argued that the award should be $8.828 million to account for the lack of information in Class Counsel's First Petition relating to its lodestar and in line with typical lodestar multipliers awarded pursuant to cross-checks. HR Dkt. 89. The Court granted Class Counsel's First Petition, and Class Counsel received a distribution of the full $185 million it requested, which it distributed to its partnership. HR Dkt. 210 at 3. Class Counsel then purchased an insurance policy that requires it to defend and pursue the fee award "vigorously" or risk jeopardizing the insurance coverage. Keshavarzi Decl., ¶ 5;

---

[1] The current Objectors also represent more than 27% of the Health Republic non-dispute class, more than 33% of the Common Ground non-dispute class, and more than 30% of the issuers that joined one or both of the classes. Declaration of Moe Keshavarzi ("Keshavarzi Decl."), ¶ 2; HR Dkt. 98; CG Dkt. 125.

Exh. B.  The Objectors appealed, and the Federal Circuit vacated the award.  Despite the vacatur, Class Counsel has not returned any portion of these funds to the members of the class.  *Id.*, ¶ 4.

## F.    Issues On Remand

In its decision reversing the granting of Class Counsel's First Petition, the Federal Circuit explained that courts seek to protect the interests of class members by acting as a "fiduciary" for the class.  *Health Republic*, 58 F.4th at 1377.  This goal is critical "given the general non-alignment of the interests of class counsel and the class when a common-fund fee is proposed." *Id*.  In carrying out this goal, courts must "act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is."  *Id.* at 1377.  Consistent with this goal, the Federal Circuit gave specific guidance on remand.

*First,* the Federal Circuit found that it was mandatory to perform a lodestar cross-check. *Id.* at 1372-73.  "As part of the lodestar cross-check on remand, the Claims Court should also readdress the Objectors' contentions that Quinn Emanuel has not done enough to justify the lodestar itself—the approximate number of hours and blended rates used to produce the 18-to-19 implicit multiplier."  *Id.* at 1378.  Because each class notice referred "to a 'lodestar crosscheck,'" what was promised and therefore required was application of the scrutiny and accompanying standards generally bearing that name in attorney's-fee case law."  *Id.* at 1374.

*Second*, the Federal Circuit directed the Claims Court to assess "whether there is sufficient justification for an award with an implicit multiplier outside the mainstream of relevant multipliers."  *Id.* at 1378.  Notably, the Federal Circuit did not see sufficient justification "for an award with an implicit multiplier outside" "the [normal] range of 1 to 4."  *Id.*

*Third,* the Federal Circuit found it was also mandatory to give weight to "two principles of central importance" that guide courts in assessing fee awards.  *Id.* at 1374.  First, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward

adjustment . . . is in order." *Id.* Second, "a court should disallow windfalls for lawyers." *Id.*

*Fourth*, the Federal Circuit opined that all aspects of the fee analysis should be viewed through the lens of the Court's role as a fiduciary to *the class*. *Id.* at 1378.

## G.  Second Fee Petition in the Non-Dispute Risk Corridors Classes

Rather than address the Federal Circuit's ruling and reasoning, Class Counsel's Second Petition largely mirrors its First Petition and the arguments Class Counsel made to the Federal Circuit. *Compare* HR Dkt. 192 *with* HR Dkt. 84 and Keshavarzi Decl., Exh C. That said, the Second Petition deviates from the first in the following ways.

- First, Class Counsel's Second Petition provides the Court with hours billed annually by each person involved in the case from 2015 through July 2020, and a generic summary of *a few* of its lawyers' work. HR Dkt. 192-1, 192-2.

This limited information, however, does not provide the Court or the Objectors any ability to determine how Class Counsel spent 10,000 hours on this case or what tasks are included in the time it claims it spent. Declaration of James Schratz ("Schratz Decl."), ¶¶ 53–58. For example, none of Class Counsel's summaries are tethered to any of the reported hours.

- Second, while Class Counsel has already been paid the full amount of its requested fee award based on the First Petition filed in 2020, Class Counsel now inexplicably requests fees based on its 2023 rates. HR Dkt. 192-2.

The blended average among timekeepers using Class Counsel's 2023 rates is ***$1,670 per hour***. HR Dkt. 192-2. Class Counsel does not cite, or produce a third-party source, to show how such rates are in line with the market. Indeed, Class Counsel's Second Petition provides few answers and instead raises more questions about the validity of its lodestar.

## III.  Summary of Argument

Class Counsel does not meet its burden of justifying its fee request. Nor can it. Just as before, the fee award Class Counsel seeks can only be described as a windfall.

As an initial matter, Class Counsel again fails to justify its lodestar hours. Not only does Class Counsel fail to provide the Court with enough information to determine how it spent nearly 10,000 hours on this case, but from what Class Counsel *did* provide it is clear those hours are improperly and egregiously inflated—as they include time spent on the separate multi-billion dollar Cost Sharing Class (where Class Counsel is seeking a separate fee award) and likely on time spent on the fee petition.

Class Counsel has also failed to show that its lodestar rates constitute prevailing rates in the market. Class Counsel tries to increase its purported lodestar by claiming it can apply its 2023 rates. But Class Counsel ignores that: (i) current rates do not apply when the work occurred many years earlier; (ii) it already received the full amount it seeks based on its 2020 fee petition, so there is no basis to apply 2023 rates, and (iii) even the cases that allow current rates do not allow current rates for current experience level, but current rates for the experience level of the timekeeper *at the time the work was done*. Class counsel also asks the Court to accept its rates because they are billed to clients, but the cases Class Counsel relies on show that billed rates only apply when they are actually paid, and when the Court substantiates that the rates are in line with prevailing market rates. That is not the case here because the rates Class Counsel uses to calculate its lodestar are astronomically high, and far above any awarded in a common fund case. They are also more than double the rates that courts have awarded to Class Counsel. The Court should instead apply rates from an objective third-party source.

Finally, Class Counsel cannot justify the lodestar multiplier it seeks. It again resorts to the same strategy of relying on outlier cases, which the Federal Circuit rejected. And it again makes the same arguments based on the factors of *Moore v. United States*, 63 Fed. Cl. 781 (2005), for calculating a percentage award that it made to the Federal Circuit. Those arguments

did not work before and they should not work now.  More importantly, they do not change the mandate on remand to scrutinize the lodestar and apply the promised cross-check.

A fee award in the range of $11.77 to $23.14 million would generously compensate Class Counsel and would fulfill Class Counsel's promise to the class of a lodestar cross-check.

## IV.    Legal Argument

### A.    Class Counsel's Purported Lodestar Hours and Rates Are Highly Inflated.

Class Counsel's Second Petition fails just like its first, starting with its highly inflated lodestar.  The Federal Circuit directed that, as part of the lodestar cross-check on remand, the Court "should . . . readdress the Objectors' contentions that Quinn Emanuel has not done enough to justify the lodestar itself—the approximate number of hours and blended rates used to produce the 18-to-19 implicit multiplier."  *Health Republic Ins. Co.*, 58 F.4th at 1378.

Lodestar for cross-check purposes is calculated by multiplying the number of hours *reasonably* worked on a client's case by a *reasonable* hourly billing rate for such services.  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  While courts need not scrutinize each individual billed hour when conducting a cross-check, that does not mean that the Court accepts whatever class counsel claims to be its lodestar.  "[T]he lodestar serves little purpose as a cross-check if it is accepted at face value."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 389 (S.D.N.Y. 2013).  The Court must still "gather sufficient information so that the lodestar is a meaningful crosscheck of the percentage-of-the-fund method."  *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 654 (9th Cir. 2019).

