## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 16-259<br><br>Filed: October 10, 2024 |
| COMMON GROUND HEALTHCARE COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 17-877<br><br>Filed: October 10, 2024 |

## OPINION AND ORDER

This matter is on remand from the United States Court of Appeals for the Federal Circuit for further proceedings concerning Quinn Emanuel Urquhart & Sullivan, LLP's ("Class Counsel") Motions for Approval of Attorney's Fee Request. *See Health Republic* ECF No. 192; *Common Ground* ECF No. 185.[1]  Class Counsel again seeks approval of a five-percent attorney's fee award, or approximately $185 million, of the combined $3.7 billion judgment recovered by the Non-Dispute Subclasses on their risk corridors claims.  Objecting members of the Non-Dispute

---

[1] Because the briefing pertaining to the fee request in both cases is substantively the same, for ease of reference this opinion and order will cite only to the briefing in *Health Republic* unless otherwise noted.

Subclasses ("Objectors") oppose these renewed motions due to the high lodestar and implicit multiplier for Class Counsel's requested fee, as well as Class Counsel's purported failure to justify its billable hours and rates.  On remand, the Federal Circuit tasked the Court with (1) performing a lodestar cross-check, (2) assessing whether there is sufficient justification for an award with a multiplier outside the norm of lodestar multipliers, (3) providing more explanation as to the adequacy of Class Counsel's hours and rates, and (4) reconsidering any other part of the Court's original award decision in light of the Circuit's holdings.  For the reasons that follow, the Court **GRANTS** Class Counsel's Motion subject to a reduction of the requested fee to 2.5 percent, resulting in a total attorney's fee award of $92,424,335.84.

## I.  BACKGROUND

A fulsome factual and procedural background is provided in the Court's original fee award opinion.  *See* Op. & Order at 2–7, ECF No. 138.  The Federal Circuit's opinion remanding the matter also provides an overview of the litigation background.  *See Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1369–71 (Fed. Cir. 2023).  As such, the Court will not summarize the background again, other than to provide an overview of the remand proceedings.

On January 31, 2023, the Federal Circuit vacated the Court's order approving Class Counsel's fee award and remanded the matter for further proceedings.  *See id.* at 1378.  The Circuit instructed the Court on remand to perform a lodestar cross-check consistent with Class Counsel's representation in the amended class notice.[2]  *Id.*  The lodestar cross-check must "includ[e] an

---

[2] The amended notice stated: "Class Counsel represents that it will request no more than 5% of any judgment or settlement obtained for the QHP Issuer Class.  The fee may be substantially less than 5% depending upon the level of class participation represented by the final membership of the QHP Issuer Class.  In any event, the exact percentage of Class Counsel's fees will be determined by the Court subject to, among other things, the amount at issue in the case and what is called a 'lodestar cross-check' (*i.e.*, a limitation on class counsel fees based on the number of

assessment of whether there is sufficient justification for an award with an implicit multiplier outside the mainstream of relevant multipliers." *Id.* Any such justification must draw upon "the facts of [the] particular case," consider "multipliers used in comparable cases," and "examine[] the reasoning behind . . . awards in cases of similar size." *Id.* at 1375 (collecting cases). Additionally, as related to the calculation of the lodestar, the Federal Circuit instructed the Court to "provide more explanation than so far presented concerning the adequacy of [Class Counsel's] hours and rates in light of the Objectors' criticisms." *Id.* at 1378. Finally, the Circuit instructed the Court to reconsider its original analysis beyond the cross-check to the extent it is "affected by the conclusions [the Circuit] . . . reached [in its decision]." *Id.*

On May 2, 2023, Class Counsel filed the present attorney's fee motions, renewing its request for five percent of the common fund. *See* Class Counsel's Mot. for Approval of Att'y's Fee Req., ECF No. 192. On the same day, Objectors filed a Motion for an Order Directing an Accounting and Safekeeping of the Disputed Funds and Limited Discovery, requesting (1) production of certain documents related to Class Counsel's obtaining judgment preservation insurance, (2) transfer of the fee award funds into an escrow account for safekeeping, and (3) an accounting of these funds from Class Counsel. *See generally* ECF No. 194. On January 30, 2024, the Court granted Objectors' request for limited discovery and denied their request for an accounting and safekeeping of the award funds. *See* Op. & Order, ECF No. 210. Subsequently, the parties completed briefing on Class Counsel's renewed fee-approval motions. *See* Objectors'

---

hours actually worked on the case)." Unopposed Mot. to Suppl. Class Notice, Ex. A at 2, ECF No. 50-1 (citations omitted).

Opp'n, ECF No. 211; Class Counsel's Reply, ECF No. 213.[3]  The Court held oral argument in this

matter on July 25, 2024.  *See* Min. Order (July 25, 2024).  The motions are now ready for decision.

## II.  LEGAL STANDARD

Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC") permits the

Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by

the parties' agreement" in a certified class action.  RCFC 23(h); *see Moore v. United States*, 63

Fed. Cl. 781, 786 (2005) (attorney's fee awards are "committed to the sound discretion of the

court").  In common fund cases, such as this one, where "each member of a certified class has an

undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on

his behalf," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980), "a litigant or a lawyer . . . is

entitled to reasonable attorney fees from the fund as a whole," *Haggart v. Woodley*, 809 F.3d 1336,

1352 (Fed. Cir. 2016) (internal quotations and modifications omitted) (citing *Boeing*, 444 U.S. at

478).  Awarding attorney's fees out of the common fund guarantees that each member of the class

pays its fair share for class counsel's representation.  *See Boeing*, 444 U.S. at 478 (explaining that

common fund fee awards avoid unjustly enriching parties that substantially benefited from, but

only minorly contributed to, the suit); *see also Kane Cnty.*, *Utah v. United States*, 145 Fed. Cl. 15,

18 (2019).

The Court may utilize differing approaches to determine the reasonableness of an attorney's

fee request in common fund cases, including the percentage-of-the-fund and lodestar approaches.

*Mercier v. United States*, 156 Fed. Cl. 580, 591 (2021) (citing *Haggart*, 809 F.3d at 1355).  Under

---

[3]  After the completion of briefing, Class Counsel filed two notices of supplemental
authority.  *See* Class Counsel's Notice of Suppl. Authority, ECF No. 216; Objectors' Resp., ECF
No. 217; Class Counsel's Second Notice of Suppl. Authority, ECF No. 222; Objectors' Resp., ECF
No. 223.

the percentage-of-the-fund approach, several judges of the Court of Federal Claims have utilized the seven *Moore* factors as guideposts for determining the reasonableness of the percentage requested by counsel.  *See, e.g.*, *Kane Cnty.*, 145 Fed. Cl. at 18; *Lambert v. United States*, 124 Fed. Cl. 675, 683 (2015); *Quimby v. United States*, 107 Fed. Cl. 126, 133 (2012).  These factors consider:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore v. United States*, 63 Fed. Cl. 781, 787 (2005) (citing Manual for Complex Litigation § 14.121 (4th ed. 2004)).  No single factor is necessarily dispositive, and each can be weighed at the Court's discretion.  *See, e.g.*, *Quimby*, 107 Fed. Cl. at 134 (considering each factor and determining that the fee likely to have been negotiated between the parties most justified the award).

