# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY, | |
| Plaintiff, on behalf of itself and all others similarly situated, | No. 1:16-cv-259-KCD (Judge Davis) |
| vs. | |
| THE UNITED STATES OF AMERICA, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |
| COMMON GROUND HEALTHCARE COOPERATIVE, | |
| Plaintiff, on behalf of itself and all others similarly situated, | No. 1:17-cv-877-KCD (Judge Davis) |
| vs. | |
| THE UNITED STATES OF AMERICA, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

## OBJECTORS' MOTION FOR ATTORNEY'S FEES FROM CLASS COUNSEL

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................ 1

II.   Background ......................................................................................................... 2

A.    The Government's Failure to Pay the Promised Risk Corridors Payments Resulted in a Combined $1.6 Billion of Damages for Objectors. .......................... 2

B.    Class Counsel Fails to Honor its Promises in the Class Notice, Forcing Objectors to Incur Additional Attorney's Fees to Object to the $185 Million Fee Request. ..................................................................................................... 2

C.    Objectors Incur Substantial Fees to Appeal Class Counsel's $185 Million Windfall. ........................................................................................................ 4

D.    Objectors Seek to Protect Their Appellate Victory Once They Learn Class Counsel Has Distributed the Entire Disputed Fee Award to its Partners. .............. 5

E.    Objectors Are Forced to Object to Class Counsel's Renewed Motion for a Fee Award that Sought the Same Windfall Already Rejected by the Federal Circuit and Which Was Premised on an Inflated Lodestar. ..................................... 6

F.    Objectors Incur Additional Unnecessary Expense to Enforce Class Counsel's Promise to Promptly Distribute Any Overpayment. ............................... 7

G.    Objectors are Forced to Further Litigate the Question of Interest on Class Counsel's Repayment—Despite Its Prior Assurances It Would Compensate the Class for the Time Value of Money—Resulting in an additional $10 Million for the Class. ......................................................................................... 8

H.    Objectors Seek to Informally Resolve the Present Dispute Concerning Objectors' Attorney's Fees; Class Counsel Improperly Threatens Sanctions in Response. ..................................................................................................... 10

III.  Argument ......................................................................................................... 11

A.    Objectors Seek $1.625 Million in Fees—or 1.6% of the $102 Million Benefit They Conferred on the Class. ................................................................ 12

1.    Objectors' Request for a 1.6% Fee Is Well Within the Realm of Reasonableness. ..................................................................................... 13

2.    Objectors Request 1x Their Lodestar Which is More Than Reasonable Under the Circumstances. ...................................................... 14

B.    The Moore Factor Analysis Also Supports Objectors' Requested Fee. ............... 16

1.    The Seventh Moore Factor—the $102 Million Award (Benefit)—Overwhelmingly Supports the Requested Fee. ........................................... 17

2.    The Fourth Moore Factor—the Fee Private Parties Would Have Negotiated—Is Particularly on Point Because the Requested Fee Is What the Objectors Paid. ........................................................................... 17

3.      The Third Moore Factor—the Risk of Nonrecovery—Favors Objectors' Modest Fee Request Given a Successful Appeal was Unlikely Given the Abuse of Discretion Standard applied........................18

4.      The Second Moore Factor—the Complexity and Duration of the Litigation—Also Supports Objectors' Fees Incurred to Litigate Novel Issues of First Impression...............................................................18

5.      The Sixth Moore Factor—the Percentage Applied in Other Class Actions—Favors a Fee Much Higher Than Objectors Seek Here.............19

6.      The First Moore Factor—Quality of Counsel—Supports the Requested Fee. ........................................................................................19

7.      The Fifth Moore Factor—Class Member Objections—is Irrelevant Here Where the Fee is Requested by Objectors from Class Counsel, not the Class. ..................................................................................................20

C.      Objectors Seek Their Fees Solely From Class Counsel Because It Was Their Actions that Necessitated Them...........................................................................20

IV.     Conclusion ...................................................................................................................23

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re "Agent Orange" Prod. Liab. Litig.*
    818 F.2d 216 (2d Cir. 1987)....................................................................22

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*
    2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)........................................19

*In re Cendant Corp. PRIDES Litig.*
    243 F.3d 722 (3d Cir. 2001).....................................................................12

*Citing Hensley v. Eckerhart*
    461 U.S. 424 (1983).........................................................................11, 17

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)......................................................11

*Eubank v. Pella Corp.*
    No. 06-CV-4481, 2019 WL 1227832 (N.D. Ill. Mar. 15, 2019)..............19

*Health Republic Ins. Co. v. United States*
    58 F.4th 1365 (Fed. Cir. 2023) .......................2, 3, 4, 5, 13, 14, 16, 18

*Health Republic Ins. v. United States*
    173 Fed. Cl. 508 (2024) ............................................................................7

*Hendricks v. Starkist Co.*
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018) ..................................................................22

*Kaufman v. American Express Travel Related Servs.*
    Co., Case No. 07-cv-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)...................19

*Lan v. Ludrof*
    No. 1:06-cv-114, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008)................19

*In re Lithium Ion Batteries Antitrust Litig.*
    2020 WL 7261313 (N.D. Cal. Dec. 10, 2020).........................................22

*McCown v. City of Fontana*
    565 F.3d 1097 (9th Cir. 2009) .................................................................17

*McDonough v. Toys R Us, Inc.*
    80 F. Supp. 3d 626 (E.D. Pa. 2015).........................................................22

*Moore v. United States*
    63 Fed. Cl. 781 (2005) ..................................................................................................16, 20