1.    <u>Class Counsel's Purported Lodestar Hours Are Unsupported and Clearly Inflated.</u>

a.    *Class Counsel has failed to justify its purported lodestar hours.*

Class Counsel's submission does not justify its lodestar hours.  Case law shows that the Court should therefore take at least one of three actions:  (1) order class counsel to produce its

detailed billing records; (2) appoint an independent auditor to evaluate detailed time records; or (3) reduce the lodestar to account for the lack of information to substantiate the number of hours.

A lodestar cross-check may be a lower bar, but it is not a non-existent bar. Even when the lodestar is used as a cross-check, class counsel must still submit "a summary of the hours expended by all counsel at various stages" (e.g., hours spent drafting and arguing a motion to dismiss, seeking class certification, pursuing summary judgment, etc.). *Rite Aid*, 396 F.3d at 307 n.16. This makes sense because, "without some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Class Counsel contends that it spent nearly 10,000 hours on a class action that was stayed early on, where no discovery was conducted, where class certification was conceded, and where counsel never had to prepare for or prosecute a trial. 10,000 hours is a staggeringly high number of hours under the circumstances, and the Objectors reasonably wonder—as should the Court—how Class Counsel could have possibly spent so many hours on this case. Class Counsel's Second Petition offers no answers, as it again falls well short of providing the information required to establish its lodestar.

In its Second Petition, Class Counsel merely provides the hours billed annually by each person involved in the case from 2015 through July 2020 and a generic abstract of a handful of its lawyers' work untethered to any of those hours. HR Dkt. 192-1, 192-2. As an example of the scant information provided, Class Counsel claims that its top biller—Mr. J.D. Horton—spent

4,000 hours on this case between 2015 and 2020.  HR Dkt. 192-2.  The sum total of the information provided about what Mr. Horton did in those 4,000 hours is in these four sentences:

> Mr. Horton is a specialist in healthcare law and is the attorney who first identified the potential claims at issue here.  He worked on the cases from their inception, including doing much of the initial work to assess the claims' potential viability. He then worked on readying the case for filing and, once we did file, continued to help develop the claims and legal arguments and defeat the government's attempts to escape liability.  As the cases progressed, Mr. Horton was a constant team member whose records show he worked on every aspect of the cases.

HR Dkt. 192-1, ¶ 5.  This short blurb does not justify thousands of hours worked on a case that was stayed during four of its six years.  Nor does it give any insight into what Mr. Horton did on the case between January and July 2020, when he billed 943 hours—amounting to 10% of the total lodestar—even though the case was stayed for five of those seven months, and even though oral argument in *Maine Community* had already occurred in 2019.  HR Dkt. 192-2.

The same deficiencies are present for the rest of Class Counsel's timekeepers, whom we know even less about.  Nowhere does Class Counsel tie any of the hours allegedly worked to any particular task, making it impossible to verify "the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations."  *Grinnell Corp.*, 495 F.2d at 473.  The Court should question *why* Class Counsel refuses to turn over summaries with the level of detail required.  The fact that Class Counsel has repeatedly refused to provide meaningful evidence of the alleged 10,000 hours speaks volumes and, under the law, Class Counsel has failed to satisfy its burden to support its lodestar.

As for the appropriate consequences, the Court could order the production of full billing records, as some courts have done.  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 308 (E.D.N.Y. 2015).  Other courts have suggested hiring an independent auditor. *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 522 n.28 (E.D.N.Y. 2003);

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2012 WL 6923367, at *9 (E.D. Pa. Oct. 19, 2012).

The third option is to reduce Class Counsel's claimed hours to a more realistic number. As the Supreme Court held in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. This holds true when the lodestar is used as a cross-check. For example, in *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451 (D. Md. 2014), the court recognized that it need not scrutinize hours as closely on cross-check. *Id.* at 468. But because counsel only submitted "the total hours spent by each attorney and other professional, with no specification of date or task," the court lacked "back-up detail" and it was "impossible to assess duplication of effort or unproductive time." *Id.* The court thus inferred that the lodestar was inflated and reduced the multiplier by more than 20%. *Id.*[2] Other courts have reduced awards far more where class counsel fails to tie its hours to dates and tasks. *Bentley v. United of Omaha Life Ins. Co.*, 2020 WL 3978090 (C.D. Cal. Mar. 13, 2020) (30% reduction because task descriptions were vague); *Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, 2015 WL 2406966, at *4 (N.D. Cal. May 20, 2015) (criticizing "less than satisfactory" documentation of time and "2,681.05 hours of work on a case which never reached summary judgment or trial," finding the amount "overstated" and "not justified," and reducing it by more than 40% on cross-check). The class notice at issue here further supports such a reduction, since one of the cases it cited to describe the lodestar cross-check applied a 75% reduction to the lodestar. *Loving*, 2016 WL 4098722, at *5–6.

---

[2]   *See also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1012 (N.D. Ohio 2016) (reducing lodestar on cross-check by 20%); *In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517, 527 (S.D.N.Y. 2015) (reducing discovery hours by 25% on cross-check); *In Re Keyspan Corp. Sec. Litig.*, No. 01-cv-5852, 2005 WL 3093399, at *18 (E.D.N.Y. Sept. 30, 2005) (reducing lodestar by 20% on cross-check finding hours and rates excessive).

At this point, the Court is "neither obligated to explain what type of records should be submitted, nor to request additional information"—instead, "[t]he burden of presenting the appropriate fee documentation rests squarely on the shoulders of the attorneys seeking the award." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994). Class Counsel failed to meet its burden. The Court should follow the cases cited above and either direct Class Counsel to turn over its billing records, appoint an independent auditor, or reduce Class Counsel's lodestar hours between 25% to 40%. *See* Schratz Decl., ¶¶ 60–62.

        b.      *Class Counsel's lodestar improperly includes time from other classes.*

Class Counsel's Second Petition is not only vague and incomplete, but counsel seeks to be paid for work that is not appropriate for a fee award relating to the Non-Dispute Risk Corridors Classes. In fact, Class Counsel admittedly includes hours from the separate ***multibillion dollar*** Cost Sharing Class. HR Dkt. 192-1, ¶ 5 (stating lodestar hours include "final subclass work for the risk corridors claims, as well as [] the ongoing cost-sharing reduction claims"); HR Dkt. 192-4, ¶ 19 n.19, ¶ 28. Class Counsel cannot conflate work done on the two classes. Doing so creates a misleading apples-to-oranges comparison as the fees for the Cost Sharing Class are not included in the $185 million Class Counsel is seeking here. Class Counsel is seeking separate payment for the Cost Sharing Class. CG Dkt. 71, 145; *see also* HR Dkt. 130, 134, 160, 206. Critically, allowing Class Counsel to count hours worked on a totally separate class—that has no bearing on the $185 million fee award—would *significantly* manipulate the implied multiplier and would minimize how much its requested fee is outside the norm.

Hours spent on separate matters must be excluded. *See, e.g.*, *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1214 (W.D. Wash. 2004) (excluding from the lodestar hours attributable to related class that had been severed from the class for which counsel was seeking fees); *Adams v. City of Manchester*, No. 4:11-cv-1309, 2013 WL 4776280, at *4 (E.D. Mo. Sept. 6, 2013)

(excluding hours attributable to related subclass); Schratz Decl., ¶ 64. Here, the work on the separate class is easily distinguishable. The dockets are replete with examples of work attributable *only* to the Cost Sharing Class. *E.g.*, CG Dkt. 10, 55, 59 (amended complaints in *Common Ground* adding Cost Sharing claims); CG Dkt. 36, 39–41, 47 (summary judgment and motion to dismiss briefing and argument on Cost Sharing claims); CG Dkt. 81, 82, 89 (briefing on class certification and appointment of lead plaintiff and counsel for Cost Sharing Class); CG Dkt. 32, 53, 57, 58, 68, 70, 95 (various other filings attributable to Cost Sharing Class).

      c.     *Class Counsel impermissibly includes time on fee petition briefing.*

Class Counsel billed more than 2300 hours to this case in the first seven months of 2020. While Class Counsel has not submitted records, the dockets reflect that the fee petition is by far the most substantive filing for the Risk Corridors Classes in that period. HR Dkt. 70–84. Class Counsel's hours during these seven months represent nearly 25% of its total lodestar hours—a staggering figure considering the case was stayed for five of the seven months. The only years with similar hours were 2016, when Class Counsel opposed the government's motion to dismiss, and 2017, when it moved for summary judgment. HR Dkt. 11, 47.