The lodestar approach utilizes a base calculation that multiplies the number of hours reasonably billed by class counsel during the litigation by the reasonable billable rates for their services.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  This amount, or "lodestar," *id.* at 553, "'provides an objective basis on which to make an initial estimate of the value of a lawyer's services,'" *id.* at 564 (quoting *Hensley*, 461 U.S. at 433).  In a common fund case, the court may increase or decrease the amount of the lodestar by a so-called "risk multiplier," which is a number symbolizing the amount of risk or difficulty involved with the case.  *Haggart*, 809 F.3d at 1355 & n.19; *see Health Republic*, 58 F.4th at 1372 (explaining that the quotient of the requested fee divided by the lodestar is the "implicit multiplier").

Although the lodestar approach is more often used in fee-shifting cases to determine the reasonableness of the attorney's fee request, it is sometimes used in common fund cases as a cross-check of, or comparison to, the percentage-of-the-fund calculation arrived at through the *Moore* factor analysis. *See, e.g.*, *Elec. Welfare Tr. Fund v. United States*, 171 Fed. Cl. 362, 387 (2024); *Perez v. Rash Curtis & Assoc.*, No. 4:16-cv-03396, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020). Used in that way, a lodestar cross-check, when required, acts as a secondary check on reasonableness and guards against windfall attorney's fees. *See* 5 William B. Rubenstein et al., Newberg and Rubenstein on Class Actions § 15.85 (6th ed. 2022); *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001).

As the first step of the cross-check, a court must determine whether counsel's billed hours and rates are reasonable. *See Hensley*, 461 U.S. at 433; *Perez*, 2020 WL 1904533, at *19. The court may reduce the hours and/or rates if they are found unreasonable because, for example, counsel's documentation is insufficient or counsel's rates are inflated. *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Next, the court calculates the lodestar by multiplying counsel's reasonable hours by its reasonable rates. *Sci. Applications Int'l Corp. v. United States*, No. 17-cv-00825C, 2021 WL 3557427, at *2 (Fed. Cl. July 26, 2021).

To calculate the implicit multiplier, the court divides counsel's total requested fee amount by the lodestar amount. *Haggart*, 809 F.3d at 1355 n.19. Although "the resulting multiplier need not fall within any pre-defined range," *Health Republic*, 58 F.4th at 1375 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 & n.17 (3d Cir. 2005)), the Federal Circuit has recognized a "norm of implicit multipliers in the range of 1 to 4," *id.* If the multiplier is above this norm or is otherwise "too great" in relation to the facts of the particular case, "the court should reconsider its

calculation under the percentage-of-recovery method, with an eye toward reducing the award." *In re Rite Aid*, 396 F.3d at 306.  This last step of the lodestar cross-check allows the court to "make its own determination of what fee to award, within the range of reasonable possibilities . . . ." *Health Republic*, 58 F.4th at 1377.  And, regardless of whether the court decides to reduce, retain, or increase the multiplier, the court should justify the final award amount.  *In re Rite Aid*, 396 F.3d at 306; *Health Republic*, 58 F.4th at 1375 (explaining that the court "must provide sufficient analysis" and consider multipliers from comparable cases to justify the award).

## III.   DISCUSSION

Considering the Federal Circuit's remand instructions, the Court will not repeat the entire *Moore* factor analysis that it performed to review the original fee request under the percentage-of-fund approach.  Reconsideration of any part of that analysis, as informed by the Circuit's decision, is noted in the analysis that follows.  Instead, the Court begins with the lodestar cross-check itself.  As a result of the cross-check, the Court finds that Class Counsel's submitted hours are improperly inflated and must be reduced, that Class Counsel's 2020 rates are properly applied and are reasonable, that the 19.12 implicit multiplier is outside the relevant norm, and that a multiplier of no higher than 9.56 is justified under the circumstances of these cases.   In sum, a fee award of 2.5 percent of the common fund, or $92,424,335.84, is reasonable and does not result in a windfall for Class Counsel.

### A.    Based on Reduced Hours and 2020 Rates, the Implicit Multiplier is 19.12, Which Is Outside the Norm of Multipliers.

Proceeding to the first and second steps of the lodestar cross-check, the Court finds that Class Counsel's documentation of its hours is sufficient; however, counsel improperly included hours spent litigating the separate Cost-Sharing Reduction ("CSR") claims and preparing the fee-approval motions.  As such, the Court will reduce Class Counsel's total hours by 15 percent.  In

addition, the Court finds that using Class Counsel's 2020 rates, rather than its 2023 rates, to calculate the lodestar is appropriate and that the 2020 rates are reasonable.  Class Counsel's reduced hours multiplied by its 2020 rates equals an implicit multiplier of 19.12.

1.     <u>Class Counsel's Hours Are Sufficiently Documented but Must Be Reduced.</u>

Class Counsel asserts that it spent 9,630.6 total hours on the risk corridors litigation.  Decl. of Adam B. Wolfson, Ex. A at 2, ECF No. 192-2.  Class Counsel argues that the hours were "necessary, proper, and reasonable to achieve" beneficial results for the classes.  ECF No. 192 at 14.  Objectors oppose this amount, claiming that it is a "staggeringly high number of hours" for a case that did not require discovery or go to trial, and as such it should be reduced.  ECF No. 211 at 20.  Additionally, Objectors argue that Class Counsel did not "satisfy its burden to support its lodestar," *id.* at 21, and only provided "scant information" describing the work it performed, *id.* at 20.  In response, Class Counsel contends that the evidence it provided "is exactly the type of support courts routinely accept" for a lodestar cross-check and that Objectors "fundamentally misunderstand" lodestar cross-check principles.  ECF No. 213 at 10.

When conducting a lodestar cross-check, "[m]ore relaxed specificity and documentation standards apply" to hours and rates in comparison to what is necessary when the lodestar method is directly used to determine the reasonableness of fees.  *Health Republic*, 58 F.4th at 1378.  Since "[the] lodestar cross-check need entail neither mathematical precision nor bean-counting," *In re Rite Aid*, 396 F.3d at 306, "a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would [otherwise] be required,'" *id.* at 306 n.16 (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).  The overall reasonableness of the billed hours described in such summaries "can be tested by the court's familiarity with the case."  *Goldberger v. Integrated Res.,*

*Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Contrary to Objectors' argument, the Court is not aware of any cases suggesting that the level of scrutiny a court should give to a fee request is dependent upon the total dollar amount of the requested award.  Oral Arg. Tr. at 52:21–23, ECF No. 221 (arguing that the Court's level of scrutiny "should be proportional to the demand"); *see also id.* at 98:16–99:11.