*In re Optical Disk Drive Prod. Antitrust Litig.*
    No. 10-MD-02143-RS, 2021 WL 4124159 (N.D. Cal. Sept. 9, 2021) ......11, 12, 13, 19, 20, 21

*Rodriguez v. West Pub'g Co.*
    563 F.3d 948 (9th Cir. 2009) ..................................................................................................12

*In re Southwest Airlines Voucher Litig.*
    898 F.3d 740 (7th Cir. 2018) ..................................................................................................12

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ................................................................................................11

<u>Other Authorities</u>

FRAP 4(a)(1)(B) and 4(a)(4)(A)(iv) .............................................................................................10

## I.     Introduction

This motion is necessary because Class Counsel repeatedly and for years failed to live up to the promises it made to the class.  Class Counsel persuaded class members to join the class by promising that its fee would be subject to a lodestar cross-check, but turned its back on that promise.  Class Counsel promised that its fee would be tied to the number of hours it actually worked on the case, but then increased its lodestar by double-counting its hours and seeking fees for time it spent pursuing its fee award.  Class Counsel then promised the class and the Court that it would return the amount the Court reduced from its first fee award, plus interest, but thereafter contended it owed zero interest and forced Objectors to incur additional fees to return the class's funds after the Court reduced the initial award.

Class Counsel tries to write its conduct off as "zealous advocacy."  But irrespective of the reason, Class Counsel cannot deny that its actions forced Objectors to incur significant fees to force Class Counsel to simply do what it had promised.  Indeed, as a result of these and other actions, Objectors were forced to incur more than ***$1.625 million*** in fees.  Objectors' efforts resulted in a substantial benefit to the class.  As a result of Objectors' objection, appeal, and litigation over the past five years, ***more than $102 million*** has been returned to the class.  While caselaw confirms that this outsized recovery would certainly support a request for a multiplier on Objectors' lodestar—or a request for the benchmark 25% of the amount returned—Objectors' request is more modest.  Instead, they ask for what they have actually incurred to enforce Class Counsel's promises, which is about ***1.6%*** of the benefit conferred on the class.  And because it was Class Counsel who necessitated these fees, Objectors seek fees from Class Counsel, not the class.

Objectors therefore respectfully request that the Court award them their lodestar fees and expenses of $1.625 million from Class Counsel, which represents 1.6% of the amount the Objectors returned to the class.

II.    **Background**

A.    **The Government's Failure to Pay the Promised Risk Corridors Payments Resulted in a Combined $1.6 Billion of Damages for Objectors.**

This case involves the Affordable Care Act's risk corridors program, which promised to cap participating plans' losses each year from 2014-2016. *Health Republic,* 58 F.4th at 1368. When the government failed to make the payments required by the statute, many health plans sued the government individually, in addition to the two class actions filed by Class Counsel here, *Health Republic Insurance Co. v. United States* and *Common Ground Healthcare Cooperative v. United States*. *Id.* While these class actions were stayed, a related risk corridors case was litigated to the Supreme Court, resulting in a 2020 judgment in favor of all of the health plans in the amount of their total risk corridors damages—totaling in excess of $12 billion across all plans. *Id.* For the two class actions at issue here, that judgment was approximately $3.7 billion, of which $1.6 billion represented the damages suffered by Objectors.

B.    **Class Counsel Fails to Honor its Promises in the Class Notice, Forcing Objectors to Incur Additional Attorney's Fees to Object to the $185 Million Fee Request.**

To convince class members to join the class actions, Class Counsel made several promises about the fee it would seek from any recovery. H.R. Dkt. 50-1. Most importantly, it represented that 5% of the ultimate class recovery was the highest amount of attorney's fees it would ever seek, but reassured prospective class members that fees "will be determined by the Court subject to . . . what is called a 'lodestar cross-check' (i.e., ***a limitation on class counsel fees based on the number of hours actually worked on the case***)." *Id.* (emphasis added). That is, if resolution of *Health Republic* and *Common Ground* was accomplished with minimal time investment, this would serve as a cap on Class Counsel's fee—independent of the ultimate 5% ceiling. As the Federal Circuit later noted, the normal range of multipliers awarded when a lodestar cross-check is used is 1 to 4 times class counsel's lodestar (*i.e.*, its hourly rate times the

-2-

hours worked). *Health Republic*, 58 F.4th at 1377-78 . Class Counsel used those promises for its benefit by attracting more class members, which in turn increased the size of the common fund to $3.7 billion, of which $1.6 billion was added when Objectors agreed to join the class. Class Counsel, however, "disregard[ed] the guarantee" it used to gain class members' participation. *See Health Republic Ins. Co. v. United States,* 58 F.4th 1365, 1373 (Fed. Cir. 2023).

Despite these promises Class Counsel sought the maximum amount in fees in July 2020, seeking 5% of the $3.7 billion judgment across both classes—or $185 million—representing an implicit multiplier of 18-19, far outside the normal range of 1-4. H.R. Dkt. 84 (the "First Petition"). In that First Petition, Class Counsel claimed that a lodestar crosscheck was "not mandatory" and that courts "routinely" award fees based on a percentage of the fund "without conducting a 'lodestar cross-check." *Id.* at 28-29.

Class Counsel also offered the Court little to no information on its hours and rates—it merely stated in a declaration that its attorneys worked "almost 10,000 hours" on the two cases "at a blended hourly rate of approximately $1033 across partners and associates," with support staff adding more than 400 hours "at an average rate of approximately $325 per hour." *Health Republic*, 58 F.4th at 1371.