As a matter of law, Class Counsel cannot include time spent pursuing attorney's fees in its lodestar. *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 610 (9th Cir. 1997) ("Time spent obtaining an attorneys' fee in common fund cases is not compensable."); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-cv-00468, 2021 WL 1889734, at *2 (S.D. Cal. May 11, 2021) (excluding from lodestar cross-check "time spent drafting the attorneys' fee motion which is not recoverable"). The Newberg and Rubenstein treatise confirms this. 5 Newberg and Rubenstein on Class Actions § 15:93 (6th ed.) ("[C]ounsel are not permitted to be reimbursed for the hours they spend pursuing their fee petition."). This further supports reducing the lodestar as outlined above. Schratz Decl., ¶¶ 74–77.

d. *Class Counsel has sworn to inconsistent statements about its lodestar.*

In support of its First Petition, Class Counsel represented that it "had spent $2 million in lodestar" at the time of the *Health Republic* supplemental notice, which was filed in March 2017. HR Dkt. 93-2, ¶ 3. Class Counsel repeated this contention in its other motions for fees from the various dispute subclasses. *See, e.g.,* HR Dkt. 130, 134, 160, 206; CG Dkt. 145. In its Second Petition, however, Class Counsel now states that its lodestar using its historical rates was $2.75 million by the end of 2016. HR Dkt. 192-2 at 1–2. In other words, Class Counsel now claims it expended $750,000 more in three fewer months when compared to the representations in its first fee petition. This further calls into question the precision of Class Counsel's lodestar evidence and reflects that Class Counsel has not done enough to justify its lodestar.

2.  Class Counsel Has Failed to Justify its Requested Lodestar Rate.

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Class Counsel fails to meet this burden because it cannot. No authority justifies the sky high rates it relies on in its lodestar.

a. *2023 rates do not apply.*

Class Counsel first argues that its lodestar should be calculated with its 2023 rates. *See, e.g.*, HR Dkt. 192 at 3. The Court should reject this blatant and unjustified attempt to inflate its hourly fees to artificially cut their exorbitant multiplier in half.

As an initial matter, courts refuse to apply current rates when counsel seeks fees based mostly on work performed during the early stages of litigation. *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1280 (N.D. Cal. 2014) (reducing fee award from current [2014] rate because "overwhelming majority of [counsel's] time spent in this case . . . occurred in 2013 and earlier");

*Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, 2018 WL 1942227, at \*17 (N.D. Tex. Apr. 25, 2018) ("One such factor that militates against using the current rate is when counsel seeks fees based mostly on work performed during the early stages of litigation.").  The majority of Class Counsel's hours here are from 2015 to 2017.  Thus, as *Rodriguez* and *Halliburton* show, applying even 2020 rates would overcompensate Class Counsel.

In addition, in seeking 2023 rates, Class Counsel ignores *why* some courts will apply current rates in certain circumstances: "to compensate counsel for the time value of money attributable to the delay between the time that legal services are rendered *and the time payment is received from the common fund*." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) (emphasis added).  That reasoning has no application here because **Class Counsel received the disputed fee award years ago** based on its 2020 fee petition, and has not returned the money even in light of the Federal Circuit's decision vacating the award.

Finally, Class Counsel misapplies the law that allows for current rates in some circumstances.  These cases "merely stand[] for the proposition that an attorney with a certain level of experience should receive the current market rate for an attorney with that level of experience, rather than the one applied when the services were rendered." *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06-cv-15296, 2016 WL 8254797, at \*5 (S.D.N.Y. Aug. 5, 2016).  Courts therefore reject applying senior-level rates for work done by counsel when they were less experienced lawyers, holding that "an attorney who starts a litigation as a first-year associate and continues with that litigation over the course of a decade, should not then be entitled to be billed out as a tenth-year associate (or lower-level partner) for the entire span of the litigation." *Davis v. N.Y.C Hous. Auth.*, No. 92-cv-4873, 2002 WL 31748586, at \*2 n.4 (S.D.N.Y. Dec. 6, 2002); *Ginsberg v. Valhalla Anesthesia Assoc., P.C.*, No. 96-cv-6462, 1998

WL 19997, at *2 (S.D.N.Y. Jan. 20, 1998) ("[D]efendant should not have to pay for the fact that [plaintiff's counsel] became a partner during the course of the litigation.").

Class Counsel's reliance on 2023 rates would significantly manipulate the lodestar. For many billers, the rates Class Counsel seeks have more than doubled since the hours were actually billed. HR Dkt. 192-2; *In re LivingSocial Mktg. & Sales Prac. Litig.*, 298 F.R.D. 1, 21 (D.D.C. 2013) (rejecting rates sought by class counsel in connection with lodestar cross-check because the attorneys had "increased their billing rates 10%–20%"). Class Counsel's attempt to skew the lodestar by seeking current rates for timekeepers' current positions is just as inappropriate here as it was in *Bisk*, *Davis*, and *Ginsberg*, and the Court should reject it here, too.

      b.     *Class Counsel's "billed" rates are not controlling.*

Not only should the Court reject 2023 rates, it should scrutinize Class Counsel's billed rates. In fact, ***no*** common fund case has awarded rates even approaching those sought here.

Class Counsel tries to justify these rates by identifying them as "quoted" and "billed" to clients. HR Dkt. 192-2 at ¶ 3; HR Dkt. 192-3 at ¶ 5. But quoted and billed amounts are not relevant—what is relevant is what clients actually pay. *United King Film Distribution Ltd. v. Does 1-10*, No. 21-cv-11024, 2022 WL 1751190, at *3–4 (S.D.N.Y. May 31, 2022) (rejecting reliance on billed amounts for this reason). This only makes sense because, as courts routinely recognize, "[f]irms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations." *See, e.g., Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015). But as in *United King Film Distribution*, Class Counsel fails to submit evidence regarding discounts and write offs to its billed rates. Moreover, a review of the fee awards made to Class Counsel over the past decade reflects that Quinn

Emanuel **significantly discounts its "billed" rates in virtually every case**. Schratz Decl., ¶¶ 113–114. Accordingly, Class Counsel's billed rates carry no weight here.