> ### i.  *Class Counsel's Documentation of Its Hours Is Sufficient.*

In its renewed motions, Class Counsel provided a spreadsheet listing the total hours and rates billed by every attorney and paralegal during each year of the risk corridors litigation.  ECF No. 192-2 at 1–2.  Class Counsel also summarized the types of work performed by both the key attorneys and the overall litigation team over the course of the litigation, reflecting the total hours recorded on the spreadsheet.  Decl. of Adam B. Wolfson ¶ 5, ECF No. 192-1.  According to Objectors, Class Counsel "merely provide[d] the hours billed annually" by each person assigned to this litigation along with a "generic abstract" of their work "untethered" to any of the hours billed.  ECF No. 211 at 20.  This lack of information, Objectors argue, makes it "impossible to verify" Class Counsel's hours for a lodestar cross-check.  *Id.* at 21.  The Court disagrees.

Class Counsel describes the overall work performed by the two partners with the highest number of hours, Mr. Horton and Mr. Swedlow, including their involvement in developing the claim and communicating with class members.  ECF No. 192-1 ¶ 5.  The description also includes details about the next highest biller's, Mr. Wolfson, work on behalf of the class, such as formulating the complaint, responding to the Government's motion to dismiss, obtaining class certification and handling the opt-in process, drafting the motion for summary judgment, and working on the parallel appeals.  *Id.*  In addition, Class Counsel describes the work performed by other groups of attorneys, such as developing the appellate briefs filed by Class Counsel, mooting other attorneys

preparing for appellate arguments, researching related issues, and providing general litigation support. *Id.*

In its Reply brief, Class Counsel also provides more detail about its work on the case in 2020, while the case was stayed and the parties awaited the Supreme Court's decision on the risk corridors claims. ECF No. 213 at 13. This work included communicating with class members about potential offsets the Government was contemplating seeking against any damages amount, as well as adding members to the classes. *Id.* Once the Supreme Court issued its decision in April 2020, Class Counsel began working to finalize each class member's damages and moving to disburse the awarded funds immediately to most of the class members. *Id.* These submissions (spreadsheet, summaries, and briefing) build on the descriptions Class Counsel provided in its original fee-approval motions. *See* Decl. of Stephen A. Swedlow ¶¶ 8–23, ECF No. 84-1 (describing Class Counsel's work on the risk corridors claims, such as researching and creating a viable legal theory, filing the class action complaints, communicating with potential class members, managing the large class sizes, researching issues, and supporting related suits heading to appeal in the Federal Circuit and then to the Supreme Court).

Based on this evidence, the Court finds that Class Counsel's overall descriptions of its billable hours during the risk corridors litigation is not merely a "generic abstract." ECF No. 211 at 20. And the Court need not verify the hours, as Objectors suggest, through review of Class Counsel's billing records, either personally or by appointing an independent auditor. *See id.* The evidence describing Class Counsel's total hours is sufficient when measured under cross-check principles that call for a "less detailed breakdown" of the hours billed. *In re Rite Aid*, 396 F.3d at 306 n.16. To adopt Objectors' arguments would employ the very type of "bean-counting" against

which the case law cautions.  *Id.* at 306.  The Court is thus satisfied with the level of documentation provided by Class Counsel.

> ii.  *Class Counsel Improperly Included Certain Hours.*

Although the Court finds that Class Counsel has sufficiently documented its hours, it is undisputed that some of the hours billed were improperly included.  Objectors argue that Class Counsel conflated hours spent litigating the separate CSR class action claims with time spent on the present risk corridors claims.  ECF No. 211 at 23.  According to Objectors, hours spent working on the CSR claims must be excluded because they are stand-alone claims for which Class Counsel will eventually seek a separate fee award to the extent it obtains a judgment or settlement in the classes' favor.  *Id.*  In response, Class Counsel argues that the time spent on the CSR claims overlapped with and benefitted the risk corridors classes, such that "work done related to CSR claims necessarily advanced the resolution of the risk corridors claims."  ECF No. 213 at 13.  This work, Class Counsel claims, included its efforts to cabin any offset of class members' damages (due to tax credits) to only the CSR claims and not the risk corridors claims.  *Id.* at 11.  However, at oral argument, Class Counsel conceded that it will get paid for its work on the CSR claims separately, and the Court could reduce the hours submitted in support of the instant motions to ensure that counsel is not double-counting hours for both the CSR and risk corridors claims.  ECF No. 221 at 15:11–17:6.  The Court takes this concession into consideration.

Objectors further argue that Class Counsel "likely" included hours spent on its fee-approval motions in its total hours submitted to the Court.  ECF No. 211 at 18.  If so, Objectors contend that this would be improper as a matter of law.  *Id.* at 24 (citing *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 610 (9th Cir. 1997); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-cv-00468, 2021 WL 1889734, at *2 (S.D. Cal. May 11, 2021)).  Objectors

11

do not elaborate on this argument other than citing the 2,300 hours billed in the first seven months of 2020 and asserting that "the fee petition is by far the most substantive filing for the Risk Corridors Classes" on the docket during this time.  *Id.*  But after reviewing its records, Class Counsel conceded in its Reply and at oral argument that a reduction of five percent of its hours is warranted for the inadvertent inclusion of hours spent working on the instant motions.  ECF No. 213 at 14; ECF No. 221 at 10:3–7, 16:19–22.  The Court also takes this concession into consideration.

Identifying the proper hours chargeable to the risk corridors litigation is important because the amended class notice advised that Class Counsel's fee may be reduced "based on the number of hours actually worked on the case."  ECF No. 50-1 at 2.  So, although "the hours documented by counsel need not be exhaustively scrutinized," the Court must reduce Class Counsel's hours for the improper inclusion of time spent on the CSR claims and its fee-approval motions.  *Goldberger*, 209 F.3d at 50.  Objectors contend that this reduction should be 25 percent due to both the purported deficiencies in Class Counsel's documentation as well as the unallowable time.  ECF No. 221 at 87:20–22; *see* ECF No. 211 at 21, 23–24 (arguing for a 25 to 40 percent reduction).  However, this range overcompensates for the hours that the Court needs to exclude because, as explained above, the Court disagrees that any reduction is necessary for the level of documentation Class Counsel provided for its total hours.