Because the First Petition sought an astronomical fee compared to the representations made about the fee in the class notices relied on by the class, Objectors hired and paid counsel an hourly fee to object to the $185 million fee petition. Keshavarzi Decl., ¶ 2. After Objectors challenged the First Petition, Class Counsel could have made good on its promise and offered the Court a (belated) lodestar cross-check. Instead, Class Counsel doubled down and argued that it need not do so despite the class notice, arguing, for example, that it was not obligated in the first

instance to perform the lodestar cross-check.  H.R. Dkt. 93 at p. 7.

The Court granted Class Counsel's First Petition over the objection, and Class Counsel, without providing any notice to the class or the Court, directed the claims administrator to distribute the full $185 million fee to itself near the end of 2021.  H.R. Dkt. 210 at 3.  The risk corridors common fund has thus ceased to exist since some point at the end of 2021—nearly four years ago.

**C.    Objectors Incur Substantial Fees to Appeal Class Counsel's $185 Million Windfall.**

Objectors timely appealed the $185 million fee award and the disputed issues were extensively briefed and argued to the Federal Circuit.  *See* H.R. Dkt. 144.  While that appeal was pending, and unbeknownst to the class or the Court, Class Counsel further distributed the award to its partnership.  H.R. Dkt. 210 at 3.

Recognizing Class Counsel's failure to honor the "deal," the Federal Circuit sided with Objectors and vacated the $185 million fee award in January 2023.  *Health Republic*, 58 F.4th at 1378.  The Federal Circuit rejected all of Class Counsel's arguments concerning the lodestar cross-check.  It recognized not only that the guarantee of a lodestar cross-check "was part of the 'deal' offered to potential class members and accepted by what we may assume to be all issuers that chose to join the classes," but also that Class Counsel had taken—and continued to take on appeal—a position contrary to its promise:

> It is a sufficient reason for us to so hold that in this case the court-approved notices sent to potential class members, for use by potential members in deciding to whether to opt into the classes, expressly guaranteed use of a lodestar cross-check by the Claims Court in determining an attorney's fee award.  *See supra* p. 1370.  Quinn Emanuel cites judicial decisions from other circuits reciting that a trial court need not always subject a potential percentage-of-the-fund fee award to a lodestar cross-check. *See, e.g., Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) ("Although not required to do so, the court verified the reasonableness of its award by cross-checking it against the lodestar method."); Appellees' Br. at 36 n.6.  But none of the cited decisions recite the existence of a class notice like the ones distributed here and nevertheless approve dispensing with a lodestar cross-

check, much less when, as in this case, no change of circumstances or other basis
has been advanced for disregarding the guarantee.

*Health Republic Ins. Co.*, 58 F.4th at 1373.

On remand, Class Counsel was to be held to its promise of "a lodestar cross-check…including an assessment of whether there is sufficient justification for an award with an implicit multiplier outside the mainstream of relevant multipliers." *Health Republic*, 58 F.4th at 1377-78 . The Federal Circuit explained that it did not see sufficient justification "for an award with an implicit multiplier outside" "the [normal] range of 1 to 4," much less 18-19. *Id.* And as part of the cross-check, the Federal Circuit agreed with Objectors that more was needed "to justify the lodestar itself—the approximate number of hours and blended rates used to produce the 18-to-19 implicit multiplier." *Id.*

**D.    Objectors Seek to Protect Their Appellate Victory Once They Learn Class Counsel Has Distributed the Entire Disputed Fee Award to its Partners.**

Once the Federal Circuit vacated the initial fee award, the Objectors sought confirmation that the funds were being held in an interest-bearing client trust account for the benefit of the class. H.R. Dkt. 194 at p. 10; 194-1. Class Counsel responded that the funds were "safe" and that if Objectors wanted the funds returned or any interest on them, they needed to "file a motion." *Id.* So the Objectors paid counsel to move for an accounting and safekeeping of the disputed funds in an interest-bearing client trust account to ensure Class Counsel's ability to promptly repay any refund due and with a fair rate of interest. *Id.*

In response, Class Counsel argued this was unnecessary because it would pay interest if the fee award were reduced. H.R. Dkt. 202. Class Counsel also "unequivocally commit[ed] to repay any difference (if any) between the two awards," and represented that any interest owed on the difference would be a "simple" calculation. H.R. Dkt. 202. The implied assurance to the Court was that Class Counsel would pay a reasonable rate of interest, and that it would promptly

return any overpayment assuming the Court decided any money was due. Based on these assurances made in response to Objectors' motion for an accounting and safekeeping, the Court denied Objectors' motion, and found that it was not necessary to determine interest or order the safekeeping of the disputed funds at that time. H.R. Dkt. 210 at p. 13.

The Court did, however, grant Objectors' motion with respect to the discovery it sought concerning the judgment preservation insurance ("JPI") Objectors learned Class Counsel had purchased in order to distribute the disputed funds to its partnership. *Id.* Objectors sought information about the JPI primarily to insure that Class Counsel could and would promptly repay the class given Class Counsel had effectively placed that responsibility in the hands of strangers to this litigation.

**E.    Objectors Are Forced to Object to Class Counsel's Renewed Motion for a Fee Award that Sought the Same Windfall Already Rejected by the Federal Circuit and Which Was Premised on an Inflated Lodestar.**

In May 2023, Class Counsel filed its renewed Motion for Approval of Attorney's Fee Request seeking—despite the Federal Circuit's opinion—the same 5% (or $185 million) award on remand (the "Second Petition"). H.R. Dkt. 192. Particularly after the Federal Circuit's opinion made clear the initial fee request did not align with the class notice, Class Counsel could have lived up to its promises and sought a fee that was both in line with the Federal Circuit's directions on remand, and properly limited by the hours actually worked on these cases. But instead, Objectors were again forced to pay counsel to object to the Second Petition which re-argued the same fee already determined to be undeserved by the Federal Circuit.