In addition, even when presented with rates paid by hourly clients, "the Court must still exercise its discretion and look to the prevailing rates within this District." *United King Film*, 2022 WL 1751190, at *3–4. The three cases Class Counsel cites (at 6) for the proposition that its billed rates should apply confirms as much. In each case, the court independently evaluated whether the claimed rates were in accord with prevailing market rates. *See Kastrati v. M.E.G. Rest. Enterprises Ltd.*, No. 1:21-cv-00481, 2023 WL 180043, at *4 (S.D.N.Y. Jan. 13, 2023) (confirming hourly rates of $125 to $650 were "in line with those awarded in this District" and citing cases awarding similar rates); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-0962, 2006 WL 3498590, at *10 (S.D.N.Y. Dec. 4, 2006) (same); *Sci. Applications Int'l Corp. v. United States*, No. 17-cv-00825, 2021 WL 3557427, at *2 (Fed. Cl. July 26, 2021) (fee petition supported by two published rate surveys). Class Counsel has not presented evidence of such prevailing rates or cited cases that have awarded anything approaching the rates it seeks. The Court should see Class Counsel's rates, like their hours, for what they are—highly inflated.

c.    *The Court should use an objective source to determine a reasonable rate.*

Because Class Counsel's rates are inflated and unreliable, the Court should look to the "Fitzpatrick Matrix" as an objective third-party source that courts in the District of Columbia use to calculate reasonable attorney's fees. This tool was developed by Class Counsel's own expert—Professor Brian Fitzpatrick. *J.T. v. D.C.*, 652 F. Supp. 3d 11, 26 (D.D.C. 2023). The Fitzpatrick Matrix "limits itself to the relevant market for **complex federal litigation in the District of Columbia**"—i.e., the specific market at issue here. *Id.* at 34 (emphasis added). The dataset underlying the Fitzpatrick Matrix "consists of 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique

cases, with years of experience ranging from less than one year to fifty-eight, and rates ranging from $100 to $1250." *Id.* at 26 (quotes omitted). Many courts have accepted the Fitzpatrick Matrix; indeed, the main dispute usually boils down to whether the case at issue is sufficiently complex to warrant such rates. *See, e.g., Bond v. Friendship Public Charter School Board of Trustees*, No. 23-cv-367, 2023 WL 8710370, at *5 & n.2 (D.D.C. Dec. 18, 2023) (collecting cases); *Bradley v. United States*, 164 Fed. Cl. 236, 254 (2023).

In its prior filings, *Class Counsel* identified the then-in-development Fitzpatrick Matrix as a market-based tool to determine reasonable attorney's fees. HR Dkt. 93 at 13. Professor Fitzpatrick also touted his matrix as representative and superior to the *Laffey* Matrix, explaining that his matrix includes "hourly rates that real clients actually pay." HR Dkt. 93-3, ¶ 9.

Applying the highest 2020 Fitzpatrick Matrix rates, the average blended rate should be $605.17. Applying the highest historical Fitzpatrick Matrix rates, the average blended rate should be $545.39. Schratz Decl., ¶ 96. Notably, Class Counsel has been awarded at least fourteen fee awards over the past decade, and each one awarded rates in line with the Fitzpatrick Matrix. The blended rates awarded in those cases range from $385.49 per hour on the low end to $694.10 on the far high end, with most cases awarding average rates in the $300 to $500 per hour range. *Americans for Prosperity v. Grewal*, No. 3:19-cv-14228, 2021 WL 1153194, at *2, *7, *9, *14, *16 (D.N.J. Mar. 26, 2021) (awarding Class Counsel average rate of **$389.41 per hour**, reflecting attorney rates of $200 to $690 per hour and non-attorney rates of $110 to 230 per hour, and reducing Class Counsel's hours because "certain hours billed by Quinn Emanuel are excessive and inflated," it billed "not compensable" tasks, and some "attorneys at Quinn Emanuel billed staggering numbers of hours"); Schratz Decl., ¶¶ 97–99. The average blended

rate applied in these cases is $505.57 per hour. *Id.* Therefore, the awards of federal courts across the country confirm the use of rates similar to those in the Fitzpatrick Matrix.

Another third-party source that courts rely on in calculating rates for purposes of a cross-check is the Real Rate Report. *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. 09-cv-5457, 2016 WL 5938722, at *11 (C.D. Cal. May 16, 2016) (collecting cases). "The information provided by the Real Rate Report is persuasive because, rather than using self-reported rates aggregated across all practice areas throughout the country, as appear in other surveys, it reflects actual legal billing through paid and processed invoices disaggregated for location, experience, firm size, areas of expertise, industry, and practice areas." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 524 (C.D. Cal. 2022). At least one court has used the Real Rate Report to determine a fee for Class Counsel's District of Columbia attorneys. *PPG Indus., Inc. v. Jiangsu Tai Mao Glass Co.*, No. 2:15-cv-965, 2022 WL 22288281, at *2 (W.D. Pa. Nov. 14, 2022); *id.*, Dkt. 172, at *10 (blended hourly rate of $668.23 based on 2020 Real Rate Report).

Applying the very top quartile of rates for the District of Columbia for the year 2020, the Real Rate Report rates are $520 an hour for an attorney with under three years' experience, $590 an hour for those with three to six years of experience, $721 for those with seven or more years of experience, $915 an hour for partners with 20 or fewer years of experience, $1,000 an hour for partners with over 20 years of experience, and $295 an hour for staff. Schratz Decl., ¶ 108.

Whatever objective third-party source the Court reviews, it is clear from those sources that the fees Class Counsel proposes in its Second Petition are highly inflated and untenable.

**B.     The Lodestar Cross-Check Confirms That the Fee Request Is Unjustified.**

Accepting Class Counsel's highly inflated lodestar at face value, the implied multiplier it seeks is at minimum 16.25 (2020 rates) to 19.06 (historical rates). HR Dkt. 192-2. Taking into account the problems with the lodestar identified above, the implied multiplier is actually orders

of magnitude higher after adjusting Class Counsel's purported hours and rates in line with the authorities above. Schratz Decl., ¶ 125 (concluding that the implied multiplier is actually 62x or higher). No authority justifies such a high multiplier. Awarding anything near that range would be akin to not applying the promised lodestar cross-check at all.

1.    The critical role of the promised lodestar cross-check.

In ruling on motions for fee awards, courts seek to protect the interests of class members by "acting as a fiduciary for the class." *Rite Aid*, 396 F.3d at 307. Courts also have the parallel goal of making sure that any fee award avoids a windfall for lawyers. *Health Republic*, 58 F.4th at 1374. In carrying out these objectives, courts must "act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." *Id.* at 1377.

The fee expressed in terms of a percentage of the fund is not sufficient to guide a court in carrying out these objectives because it provides no information about the profit a fee represents. By way of an example from a case cited by Class Counsel, the 25% of the fund awarded in *In re Facebook, Inc., IPO Sec. & Derivative Litigation*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018), may seem high without context. But it amounted to a payment of only $93 dollars per hour spent on that litigation. *Id.* at 408, 416, 418. This example shows why a class action lawyer is not interested in percentages, but dollars, and more specifically the number of dollars it receives when compared to the hours reasonably expended. The Newberg and Rubenstein treatise recognizes the same problem, explaining "[i]t is true in the abstract that a 25% award in one case and a 25% award in another case are both 25%," but "since that 25% figure, standing alone, provides so little information about the fee's relationship to profit, it is a rather meaningless form of consistency." 5 Newberg and Rubenstein on Class Actions § 15:86 (6th ed.).

Cross-checks address this dilemma by providing a method to perform "an apples-to-apples comparison" across cases. *Id.* "The purpose of a lodestar cross-check is to determine

whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Boyd*, 299 F.R.D. at 467.

The problems with the percentage method are amplified in megafund cases like this one, because an award of any percentage of the fund can result in a fee award that is vastly out of proportion with the time spent on the case. *Washington Pub. Power*, 19 F.3d at 1297. When a case involves a large fund, picking a percentage without reference to the fund's size "would be like picking a number out of the air." *Id.* So "in megafund cases, the lodestar cross-check assumes particular importance." *Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-cv-38, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016).