Therefore, the Court will reduce Class Counsel's hours by a total of 15 percent (five percent for the fee motion hours and 10 percent for the CSR hours).  With the reduction, Class Counsel's hours total 8,186.01.  Based on the Court's experience and on its familiarity with the case, this represents a reasonable number of hours.  *See Goldberger*, 209 F.3d at 50.  In reaching this conclusion, the Court takes into consideration the novelty and complexity of the legal theory that

Class Counsel developed in the first instance, the size of the class that counsel has managed, motions practice in this Court, the work supporting parallel appeals in the Federal Circuit and Supreme Court, as well as myriad issues affecting the ultimate payment of the judgment to class members (*e.g.*, potential offsets, subdividing the classes, distributing the recovery, etc.).

        2.    <u>Class Counsel's 2020 Rates Are Reasonable.</u>

        *i.  The Court Will Use Class Counsel's 2020 Rates.*

Class Counsel submitted three billing rates in support of its present fee-approval motions: the historical rates in effect at the time of service, the 2020 rates in effect at the time of the original fee-approval motions, and the 2023 rates in effect at the time of the renewed motions. *See* ECF No. 192-1 ¶ 2; Decl. of Adam B. Wolfson, Ex. A at 2–7, ECF No. 197 (sealed). Class Counsel argues that the Court should use its 2023 rates because the Federal Circuit vacated the original fee award and Class Counsel had to submit new attorney's fee motions in 2023. ECF No. 192 at 12; ECF No. 213 at 16. Objectors oppose this reasoning, arguing that the purpose of using counsel's rates as of the date of the motion is to compensate for any delay between the end of the litigation and the payment of counsel's fees. ECF No. 211 at 26.

In an attorney's fee motion, counsel may use billing rates as of the date of the motion if needed to account for the delay of payment. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment . . . by applying the attorneys' current rates to all hours billed during the course of the litigation . . . ."); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (holding that the court may compute the lodestar "using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *9

(S.D.N.Y. Nov. 7, 2007) (approving use of current rates "as a means of accounting for the delay in payment inherent in class actions and for inflation").  This is true even where the litigation spanned a number of years, unless most of the work was performed many years before the motion is submitted.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *17 (N.D. Tex. Apr. 25, 2018) (noting that the "prevailing rate, unless other factors dictate, is the current rate that is paid to attorneys even though the litigation spans a number of years") (internal quotation omitted)).

Although this is a renewed fee motion after the Federal Circuit vacated the original award, there has been no delay in disbursing the fee award funds to Class Counsel.  *See* Rule 54(b) J. at 1, *Health Republic* ECF No. 143; Rule 54(b) J. at 1, *Common Ground* ECF No. 155.  Class Counsel received the entire five percent fee award in 2021 after filing its original fee motions in 2020. Decl. of Adam B. Wolfson ¶ 4, ECF No. 202-1.  There is thus no need to account for any delay of payment.  Indeed, Class Counsel essentially conceded at oral argument that using its 2020 rates is proper, and Objectors agreed.  *See* ECF No. 221 at 26:3–4, 27:2–4, 27:15–18, 66:8–12.  As to the billing rates per the attorneys' level of experience, Class Counsel also confirmed that the 2020 rates "were the rates that [attorneys for Class Counsel] commanded as of 2020."  *Id.* at 27:19–28:17; *see also* ECF No. 192-1 ¶¶ 3–4.

### ii.   Class Counsel's 2020 Rates Are Reasonable.

As to the reasonableness of the 2020 rates, Objectors argue that Class Counsel failed to submit evidence regarding discounts and write-offs that it typically applies to its billed rates.  ECF No. 211 at 27 (highlighting that "'[f]irms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations'" (quoting *Citizens for Resp. & Ethics in Wash. v.*

*United States Dep't of Justice*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015))).  Without such evidence, Objectors argue that the submitted rates do not necessarily reflect what Class Counsel's hourly clients "actually pay."  *Id.*  Objectors also assert that the Court should evaluate whether the submitted rates are consistent with prevailing market rates as reflected in objective sources, specifically the Fitzpatrick Matrix or the Real Rate Report.  *See id.* at 28–30; *see also* Decl. of James P. Schratz, Exs. 4–6, ECF No. 211-2.

To determine reasonableness of billing rates, the Court looks to the "experience, skill, and reputation" of the requesting attorney(s) and the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987).  The relevant community for the lodestar calculation is the forum of the action.  *Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012).  In a contingency-fee case, evidence of counsel's "normal and customary" hourly rates is the "best evidence" that the rate submitted in its fee request is "comparable to the market rate."  *Sci. Applications Int'l*, 2021 WL 3557427, at *2.

According to its Global Co-Managing Partner, Class Counsel's firm largely operates on an hourly-fee basis, not on a contingency basis.  Decl. of William A. Burck ¶ 3, ECF No. 192-3.  Included with its attorney's fee motions, Class Counsel provided a spreadsheet with hourly rates billed by each attorney and legal professional who worked on the case since its inception.  ECF No. 192-2 at 3–4 (redacted); ECF No. 197 at 4–5 (sealed).  Per the spreadsheet, Class Counsel's blended 2020 rate is $1,180.91 per hour.  *See* ECF No. 192-2 at 4.  Class Counsel further described the methodology it used, with the assistance of the firm's accounting department, to compile "the hourly rates at which each attorney on the team billed out as of July 2020."  ECF No. 192-1 ¶ 3.  Class Counsel also provided a description of how Class Counsel's firm sets hourly rates for

partners and associates who practice in Washington, D.C.  ECF No. 192-3 ¶¶ 3–4.  This includes researching the local market for hourly rates charged by competitor firms and setting partner rates according to the amount of time the partner has been in practice or per their expertise and specialization.  *Id.*  At oral argument, Class Counsel confirmed that the rates submitted with its fee-approval motions are the actual rates that its hourly clients pay.[4]  ECF No. 221 at 22:6–12, 100:11–14; *see* ECF No. 192-3 ¶ 5 ("[T]hese are the rates that Quinn Emanuel actually . . . charged for these attorneys to paying clients in the same timeframes.").

Accordingly, the Court finds that Class Counsel's 2020 rates are sufficiently supported and reasonable.  The Court does not need to look to outside objective sources, such as the Fitzpatrick Matrix or the Real Rate Report, to determine a prevailing market rate because Class Counsel's rates reflect the firm's hourly rates normally charged to its paying clients in the Washington, D.C. area.  As such, no adjustment to Class Counsel's 2020 rates is warranted.