Moreover, after the Federal Circuit directed Class Counsel to provide more detail on its lodestar, it became clear that Class Counsel had used an improperly inflated lodestar all along to justify the reversed fee award. H.R. Dkt. 224 at pp. 11-13. Class Counsel was forced to confess to double counting its hours and including hours that should not have been included in the

lodestar as a matter of law, like hours spent exclusively for the separate Cost Sharing Reduction ("CSR") classes and time spent on the attorney's fee briefing, neither of which were proper components of the subject risk corridors lodestar.  *Health Republic Ins. v. United States*, 173 Fed. Cl. 508, 516 (2024) ("counsel improperly included hours spent litigating the separate . . . claims and preparing the fee-approval motions").  And in a final attempt to improperly inflate its lodestar, Class Counsel inexplicably requested fees based on its higher 2023 rates arguing it was entitled to compensation for the time value of money, even though it had already received and distributed that money years earlier.  HR Dkt. 192-2.  Objectors challenged each of these tactics and the Court appropriately rejected them.  H.R. Dkt. 224 at pp.13-14.

In October 2024, the Court granted Class Counsel's renewed Motions for Approval of Attorney's Fee Request (H.R. Dkt. 192; C.G. Dkt. 185) subject to a reduction of the requested fee to 2.5% of the common fund for a total award of $92,424,335.84—half of the vacated initial 2021 award.  (H.R. Dkt. 224.)  Objectors—following two rounds of objections and a successful appeal—thus obtained an over $92 million recovery for the class as of October 2024.

**F.    Objectors Incur Additional Unnecessary Expense to Enforce Class Counsel's Promise to Promptly Distribute Any Overpayment.**

Despite its earlier representations to the Court, Class Counsel then refused to return the over $92 million it owed the class despite its assurance that it "unequivocally commit[ed] to repay any difference (if any) between the two awards" "*if the Court orders a lower fee award*." H.R. Dkt. 202 at 17; H.R. Dkt. 210 at 13 (emphasis added).  Instead, once the Court ordered a lower fee award, Class Counsel took the position that yet another order was required before it had any obligation to give any money back to the class.  H.R. Dkt. 233.  Objectors then incurred additional attorney's fees to obtain an order from the Court requiring the distribution of the $92 million difference in fee awards that Class Counsel had previously promised to promptly repay

when Objectors moved for safekeeping of the disputed funds. *See* H.R. Dkt. 232-233 and 235-236. At the November 19, 2024 status conference held to discuss this dispute, the Court took into consideration issues Class Counsel raised pertaining to the JPI that would be used to repay the class, which was only possible because Objectors forced, again at great cost, Class Counsel to earlier disclose the existence and terms of that insurance.

**G.    Objectors are Forced to Further Litigate the Question of Interest on Class Counsel's Repayment—Despite Its Prior Assurances It Would Compensate the Class for the Time Value of Money—Resulting in an additional $10 Million for the Class.**

Following Objectors' successful, but costly, efforts to force Class Counsel to abide by its promises in the class notice and subsequent promise to return any overpayment, Class Counsel then tried to walk back yet another promise by claiming that the class was entitled to zero interest on the inflated fee award that Class Counsel had improperly secured by disregarding its class notice assurances because the common fund accounts were not interest-bearing. *See* H.R. Dkt. 234 and 234-1.

This assertion that the common fund accounts were not interest-bearing such that the class was not entitled to interest was counter to several of Class Counsel's prior representations to the Court. For example, in May 2023, Class Counsel promised "repayment of the difference ***plus interest*** if the Court orders a lower fee award" in response to Objectors' motion for discovery and an accounting to determine interest, arguing Objectors' motion was thus unnecessary. H.R. Dkt. 202 at 12 (emphasis added).

Then over a year later at the July 25, 2024 hearing on the Second Petition, after the Court denied Objectors' motion to return the disputed funds and for an accounting, Class Counsel reiterated its promise to repay any difference plus interest:

> At this point, if -- this was encapsulated in one of your earlier orders in this case --
> if you order anything less than 5 percent, we, as class counsel, will owe them the
> difference plus interest. So at this point, the class, if Your Honor awards less than

5 percent, gets the benefit of -- the time benefit of money.  They get interest.

Transcript (July 25, 2024) 25:7-13.

After the Court issued its second fee award in October 2024, the Objectors accordingly asked Class Counsel for interest including how it would calculate it—a question that had thus far gone unanswered by Class Counsel except to say that the calculation would be "simple."  H.R. Dkt. 202, 234 and 234-1.  Class Counsel refused to answer the question, claiming the Objectors should first explain what interest they sought, which, in this case was the prime interest rate.  *Id.* Class Counsel then countered that the applicable rate of interest is zero because "the common fund accounts are not interest-bearing" and "the purpose of an interest rate in this situation is to put the class members in the same position they would have been, had Class Counsel not distributed the funds from the common fund account in 2021."  *Id.*  But it did not offer any explanation as to why it failed to inform the Court and the Objectors of this fact when it opposed the Objectors' motion to return the funds to an ***interest-bearing <u>client trust account</u>*** (not, as Class Counsel contended, the common fund accounts which apparently were not interest bearing at all) after the Federal Circuit vacated the award.  *See id.*  Class Counsel completely ignored that Objectors had already flagged the issue of interest and affirmatively filed a motion seeking assurances the disputed funds would be accruing interest while the issue of Class Counsel's overpayment was litigated—which it opposed as unnecessary.