What represents a reasonable multiplier? "A number of courts have surveyed relevant fee awards and noted a norm of implicit multipliers in the range of 1 to 4." *Health Republic*, 58 F.4th at 1375. Empirical data shows that most multipliers fall even lower—in the range of 1.0 to 2.0. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12387371, at *13 (N.D. Cal. Nov. 5, 2013) (noting Class Counsel's expert Professor Fitzpatrick "reported that of the 192 fee awards studied where 'a lodestar cross-check and the lodestar multiplier was ascertainable, the mean and median multipliers were 1.62 and 1.30'"). Consistent with this empirical evidence, the Newberg and Rubenstein treatise advocates for "a presumptive ceiling of 4" on lodestar multipliers. 5 Newberg and Rubenstein on Class Actions § 15:87 (6th ed.).

The existence of this empirical range is particularly important since Class Counsel promised it would apply a cross-check. Thus, the class should reasonably expect that the award in this case would be subject to the same standards reflected in the existing norm of multipliers.

2.      Class Counsel continues to rely on outlier cases that do not negate the norm.

Class Counsel claims that its lodestar multiplier is "within the realm of reason" because it is "well-supported in the case law." HR Dkt. 192 at 8 (capitalization omitted). This assertion,

however, cannot be squared with the decision of the Federal Circuit, or even the case law Class Counsel cites. Indeed, the legal authority Class Counsel relies on only reinforces the Federal Circuit's conclusion that there is insufficient justification "for an award with an implicit multiplier outside" "the [normal] range of 1 to 4." *Health Republic*, 58 F.4th at 1375, 1378.

The Federal Circuit rejected the three cases cherry-picked by Class Counsel to support its enormous fee request—*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp*., 2005 WL 1213926 (E.D. Pa. May 19, 2005), *In re Merry-Go-Round Enterprises, Inc*., 244 B.R. 327 (Bankr. D. Md. 2000), and *Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012). The Federal Circuit explained that *Stop & Shop* does not support the fee request because "none of the class members objected to the award" in that case. *Health Republic*, 58 F.4th at 1376. The Federal Circuit rejected Class Counsel's reliance on *Merry-Go-Round* and *Americas Mining* because those cases did not conduct a cross-check or apply the standards relevant to assessing fees in common-fund class actions. *Id.* The Federal Circuit therefore explained that these cases are "outliers" that do not "negate the existence of a norm" and that "offer particularly weak support for the" multiplier sought by Class Counsel. *Id.* Rather than acknowledge the "norm" identified by case law, Class Counsel's second fee petition doubles down on cherry-picked outliers that fail for the reasons articulated by the Federal Circuit.

Class Counsel again cites the cases already rejected by the Federal Circuit. It also relies on *Farrell v. Bank of Am. Corp., N.A*., 827 F. App'x 628 (9th Cir. 2020), where Class Counsel claims the court applied a multiplier of 10.15. But just like in *Merry-Go-Round* and *Americas Mining*, *Farrell* did not conduct a cross-check at all because, unlike here, a cross-check was not promised in the class notice. *Id.* at 630. Class Counsel's reliance on *Perez v. Rash Curtis & Assocs*., No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), is equally

specious because, as in *Stop & Shop*, "no objections were received from any class members" in *Perez*. *Id.* at *17. In fact, *every one* of the cases relied on by Class Counsel suffers from the deficiencies that the Federal Circuit identified in *Stop & Shop*, *Merry-Go-Round*, and *Americas Mining*. Schratz Decl., ¶ 127–30. This is also true for cases cited by Professor Rubenstein. *Id.*

      3.   <u>Class Counsel's cited cases applied far lower lodestar rates.</u>

When high hourly rates are used to calculate a lodestar for purposes of the cross-check, those rates already account for risk and quality, and courts therefore hold that a lower multiplier is warranted. In *Grottano v. City of New York*, No. 15-cv-9242, 2022 WL 2763815 (S.D.N.Y. July 15, 2022), where class counsel's rates were between $364 and $665 per hour for attorneys and $125 per hour for paralegals, the court explained it was "not entirely clear to the Court why a multiplier is warranted where, as here, Class Counsel are billing at handsome hourly rates." *Id.* at *8 The court therefore reduced class counsel's lodestar by 10% as part of the cross-check and applied an implicit multiplier of 1.13. *Id.*[3]

This is common sense. A multiplier on top of a high hourly rate is like applying two multipliers. Here, Class Counsel's historic partner, associate, and non-attorney rates are more than double those in *Grottano*. *Compare* HR Dkt. 192-2 *with Grottano*, 2022 WL 2763815, at *8. Similarly, its historic partner rates are 1.4x higher and its historic associate rates are 1.7x higher than those of Susman Godfrey in *Ferrick*. *Compare* HR Dkt. 192-2 *with Ferrick*, 2018

---

[3]   *See also Downey*, 2016 WL 5938722, at *14 ("The Court finds that the low multiplier [of 1.16] compensates for the relatively high rates charged to the Class," where class counsel's rates were between $535 and 720 for attorneys); *Boyd*, 299 F.R.D. at 467–68 (applying a multiplier of 0.63 and explaining that "the low multiplier is, of course, the result of the claim for nearly 3,000 hours at very high hourly rates" of $325 to $700 per hour for attorneys and $175 to $250 per hour for non-attorneys); *Phillips v. Triad Guar. Inc.*, No. 1:09-cv-71, 2016 WL 2636289, at *8 (M.D.N.C. May 9, 2016) (applying a multiplier of 0.35 based on high lodestar attorney rates in the range of $375 to $880 per hour); *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412, 2018 WL 2324076, at *10 (S.D.N.Y. May 22, 2018) (describing Susman Godfrey LLP's rates of $425 to $800 for attorneys and $125 to $275 for non-attorneys as "relatively high" and lowering the award after lodestar cross-check).

WL 2324076, at *10. Applying even Class Counsel's historic rates would therefore be akin to applying an implicit multiplier of 38x the lodestar when compared to *Grottano* and 28x the lodestar when compared to *Ferrick*. The result is further skewed if the Court were to apply the rates that Class Counsel claims for 2020 and 2023, which are even higher.

For this reason, not even the outlier cases that Class Counsel relies on come close to supporting the multiplier it seeks here. Class counsel had a blended hourly rate of $296 in *Stop & Shop*, 2005 WL 1213926, at *12, $300 in *Merry-Go-Round*, 244 B.R. at 335, $530 in *Americas Mining*, 51 A.3d at 1252, and $634 in *Perez*, 2020 WL 1904533, at *19–*20. Class Counsel's rates are several times higher than those in the cases it cites. Thus, these cases are unhelpful to Class Counsel not only for the reasons identified by the Federal Circuit, but also because the multipliers in those cases were applied to far lower rates.

4.     When the implicit multiplier is high, the award is reduced.

Consistent with the Federal Circuit's decision, a lodestar cross-check must have teeth. When a cross-check reveals an implicit multiplier that is outside the established norm, courts consistently hold that the fee award should be reduced. The Federal Circuit recognized this when it directed that, "if the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment [of the fee award] is in order." *Health Republic*, 58 F.4th at 1374 (cleaned up).