### 3.  The Implicit Lodestar Multiplier Is 19.12.

Multiplying Class Counsel's reduced hours by its blended 2020 rate equals a lodestar of $9,666,923.78.  Using this reduced lodestar, the resulting implicit multiplier for a five-percent fee is 19.12.  As such, notwithstanding the additional information submitted on remand, Class Counsel's fee request equates to roughly the same implicit multiplier as its original request.  *See* Class Counsel's Mot. for Approval of Att'y's Fee Req. and Class Rep. Incentive Award at 36, ECF No. 84 (calculating a multiplier of 18–19 using a lodestar of $10 million based on historical rates

---

[4] Objectors also argue that Class Counsel's rates are "highly inflated."  ECF No. 211 at 28. In the percentage-of-the-fund analysis, the first *Moore* factor accounts for "quality of counsel." *Moore*, 63 Fed. Cl. at 787.  It is uncontested that Class Counsel is especially skilled and displayed a high dedication to litigating the classes' claims.  *See* ECF No. 221 at 44:22–45:6.  As such, Objectors should expect to pay higher rates for higher quality representation.  To account for the fact that the lodestar reflects high rates for the quality of counsel, the Court will not use that *Moore* factor during the cross-check to determine the multiplier that is justified here.

and full hours).  As the Federal Circuit held, "[a] multiplier of 18 or 19 is far outside the evident relevant norm."  *Health Republic*, 58 F.4th at 1376.  The Court must therefore "'reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award.'"  *Id.* at 1372 (quoting *In re Rite Aid*, 396 F.3d at 306).

How a court goes about doing that is largely left unexplained by the case law.  The focus of Class Counsel's motion remains strongly on the reasonableness of the overall percentage to be awarded.  *See* ECF No. 192 at 20–29; *see also* Expert Report of Prof. William B. Rubenstein ¶ 2, ECF No. 192-4 (opining that "simply comparing multipliers across cases without reference to the percentage being charged, and other qualitative factors . . . , is a similarly misguided exercise").  It argues in essence that determining the reasonable percentage by association to a lodestar multiplier results in the cross-check becoming "the tail that wags the dog."  ECF No. 221 at 17:9–10; *see id.* at 92:7 (characterizing such approach as a "Russian nesting doll[] of crosschecks").  Conceptually, the Court does not disagree.  However, *In re Rite Aid*, on which Class Counsel relies, instructs that even when used for purposes of a cross-check courts should still "explain how the application of a multiplier is justified by the facts of a particular case."  396 F.3d at 306.  And, more importantly, per the Federal Circuit's remand instructions, this Court must provide a sufficient analysis justifying any multiplier outside the norm and, as part of that justification, consider multipliers used in comparable cases.  *Health Republic*, 58 F.4th at 1375; *see* ECF No. 192-4 ¶ 21 (describing the Federal Circuit's cross-check approach as "embrac[ing] a careful factual comparison between cases").

Consistent with that task, in the analysis that follows the Court will apply the unique facts and circumstances of these cases to determine and justify a multiplier and fee percentage.  *See In re: Urethane Antitrust Litig.*, No. 04-1616, 2016 WL 4060156, at *5–6 (D. Kan. July 29, 2016)

(rejecting a purely mechanical approach to reducing the attorney's fee percentage as the settlement funds increase and awarding fees "based on the unique circumstances of the case").

**B.**      **An Award of 2.5 Percent of the Common Fund, Which Corresponds to a Lodestar Multiplier of 9.56, Is Reasonable and Justified.**

Class Counsel contends that the *Moore* factors provide the "exceptional justification" required for its admittedly high lodestar multiplier.  ECF No. 192 at 18.  But as Objectors correctly argue, Class Counsel's motion largely reiterates arguments that failed before the Federal Circuit.  *See* ECF No. 211 at 43.  Indeed, the Circuit noted that it did not see justification for Class Counsel's original 18–19 multiplier based on the record before it.  *Health Republic*, 58 F.4th at 1378.  Heeding the Circuit's views, the Court does not believe Class Counsel has presented sufficient new information to justify a five-percent fee with an associated 19.12 multiplier.[5]

Rather, reconsidering its original calculation, the Court finds that the primary reason to award a fee based on a lower percentage is due to the relatively low number of hours Class Counsel spent litigating the case.  As Class Counsel acknowledged at argument, the fundamental driver of the high implicit multiplier is that Class Counsel obtained an extraordinarily large recovery for the classes as compared to the hours it spent working on the case.  ECF No. 221 at 44:8–14.  To be clear, in this Court's opinion, that circumstance does not necessarily mean Class Counsel would receive a windfall or that the fee requested is per se unreasonable.  It may be that counsel should be rewarded for its efficiency, or additional factors could show that other considerations warrant the requested fee.  Here, however, the amended class notice specifically described the purpose of

---

[5] Class Counsel summarized the new information on remand as follows: (1) the undisputed explanation that the classes' recovery was a uniquely good result; (2) citation to *Florin v. Nationsbank of Georgia., N.A.*, 60 F.3d 1245 (7th Cir. 1995); (3) the fact that some of the class members who acted as Objectors to the original request are not objecting on remand; and (4) submission of Class Counsel's full hour and rate explanation.  ECF No. 221 at 97:9–98:18.

the cross-check performed by this Court as "a limitation on class counsel fees *based on the number of hours actually worked* on the case." ECF No. 50-1 at 2 (emphasis added). And the Federal Circuit's decision made clear that this Court cannot dispense with representations made to the class in the amended class notice. *Health Republic*, 58 F.4th at 1373. To give full effect to the lodestar cross-check that the notice guaranteed, the Court must give effect to Class Counsel's acknowledgment that the number of hours worked would serve to limit its fee.

Instead, a fee of 2.5 percent of the common fund—resulting in a 9.56 multiplier—aligns more with the multipliers applied in comparable cases and, although marginally higher, is well justified by the unique circumstances of these cases. When performing a lodestar cross-check, the Court does not rigidly apply a "pre-defined range" of multipliers. *Id.* at 1375 (quoting *In re Rite Aid*, 396 F.3d at 307 & n.17). It is true that many cases have approved attorney's fees with lodestar multipliers falling within the 1 to 4 "norm." *Id.*; *see* Decl. of Brian T. Fitzpatrick, Ex. 2, Table 1, ECF No. 84-2.[6] It is equally true that there exist many examples of cases with multipliers higher than this norm. *See* ECF No. 192-4 ¶ 37 & Ex. C. Having reviewed the cases cited by both parties, as well as cases it identified on its own, the Court has not located a case that is perfectly on all fours with the present one. Considering megafund cases in which the court performed a percentage-of-the-fund analysis with a lodestar cross-check and which involved a high percentage recovery for the class, complex and/or novel legal issues, high risk of nonpayment for the attorneys, and relatively streamlined litigation, the Court concludes that the following are the most comparable cases.

---

[6] The table attached to Mr. Fitzpatrick's declaration does not list the multipliers of each case; however, upon review, only one case included in this table has a multiplier of five or above. That case is *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008).