Apparently realizing the flaw in its position given its prior representations to the class and Court, Class Counsel then offered that, while in its view the applicable rate of interest is *zero* and it owes *no* interest, it would be willing to pay 1.775%, which it claimed was half the average of the short-term Treasury rates over the last three years.  *See id.*  In opposition to Objectors' motion for prejudgment interest, Class Counsel then lowered its offer claiming the interest rate should be 0.08%—or, *essentially zero*.  H.R. Dkt. 244.

In June 2025, the Court rejected Class Counsel's request to apply a fixed 0.08-percent interest rate, instead awarded the class an additional $10 million in prejudgment interest, and entered RCFC 54(b) judgment on June 6, 2025. H.R. Dkt. 253-254. The judgment became final on August 6, 2025 when no one appealed by the August 5, 2025 deadline. FRAP 4(a)(1)(B) and 4(a)(4)(A)(iv). Objectors have thus obtained ***over $102 million*** for the risk corridors classes at issue here.

**H.    Objectors Seek to Informally Resolve the Present Dispute Concerning Objectors' Attorney's Fees; Class Counsel Improperly Threatens Sanctions in Response.**

Once Objectors' ability to seek their attorney's fees was ripe following Class Counsel's attorney's fees judgment becoming final, Objectors asked Class Counsel to engage in settlement discussions to avoid incurring even more fees to now recoup the fees Objectors were forced to incur starting when Class Counsel disregarded its promises in the class notice over five years ago. Because Objectors hit the mark that few objectors ever have—to the tune of over $102 million— their entitlement to attorney's fees is clear. The question is merely how much. Instead of engaging in good faith negotiations, Class Counsel threatened they would seek sanctions for Objectors filing a motion to enforce their right to seek fees. H.R. Dkt. 261. Class Counsel also made a host of meritless arguments concerning timing and notice (discussed in more detail below) in a last ditch attempt to avoid a payment it knew was due.

Even in its last filing, Class Counsel refuses to grapple with the history of the now years-long dispute with Objectors. No one questions that Class Counsel has a "truly-held belief" that *it* values its services at $185 million (H.R. Dkt. 263)—an amount, Objectors reiterate, Class Counsel will keep thanks to the fact it insured the award against reduction. But this is all irrelevant. As the Federal Circuit made clear, the question from the outset was *what did Class Counsel promise the class?*

-10-

As the Federal Circuit's opinion also made clear, Class Counsel should have honored its obligations in the first instance.  Because it did not, Objectors were forced to incur significant fees, for which Class Counsel should reimburse Objectors.  "Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, 'A lawsuit is a fruit tree planted in a lawyer's garden.'"  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

## III.    Argument

Under settled law, Objectors are entitled to the attorney's fees they incurred in pursuing their objection, which resulted in a return of more than $100 million to the class.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (holding that objectors were entitled to fees if their actions "increase[d] the fund or otherwise substantially benefit[ed] the class members").  "The most common example of this is the situation in which objectors contend that class counsel's requested fee—to be taken from the common fund—is too great."  Calculating Objector's Fees, 5 Newberg and Rubenstein on Class Actions § 15:94 (6th ed.); *see also* § 15:60  ("Objector's counsel may also seek fees but their entitlement also rests upon their having conferred some benefit on the class—monetary or not—by virtue of their objection, a mark few objectors hit.").

In fact, at least one court has concluded that "[t]here is no dispute that [the objector] is entitled to recover fees" where the objection increased the class's recovery by over $21 million by reducing class counsel's fee by that amount.  *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021 WL 4124159, at *1 (N.D. Cal. Sept. 9, 2021) *citing Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("Nonnamed members of a certified class have the authority to object to the fairness of a settlement ... as well as appeal.... If these objections result in an increase

to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel.").

Indeed, courts hold that a denial of objector fees under similar circumstances is "clearly erroneous" and constitutes error. *Rodriguez v. West Pub'g Co.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding it "clearly erroneous" to deny fees to objectors who successfully objected to incentive awards, thereby augmenting the class's net fund by $325,000); *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740 (7th Cir. 2018) (reversing denial of fees to objector who conferred benefit on the class); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 744 (3d Cir. 2001) (vacating district court's order denying attorneys' fees to objector who raised issues with class counsel's fee award and remanding for reconsideration).

Here, Objectors conferred a significant benefit on the class thereby substantially benefiting all class members. A request for attorney's fees is therefore well supported by law. Thus "[t]he only issues are the appropriate amount to be awarded and whether it should be drawn from the share previously awarded to [class counsel], or instead deducted from the remaining balance of the common fund." *Optical Disk*, 2021 WL 4124159, at *1. As further discussed below, Objectors seek their **$1.625 million** in fees (representing a **1x** multiplier) only from the share previously awarded to Class Counsel—representing a mere **1.6%** of the total benefit conferred on the class..

## A.    Objectors Seek $1.625 Million in Fees—or 1.6% of the $102 Million Benefit They Conferred on the Class.

Objectors have incurred in excess of $1.625 million in fees and expenses from August 2020 through the end of 2024 (which is exclusive of fees incurred in connection with this Motion) and seek to recover that amount from Class Counsel because none of that expense would have been incurred had Class Counsel kept its promises to the class. Objectors contend that $1.625 million— representing approximately 1.6% of the over $102 million benefit obtained for the class as a

whole—is more than reasonable in this context and posture. Objectors note that they could have sought a lodestar multiplier in the range of 2 to 4 given the history of the dispute and massive benefit obtained, but instead seek just the actual fees and expenses incurred to enforce Class Counsel's promises.