*In re Cendant Corp. PRIDES Litigation* illustrates this rule. There, the district court awarded 5.7% of the $341.5 million common fund, which constituted a multiplier between 7 and 10, after exalting class counsel's "significant effort," "quality of result," and "creative dynamism." 51 F. Supp. 2d 537, 542 (D.N.J. 1999). On appeal, the Third Circuit surveyed other megafund cases, and observed that the multipliers in those cases "range from 1.35 to 2.99." 243 F.3d 722, 742 (3d Cir. 2001). It also observed that the norm of loadstar multipliers is between 1

and 4. *Id.* Accordingly, citing the lodestar cross-check, the court reversed the fee award and on remand stated that a lodestar multiplier of 3x was "the appropriate ceiling for a fee award." *Id.*[4]

As another example, in *Visa*, 297 F. Supp. 2d 503, the court rejected the requested fee of $609,012,000 as "excessive," explaining that "Lead Counsel's request to be paid almost 10 times their hourly rate is absurd." *Id.* at 522. It therefore awarded fees of $220,290,160.44, representing exactly 3.5 times the lodestar. *Id.* at 524 And in *Fink v. Wilmington Trust, N.A.*, No. 19-cv-1193, 2021 WL 4860683 (D. Del. Oct. 19, 2021), the court initially concluded that the proposed award under the percentage-of-the-fund approach was "not necessarily out of line with other awards in this circuit." *Id.* at *1. But, when the court cross-checked the award, and calculated an implicit multiplier of 3.9, it concluded that the proposed award was "unreasonably high." *Id.* It therefore looked to implicit multipliers awarded in a similar case, and applied the same multiplier. *Id.* at *4. Other cases are in accord.[5]

These cases make sense. If a cross-check is to have meaning, it must generally result in a lower fee when it reveals an implicit multiplier outside of the norm. That is precisely what a class member would reasonably expect when promised a cross-check. *Health Republic*, 58 F.4th

---

[4] In a related case—*In re Cendant Corp. Litig.*, 109 F. Supp. 2d 285 (D.N.J. 2000)—the district court initially awarded fees of $262 million from a $3.16 billion settlement, which was 8.275% of the settlement. *Id.* at 292. Although a cross-check was not applied, this award represented a lodestar multiplier of 32.7. *Id.* The Third Circuit vacated that award as excessive, and following remand, upheld a reduced award of $55 million, which was 1.7% of the settlement and represented a lodestar multiplier in the "mid-single digits." *In re Cendant Corp. Securities Litig.*, 404 F.3d 173, 183 & n.4 (3d Cir. 2005).

[5] *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002), *aff'd*, 350 F.3d 747 (8th Cir. 2003) (reducing percentage fee from 25% to 18%—representing a multiplier of about 3—because a multiplier over four would overcompensate the counsel at the expense of the class); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2015 WL 4560206, at *4 (S.D.N.Y. July 7, 2015) (reducing multiplier as part of lodestar cross-check from 2.6 to 1.9 for a $72.5 million fund); *IndyMac*, 94 F. Supp. 3d at 526, 528 (reducing a multiplier to 1.33, explaining that "the lodestar cross–check confirms that the proposed fee is too high") (cleaned up).

at 1374 ("[W]hat was promised . . . was application of the scrutiny and accompanying standards generally bearing that name [lodestar crosscheck] in attorney's-fee case law.").  Consistent with the above cases and the Federal Circuit's decision, the lodestar cross-check establishes that Class Counsel's fee award should be reduced to fall within the norm of implicit multipliers.

5.     An appropriate fee award under the cross-check is $11.77 to $23.14 million.

The Objectors believe that the $8.828 million fee award it previously requested was reasonable, supported by law, and consistent with the promise of a lodestar cross-check.  But, in the interest of finality, the Objectors now propose a fee award between $11.77 to $23.14 million.

a.     *Looking to implied lodestar multipliers in similar cases.*

The Court would reach this result by following the cases that (1) looked at the multipliers implied by percentage-of-the fund fee awards in similar cases, and (2) reduced the fee awards to match the multipliers implied by those similar cases' awards.  *Supra* at 26–27.

**Appropriate multiplier:**     To determine the proper multiplier under this approach, the Objectors do not quarrel with the superlatives Class Counsel uses to describe its efforts and results, but instead look to other megafund cases where courts have used the same sorts of superlatives to describe the cases, results, and counsel.  Two cases that meet this test are *In re: Urethane Antitrust Litig.*, No. 04-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) and *Visa*, 297 F. Supp. 2d 503, *aff'd Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).  These cases teach that an appropriate multiplier to apply here would be 3.2x to, at most, 3.5x.

*In re: Urethane Antitrust Litigation* shows how extraordinary a case must be to warrant a multiplier even approaching the "presumptive ceiling" of 4.0.  There, class counsel tried the class action to a jury and earned a verdict of over $400 million, which was then trebled, and eventually obtained settlements totaling over $974 million.  2016 WL 4060156, at *4.  This amount was more than double the class members' damages.  *Id*.  Even after the fee award, the class received

far more than 100% of its damages.  *Id.* at *7.  In awarding the fee award there, the judge that presided over the case marveled that "***[i]n almost 25 years of service on the bench, this Court has not experienced a more remarkable result***."  *Id.* at *4 (emphasis added).

The Court found that "counsel achieved an incredible result for the class, in a case with an extreme amount of risk at all stages of the litigation, and they obtained that result because ***they won what is reported to be one of the largest verdicts of its kind in United States history***." *Id.* at *6 (emphasis added).  "Counsel had to build this case on their own . . . after other counsel had declined to pursue it, and they toiled for many years, at great expense to themselves, with a very real risk that they would not recover anything from this defendant." *Id.*  The case was "extremely difficult" and "complex." *Id.* at *4, *5.  Applying a blended rate of about $500 per hour, the lodestar was about $100 million. *Id.* at *7 (calculated by dividing lodestar by hours). While the court implied that this rate was high, it explained that the case "justified use of the best counsel charging the highest rates." *Id.*  Moreover, in connection with the lodestar cross-check, the court was able to independently review and assess class counsel's billing records. *Id.*  All told, the implied multiplier in that case was 3.2, which represented $1,442 per hour that class counsel dedicated to the case. *Id.* at *1, *7 (calculated by dividing the fee award by hours).

*Visa* is also illustrative.  There, class counsel won "the largest antitrust settlement in history"—$3.4 billion in compensatory relief plus another $25 billion in injunctive relief.  297 F. Supp. 2d at 508, 522 n.25.  "[T]he magnitude and complexities of the litigation were enormous." *Id.* at 523.  While antitrust is complex, the case was even more complex because it turned on tying agreements—one of the most confusing areas of antitrust. *Id.* at 510.  Counsel litigated the case through jury selection, and the class involved 400 depositions, 21 experts, four rounds of class certification briefing (through the Supreme Court), 16 summary judgment motions, and 31

motions in limine. *Id.* Class counsel "devoted 52% of its attorney and paralegal resources to this case," even though it "was very risky." *Id.* Nor did class counsel benefit from "piggybacking" off of previous or simultaneous litigation. *Id.*; *Wal-Mart Stores*, 396 F.3d at 122.

When it came to ability and performance, the court described class counsel as "premiere" and its work as "uniformly excellent." *Visa*, 297 F. Supp. 2d at 524. Therefore, "public policy considerations support[ed] a substantial fee award." *Id.* As here, class counsel in *Visa* argued its request was "reasonable, and indeed conservative because it is only 2.14% of the total settlement." *Id.* at 524, 525. Noting the implied lodestar multiplier class counsel sought, the court rejected this requested fee as "excessive" and "fundamentally unreasonable." *Id.* at 522–23. It explained that the relief was so large that even an exorbitant fee would be small in comparison. *Id.* at 522. The court therefore awarded fees amounting to exactly 3.5 times the lodestar, which was based on hours that had been verified by an independent auditor. *Id.* at 523 & n.28. The court described the reduced award as "generous" and "exorbitant," and the Court of Appeals described it as "extraordinary." *Id.* at 524, 525; *Wal-Mart Stores*, 396 F.3d at 122.