The first is *Electrical Welfare Trust Fund v. United States*, which like this case involved a claim by health insurers against the Government related to the Patient Protection and Affordable Care Act ("ACA"). 171 Fed. Cl. at 371–72. There, the plaintiffs raised an illegal exaction claim based on an agency rule that contravened the plain language of the ACA. *Id.* at 372. The court certified a class of 357 self-administered, self-insured employee health and welfare benefit plans. *Id.* Despite presenting what the court described as a "novel claim" with an "unclear litigation path," class counsel secured summary judgment in the class's favor for 100 percent of the class's damages and, following appeal, negotiated a settlement amounting to 91.25 percent of that judgment. *Id.* at 382. The court awarded class counsel's fee request of 25 percent of the common fund, which correlated to a 6.63 multiplier. *Id.* at 388, 390. In approving this award, the court found the settlement amount was "significantly higher" than other comparable awards. *Id.* at 390. It also favorably considered the lack of objectors to the proposed fee, as well as the duration of the case and amount of work class counsel performed (*i.e.*, 9,042 hours spent on motions to dismiss and summary judgment, discovery, an appeal to the Federal Circuit, remand, and settlement discussions).[7] *Id.* at 371–73, 384, 389.

---

[7] The primary distinguishing circumstance in *Electrical Welfare Trust Fund* is that no class member objected to the attorney's fee motion. 171 Fed. Cl. at 370–71; *see Health Republic*, 58 F.4th at 1376 (noting the lack of objectors in cases cited in the Court's original fee award decision). Considering the totality of the circumstances assessed in *Electrical Welfare Trust Fund*, the Court does not believe this one distinguishing factor outweighs the similarities. As an initial matter, courts have an independent duty to determine the reasonableness of a fee request in a class action, regardless of any objections by class members. *See* RCFC 23(h)(3); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (vacating attorney's fee award where district court "abdicated its responsibility to assess the reasonableness of attorney's fees" in an unopposed class action settlement); *Geneva Rock Prods., Inc. v. United States*, 119 Fed. Cl. 581, 593 (2015) ("Under RCFC 23(h), the court has a fiduciary duty to independently review the reasonableness of class counsel's proposed fee."). Moreover, whether any class members object is only one of several factors that courts consider under the *Moore* analysis, and the parties have not identified any authority holding that the lodging of an objection(s) in itself shows that the fee sought is unreasonable. Thus, while *Electrical Welfare Trust Fund* found the lack of objections significant

The United States District Court for the Eastern District of Pennsylvania in *In re Rite Aid Corporation Securities Litigation*, on remand from the Third Circuit, also approved a 25-percent fee award to counsel in a securities fraud class action, which equated to a 6.96 multiplier. 362 F. Supp. 2d 587, 589–90 (E.D. Pa. 2005). Class counsel billed 12,906 hours in that suit, which did not go to trial but involved settlement negotiations after an appeal of the original settlement. *See In re Rite Aid*, 396 F.3d at 297–99. The district court credited class counsel's success in obtaining a $126.6 million settlement that was "the largest class recovery on record against an auditor." 362 F. Supp. 2d at 590. The court characterized this result as "undeniably unique" and highlighted that class counsel did not "rely[] on the fruits of any official investigation." *Id.* (describing the case as "rare and complex"). The court also credited class counsel's skill in navigating "a rare and complex kind of case where victory at trial would have been, at best, remote and uncertain." *Id.*

In *Santos v. Camacho*, albeit a case slightly under the megafund level with a settlement of $90 million, counsel for the *Santos* and *Torres* classes logged a combined 3,685 hours. No. 04-00006, 2008 WL 8602098, at *33 (D. Guam Apr. 23, 2008), *aff'd sub nom. Simpao v. Gov't of Guam*, 369 F. App'x 837 (9th Cir. 2010). The United District Court for the District of Guam found that class counsel's 10-percent requested fee, with an associated 11.2 multiplier, was unreasonable because there was no discovery conducted nor did the class action go to trial. *Id.* at *34. In justifying a reduced multiplier of eight for the *Santos* class,[8] the court found that class counsel obtained an "exceptional result" for the class, "one of the largest" in the territory, that was notable

---

to its decision, it was not the sole ground for approving the fee award or finding that a greater-than-the-norm multiplier was justified. 171 Fed. Cl. at 388–90.

[8] The *Torres* class was awarded the lodestar amount without any multiplier because "the bulk of the work" was accomplished by the *Santos* class counsel. *Santos*, 2008 WL 8602098, at *44.

due to the "high degree of risk involved on the merits of the question presented." *Id.* at *39. As additional support for the multiplier, the court also noted that the settlement produced "significant concessions or obligations on the part of the Government." *Id.*

And finally, in *Skochin v. Genworth Financial, Inc.*, an action against insurers based on alleged omissions and misrepresentations about long-term care policies, class counsel billed 6,233 hours over eight months of litigation that included discovery and weeks of mediation. No. 3:19-cv-49, 2020 WL 6536140, at *1, *9 & n.3 (E.D. Va. Nov. 5, 2020). Counsel's efforts led to a total settlement estimated at $130 million.[9] *Id.* at *3. Although the legal issue was not "particularly complicated," *id.* at *9, the court awarded a 15-percent fee, finding the resulting lodestar multiplier of 9.05 to be reasonable "in light of the significant value that Class Counsel has secured for the class," *id.* at *10. Because of the high value, the court determined that the multiplier, though outside the range of other multipliers awarded in the circuit, "should not preclude recovery" for class counsel.[10] *Id.*

Accordingly, a reasonable multiplier in a case involving similar circumstances ranges from 6.96 to 9.05. But a singular focus on the multiplier applied in other cases does not comport with lodestar cross-check principles. *Health Republic*, 58 F.4th at 1375 (explaining that a cross-check

---

[9] The total settlement depended upon whether class members maintained their current policies or chose a special election option. *Skochin*, 2020 WL 6536140, at *3.

[10] Class Counsel cites one case, *Perez*, which approved a 33-percent fee that equated to a multiplier between 13.42 and 18.15, depending on various reductions to the lodestar. *See* ECF No. 192 at 14–15. The Court finds the circumstances of that case comparable to the extent it involved a megafund involving significant litigation risk and a high recovery for the class. *See Perez*, 2020 WL 1904533, at *16–17. But *Perez*'s lodestar cross-check was premised on a relatively similar "realm of reasonableness" analysis that the Federal Circuit rejected. *See id.* at *21 (noting only that the range was "on the higher-end" but "still within the surveyed acceptable range [of .6–19.6] in the Ninth Circuit (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002)); *see Health Republic*, 58 F.4th at 1374. Accordingly, the Court does not find that case to be a reliable comparator for purposes of its task on remand.

may also "tak[e] full account of the relevant attorney-fees considerations," such as the risk of non-payment borne by class counsel and incentivizing attorneys to continue representing classes); *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002) (holding that the lodestar cross-check is "an aid to the court's assessment of the reasonableness of the [requested] fee"). Considering the totality of the circumstances, a modest upward adjustment to the multiplier is warranted by the following factors: (1) results obtained for the class, (2) complexity of the litigation, and (3) risk of nonrecovery.[11] *See Moore*, 63 Fed. Cl. at 787.