The Court has discretion to decide whether to use a percentage-of-the-fund or lodestar method to determine Objectors' fees. *Health Republic*, 58 F.4th at 1371. Objectors provide both because the Federal Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* at 1374, n. 2. In any event Objectors' request amounts to a reasonable fee under either approach.

    1.    *Objectors' Request for a 1.6% Fee Is Well Within the Realm of Reasonableness.*

Because Objectors' efforts resulted in a readily quantifiable benefit to the class—over $102 million—the percentage method is appropriate. *See, e.g., Optical Disk*, 2021 WL 4124159, at *1. Here, Objectors seek 1.6% of the benefit to the class, well under the 25% "benchmark" applied to plaintiffs' fee requests in non-megafund cases. *Id.*; *see also Health Republic*, 58 F.4th at 1374. And while 1.6% might be considered "somewhat arbitrary"—clearly it is not when understood to be the actual fees incurred to obtain the $102 million benefit to the class. *See Optical Disk*, 2021 WL 4124159, at *1.

For comparison, the objector in *Optical Disk* sought 7% of the $21 million benefit bestowed on the class, which represented $1.5 million with a multiplier of just under 3. *Optical Disk*, 2021 WL 4124159, at *1-2. Here, Objectors have conferred a benefit five times larger yet seek a percentage that is more than four times smaller. In fact, Objectors believe they have both conferred one of the largest benefits on a class by objecting, and now also seek the lowest percentage in return.

Objectors need not belabor the point. Class Counsel (and its expert) contend that a "5%

fee is at the extreme low end of class action fee awards, regardless of the size of the common fund." H.R. Dkt. 192 at p. 20. It follows that 1.6% is at the lowest end of fee awards and is more than justified on the facts here.

     2.     *Objectors Request 1x Their Lodestar Which is More Than Reasonable Under the Circumstances.*

As discussed, Objectors are not seeking a multiplier on their lodestar. All they are asking is to be reimbursed for the amounts incurred to enforce Class Counsel's promises to the class which amounts to in excess of $1.625 million in fees and expenses.

When determining the lodestar for a cross-check, "[m]ore relaxed specificity and documentation standards apply" than would if "the lodestar method is directly used to set the fee." *Health Republic*, 58 F.4th at 1378. Thus, "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Id.* (*quoting In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)). In performing that calculation, "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306-307. Instead of detailed billing records, "a court should be satisfied with a summary of the hours expended by all counsel at various stages." *Id.* at 307 n.16.

Here, counsel for Objectors spent approximately 2700 hours on the various stages of the fee dispute with Class Counsel as follows:

| Stage of Litigation | Approx. Hours | Avg. Rate | Approx. Fee ($) |
|---|---|---|---|
| **Objection to First Petition** | 150 | $565 | $84,750 |
| **Appeal** | 400 | $565 | $226,000 |
| **Motion for Safekeeping, Interest and Discovery** | 800 | $565 | $452,000 |
| **Objection to Second Petition** | 950 | $565 | $536,750 |
| **Enforce Distribution of Overpayment to Class With Interest** | 400 | $565 | $226,000 |
| **Totals** | **2700** | **$565** | **$1,525,500** |
| **TOTAL FEES PLUS EXPENSES** | | | **$1,625,500** |

Keshavarzi Decl., ¶¶ 3-4.

Had Class Counsel kept its promises to the class, Objectors would not have had to incur the fees and expenses associated with its two objections or appeal—which is even more striking given Class Counsel asked for the exact same fee award on remand even after the Federal Circuit made clear that fee was too high. And because Objectors could see the writing on the wall, they actively sought to protect the class's appellate victory by seeking return of the disputed funds to ensure they were safe and earning interest given the amount at issue was nearly $200 million. Thus, these hours were well spent. Essentially for half a million dollars, Objectors were able to foreclose the situation they had the ability to foresee—that is, that Class Counsel would later try to claim it owed no interest on any refund it was ordered to return. Indeed, Class Counsel later took the position that the interest owed to the class was *zero*, and then 0.08%—basically zero.

-15-

Securing Class Counsel's promise to repay with interest, even if Objectors knew Class Counsel wouldn't honor it, was essential for later securing a $10 million interest award for the class via motion to the Court.

Moreover, while Objectors paid an average hourly rate of $565 to counsel, Objectors' counsel in return generated about $38,000 of recovery for every hour worked. While Objectors' counsel worked as efficiently and diligently as possible, the large recovery here, similar to the underlying risk corridors lawsuit itself, was primarily due to the magnitude of the breach.

Therefore, Objectors contend that any "bean counting" can and should be avoided where, as here, each stage of the litigation was critical to securing some portion of the $102 million recovery for the class, and when Objectors seek such an infinitesimally small portion of that recovery along with no multiplier on its lodestar. Therefore, a lodestar cross-check likewise confirms that Objectors' requested $1.625 million fee is not only reasonable but entirely justified.

**B.    The *Moore* Factor Analysis Also Supports Objectors' Requested Fee.**

Because Objectors primarily seek an award in part based on the percentage-of-the-fund method, they address the *Moore* multi-factor test approach, under which the court considers:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1372 (Fed. Cir. 2023); *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005). Objectors take the factors out of the above order and instead provide them according to Class Counsel's ranking, given the extra weight of certain factors in a fee request that is subject to a lodestar cross-check. *See* H.R. Dkt. 192 (Class Counsel's Second Fee Request) at p. 12, n. 5.