There are certainly arguments that class counsel in the above cases should be paid more than Class Counsel here. For instance, as compared to the attorneys in *Urethane* and *Visa*, Class Counsel cannot credibly contend that it obtained the result wholly on its own, and without significant help from cases brought and won by other reputable lawyers. Also, unlike the above cases, Class Counsel's bills were not independently evaluated by the Court or an auditor. Class Counsel also did not recover more than double damages like in *Urethane*, and even the rates the Objectors propose tower over the blended rate of approximately $500 in *Urethane*. Finally, while the percentage of the award is not the pertinent inquiry at the cross-check stage under *Cendant*, it is notable that the award in *Wal-Mart Stores* constituted far less than 1% of the total

settlement value. *Visa*, 297 F. Supp. 2d at 524, 525.[6] Still, using these cases as an apples-to-apples assessment of fee awards, a multiplier between 3.2 and 3.5 would sufficiently compensate Class Counsel in comparison to other similarly impressive cases.

*Reasonable hours:* Having decided on a multiplier, the Court would next decide the appropriate number of hours to use to calculate the lodestar in light of Class Counsel's repeated failure to support its hours with the type of documentation required for a cross-check, *supra* at 10–14, (and in light of the likelihood that Class Counsel's hours include time spent on the Cost Sharing Class and its fee petition, *supra* at 14–15). While a 25% reduction may be warranted under *In Re Keyspan Corp. Sec. Litig.*, 2005 WL 3093399 and *Bentley*, 2020 WL 3978090, a larger reduction would be far more justified in light of Class Counsel's repeated failure to support its hours and the anomalies discussed above. *See, e.g.*, *Il Fornaio*, 2015 WL 2406966, at *4 (40% reduction after noting "less than satisfactory" documentation).

*Reasonable rate:* Next, the Court can decide the appropriate hourly rate. Using those identified by Professor Fitzpatrick as applicable for complex litigation in the District of Columbia would be generous. The Fitzpatrick Matrix rates are significantly higher than the average and median blended rates that courts have awarded to Class Counsel. The 2020 Real Rate Report rates are the highest rates that have been tethered to a prevailing market rate in this case, and empirical evidence from Class Counsel's other cases show that those rates are far higher than what courts generally award to it. Using a multiplier of 3.2 as in *Urethane*, a 40% hours reduction, and the 2020 Fitzpatrick Matrix rates, the fee award would be just over $11

---

[6] Class Counsel attempts to manipulate this percentage by ignoring the injunctive form of monetary relief to the merchant class members (Brief at 15), but Class Counsel cannot change the percentage awarded by ignoring a massive portion of the case's value.

million.  Using the far higher multiplier of *Visa*, a frankly far too minimal 25% reduction in hours, and the top quartile 2020 Real Rate Report rates, the fee would be just under $23 million.

           b.       *Using higher rates and hours, but a lower multiplier.*

Objectors submit that it would constitute error for the Court to simply accept Class Counsel's lodestar at face value and apply its full 2020 rates in effect when Class Counsel submitted its initial fee petition.  Those hours remain unsupported, and the rates are far above any that the Objectors could find awarded in any common fund case.  *Supra* at 10–12, 16–21.  But, if the Court were to take this approach, then case law teaches that the lodestar multiplier should be significantly lowered.  *Supra* at 25–26.  As most, it should be between 1.0 and 2.0, which Class Counsel's expert identified based on empirical data as the range under which most fee awards fall.  *Supra* at 23.  Using Class Counsel's 2020 fees of $11.37 million, and accounting for costs, the award would then range between $11.77 and $23.14 million.

           c.       *The Objectors seek a fair and reasonable fee.*

Notably, the Objectors do not reach its suggested fee award by piling inapplicable outlier positions on top of other outlier positions.  The Objectors simply seek an award that is consistent with the cases that have applied loadstar cross-checks, because they were promised a lodestar cross-check, and that was an important part of the bargain.

If the Objectors wanted to be aggressive in its position like Class Counsel has been in seeking its award, they would seek a far lower award.  They could advocate for application of historical rates—rather than the far higher 2020 rates—since historical rates are more appropriate when most of work was performed during the early stages of litigation.  *Supra* at 16–17.  The Objectors could also seek a further significant reduction of the lodestar based on Class Counsel's over-allocation of hours to more expensive partners.  Schratz Decl., ¶ 81.  They could request an even further reduction of lodestar hours because Class Counsel's billing records reflect time

spent by non-attorney support staff, which courts commonly exclude from the lodestar. *Munoz v. Giumarra Vineyards Corp.,* No. 09-cv-703, 2017 WL 2665075, at *20 (E.D. Cal. June 21, 2017). The Objectors could also contend that Class Counsel should receive no credit for hours spent on amicus briefs. *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 2008 WL 2371975, at *5 (N.D.N.Y. June 9, 2008). Finally, the Objectors could emphasize that countless courts have applied multipliers between 0.07 and 1, and rely on those cases to seek a far lower award. *See, e.g., Good v. W. Virginia-Am. Water Co*., 2017 WL 2884535, at *27 (S.D. W.Va. July 6, 2017) (explaining that Fitzpatrick's research revealed cross-check multipliers as low as 0.07). As detailed herein, all of these positions would be supported by numerous cases.

The reason the Objectors have not done so is that the Objectors sincerely want Class Counsel to be handsomely rewarded. $11.77 to $23.14 million represents an incredibly large fee award that also fulfills Class Counsel's promise of a lodestar cross-check. In contrast, the insurance policy that Class Counsel strategically took out on the first fee award essentially forecloses it from seeking a reasonable fee award in line with the Federal Circuit's decision. If it did so, Class Counsel would face the risk that its insurers would claim that it had jeopardized its insurance coverage by not "vigorously prosecuting" the award. Keshavarzi Decl., ¶ 5; Exh. B.

## C. Class Counsel Ignores the Federal Circuit By Rehashing Its Percentage Arguments.

Objectors cannot conclude this brief without addressing some of Class Counsel's flawed arguments. The Federal Circuit provided specific direction on remand for the Court to examine Class Counsel's lodestar and apply the promised cross-check. Curiously, Class Counsel devotes more than half of its brief to repeating the *Moore* factors for calculating a *percentage* award. These are the same arguments that Class Counsel made to the Federal Circuit. Exh. C at 1, 12-14, 16-18, 37-54 (making the exact same arguments); Oral Argument at 26:48-27:19, 27:43-29:44, 30:20-30:53, 32:27-33:56, https://cafc.uscourts.gov/home/oral-argument/listen-to-oral-

arguments/ (same).  Consistent with the Federal Circuit's opinion, these arguments do not justify an award that falls outside the norm of implicit lodestar multipliers.

For virtually every *Moore* factor, Class Counsel picks cases where courts cited particular factors as favoring class counsel, and then concludes that the same factor weighs in its favor too. Brief at 12–24.  Critically, however, Class Counsel obscures the fact that the awards in the cases it relies on are in line with the Federal Circuit's observation of a norm of multipliers between 1 and 4.  Schratz Decl., ¶ 130.  Thus, even the *Moore* factors that might favor a fee award do not favor the fee award that Class Counsel seeks.  Nonetheless, even Class Counsel's rehashing of the *Moore* factors is severely flawed.

      1.    <u>Class Counsel's negotiated fees argument fails.</u>

Class Counsel emphasizes the fourth *Moore* factor—the fee that likely would have been negotiated between private parties in similar cases.  But this factor does not help Class Counsel.

First, case law makes clear that this factor holds no weight in megafund cases.  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998) ("question[ing] the significance of this inquiry to class action lawsuits of this magnitude" since cases "involving individual plaintiffs" give little guidance for cases with "recovery exceeding $1 billion").[7]  The reasoning of these cases matches the explanation Class Counsel gave in a podcast on this case—i.e., "it makes sense that you can charge a lower number [for a class] than for an individual client for an individual claim."  Quinn Emanuel Podcast ("Podcast")[8] at 19:40–56;

---

[7]  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("The agreements . . . are not particularly helpful.  For instance, the retainer agreements did not involve the class and, because they were made precertification, are not binding on the class."); *In re Trans Union Corp. Privacy Litigation*, 629 F.3d 741, 744 (7th Cir. 2011) (Placing "little weight on the contingent fee agreements between the lawyers and . . . the named plaintiffs in the class").