As the Supreme Court has explained, the results obtained by class counsel on behalf of the class is "the most critical factor" when reviewing an attorney's fee motion. *Hensley*, 461 U.S. at 436. Class Counsel argues that "exceptional results warrant higher multipliers." ECF No. 192 at 18. Here, Class Counsel achieved a rare recovery of 100 percent of the damages owed to the classes based on a novel legal theory. *Id.* at 19–20. This "uniquely beneficial result for the class" is uncontested. ECF No. 221 at 4:12–13; *see id.* at 73:21. Class Counsel contrasts this result with

---

[11] Having reviewed the original award decision, the Court finds that the other *Moore* factors do not justify a higher multiplier. Two factors—quality of Class Counsel and hours billed—are discussed above. Additionally, upon reconsideration, the Court gives more weight to the number of objections filed. Although there are fewer objectors on remand, there are still 54 class members, representing about 30 percent of the two classes and 43 percent of the total common fund, that objected to the renewed fee award motions. *See* ECF No. 211 at 2, 46; Decl. of Moe Keshavarzi ¶ 2, ECF No. 211-1. The Court has accepted some of their objections are meritorious. The Court continues to agree with its original analysis with respect to (1) the fee that likely would have been negotiated between private parties in similar cases and (2) the percentage applied in other class actions. Even at the full five percent, class members here would pay much less than the going contingency-fee rate for risk corridors claims or the average fee percentage approved in comparable class actions. *See* ECF No. 84 at 27 (noting that prior to filing suit the named plaintiffs agreed to a 25-percent contingency fee); *see also Elec. Welfare Tr. Fund*, 171 Fed. Cl. at 382 (25-percent fee award); *In re Rite Aid*, 362 F. Supp. 2d at 589–90 (same); *Skochin*, 2020 WL 6536140, at *11 (15-percent fee award); *but see Santos*, 2008 WL 8602098, at *39 (3.4-percent fee award). Regardless, the Federal Circuit criticized the Court's overreliance on the low nature of the requested fee percentage and instructed the Court to apply other principles in determining a reasonable award. *See Health Republic*, 58 F.4th at 1374–75. Giving credence to those principles, the Court finds that these final factors do not justify a higher multiplier.

the result in *Mercier*, where the court awarded class counsel a 20-percent fee after obtaining a megafund settlement worth 65 percent of the class's claimed damages. *See* 156 Fed. Cl. at 584, 592 (noting that a 20-percent award resulted in a "very generous but reasonable" 2.95 multiplier). Class Counsel contends, and the Court agrees, that even if the Court awarded the full five-percent fee requested in these cases, the Non-Dispute Subclass members "will be better off than similarly-situated megafund class members . . . but pay less as a percentage of their damages for that result." ECF No. 192 at 28 (contrasting this result with the net 48-percent recovery in *Mercier*). Thus, the Court agrees that the undisputedly exceptional results in these cases merit a higher multiplier. *See* ECF No. 192 at 18; ECF No. 213 at 20; ECF No. 221 at 36:19–37:2.

As to the complexity of the litigation, although the present cases did not involve lengthy pre-trial procedures or trial, the legal questions were based on a "notoriously complex statute," the ACA. *Minuteman Health, Inc. v. United States Dep't of Health & Hum. Servs.*, 291 F. Supp. 3d 174, 179 (D. Mass. 2018); *see also Elec. Welfare Tr. Fund*, 171 Fed. Cl. at 385 (citing favorably the "legal complexities of th[e] action" as a basis for award). It is undisputed that Class Counsel originated the novel, winning legal theory for the risk corridors claims based on an untested argument that the relevant ACA provision was money-mandating with respect to the classes. *See* ECF No. 192 at 19; ECF No. 192-4 ¶ 31; ECF No. 221 at 44:23–45:6, 56:17–21. Class Counsel asserts that it overcame "a lot of skepticism" when first reaching out to the classes, but it articulated its complex legal theory in such a way that numerous "copycat lawsuits" soon followed. ECF No. 221 at 45:2–4. Notably, Class Counsel did not have the benefit of a prior or ongoing litigation to provide a ready-made legal claim or clear litigation path. *See, e.g.*, *In re: Urethane Antitrust Litig.*, 2016 WL 4060156, at *6; *In re Rite Aid*, 396 F.3d at 297, 304–05. Even more notably, the Supreme Court affirmed Class Counsel's legal theory in appeals from decisions in other consolidated risk

corridors cases that followed Class Counsel's lead.[12] *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 297–99 (2020). Therefore, the Court finds that the novelty and complexity of the claim, originated by Class Counsel, provides additional justification for a higher multiplier.

Next, a key consideration in this case is the "risk of nonpayment" that Class Counsel assumed throughout the litigation. *Health Republic*, 58 F.4th at 1375. "In determining attorneys' fees in a common fund case, courts use a risk multiplier to compensate the attorneys for the risk that they will not be paid if the litigation is unsuccessful." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995). This risk—and, as a result, the multiplier—increases when the litigation is complex and unprecedented. *See Elec. Welfare Tr. Fund*, 171 Fed. Cl. at 385 (finding the complex legal issues "were untested, risky, and anything but certain") (internal quotations omitted)); *Moore*, 63 Fed. Cl. at 787. Class Counsel argues that "[t]he objective facts here show this was a very risky case." ECF No. 192 at 24. According to Class Counsel, the risk here hinged upon the uncertainty of the Government's liability, since there were no "obvious instances of wrongdoing" by the Government, ECF No. 192-4 ¶ 31, and the primary issue was a matter of statutory interpretation pertaining to the then relatively new ACA. *See Me. Cmty.*, 590 U.S. at 310 ("[T]he statute meant what it said: The Government 'shall pay' the sum that § 1342 prescribes."). Applying the risk multiplier formula used by the Seventh Circuit in *Florin*, Class Counsel estimates that its odds of winning at the beginning of this case were at best 10 percent. *See* ECF

---

[12] Class Counsel's arguments affirmed by the Supreme Court in *Maine Community* include: (1) the plain meaning interpretation of the relevant statutory provision of the ACA, *compare* Pl.'s Compl. ¶ 7, ECF No. 1 *with Me. Cmty.*, 590 U.S. at 311; and that (2) the statute created a mandate for the Government to pay QHPs, *compare* ECF No. 1 ¶ 34 *with Me. Cmty.*, 590 U.S. at 324; (3) the Court has jurisdiction over risk corridors claims under the Tucker Act, *compare* ECF No. 1 ¶ 14 *with Me. Cmty.*, 590 U.S. at 324–25; (4) the risk corridors program does not have to be "budget neutral," *compare* ECF No. 1 ¶ 30 *with Me. Cmty.*, 590 U.S. at 311; and (5) the appropriation riders did not modify the Government's obligation to pay, *compare* ECF No. 1 ¶ 39 *with Me. Cmty.*, 590 U.S. at 316–17.