1.      *The Seventh Moore Factor—the $102 Million Award (Benefit)—Overwhelmingly Supports the Requested Fee.*

As Class Counsel has argued, the most important question for determining whether a lodestar multiplier indicates a fee is too high or too low is the benefit obtained for the class.  H.R. Dkt. 192 at p.12.  *Citing Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983) and *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").  Here, Objectors have recovered **over $102 million** for the class and effectively reducing the fee the class paid class counsel by half.  This is particularly impressive where, as Class Counsel's expert notes, few objectors successfully recover **any money** for the class at all.  5 Newberg and Rubenstein on Class Actions § 15:60 ("Objector's counsel may also seek fees but their entitlement also rests upon their having conferred some benefit on the class—monetary or not—by virtue of their objection, a mark few objectors hit.")

Whether measured by the nominal amount of $102 million, or the 50% reduction in attorney's fees ultimately paid by the class, the benefit Objectors conferred on the class is exceptional, while the fees Objectors seek is modest by comparison.

2.      *The Fourth Moore Factor—the Fee Private Parties Would Have Negotiated—Is Particularly on Point Because the Requested Fee **Is** What the Objectors Paid.*

The situation here is vastly different from the typical scenario involving what are known as "professional objectors"—attorneys who, on behalf of nonnamed class members, file specious objections to class action settlements and threaten to file frivolous appeals of district court approvals merely to extract a payoff.  Instead, here it was Objectors who sought and have paid counsel more than they now seek in this Motion to enforce Class Counsel's promises to the class. Thus there is no need to speculate about the fee that "likely would have been negotiated between

-17-

private parties in similar cases" because the exact fee negotiated for this particular case is known, and it's more than the amount sought here, since Objectors' counsel discounted its fees. Keshavarzi Decl., ¶ 5.  The fourth Moore factor thus supports Objectors' requested fee.

3.  *The Third Moore Factor—the Risk of Nonrecovery—Favors Objectors' Modest Fee Request Given a Successful Appeal was Unlikely Given the Abuse of Discretion Standard applied.*

The Federal Circuit "review[s] an award of attorney's fees for an abuse of discretion." *Health Republic*, 58 F. 4th 1372.  Thus Objectors' chances of prevailing on appeal were slim, and Objectors stood to gain nothing on remand when Class Counsel sought the exact same $185 million fee that the Federal Circuit had rejected.  There was thus a risk of nonrecovery sufficient to justify Objectors' ask for 1.6% of the benefit they bestowed on the class..

4.  *The Second Moore Factor—the Complexity and Duration of the Litigation—Also Supports Objectors' Fees Incurred to Litigate Novel Issues of First Impression.*

Objectors have now been litigating this fee dispute for over five years and had to fight Class Counsel every step of the way.  The irony here concerns the similarities between the promise broken by the government—to make the risk corridor payments—and the promise broken by Class Counsel—to limit its fee request based on the hours it actually worked.  The upshot is that Objectors have now had to pay two sets of counsel to enforce the promises made to them, and in doing so helped made law in both instances.  And while Objectors contend that the legal questions presented in both occurrences are fairly straightforward—that is, that the government and class counsel should keep their promises—the litigation of each dispute for over four years apparently suggests otherwise.

Objectors did, however, also litigate other issues of first impression that were not premised on the notion that promises should be kept, including: (1) enforcement of class action notice provisions in the Federal Circuit; (2) whether class counsel can secure a fee award through the

purchase of JPI and then distribute the disputed fee to its partnership; and (3) what interest is due to a prevailing party in the Court of Federal Claims when the losing party is not the government.

    5.    *The Sixth Moore Factor—the Percentage Applied in Other Class Actions—Favors a Fee Much Higher Than Objectors Seek Here.*

Just as Objectors are unaware of any objector who has recovered as much as $102 million for the class as a result of an objection, they are likewise unaware of any objector who has asked for a percentage of the recovery as low as 1.6 %. *See, e.g., Optical Disk*, 2021 WL 4124159, at *1 (awarding objector 7% of over $21 million recovery as "reasonable" "under all of the circumstances"); *Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832, at *8 (N.D. Ill. Mar. 15, 2019) ("It is well recognized that objectors who add value to litigation through their successful objections are entitled to recover a substantial share of overall attorney's fees. Seventh Circuit caselaw has previously placed such recoveries around 20% of the total attorney's fees."); *Kaufman v. American Express Travel Related Servs.*, Co., Case No. 07-cv-1707, 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector fees of 34% of the benefit); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector fee of 25% of the benefit). The relatively low percentage sought here thus likewise confirms Objectors' request is reasonable.

    6.    *The First Moore Factor—Quality of Counsel—Supports the Requested Fee.*

Objectors contend that in this case posture, the issue is less about the quality of Objectors' counsel and more about the unnecessary fees Objectors were forced to incur. That said, given this factor is "best measured by results" *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018), and given the over $102 million recovery obtained through Objectors' efforts, this factor likewise supports Objectors' requested fee. Indeed, Objectors are unaware of any other objector who recovered as much for the class.

       7.       _The Fifth Moore Factor—Class Member Objections—is Irrelevant Here Where the Fee is Requested by Objectors from Class Counsel, not the Class._

The fifth factor considers "any class members' objections to the settlement terms or fees requested by class counsel." Here, Class Counsel is not seeking a contingent fee; Objectors are seeking reimbursement of fees already incurred. Because Objectors seek their fees solely from Class Counsel, no class member would have a basis to object. Therefore, this factor is irrelevant.

In sum, analysis of the _Moore_ factors supports the Objectors' fee request from Class Counsel.