[8]  Quinn Emanuel's podcast is available at this link http://law-disrupted.fm/obamacare-risk-corridor-litigation/.  *Cf. Couch v. Verizon Commc'ns, Inc.*, No. 20-cv-2151, 2021 WL 4476698, at *2 & n.4 (D.D.C. Sept. 30, 2021) (podcast subject to judicial notice).

21:50–22:05.  Similarly, the Newberg and Rubenstein treatise observes that courts have "placed little weight" on private fee agreements, labeling them "not particularly helpful," "of little value," of "minimal relevance," and "ultimately irrelevant."  5 Newberg and Rubenstein on Class Actions § 15:74 (6th ed.).

Second, while Class Counsel claims that Health Republic and Common Ground both agreed to attorneys' fees of 25% of any gross recovery (Brief at 17), its declaration tells a different story—e.g., "Common Ground agreed to an attorney's fee of ***up to*** 25%."  HR Dkt. 84-1, ¶ 8 (emphasis added).  Class Counsel has refused to provide ***any*** details about the "***up to*** 25%" provision.  Keshavarzi Decl. ¶ 7; Exh. D.  Class Counsel cannot have it both ways by relying on these purported documents to influence the Court while denying the Objectors access to them. *Stovall v. United States*, 86 Fed. Cl. 770 (2009).

Third, Class Counsel fails to provide a full picture of the risk corridors attorney-fee marketplace.  As Class Counsel admitted during its podcast, health plans did not need to pay anything to obtain the benefit of *Maine Community*, and many health plans therefore did not hire counsel because they did not need to.  Podcast at 17:10-56.  Class Counsel explained that "a lot" of big health plans reasoned that "we can just wait and see what happens.  If they win, we'll then file a case in the Federal Court of Claims and we'll win immediately.  The government will stipulate to judgment. . . ."  *Id.*  Thus, while Class Counsel seems to advocate for a benchmark of 25%, by Class Counsel's logic, an equally applicable benchmark would be 0%.

Thus, while the cross-check controls, this factor is either neutral or favors the Objectors.

2.      More than 30% of class members representing 43% of damages have objected.

Unsurprisingly, Class Counsel deems the objections levied against its requested fee the least important *Moore* factor.  That is because more than 30% of the class (based on number of

entities) or 43% of the class (based on damages) object to the requested fee. Keshavarzi Decl., ¶ 2. This is huge in comparison to other class actions. 4 Newberg and Rubenstein on Class Actions § 13:58 (6th ed.) (explaining that on average 1% of a class objects and less than 1% opts-out). In fact, "if only 2% of the class objects in a run-of-the-mill case, that is a large number of objections." *Id.* It is also huge in comparison to the few cases that have allowed a multiplier even close to what Class Counsel seeks. *See, e.g., Stop & Shop*, 2005 WL 1213926, at *18 (emphasizing that "[n]ot one member" of the class objected).

Class Counsel attempts to blink away this reality by asking the Court to rule in its favor based on the non-objection by other class members. This argument, however, ignores that "class members aware that one class member has objected may sit back and let the class member carry their objection, meaning the low number of objections is not indicative of widespread support." 4 Newberg and Rubenstein on Class Actions § 13:58 (6th ed.).

Class Counsel's argument also conceals important context. In its podcast episode about this case, Class Counsel also described its recruitment of Common Ground. Class Counsel explained that it helped Common Ground sell or finance its claim to stay in business, and as a result Common Ground "felt indebted" to Class Counsel. Podcast at 13:28-14:37. And while Class Counsel has not identified them, Class Counsel explained in its podcast that it helped *many* class members finance their claims through litigation funders. *Id.* at 22:06-23:25. Class Counsel has not disclosed these side litigation funding deals or which class members are involved. These side arrangements reflect the real concern that "class counsel likely selected the named plaintiff, not vice versa, and will often have some pre-existing relationship with the named plaintiff." 5 Newberg and Rubenstein on Class Actions § 15:74 (6th ed.). Given this dynamic, "the class representative's loyalty may well lay with class counsel and not with the class." *Id.*

3.    <u>Class Counsel ignores that percentage awards decrease as the fund increases.</u>

As to the sixth and seventh factors, a low end percentage award in a $3.7 billion case is not surprising or unusual.  It is *expected*.  "[F]ee percentage is **strongly** and **inversely** associated with settlement size among all cases."  *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. 2022).  Courts therefore award "lower percentages and lower multipliers for awards from extremely large common funds."  *Citigroup*, 965 F. Supp. 2d at 401.

*Visa* is again illustrative of why higher percentage awards in other cases do not support its request.  Like Class Counsel here, counsel in *Visa* pointed to fee percentages awarded in other cases to justify the high multiplier that would result if the court were to award the requested fee percentage representing "only 2.14% of the total settlement."  297 F. Supp. 2d at 525.  Citing its fiduciary obligation and interest in avoiding windfalls, the court explained that the cases class counsel relied on did not warrant the high fee award it sought because they: (i) "d[id] not involve funds even approaching the $1 billion mark, let alone the more than $3 billion mark [at issue there]" and (ii) "d[id] not involve multipliers at or near that in this action."  *Id.* at 521, 525 n.33.

Similar to the reasoning of *Visa*, courts describe the problem of looking at percentages in a vacuum this way: "due to economies of scale, it isn't ten times harder to try a $100 million case as it is a $10 million case."  *In re Glumetza Antitrust Litig.*, No. 19-cv-5822, 2022 WL 327707, at *10 (N.D. Cal. Feb. 3, 2022).  Rather, "in many instances the increase in recovery is merely a factor of the size of the class."  *Cendant Corp. PRIDES Litig.*, 243 F.3d at 736.  In this case, had the Objectors not opted into these two classes, the judgment would have been $2.1 billion, or about 43% less.  HR Dkt. 93 at 1 n.1.  Thus, the funds nearly *doubled* merely by adding the Objectors.  Surely, Class Counsel would not claim that its work would have been half as good had the Objectors not joined.  Consistent with *Visa* and the other authorities cited above, whether

cases have awarded higher percentages is not the relevant inquiry. Otherwise, the 2.14% cited by class counsel in *Visa* would have carried the day.

        4.    <u>Assistance to Class Counsel from other lawyers favors the Objectors.</u>

Lastly, Class Counsel cannot deny that other law firms also helped obtain the controlling decision in *Maine Community*. The Court must account for this factor. *Prudential*, 148 F.3d at 338 (remanding because district court did not "distinguish between those benefits created by" others); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 655 (E.D. Pa. 2015) (reducing fee award "to recognize the significant role of" other attorneys).

## V.    Conclusion

Class Counsel has not provided a single additional fact justifying its requested award. Instead, it rehashes the same facts and arguments that led the Federal Circuit to the correct observation that there is no justification "for an award with an implicit multiplier outside" the norm of implicit multipliers "in the range of 1 to 4." *Health Republic*, 58 F.4th at 1375, 1378. At most, the Court should award fees in the range of $11.77 to $23.14 million. Any other result would flout Class Counsel's promise in the class notice that there would be "a limitation on class counsel fees based on the number of hours actually worked on the case."

Dated: March 5, 2024              Respectfully submitted,

                                   Moe Keshavarzi
                         mkeshavarzi@sheppardmullin.com
                            (213) 617-5544
                          *Counsel for the Objectors*