No. 192 at 25; ECF No. 192-4 ¶¶ 41 & n.45, 44; *see also Florin*, 60 F.3d at 1247 n.3 (explaining that the risk multiplier is "determined by dividing 1 by the probability of success" *ex ante*). This would imply a risk multiplier of 10, *id.*, which is right around the 9.56 multiplier the Court has determined is reasonable.

Even with the benefit of an *ex post* view, the risk of nonpayment was clear. As Class Counsel summarizes it: "The majority of lower courts to review the claims rejected them. The initial Federal Circuit panel rejected them. The Federal Circuit refused to review that decision *en banc*." ECF No. 192 at 24. At that point in the litigation, success required the Supreme Court to grant a writ of certiorari and reverse the Federal Circuit. *Id.* While this procedural history has been recounted multiple times in briefing and prior reviews of Class Counsel's attorney's fee motions, it bears repeating because it demonstrates in plain terms the high risk of nonpayment that Class Counsel faced. *See Santos*, 2008 WL 8602098, at *39 (holding that higher multiplier of eight was warranted where case "was so much of a gamble and the costs had to be solely shouldered by [the] attorney"). As such, the Court finds that the risk carried by Class Counsel strongly supports the reasonableness of a higher multiplier in this case.

Accordingly, based on the tremendous results obtained for the classes, the complexity of the litigation, and the very real risk of nonpayment, a 9.56 multiplier is justified.

### C. A 2.5-Percent Fee Award Is Not a Windfall to Class Counsel.

At the center of the Objectors' opposition to Class Counsel's attorney's fee motions is the contention that the requested fee award of five percent of the common fund "can only be described as a windfall." ECF No. 211 at 17; *see Health Republic*, 58 F.4th at 1374 ("A court should disallow windfalls for lawyers." (quoting *Gisbrecht*, 535 U.S. at 808)). The Court acknowledges that it has a fiduciary duty to the class that requires it to not "treat the [fee] request as presumptively the

proper award but [rather to] play a more neutral role . . . in deciding what fee is warranted." *Health Republic*, 58 F.4th at 1378; *see also* RCFC 23(h).  In conducting the analysis above, the Court has provided additional explanation concerning the sufficiency of Class Counsel's hours and rates, reducing hours by 15 percent and rejecting counsel's invitation to apply 2023 rates.  It has performed a lodestar cross-check in conformance with the Federal Circuit's instructions, lowering the fee percentage because of the number of hours actually worked on the case.  It has also justified the resulting multiplier, including by reference to comparable cases.  Finally, the Court reviewed its original fee award and reconsidered several *Moore* factors in light of the Federal Circuit's holdings.  Based on the Court's analysis in the lodestar cross-check, *supra* §§ III.A–B, the Court determines that an award of $92,424,335.84 (2.5 percent of the common fund) is reasonable and not a windfall for Class Counsel for the reasons justifying the above-the-norm multiplier.

On the other hand, the fee that Objectors propose is so low as to disincentivize attorneys from pursuing class actions.  Objectors argue that the Court should award Class Counsel between $11.77 and $23.14 million (or .3 to .6 percent).  *See* ECF No. 211 at 19.  At argument, Objectors' counsel specified that the highest multiplier should be no more than two, which equates to approximately $19.3 million based on the reduced lodestar.  *See* ECF No. 221 at 88:10–89:2.  An award under either of Objectors' calculations, however, would amount to *less* than Class Counsel would have received had it only represented the named plaintiffs under a 25-percent fee agreement. *See* ECF No. 192 at 23 ("Had Class Counsel just pursued the two class representative's claims [Health Republic and Common Ground], it would have made over $28 million in fees from them alone."); *see also* Rule 54(b) J., Ex. A at 3–4, *Health Republic* ECF No. 98 (showing the named plaintiffs recovered approximately $86.9 million); Rule 54(b) J., Ex. A at 4, *Common Ground* ECF No. 112 (showing Common Ground additionally recovered roughly $27.7 million).

The Court has serious public policy concerns with such a result.  As the Federal Circuit recognized, the Court may consider "the interest in 'sustain[ing] the incentive for attorneys to continue to represent [class action] clients.'"  58 F.4th at 1375 (quoting *Florin*, 60 F.3d at 1247); *see Geneva Rock Prods., Inc. v. United States*, 119 Fed. Cl. 581, 594 (2015) (holding that a fee award must be "substantial enough to provide counsel with an adequate incentive to bring class action suits, especially in instances where individual lawsuits would not be cost-effective").  Here, the class action process undoubtedly worked, far better than in most examples.  The class members received full recovery of their damages, while reaping both the procedural and economic benefits of proceeding collectively.  The Government, meanwhile, significantly conserved resources by defending two cases rather than hundreds.  It would be manifestly unfair to Class Counsel, in relation to the benefits conferred through the class action process, to award it less than it would have received if it never sought to certify the classes.  *See* Fed. R. Civ. P. 23(h), advisory comm. notes, 2003 amend., subdiv. (h) (explaining that, in approving a fee award in a class action, "the court's objective is to ensure an overall fee that is fair for counsel *and* equitable within the class" (emphasis added)).  To incentivize attorneys to take on class action cases, consistent with the public interest, the Court must provide some recognition for the added work and risk that Class Counsel took on by pursuing these cases as class actions.

*       *       *

Accordingly, a 2.5-percent fee award is reasonable, and the corresponding 9.56 multiplier based on a reduced lodestar is justified under the circumstances of these cases.  Moreover, such award does not result in a windfall for Class Counsel who pioneered the winning legal theory that greatly benefited all risk corridors claimants, including the Non-Dispute Subclasses here.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Class Counsel's renewed Motions for Approval of Attorney's Fee Request (*Health Republic* ECF No. 192; *Common Ground* ECF No. 185), subject to a reduction of the requested fee to 2.5 percent of the common fund.  In total, Class Counsel is awarded $92,424,335.84.  The Clerk is directed to enter judgment in *Health Republic* in the amount of $47,591,551.18.  The Clerk is likewise directed to enter judgment in *Common Ground* in the amount of $44,832,784.66.

**SO ORDERED**.

Dated: October 10, 2024                                   */s/ Kathryn C. Davis*_____
                                                                         KATHRYN C. DAVIS
                                                                         Judge