**C.    Objectors Seek Their Fees Solely From Class Counsel Because It Was Their Actions that Necessitated Them.**

Objectors do not seek any compensation from the class. Not only would that make little sense when Objectors comprise 43% of the class measured by damages (that is, Objectors are not filing a motion to seek fees from themselves), but it would also unfairly punish the rest of the class, which had nothing to do with why the subject attorney's fees were incurred. Instead, consistent with other cases where objectors obtained significant recoveries when class counsel overreached, Objectors seek their fees solely from Class Counsel as a matter of equity, which is the basis for Class Counsel's fees in the first instance.

In analogous circumstances, courts find that class counsel should be ordered to pay objector's fees—not the class. _See, e.g.,_ Award of attorney's fees—Attorney's fees for objectors' counsel, 2 McLaughlin on Class Actions § 6:27 (20th ed.) ("The amount paid to the objectors' counsel should be deducted from class counsel's award, and not represent a second dip into the class recovery."); 5 Newberg and Rubenstein on Class Actions § 15:94 (6th ed.) ("[I]n some circumstances courts have ordered class counsel to pay objector's fees.")

_Optical Disk_—a case that Class Counsel and the Court have repeatedly relied on throughout this case—is on point. There, where class counsel was awarded too much in fees and

had claimed and been allowed improper expenses, the court concluded that the class should not

bear the cost of correcting class counsel's error as a separate expense from the attorney fees it

already must pay. *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021

WL 4124159, at *2–3 (N.D. Cal. Sept. 9, 2021).

Here, too, Objectors' fees should be paid by Class Counsel because it was Class Counsel's

refusal to abide by the promises it made in the class notice, improper double counting of hours,

and inflating of its lodestar that unfairly caused the Objectors to incur substantial fees. *Optical*

*Disk* explained that contrary to class counsel's claim that taking the objector's fee from class

counsel would impose a "sanction":

> The issue, however, is neither one of "fee-shifting" nor of sanctions. Rather,
> because a fee award to objectors is grounded in "equitable principles," . . . it is more
> reasonable under all the circumstances here to fund the award from the amount
> already designated as attorney fees, rather than further reducing the settlement fund.

> The ultimate conclusion of the appellate and post-remand proceedings was that
> Hagens Berman had claimed and been awarded too much in fees (and had
> improperly claimed and been allowed expenses), given the bid under which it
> secured the right to represent the class in this action. To require the class to bear
> the cost of correcting that error as a separate expense from the attorney fees it
> already must pay would be less equitable than simply taking Erwin's relatively
> modest fees from the substantial amount previously awarded. *See Hendricks v.*
> *Starkist Co*., 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016) (giving objector
> a portion of plaintiff's fee award "is an appropriate and justified result"), *aff'd sub*
> *nom. Hendricks v. Ference*, 754 F. App'x 510, 513 n.1 (9th Cir. 2018) ("[W]e
> affirm the district court's award of attorney fees to [objector's] counsel and its
> corresponding reduction in fees to Plaintiff's counsel."); *In re Lithium Ion Batteries*
> *Antitrust Litig*., 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10, 2020) ("The Court is
> further persuaded that the award [to objector] should be paid out of class counsel's
> fee award.")

*In re Optical Disk Drive Prod. Antitrust Litig.,* No. 10-MD-02143-RS, 2021 WL 4124159, at *2–

3 (N.D. Cal. Sept. 9, 2021). The *Optical Disk* court also noted that objector's fees were properly

paid by even though the objector failed to show any ethical violation by class counsel. *Id.* at *2,

n. 5. Thus, Class Counsel's rationales for failing to live up to its promises and for inflating its

-21-

lodestar are irrelevant; Class Counsel should pay Objectors' fees in any event.

Other cases are in accord. *See In re Lithium Ion Batteries Antitrust Litig.,* No. 13MD02420, 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ("The Court is further persuaded that the award should be paid out of class counsel's fee award. Were it not for class counsel's initial acquiescence to the pro rata distribution, and abrupt shift of positions in the Round 3 settlements, Bednarz would not have needed to pursue the objection and appeal. … As a matter of equity and fairness to the class, and to avoid dilution of the settlement fund, the award here shall be paid from the attorneys' fees awarded to Class Counsel."); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 651 (E.D. Pa. 2015) (reducing class counsel's attorney fee award to pay fees to objector where class counsel "fulfilled their 'responsibility' to obtain this direct benefit on the second try."); *Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018) (finding payment of objector's fees and costs by class counsel "an appropriate and justified result" where class counsel caused objectors to incur fees and costs by acquiescing to an overbroad release and "the Court strongly believes that this expense should not be paid from money that otherwise would have gone to the Class Members.")

Thus, to be clear, despite Class Counsel's claims to the contrary, Objectors seek reimbursement of their fees from Class Counsel only, and not from the class. This result is not only equitable but necessary to minimize incentives class counsel might have to overreach in their attorney fee requests to the detriment of the class to whom they owe fiduciary duties. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987) (discussing class counsel's "fiduciary duty to the class not to overreach.").

## IV.   Conclusion

The Court should order Class Counsel to pay Objectors the fees they were forced to incur to enforce the promises Class Counsel made to generate participation in this lawsuit.  That amount—$1.625 million—represents a mere 1.6% of the over $102 million Objectors obtained for the Class.  By any account, this request is manifestly reasonable.


Dated:  March 4, 2026                                   Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Moe Keshavarzi
mkeshavarzi@sheppard.com
Katherine B. Rice
krice@sheppard.com
350 South Grand Ave., 40th Floor
Los Angeles, CA 90071
Telephone: 213.620.1780

Jack F. Burns
jburns@sheppard.com
Jenna A. Fasone
jfasone@sheppard.com
501 West Broadway, 18th Floor
San Diego, CA 92101
Telephone: 619.338.6500